```
UNITED STATES DISTRICT COURT                        (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -: 05 Civ. 8453 (KMK) (JCF)
TARASIK ABDELL, JOSEPH AMATO, GARY  :
ASHBECK, ELLEN BARFIELD, DAVID      :       MEMORANDUM
BARROWS, MICHAEL BECKER, DIANE      :       AND   ORDER
BEENY, JOHN BEHLING, RUTH BENN,     :
BENJAMIN BERNARD, ARUN BHALLA,      :
KATHLEEN BURICK, DANIEL BURNS,      :
LINNEA CAPPS, THOMAS CATCHPOLE,     :
JOAN CAVANAGH, MARC F. CHURCH,      :
JEFFERY J. COHEN, MARK COLVILLE,    :
WILLIAM CONWELL, COLLEEN COOK,      :
SUSAN CRANE, RICHARD CSONTOS, POLLY :
A. DAVIES, FELTON DAVIS, PATRICIA   :
DEBRUHL, PETER DE MOTT, DEWAYNE     :
DICKERSON, MATTHEW DIETZEN, WALTER  :
DITMAN, LOIS A. DOGGETT, JASON      :
DORAIS, SUSAN D'ORNELLAS, ALEXANDER :
HOLLEY DRUMMOND, STEVEN EKBERG,     :
CALLA EVANS, ADAM FEINSTEIN, JAMES  :
FLYNN, HOWARD J. GALE, STEPHEN      :
GAMBOA, GABRIEL GASTER, TOBIAH      :
GASTER, EDWARD GIBBONS, ZOE         :
GINSBURG, JOHN THEODORE GLICK,      :
THOMAS GOEKLER, CHARLES GOLDBERG,   :
OREN GOLDENBERG, DAVID GORDON,      :
KATHRYN GORDON, BARRETT Z. GROSS,   :
RICHARD HARDIE, ED HEDEMANN,        :
KATHLEEN D. HERNANDEZ, ROGER HILL,  :
EDWARD HOTCHKISS, RYAN D. HOTTLE,   :
JANET S. HOWE, BENJAMIN HUNT,       :
ROCHELLE IANNUCCI, THOMAS IVORS,    :
MELISSA JAMESON, JENNIFER JANNEY,   :
DWIGHT JENKINS, MICHAEL JOSEPH,     :
PEPPER JUDD, SARAH KANOUSE, JAY     :
KANTOR, BRIAN KAVANAGH, KIMBERLY    :
KERN, EDWARD F. KINANE, JOSHUA      :
KNAPP, MATTHEW KOCEK, KATHARINE     :
KRASSAN, LAURA KRESSLY, ANDREW      :
LAKEN, TESSA M. LALONDE, JARED      :
LANCTOT, JOHN LARSON, RICHARD       :
LARSON, MICHAEL R. LEVINSON,        :
STEVEN LIPTAY, JONOTHAN LOGAN,      :
MARIELLE LOVECCHIO, JAY MARX, RYAN  :
MCGEE, BARBARA ANN MEISINGER,       :
TRISTAN MIGLIORE, JOHN M. MILLER,   :
ZACHARY C. MILLER, ROBERT V.        :

                                 1
```

```
MINERVINI, CHRIS G. MURRAY, MARK      :
NECHAY, BLOSSOM NICINSKI, JAMES       :
NOONAN, ANTHONY O'LEARY, DANIEL       :
O'REILLY-ROWE, MICHAEL OWEN,          :
MICHAEL PALMER, CHRISTINE PARDEW,     :
LAWRENCE PARIS, DANIEL M. PARROTT,    :
NATHANIEL PARRY, JEFFREY A.           :
PATERSON, SHANNON PETRELLO, STEPHEN   :
PETRICK, KATHERINE POE, LAURA         :
RAYMOND, EDWIN REED-SANCHEZ, BRUCE    :
RENWICK, ADAM RICHINS, SHANA RIGBY,   :
DEBORAH RIVERBEND, RAYMOND            :
ROBINSON, LAMBERT ROCHFORT, RONALD    :
E. ROSENBERG, DEVON RUECKNER,         :
RONALD W. SAN MARCHI, FRANK           :
SANCHEZ III, MATTHEW SCHENNING,       :
STEVEN SCOFIELD, ANAIS SENSIBA,       :
GORDON WILLIAM SENSIBA, ROBERT J.     :
SIEGEL, SELMA SPRITZER, ANDREW ST.    :
LAURENT, MORA MI-OK STEPHENS,         :
WILLIAM STEYERT JR., THERESA SWINK,   :
HANNAH TAYLOR, SARAH TEPSIC, EMILY    :
JO TESTA, JOHN TRINKL, ANN TRUDELL,   :
CHRISTY ANN TURNER, JOHANNA           :
VALENTE, PATRICK VOLPE, ZACHARY       :
VREELAND, FRANTZ WALKER, JAMES        :
J. WHITE, PATRICIA WIELAND, JAMES     :
WILLIAMSON, JAMES WILSON, TERAN       :
WILSON, JENNIFER WONG, MATTHEW        :
WRIGHT, RAISSA WU and THOMAS          :
ZAMBECK,                              :
                                      :
                    Plaintiffs,       :
                                      :
     - against -                      :
                                      :
THE CITY OF NEW YORK; MICHAEL         :
BLOOMBERG, Mayor of the City of       :
New York, RAYMOND KELLY,              :
Commissioner of the New York City     :
Police Department, TERRENCE           :
MONAHAN, Assistant Chief of the       :
New York City Police Department,      :
and JOHN and JANE DOES,               :
                                      :
                    Defendants.       :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

2

Hundreds of protestors were arrested during the Republican National Convention in New York City in the summer of 2004. Many, including the plaintiffs in this case, have since brought suit alleging that their constitutional rights were violated because they were arrested without probable cause, subjected to excessive force, and detained in substandard conditions. In the course of discovery, the plaintiffs have subpoenaed documents relating to their arrests from the New York County District Attorney's Office ("DANY"), which is not a party to this action. DANY now moves pursuant to Rules 26(b)(3) and 45(c)(3) for an order quashing the subpoena insofar as it demands production of a document identified as the "DA Data Sheet" for each plaintiff. DANY maintains that the DA Data Sheet is attorney work product, immune from discovery. For the reasons that follow, the motion is denied.

Background

The DA Data Sheet is a form created in connection with each criminal prosecution. It is generally completed in the Early Case Assessment Bureau ("ECAB") by the Assistant District Attorney ("ADA") who drafts the Criminal Court complaint. (Letter of Patricia J. Bailey dated June 13, 2006 ("Bailey 6/13/06 Letter"), at 2). Because some of the plaintiffs received copies of the DA Data Sheets in connection with their own prosecutions, I have been able to review a number of examples. (Letter of Michael L. Spiegel dated June 22, 2006 ("Spiegel Letter"), Exh. B). On the first page, the form contains boxes for the defendant's name, information

relating to the amount of bail recommended, the reasons for the recommendation, the bail requested, and the bail set. There is a space used for a factual summary, followed by spaces for any statements made by the defendant and notes concerning identification. Below that, there is a section apparently related to the arraignment, which includes spaces for such information as the names of the judge, the ADA, and the defense counsel, notes on the arraignment proceedings, and any special instructions. There is also a checklist for indicating whether specified notices have been provided. On the second page, there are boxes for providing information about details of the arrest, the defendant's address and phone number, the identity of any police or civilian witnesses and related notes, any injuries, the vouchering of any physical items recovered, and any 911 tape. Finally, there is a space for supplying any supplementary facts.

According to DANY, the DA Data Sheet is work product, created in anticipation of litigation.

> DA Data Sheets necessarily reflect the mental impressions of the prosecutor reviewing the case at that time. Prior to its creation a prosecutor is required to filter through information about an event learned as of that moment in the process, so as to determine if charges can and should be drawn; and, if so, what information will be relevant for the complaint, the criminal court arraignment and for the district attorney initially assigned to the matter should be aware of [sic]. The document is generally based upon more than one source of information. And, the ADA will summarize what he or she considers being the legally germane feature(s) of the case for purposes of the arraignment and initial assignment. As such, the contents of the document are necessarily evaluative in nature.

\* \* \*

> To be sure, the very fact that [a] DA Data Sheet is even created demonstrates that the reviewing ADA was of the opinion that the case had prosecutorial merit and expresses that judgment by causing the complaint to be filed, thereby bringing formal charges against a defendant in criminal court. The document reflects the recorded mental impressions of the prosecutor['s] evaluation of an arrest.

(Bailey 6/13/06 Letter at 2).

In response, the plaintiffs argue, first, that even if the DA Data Sheet is work product, DANY cannot avail itself of the protection of the doctrine because it is not a party to this case. (Spiegel Letter at 1-4).  Furthermore, the plaintiffs dispute DANY's characterization of the DA Data Sheet as the manifestation of the prosecutor's mental impressions or legal theories and argue that it is in large part simply a recording of factual information. (Spiegel Letter at 4-6).

Discussion

    A.  Rule 26(b)(3)

An appropriate starting point for any analysis of work product immunity is Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides in part as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial

equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

By its own terms, Rule 26(b)(3) does not protect materials prepared by lawyers for non-parties. This makes sense; the primary function of the rule is to foster the attorney's adversary role in a system of open discovery.  As the Advisory Committee Note accompanying the rule states, the rule "reflects the view that . . . one side should not automatically have the benefit of the detailed preparatory work of the other side." Fed. R. Civ. P. 26(b)(3), advisory committee note.  Accordingly, courts have repeatedly held that Rule 26(b)(3) does not shield work product produced for non-parties.  See California Public Utilities Commission v. Westinghouse Electric Corp., 892 F.2d 778, 781 (9th Cir. 1989) ("[Rule 26(b)(3)], on its face, limits its protection to one who is a party . . . to the litigation in which the discovery is sought."); Ricoh Co. v. Aeroflex Inc., 219 F.R.D. 66, 69 (S.D.N.Y. 2003) (disclosure of material may be required even where non-party is party in closely related lawsuit and may suffer disadvantage in latter suit as result of disclosure); Ramsey v. NYP Holdings, Inc., No. 00 Civ. 3478, 2002 WL 1402055, at *2 (S.D.N.Y. June 27, 2002) ("[A] non-party cannot invoke the work-product immunity of Fed. R. Civ. P 26(b)(3) to withhold documents created for the non-party's benefit."); Polycast Technology Corp. v.

6

Uniroyal, Inc., No. 87 Civ. 3297, 1990 WL 138968, at *2 (S.D.N.Y. Sept. 20, 1990) (Rule 26(b)(3) not applicable to document prepared for non-party); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (2d ed. 1994) at 354 ("[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26 (b)(3) even though the person may be a party in a closely related lawsuit"). Indeed, in a case interpreting an exemption to the disclosure requirements of the Freedom of Information Act, the Supreme Court looked to Rule 26(b)(3) for guidance and found that "the literal language of the Rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." F.T.C. v. Grolier Inc., 462 U.S. 12, 25 (1983) (second emphasis added).

Not suprisingly, this issue has arisen before in civil cases that, like this one, flow from criminal prosecutions. And "courts . . . have consistently held that the privilege is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." Klein v. Jefferson Parish School Board, No. Civ. A. 00-3401, 2003 WL 1873909, at *3 (E.D. La. April 10, 2003) (citing cases). See also Boyd v. City and County of San Francisco, No. C-04-5459, 2006 WL 1141251, at *3-4 (N.D. Cal. May 1, 2006) (prosecutorial files discoverable because district attorney not party to subsequent civil action); Ostrowski v. Holem, No. 02 C

7

50281, 2002 WL 31956039, at *3-4 (N.D. Ill. Jan. 21, 2002) (same); Carter v. City of Philadelphia, No. Civ. A. 97-4499, 2000 WL 632988, at *1 (E.D. Pa. May 5, 2000) (same); Hernandez v. Longini, No. 96 C 6203, 1997 WL 754041, at *2 (N.D. Ill. Nov. 13, 1997) (same); Doubleday v. Ruh, 149 F.R.D. 601, 606 (E.D. Cal. 1993) (same).

DANY nevertheless challenges the general rule that non-parties cannot assert the immunity granted in Rule 26(b)(3), relying in large measure on two cases: Thompson v. City of New York, No. 05 Civ. 3082, 2006 WL 298702 (S.D.N.Y. Feb. 7, 2006), and Federal Election Commission v. Christian Coalition, 179 F.R.D. 22 (D.D.C. 1998). In Thompson, a suit against the City of New York charging police misconduct, the court allowed the New York County District Attorney's Office to withhold DA Data Sheets as work product, but it did so without addressing the district attorney's status as a non-party. Thompson, 2006 WL 298702, at *2. In Federal Election Commission, after a non-party had already been ordered to produce attorney work product, the court analyzed Rule 26(b)(3) to determine whether to approve a stipulated protective order seeking to withhold the documents from public view. Federal Election Commission, 179 F.R.D. at 23-24. Neither of these cases provides a sufficient legal basis to extend the protection of Rule 26(b)(3) to non-parties. As DANY is not a party to this lawsuit, the rule does not shield its work product.

B. <u>The Broader Work Product Doctrine</u>

The inquiry does not end there, however, because the work product doctrine as articulated in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), is broader than Rule 26(b)(3). <u>See</u> <u>In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379, 383 (2d Cir. 2003) (work product doctrine "codified in part" in Rule 26(b)(3)); <u>In re Grand Jury Subpoena</u>, 220 F.R.D. 130, 141 (D. Mass. 2004) (work product doctrine "partially codified" in Rule 26(b)); <u>U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local Union No. 3, AFL-CIO</u>, No. 00 Civ. 4763, 2002 WL 31296430, at *5 (S.D.N.Y. Oct. 11, 2002) (<u>Hickman</u> doctrine broader than Rule 26(b)(3)); <u>Maynard v. Whirlpool Corp.</u>, 160 F.R.D. 85, 87 (S.D. W. Va. 1995) (contours of work product doctrine distinct from Rule 26(b)(3)). This is exemplified by the treatment of intangible work product. While Rule 26(b)(3) protects only "documents and tangible things," the cases uniformly hold that disclosure of an attorney's mental processes -- even if those thoughts have not been reduced to writing -- generally cannot be compelled. <u>See, e.g.</u>, <u>United States v. One Tract of Real Property</u>, 95 F.3d 422, 428 n.10 (6th Cir. 1996) (as to information not memorialized in tangible form, <u>Hickman</u> applies, not Rule 26(b)(3)); <u>In re Grand Jury Subpoena</u>, 220 F.R.D. at 141 (noting that Rule 26(b)(3), unlike <u>Hickman</u>, does not reach "intangible" work product); <u>U.S. Information Systems</u>, 2002 WL 31296430, at *5 (discussions in which counsel explored hiring forensic firm

9

analyzed under Hickman); Alexander v. Federal Bureau of Investigation, 192 F.R.D. 12, 17 (D.D.C. 2000) ("courts must look to the caselaw under Hickman v. Taylor and its progeny and not to Fed. R. Civ. P. 26(b)(3)" when evaluating intangible work product) (citation omitted); Maynard, 160 F.R.D. at 87 (when opposing counsel's mental impressions are sought "in the context of a deposition, rather than as memorialized on paper, it is to the Hickman decision, rather than Rule 26, that the Court must look in resolving the dispute").

The question then becomes whether the work product doctrine, as outlined in Hickman and its progeny, requires immunization of the DA Data Sheets from discovery. The doctrine serves at least three purposes. First, it ensures that an attorney will not alter his behavior for fear that his adversary will learn his strategies and thereby gain an advantage. "[T]he work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman, 329 U.S. at 511). "Were the attorney's work accessible to the adversary, the Hickman court cautioned, 'much of what is now put down in writing would remain unwritten' for fear that the attorney's work would redound to the benefit of the opposing party." Id. at 1197 (quoting Hickman at 511). Second, protecting work product alleviates the "freeloader"

10

problem. An attorney who has access to the results of his adversary's research and investigation has less incentive to be diligent in his own trial preparation, and "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." Hickman, 329 U.S. at 516 (Jackson, J., concurring). Finally, the work product doctrine serves to prevent disruption of ongoing litigation.

> In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he . . . prepare his legal theories and plan his strategy without undue and needless interference.

Hickman, 329 U.S. at 510-11. Protecting the DA Data Sheets at issue here from discovery would advance none of these three purposes.

### 1. Altering Attorney Behavior

In criminal cases in New York, the prosecution is obligated to turn over to the defense any witness statement containing relevant information, regardless of whether it is inconsistent with the witness's trial testimony. People v. Rosario, 9 N.Y.2d 286, 289-90, 213 N.Y.S.2d 448, 450-51 (1961). Consequently, prosecutors are routinely required to disclose DA Data Sheets and similar materials to the defense in criminal proceedings. See Barrigar v. Couture, No. 9:98 Civ. 0668, 2001 WL 1860889, at *5 (N.D.N.Y. June 27, 2001) (prosecutor's notes); People v. Adger, 75 N.Y.2d 723,

11

N.Y.S.2d 190 (1989); People v. Cecora, 186 A.D.2d 215, 216, 587 N.Y.S.2d 748, 749 (2d Dep't 1992); People v. Rayford, 158 A.D.2d 482, 482-83, 551 N.Y.S.2d 257, 258 (2d Dep't 1990). A prosecutor's disclosure obligation under Rosario overrides any claim of work product protection. See Adger, 75 N.Y.2d at 729 & n., 551 N.Y.S.2d at 194 & n. (Titone, J., concurring)(citing People v. Consolazio, 40 N.Y.2d 446, 453-54, 387 N.Y.S.2d 62, 65-66 (1976) (prosecutor's notes of witness interview not exempt from disclosure as work product and "prosecutor's worksheets, containing as they do, abbreviated notes capsulizing witnesses' responses to questions relating to material issues raised on defendant's trial, fall within the reach of our holding in Rosario")). Moreover, the fact that data sheets "may contain information in addition to a witness' statement, such as witness evaluations, proposed plea offers, bail recommendations or information otherwise classifiable as 'work product,'" does not exempt the document from discovery by the criminal defendant under Rosario. Adger, 75 N.Y.2d at 729, 551 N.Y.S.2d at 194 (Titone, J. concurring).

Accordingly, disclosing DA Data Sheets in civil litigation can have no chilling effect on assistant district attorneys, because they draft the worksheets with the expectation that defense attorneys may obtain them as Rosario material. Not all DA Data Sheets end up in the hands of defense counsel, of course, because not all cases are prosecuted. But an ADA cannot know, when she takes information from police officers in the hours after an

12

arrest, which of her worksheets will be the subject of a <u>Rosario</u> request. Therefore, requiring assistant district attorneys to turn over DA Data Sheets during discovery in civil litigation will not alter their decisions about committing mental impressions to paper.

### 2. Rewarding Sloth

The danger that disclosing information collected by counsel will provide a windfall for indolent attorneys is also not present here.

> The potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney is lacking in the context of a former criminal defendant, now plaintiff, seeking information from criminal files of a previous prosecution. As is generally the case in such a situation . . . plaintiff's attorney is seeking information directly pertinent to the issues in this civil case, is not seeking the information because he is too "lazy" to develop the information himself, and is seeking information solely within the possession of the prosecuting agency.

<u>Doubleday</u>, 149 F.R.D. at 607. <u>See also</u> <u>Klein</u>, 2003 WL 1873909, at *4 (danger of freeloading not present when prior case was criminal and subsequent case is civil); <u>Ostrowski</u>, 2002 WL 31956039, at *4 ("[Disclosure of work product] may raise the possibility of one attorney doing all the work while a subsequent attorney reaps the reward. However, because this is a civil case, and the file being sought is from a criminal case, that danger is not present.").

### 3. Interfering with Ongoing Litigation

Certainly, there is a risk that permitting discovery of work product will interfere with ongoing litigation, even if the information is being sought in an unrelated case. This peril is

13

exacerbated where the ongoing case is criminal, since the information disclosed could end up in the hands of the criminal defense attorneys and jeopardize the prosecution. See Doe v. Hudgins, 175 F.R.D. 511, 517 (N.D. Ill. 1997) ("Plaintiffs have pointed to no case, and this Court has found none, where a court ordered disclosure of investigatory files while criminal proceedings were pending."); Doubleday, 149 F.R.D. at 607 n.6 (decision not "meant to encroach on the commonly accepted notion that work product of a sort can apply to ongoing criminal litigation"). No such danger is present in this case, however, since the criminal cases have long since been terminated. See Ostrowski, 2002 WL 31956039, at *4 ("[B]ecause the underlying criminal case has been closed . . . there are no concerns with interfering with an ongoing criminal investigation.").

The principles underlying the work product doctrine thus do not militate in favor of shielding the DA Data Sheets from disclosure.

### C. Qualified Protection

Even if the work product doctrine applied to the DA Data Sheets, it would provide only qualified immunity from discovery. When a document comes within the work product rule, it may nevertheless be subject to disclosure upon a showing that "the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the

14

materials by other means." Fed. R. Civ. P. 26(b)(3). "Core" work product, however, is subject to more stringent protection; even where a showing of substantial need has been made, courts must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id.

   1. Fact or Legal Theory

The primary information sought by the plaintiffs -- the statements of police officers and other witnesses -- does not qualify for the greater protection accorded to core work product. DANY argues that because the statements were summarized rather than transcribed verbatim, they necessarily reflect the thought processes of the ADAs who took them. (Bailey 6/13/06 Letter at 2). A similar contention was rejected by the Second Circuit in In re John Doe Corp., 675 F.2d 482 (2d Cir. 1982). In that case, the government sought production of notes written by counsel in the course of interviewing corporate employees. The notes did not include word-for-word declarations by the employees; rather, they consisted of the employees' statements in "paraphrased, abbreviated form." Id. at 493. Accordingly, the corporation argued that the notes reflected the mental processes of counsel. Nevertheless, the court ordered disclosure, stating:

> To the extent that the statements imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything

worthy of the description "legal theory."

Id. Likewise, lower courts have consistently treated witness statements as factual rather than opinion work product, even where those statements have been summarized by counsel. See, e.g., Johnson v. Bryco Arms, Nos. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. March 1, 2005); SR International Business Insurance Co. v. World Trade Center Properties LLC, No. 01 Civ. 9291, 2002 WL 1455346, at *7 (S.D.N.Y. July 3, 2002); United States v. Weissman, No. S1 94 Cr. 760, 1995 WL 244522, at *9-10 (S.D.N.Y. April 26, 1995); Securities and Exchange Commission v. Thrasher, No. 92 Civ. 6987, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995). As one court has reasoned,

> a distinction must be drawn between summaries of the interviewee's statements on one hand and, explicit mental impressions, conclusions, opinions or legal theories of the attorney on the other. To the extent attorney interview notes comprise the former, they are producible upon a showing of substantial need. To the extent such notes are more than just summaries of statements and explicitly contain (as opposed to implicitly reflecting) the opinions, legal theories or mental impressions of the attorney, those portions are entitled to greater protection.

Weissman, 1995 WL 244522, at *10. Here, there has been no showing that the evidentiary summaries in the DA Data Sheets contain "anything worthy of the description 'legal theory,'" and so, to the extent the work product doctrine applies at all, the documents are subject to disclosure on a demonstration of substantial need and undue hardship.

### 2. Substantial Need

A pivotal issue in this case is whether the police officers had probable cause to arrest the plaintiffs. What the officers told the ADAs is therefore highly relevant: "[a] prior statement by a witness -- in this case, a central witness to the case -- will provide plaintiffs with a critical piece of impeachment material[.]" Johnson, 2005 WL 469612, at *5. Accordingly, courts have regularly held that in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors. See Boyd, 2006 WL 1141251, at *4; Doubleday, 149 F.R.D. at 607-08. That same rationale applies here.

### 3. Undue Hardship

There may be alternative means of ascertaining what the police officers observed at the time of each arrest, but none of the sources of such information is the "substantial equivalent" of the DA Data Sheets. While the plaintiffs can take the deposition of each officer, the difficulty of recalling the details of chaotic events that took place more than two years ago is likely to diminish the utility of the testimony. See Boyd, 2006 WL 1141251, at *4 (contemporaneous statements of witnesses constitute best evidence); Johnson, 2005 WL 469612, at *5 (ability to take deposition does not obviate need for disclosure of prior statement); Doubleday, 149 F.R.D. at 608 (substantial need for notes of prior statements because "the passage of time and the present, potential bias of the defendants may color recollections

17

such that what was said at the time cannot be accurately deciphered" through depositions). And, while other evidence of an officer's knowledge, such as memo book entries, will be available, it is important for the plaintiffs to be able to determine the extent to which the information recorded there differs from what the officer told the ADA.

### D. Protective Order

Notwithstanding the fact that the primary information sought by the plaintiffs is not work product immunized from disclosure under either Rule 26(b)(3) or Hickman, there are some residual notations on the DA Data Sheets that may merit protection. For example, an ADA's rationale for recommending bail comes closer to the type of mental impression that may be shielded from discovery even in subsequent, unrelated litigation. At the same time, such notations are less likely to be relevant in the current case. Therefore, to the extent that DANY wishes to redact specific entries from the documents that it produces, it shall propose a procedure for doing so to plaintiffs' counsel. If any disputes remain thereafter, DANY may move for a protective order with respect to individual notations.

### Conclusion

DANY's motion for an order quashing the plaintiffs' subpoena for DA Data Sheets is denied. To the extent that individual notations directly embody the thought processes of counsel, DANY may move for a protective order if no agreement is reached with

respect to redaction.

SO ORDERED.

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
September 14, 2006

Copies mailed this date:

Michael L. Spiegel
The Law Offices of Michael L. Spiegel
111 Broadway, Suite 1305
New York, New York 10006

Peter G. Farrell, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

Patricia J. Bailey, Esq.
Assistant District Attorney
District Attorney of the County of New York
One Hogan Place
New York, New York 10013