Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

JULIA R. COHEN,

    PLAINTIFF

    vs                       .        COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE OFFICERS
STEVEN CHOINSKI, Shield # 28673, and
"JOHN DOES" and "SALLY ROWES",
individually and in their official
capacities, JOSEPH ESPOSITO, individually
and in his official capacity as Chief of
the New York City Police Department,
RAYMOND KELLY, individually and in his
official capacity as New York City Police
Commissioner, BRUCE SMOLKA, individually
and in his official capacity as an
Assistant Chief in the New York City
Police Department and in Patrol Borough
Manhattan South,

    DEFENDANTS

_____

## I.  INTRODUCTION

1.    This is an action against the Defendant parties, individually and collectively, for the violation of the Plaintiff's federally guaranteed constitutional and civil rights and her rights as otherwise guaranteed under the laws and Constitution of the State of New York.

2.    This case arises out of the arrest and associated and inter-related criminal prosecution of the Plaintiff, Julia R. Cohen, on Friday, August 27, 2004 in the vicinity of 34th Street and Seventh Avenue, New York City, New York during the evening hours and the Plaintiff's subsequent detention and the terms and conditions of her detention and, in addition thereto, the

utilization of unnecessary, unreasonable and excessive force in the form of excessive handcuffing; and, as well, the punitive and retaliatory conduct and actions against the Plaintiff because of her legitimate, reasonable, and protected speech activities.

3.    The Plaintiff seeks monetary damages for her wrongful and unlawful false arrest and her wrongful and unlawful detention and incarceration and for the preferral of criminal charges and the malicious prosecution of the Plaintiff associated therewith and for subjecting the Plaintiff to the wrongful and unnecessary and unreasonable and excessive use of force and, otherwise, for subjecting the Plaintiff to malicious abuse of criminal process, and for the unreasonable and unlawful manner and fashion and conditions of the Plaintiff's detention and for the retaliatory and punitive conduct against the Plaintiff because of her reasonable and legitimate and protected speech activities.

## II. JURISDICTION

4.    Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 [3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

5.    Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Claim and Pendent Party Jurisdiction. The Plaintiff requests that the Court exercise its powers to invoke pendent claim and pendent party

jurisdiction over and against the Defendant parties.

6.   The State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the same transaction and occurrence giving rise to the Plaintiff's federally based claims and causes of action.

7.   The value of the rights in question and the damages and injuries to the Plaintiff flowing from the violation thereof is in excess of one hundred thousand dollars.

8.   The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable and in the interest of justice.

9.   This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

### III. PARTIES

10.   The Plaintiff is an American citizen and resident of the City of New York, the County of Queens, the State of New York. The

11.   The Defendant City of New York is a municipal entity existing pursuant to and under the laws and Constitution of the State of New York.

12.   Defendants  Steven Choinski, Shield # 28673, "John Does"

3

and "Sally Rowes" are New York City Police Officers. Joseph
Esposito is the Chief of the New York City Police Department.
Raymond Kelly is the New York City Police Commissioner.  Bruce
Smolka is an Assistant Chief and believed to be, at present, the
Commanding Office of Control Borough Manhattan South and who, it
is believed, was, at the time in question and along with
Defendants Kelly and Esposito, responsible for the planning and
oversight and implementation of the Republican National Convention
["RNC"] policing operations including the arrest and detention
operations that were carried out and to which the Plaintiff was
subjected as part of the Critical Mass Bicycle ride which took
place on August 27, 2004, the Friday night prior to the convening
of the Republican National Convention which meetings, in New York
City, commenced on Monday, August 30, 2004. All of the Defendants
are sued in their individual and official capacities.
Notwithstanding the wrongful and illegal nature of their acts and
conduct as hereinafter described, they were taken in and during
the course of their duties and functions as employees and agents
of the City of New York and incidental to the otherwise lawful
performance of the same.

IV.  ALLEGATIONS

13.  The Plaintiff is Julia R. Cohen.

14.  The Plaintiff is forty seven years of age.

15.  The Plaintiff's birth date is April 11, 1958.

16.  The Plaintiff resides at 79-110 34th Avenue, Jackson

4

Heights, Queens, New York 11372.

17.   This Complaint arises out of the Plaintiff's arrest and associated preferral of criminal charges against her and her malicious prosecution, the latter of which resulted in the Plaintiff's acquittal, after a bench trial, of criminal charges preferred against her by the Defendants. The acquittal occurred on or about  May 10, 2005, and all associated with and inter-related to her false arrest, false imprisonment, detention and subsequent malicious prosecution.

18.   Within ninety days of her arrest on August 27, 2005, the Plaintiff filed a timely Notice of Claim related to her arrest and all flowing therefrom.

19.   Within ninety days of her acquittal of the charges[s] preferred against her the Plaintiff filed a Notice of Claim related to malicious prosecution, malicious abuse of criminal process, retaliation because of her exercise of her First Amendment protected speech and associational activities, and any and all relevant claims including any and all constitutional equivalents thereof.

20.   The Plaintiff is an attorney and a member of the law firm of Shebitz Berman & Cohen, P.C.

21.   The Plaintiff was serving as a volunteer Legal Observer with the National Lawyers Guild ["NLG"] in the days prior to and during the Republican National Convention ["RNC"].

22.   The Plaintiff was arrested on August 27, 2004 during the course of a bicycle event called "Critical Mass".

5

23.   The Plaintiff was arrested in the vicinity of the intersection of West 34th Street and Seventh Avenue.

24.   At the time of her arrest, the Plaintiff was serving in her voluntary capacity as a Legal Observer.

25.   The Plaintiff was assigned to observe the Critical Mass ride and the conduct of the participants and the police and particularly the interactions of the police and the Critical Mass participants.

26.   The Plaintiff was clearly identified as a Legal Observer.  The Plaintiff was wearing a bright green baseball hat, one that Legal Observers have worn for a number of years and of which law enforcement personnel in the City of New York recognize given that NLG observers regularly attend demonstration events to monitor the event and to monitor conduct of the participants at the event and the interaction of police officers and participants at the demonstration event.

27.   The City of New York was aware that Legal Observers would be present at demonstration events throughout the Republican National Convention and demonstration events and other First Amendment protected speech activity events associated with the convening of the Republican National Convention in New York City.

28.   The City of New York had, in the past, worked with NLG Legal Observers at demonstration events held in New York City.

29.   From the beginning of the Critical Mass ride and for nearly fourteen miles, the police accompanied bicycle riders,

6

leading the ride with marked and unmarked police vehicles, stopping traffic for the ride and otherwise enabling it and ensuring the riders' safety.

30. Upon information and belief, for approximately eight [8] years prior to the Critical Mass ride on August 27, 2004, the New York City Police Department accompanied Critical Mass bicycle riders, led the ride with marked and unmarked vehicles stopped traffic for the bicyclists, utilized patrol officers on foot to assist in the ride and to assist the riders, and otherwise enabled the Critical Mass ride and ensured the participating riders' safety therein.

31. Upon information and belief, Critical Mass bicycle rides had taken place in New York City on the last Friday of every month throughout the year for approximately eight [8] years prior to August 27, 2004.

32. At some point on August 27, 2004, in the vicinity of 34th Street and Seventh Avenue, the police changed their tactic, closed off the streets, and began arresting riders and others without any warning whatsoever.

33. At the time of the commencement of the unprovoked and unannounced arrest activities as described and at the time that the Plaintiff was arrested, the Plaintiff was a clearly identified Legal Observer who was wearing the bright green baseball hat that identified her as such.

34. The Plaintiff was near a group of bicyclists.

35. The Plaintiff had absolutely no relationship with or

7

connection to those bicyclists other than to be in their vicinity as a clearly identified Legal Observer who was watching the activities then on going and particularly and especially the interaction of the Critical Mass participants and the line and command police officers then present at the location.

36.  It is believed that, notwithstanding that the police knew the Plaintiff to be a Legal Observer and properly at the location and simply monitoring activities of the police and the Critical Mass participants and that she was not doing anything whatsoever that was unlawful but rather was engaged in lawful and reasonable activities, none of which could by any objective criteria be deemed to be criminal or otherwise unlawful in any respect, Defendants nonetheless, and without probable cause, intentionally and maliciously arrested the Plaintiff and otherwise preferred criminal charges against the Plaintiff and, based thereon, intentionally and maliciously participated in the prosecution of the Plaintiff in the Criminal Court proceedings that ensued until the Plaintiff was eventually acquitted of the charges which had been intentionally, maliciously and without probable cause preferred against the Plaintiff.

37.  After her arrest, the Plaintiff was detained and held in custody for approximately sixteen hours until she was issued a Desk Appearance Ticket.

38.  On September 13, 2004, the Plaintiff appeared at an arraignment.

39.  The Plaintiff was charged with two counts of disorderly

8

conduct pursuant to Section 240.20(5) of the New York State Penal
Law, one count of disorderly conduct pursuant to Section
240.20(6) of the New York State Penal Law, and one count of
parading without a permit pursuant Section 10.110 of the New York
City Administrative Code.

40.    Thereafter, the Plaintiff appeared in Court on at least
six occasions.

41.    On February 7, 2005, the Honorable Melissa Jackson,
Judge, Criminal Court of the City of New York, County of New
York, issued a Decision and Order dismissing the one count of
disorderly conduct that had been preferred  against the Plaintiff
pursuant to and under Section 240.20(6) and dismissing the one
count of parading without a permit that had been preferred
against the Plaintiff pursuant to and under Section 10.110 of the
New York City Administrative Code.

42.    Subsequently, the Plaintiff went to trial on a remaining
charge which had been preferred against her as described.

43.    After a bench trial, which was held during the week of
May 9, 2005, the Plaintiff was acquitted of the charge which had
been preferred against her and a judgment of acquittal was duly
entered on or about May 10, 2005.

44.    The Criminal proceedings resulted in a merits based,
favorable termination of the criminal charges preferred against
the Plaintiff in all respects.

45.    The Plaintiff was arrested and charged, and prosecuted
without probable cause.

46. The Plaintiff was intentionally and maliciously arres6ed, charged, and prosecuted.

47. The Plaintiff suffered injuries and damages, which were the proximate result of, her probable cause lacking, intentional, and malicious, arrest, preferral of charges and prosecution, the latter of which ended in a favorable, merits based termination of the proceedings.

48. The Plaintiff was subjected, by her arrest, by the preferral of criminal charges, and by her prosecution and all associated therewith, to an intentional and malicious abuse of criminal process.

49. The Plaintiff's probable cause lacking and intentional and malicious  arrest, preferral of charges, and prosecution were the direct result of the participation, actions and conduct of the Defendant New York City line and command Police Officers herein, without which actions, conduct, and participation, all of which were intentional and malicious, the Plaintiff's arrest, the preferral of charges, and her prosecution could not and would not have occurred. The Defendant New York City Police Officers' intentional and malicious actions, conduct propelled the wrongful arrest and wrongful preferral of charges against the Plaintiff and her malicious prosecution and all associated with all aspects thereof.

50. The actions, conduct, and participation of the New York City Police Officers herein were propelled by the policies and practices of the City of New York which policies and practices of

10

the City of New York were put into place for the purposes of policing demonstration events and other events associated with the Republican National Convention being held in the City of New York.

51.   Those policies and practices were predicated on an "ends justifies the means" philosophy.

52.   Those policies and practices were designed to sweep people off the streets at the time of First Amendment speech protected speech activities which were on going in connection with the Republican National Convention and, then, thereafter, to "sort it all out".

53.   Thus and as a consequence of New York City adopting and implementing Republican National Convention policing policies and practices, the Plaintiff, who was doing nothing other than legitimately, lawfully, peacefully, and reasonably observing the interaction between police and Critical Mass participants at a First Amendment protected speech activity on August 27, 2004, in her capacity as a clearly marked and identified Legal Observer, was, for no legitimate law enforcement purpose, intentionally and maliciously arrested and prosecuted and subjected to the malicious abuse of criminal process, all to no end resulting, in the end, in the Plaintiff receiving a favorable termination of the criminal proceedings instituted by the City of New York and its agents against the Plaintiff pursuant to the RNC policing policies and practices of the City of New York and its final policy makers.

54. The Plaintiff suffered loss of liberty, restraint, anxiety, humiliation, embarrassment, mental anguish, emotional distress, and psychological trauma, the valuation of which is substantial and includes, in terms of damages, both compensatory and punitive damages.

55. The actions, conduct, policies and practices herein described violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

56. The actions, conduct, policies and practices were otherwise negligent and the proximate cause of the preferral of charges against the Plaintiff and the prosecution of the Plaintiff.

57. The policies and practices and customs adopted by the City of New York and implemented by its agents and employees during the Republican National Convention and in the days prior to the actual opening of the Republican National Convention, propelled officers to act outside of the bounds of constitutionally prescribed conduct and to push the envelope thereby subjecting the Plaintiff, among others, to false arrest, malicious prosecution, malicious abuse of criminal process, retaliation for the exercise of First Amendment protected speech activities, excessive and unreasonable, and unnecessary force in the form of excessive handcuffing, unnecessary and unlawful and unreasonable fingerprinting and photographing, the denial of

12

adequate medical treatment, excessive detention, and detention and imprisonment in hostile, health detrimental and welfare detrimental conditions.

58.    The actions and conduct taken against the Plaintiff were taken by agents and employees of the City of New York who were acting under color of law and who were otherwise "state actors". While their conduct and actions were wrongful, unconstitutional, and otherwise unlawful they were taken by the City's agents and employees in the course of their respective duties and functions and incidental to the otherwise lawful performance of the same.

59.    It is believed that there were New York City Police Officers [both line Officers and command Officers] who were part and parcel of the actions and conduct taken against the Plaintiff during the course of the entire transaction which describes the incident herein and component parts thereof including Command Officers and policy making Officers all or some of whom authorized and sanctioned the conduct practiced and taken against the Plaintiff and which propelled the actions and conduct, in the component parts thereof and their totality, taken against the Plaintiff.

60.    The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

### FIRST CAUSE OF ACTION

61.    The Plaintiff reiterates Paragraph #'s 1 through 60 and incorporates such by reference herein.

62. The Plaintiff was falsely arrested and falsely imprisoned in violation of her rights as guaranteed under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and Fourth and Fourteenth Amendments to the United States Constitution.

63. The Plaintiff suffered injuries and damages.

SECOND CAUSE OF ACTION

64. The Plaintiff reiterates Paragraph #'s 1 through 63 and incorporates such by reference herein.

65. The Plaintiff was, _inter alia_, falsely arrested and falsely imprisoned in violation of the laws and Constitution of the State of New York.

66. The Plaintiff suffered injuries and damages.

THIRD CAUSE OF ACTION

67. The Plaintiff reiterates Paragraph #'s 1 through 66 and incorporates such by reference herein.

68. The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention, including but not limited to excessive, unnecessary, and unreasonable handcuffing beyond that appropriate and required to fulfill a legitimate law enforcement purpose, in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

69. The Plaintiff suffered injuries and damages.

FOURTH CAUSE OF ACTION

70. The Plaintiff reiterates Paragraph #'s 1 through 69 and

14

incorporates such by reference herein.

71. The Plaintiff was subjected to excessive, unnecessary, and unreasonable terms and conditions and of her seizure and detention, including but not limited to excessive, unnecessary and unreasonable handcuffing beyond that required to fulfill a legitimate law enforcement purpose, in violation of her rights under the laws and Constitution of the State of New York.

72. The Plaintiff suffered injuries and damages.

FIFTH CAUSE OF ACTION

73. The Plaintiff reiterates Paragraph #'s 1 through 72 and incorporates such by reference herein.

74. The Plaintiff was subjected malicious prosecution in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871.

75. The Plaintiff suffered injuries and damages.

SIXTH CAUSE OF ACTION

76. The Plaintiff reiterates Paragraph #'s 1 through 75 and incorporates such by reference herein.

77. The Plaintiff was subjected to malicious prosecution in violation of her rights under the laws and Constitution of the State of New York.

78. The Plaintiff suffered injuries and damages.

SEVENTH CAUSE OF ACTION

79. The Plaintiff reiterates Paragraph #'s 1 through 78 and incorporates such by reference herein.

80.  The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983

81.  The Plaintiff suffered injuries and damages.

EIGHTH CAUSE OF ACTION

82.  The Plaintiff reiterates Paragraph #'s 1 through 81 and incorporates such by reference herein.

83.  The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the laws and Constitution of the State of New York.

84.  The Plaintiff suffered injuries and damages.

NINTH CAUSE OF ACTION

85.  The Plaintiff reiterates Paragraph #'s 1 through 84 and incorporates such by reference herein.

86.  The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of his First Amendment protected speech activities in violation of the Plaintiff's rights under the First Amendment to the United States Constitution.

87.  The Plaintiff suffered injuries and damages.

TENTH CAUSE OF ACTION

88.  The Plaintiff reiterates Paragraph #'s 1 through 87 and

incorporates such by reference herein.

89.   The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her speech activities in violation of the laws and Constitution of the State of New York.

90.   The Plaintiff suffered injuries and damages.

ELEVENTH CAUSE OF ACTION

91.   The Plaintiff reiterates Paragraph #'s 1 through 90 and incorporates such by reference herein.

92.   The actions and conduct of the Defendant parties were negligent and the proximate cause of the injuries and damages that the Plaintiff suffered.

93.   The Plaintiff suffered injuries and damages.

TWELFTH CAUSE OF ACTION

94.   The Plaintiff reiterates Paragraph #'s 1 through 93 and incorporates such by reference herein.

95.   The Defendant City's policies and practices, which propelled the actions and conduct herein, including the policies related to the oversight and administration of the RNC demonstrations and marches and including the handcuffing policies and practices and including the conditions of detention oversight and administration policies and practices, violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution.

96.   The Plaintiff suffered injuries and damages.

17

THIRTEENTH CAUSE OF ACTION

97.   The Plaintiff reiterates Paragraph #'s 1 through 96 and incorporates such by reference herein.

98.   Independent of the negligence claims against the Defendant City and independent of the <u>Monell</u> based claims against the Defendant City, the Defendant City is responsible, under State law and based on State law jurisdiction and pursuant to State law and under the doctrine of <u>respondeat</u> <u>superior</u>, for the wrongful and unlawful acts and conduct of its agents and employees.

99.   The Plaintiff suffered injuries and damages.

FOURTEENTH CAUSE OF ACTION

100.   The Plaintiff reiterates Paragraph #'s 1 through 99 and incorporates such by reference herein.

101.   The actions and conduct of the Command Officers knowingly and/or recklessly and with deliberate indifference to the rights of the Plaintiff sanctioned and ratified the wrongful, unlawful, and unconstitutional conduct and actions of the subordinates officers in violation of the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and, as well, the laws and Constitution of the State of New York.

102.   The Plaintiff suffered injuries and damages.

18

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction herein and thereafter:

[a] Assume pendent party and pendent claim jurisdiction.

[b] Enter appropriate declaratory and injunctive relief.

[c] Award appropriate compensatory and punitive damages in an amount to be defined and determined.

[d] Award reasonable costs and attorney's fees.

[e] Award such other and further relief as the Court deems appropriate and just.

[f] Convene and empanel a jury.

DATED: New York, New York
       July 28, 2005

Respectfully submitted,

_____
JAMES I. MEYERSON [JM 4304]
396 Broadway-Suite # 601
New York, New York 10013
[212] 226-3310
ATTORNEY FOR PLAINTIFF
BY:_____

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

KYLA HANNAH HERSHEY-WILSON,

    PLAINTIFF

    vs

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE and COMMAND
OFFICERS "JOHN and MARY DOES", individually
and in their official capacities NEW YORK
CITY POLICE CAPTAIN ANTHONY BOLOGNA,
individually and in his official
capacity, MICHAEL BLOOMBERG, individually
and in his official capacity as Mayor
of the City of New York, RAYMOND KELLY,
individually and in his official capacity
as Police Commissioner of the City of
New York, THOMAS GRAHAM, individually and
in his official capacity as Commander,
Disorders Control Unit, New York City
Police Department, BRUCE SMOLKA,
individually and in his official capacity
as Assistant Chief of Patrol, Patrol
Borough Manhattan South, New York City
Police Department, TERRENCE MONAHAN,
individually and in his official capacity
as Deputy Chief, Patrol Borough Bronx, New
York City Police Department, JOHN J. COGLAN,
individually and in his official capacity
as Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department,
JOSEPH ESPOSITO, individually and in his
official capacity as Chief of the New York
City Police Department, LIEUTENANT JOHN,
WOLF, individually and in his official capacity,
LIEUTENANT SCOTT AHEARN, individually and in
his official capacity, LIEUTENANT FFREDERICK
DERENTHAL, individually and in his official
capacity, SERGEANT THOMAS CRIMMINS, individually
and in his official capacity, NEW YORK CITY
POLICE OFFICER TIMOTHY CAI, individually and
in his official capacity,

    DEFENDANTS

05 Civ 7026/KMK/JCF
SECOND AMENDED COMPLAINT
[JURY TRIAL]

---

I.   INTRODUCTION

1.  This is an action against the Defendant parties,

individually and collectively, for the violation of the
Plaintiff's federally guaranteed constitutional and civil rights
and her rights as otherwise guaranteed under the laws and
Constitution of the State of New York.

2.  This case arises out of the arrest of the Plaintiff, Kyla
Hannah Hershey-Wilson, on August 31, 2004 at or about 8:00 P.M. in
the vicinity of 35th Street between 5th and 6th Avenues, New York
City while she was engaged in First Amendment protected speech
activity associated with the convening of the Republican National
Convention meetings then taking place in New York City.

3.  The Plaintiff seeks monetary damages for her wrongful
and false arrest, detention and incarceration and for subjecting
her to unnecessary and excessive and unreasonable force in
connection with her stop and arrest and for subjecting her to
unnecessary and excessive and unreasonable terms and conditions of
her stop, seizure and detention including subjecting the Plaintiff
to an improper, unlawful, and wrongful and unnecessary and
unreasonable search; and for, deliberately and with reckless
disregard for the health and welfare and well being of the
Plaintiff, subjecting the Plaintiff to an  environmentally
dangerous and hazardous detention facility; and, otherwise, for
subjecting the Plaintiff to unnecessary and excessive and
unreasonable conditions of her detention and confinement and,
otherwise, for the violation of the Plaintiff's federally
guaranteed constitutional and civil rights and for the violation
of her rights as guaranteed under the laws and Constitution of the

2

State of New York; and the Plaintiff seeks whatever other relief is appropriate and necessary in order to serve the interests of justice and assure that her remedy is full and complete.

## II. JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331, 1332, and 1343 [3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. The Plaintiff requests that the Court exercise its powers to invoke pendent claim and pendent party jurisdiction.

6. The Plaintiff and the Defendants have diversity of citizenship and, therefore, diversity jurisdiction also exists in this matter, pursuant to 28 U.S.C. Section 1332, independent of other federal Court jurisdiction predicates as described above. The Plaintiff resides in Maine and did so at the time of the incident. The Defendants all reside in the State of New York and are citizens of the State of New York. The value of the rights in question is in excess of one hundred thousand dollars exclusive of interest and costs and the injuries suffered for the violation of the rights are themselves significant.

7. The State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the

3

same transaction and occurrence giving rise to the Plaintiff's federally based claims and causes of action.

8.    The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable and in the interest of justice in order to provide the Plaintiff with a full and complete remedy for the violation of her rights.

9.    This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

III.   PARTIES

10.   The Plaintiff is an American citizen who resides in Bernard, Maine.

11.   Defendants "John and Mary Does", Lieutenant John Wolf, Lieutenant Scott Ahearn, Lieutenant Frederick Derenthal, Sergeant Thomas Crimmins, Captain Anthony Bologna, and Police Officer Timothy Cai are New York City Police and Command Officers. They are sued in their individual and official capacities. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter described, they were taken in and during the course of their duties and functions as employees and agents of the City of New York and incidental to the otherwise lawful

4

performance of the same.

12.  Defendant City of New York is a municipal entity existing pursuant to and under the laws and Constitution of the State of New York and having the authority thereunder to maintain and operate, as it does, a police agency as part of its City government structure.

13.  Michael Bloomberg is the Mayor of the City of New York.

14.  Raymond Kelly is the Police Commissioner of the City of New York. Thomas Graham is the Commander of the Disorders Control Unit of the City of New York, Bruce Smolka is an Assistant Chief, Patrol Borough Manhattan South, of the New York City Police Department. Terrence Monahan is a Deputy Chief, Patrol Borough Bronx, New York City Police Department. John J. Coglan is a Deputy Chief and Commanding Officer, Pier 57, New York City Police Department. Joseph Esposito is Chief of the New York City Police Department. Each is sued in his/her individual and official capacity.

IV. ALLEGATIONS

15.  The Plaintiff is twenty four years of age. The Plaintiff's birth date is October 7, 1981.

16.  The Plaintiff resides at # 5 Mitchell Road in Bernard, Maine.

17.  The Plaintiff was born in Las Cruces, New Mexico. The Plaintiff spent most of her childhood in and around the Portland, Oregon area. The Plaintiff graduated from Catlin-Gabel School in

Portland, Oregon in 2000.

18.   The Plaintiff moved to Maine in order to attend the College of the Atlantic in Bar Harbor, Maine [Mount Desert Island]

19.   The Plaintiff attended the College of the Atlantic for two quarters during the period of fall of 2000 to the spring of 2002.

20.   Since completing the two quarters at the College of the Atlantic, the Plaintiff has been employed in various jobs in the child care and restaurant positions.

21.   Since August of 2004, the Plaintiff has been employed at the Little Notch Café in Southwest Harbor, Maine.

22.   Prior thereto, the Plaintiff was employed at the Nature's Way Café in Bar Harbor, Maine from June through November, 2003 and from May through about August 24, 2004. The Plaintiff has also worked at the 2 Cats Restaurant and at the All Fired Up pottery glazing studio.  From August, 2001 through February 2002, the Plaintiff worked in childcare at the YMCA of Bar Harbor, Maine.

23.   The Plaintiff traveled to New York City from her residence in Maine on Friday, August 27, 2004 to attend the First Amendment protected speech activities associated with the convening of the of the Republican National Convention in New York City during the period of time August 30, 2004 through September 2, 2004.

24.   The Plaintiff traveled to New York as described and for the purpose described in order to have a voice and to express such

6

over her concerns about the Bush administration's policies.

25.  The Plaintiff traveled to New York City with Jada Wilner.

26.  The Plaintiff's boyfriend, Jeffrey Black, traveled to New York City independently of the Plaintiff.

27.  The Plaintiff intended to leave, after her participation in First Amendment protected speech activities on August 31, 2004, and to return to Maine. The Plaintiff expected to return to Maine with her boy friend, Jeffrey Black, and with Jada Wilner.

28.  Jeffrey Black arrived in New York City on August 30, 2004.

29.  The Plaintiff and her boyfriend, Jeffrey Black, and Jada Wilner stayed at the residence of a friend in Brooklyn, New York.

30.  The incident giving rise to this litigation commenced on August 31, 2004 at about 9:00 P.M. when the Plaintiff, along with Jeffrey Black, Jada Wilner, and many other individuals were engaged, at the time, in First Amendment protected speech activity associated with the Republican National Convention meetings then on-going in New York City.

31.  The Plaintiff, Jeffrey Black, and Jada Wilson left Brooklyn, New York on August 31, 2004 and went to Manhattan where they anticipated participating in First Amendment protected speech activities [rallies, marches, and demonstrations and protests] related to the Republican National Convention meetings then being held in New York City.

32.  Because of police barricades, it was difficult, if not

7

impossible, to "convene" with other demonstrators in an organized manner and fashion; and, accordingly, the Plaintiff and Jeffrey Black and Jada Wilner walked around endeavoring to become engaged with and involved in an organized demonstration and to get as close to Madison Square Garden was possible [within eye shot of such] so that their "voices", actual and symbolic, could be heard and so that they could be seen by those persons attending the Republican National Convention meetings in and at the Madison Square Garden facility.

33. At or about the time of the Plaintiff' arrest on August 31, 2004 at or about 9:00 P.M., the Plaintiff and Jada Wilner and Jeffrey Black, along with others in the vicinity, were still endeavoring, to get to the Madison Square Garden facility when, in the vicinity of 35th Street between 5th and 6th Avenues, they were blocked in by police barricades and directed to get on the sidewalk. When directed to do so, police were moving toward where the Plaintiff was situated from one end of the street while police barricades existed at the other end of the street.  In other words, the Plaintiff and others were, at the time that they were directed to get on the sidewalk, being penned in by police actions.

34. The Plaintiff, Jada Wilner, and Jeffrey Black complied with the police order to get on the sidewalk.

35. The Plaintiff observed a white shirted New York City Police Officer say to some near by blue shirted officers, in

8

substance: "arrest all of them. Start there."

36.   The Plaintiff saw the white shirted officer point toward the area where the Plaintiff, Jeffrey Black, and Jada Wilner and others were standing on the sidewalk.

37.   The Plaintiff lost track of Jeffrey Black and Jada Wilner, who had been standing proximate to her, as the police began to arrest people in the Plaintiff's vicinity, among them Jeffrey Black, the Plaintiff, herself, and Jada Wilner.

38.   The Plaintiff was handcuffed and placed on the ground next to Jada Wilner.

39.   The Plaintiff was placed in a transport vehicle.

40.   The Plaintiff's backpack was removed. An Officer undid one of the strap buckles and, then, for whatever reason, he cut the second strap.

41.   The Plaintiff was transported to a facility known as "Pier 57", where she was retained and imprisoned.

42.   Once the transport vehicle arrived at the Pier 57 facility, the Plaintiff and the others then in the transport vehicle remained in the vehicle for some period of time, all of the time rear cuffed, until they were removed from the transport vehicle and taken into the Pier 57 facility.

43.   When first removed from the transport vehicle, the Plaintiff and the others were lined up and then the Plaintiff was photographed with her arresting officer.

44.   It is believed that Pier 57, which is located, it is

believed, in the vicinity of 15th Street and the Hudson River, was an old bus depot.

45. It is believed, as well, that, when the City of New York obtained the use of that facility for the purpose of imprisoning individuals arrested at the Republican National Convention, the City of New York knew or should have known that the facility was deleterious to the well being, health, and welfare of individuals who would be imprisoned there because of the existence of chemicals, toxins, and filth all of which, individually and collectively, placed individuals at an increased risk to their health, welfare, and well being.

46. Notwithstanding that the City knew or should have known of the increased risks to the well being, health, and welfare of arrestees detained and imprisoned at Pier 57 because of the environmental conditions at Pier 57, including the existence of chemicals, toxins, and filth, the Defendants, including the Defendant City and its policy makers, intentionally, recklessly, and with deliberate indifference ignored the same and, by such, elected to utilize this health risk increasing facility when they knew or should have known that there were  other less health and welfare risk imposing alternatives available to them within which to detain and imprison individuals arrested at the Republican National Convention meetings.

47. The Plaintiff provided pedigree information to her arresting officer which information appeared to be attached to the

Polaroid photograph that had been taken of the Plaintiff with her
arresting officer.

48.  The Plaintiff was patted down and her backpack was
searched.

49.  The Plaintiff's hard candy and bandannas were thrown away
and the balance of that which was in the Plaintiff's backpack was
placed in a property bag.

50.  The Plaintiff was placed in a pen which appeared to be
topped with razor wire and where she remained for some period of
time before being taken from that pen and placed in another pen.

51.  The Plaintiff was eventually transported to Central
Booking.

52.  The Plaintiff was finally arraigned on Wednesday,
September 1, 2004.

53.  The Plaintiff's case was adjourned in contemplation of
dismissal and was then dismissed.

54.  Because of the chemicals and toxic environment at Pier #
57, the Plaintiff had difficulty breathing.

55.  The Plaintiff was otherwise "crime offense" eligible for
a Desk Appearance Ticket.

56.  The Plaintiff did not have any outstanding warrants.

57.  The Plaintiff cooperated with the law enforcement agents
at the time of her arrest and, otherwise, while detained and
imprisoned at Pier # 57 and at Central.

58.  The Plaintiff was never asked for identification although

11

the Plaintiff was asked for her name and address and provided the same.

59.   Notwithstanding that the Plaintiff was Desk Appearance Ticket qualified and qualifiable, the Plaintiff was not released, after perhaps three or four hours, if that, associated with the processing of a Desk Appearance Ticket but rather she was detained and imprisoned and held until an arraignment, approximately twenty five hours after she was arrested and taken into custody.

60.   There was no probable cause for the arrest and preferral of criminal charges against the Plaintiff; and there was no otherwise legitimate law enforcement purpose for the arrest and detention and imprisonment of the Plaintiff.

61.   The Plaintiff was arrested and detained and imprisoned for collateral objectives which collateral objectives were law enforcement convenience and an improper philosophy of getting people, who were legitimately and lawfully engaged in First Amendment protected protest speech activity associated with the Republican National Convention then on going in New York City, off the streets so that the City of New York could put its "best face" on for the people attending the Republican National Convention and for the world at large which was looking at the Convention and New York City, particularly since the President of the United States, was preparing to be re-nominated by delegates attending  the Republican National Convention for that office and was going to be in New York City in connection therewith.

12

62.  The Plaintiff was falsely arrested and otherwise subjected to malicious abuse of criminal process and was otherwise subjected to unreasonable terms and conditions of her custodial seizure and detention.

63.  The Plaintiff was arrested and detained and imprisoned in retaliation for her legitimate exercise of her First Amendment protected protest speech activities and for the collateral objective of getting her –and others, off the "street" and out of the "public eye" while the Republican National Convention meetings were on going in New York City.

64.  The Plaintiff was subjected, by the nature and extent and manner and fashion of her handcuffing, to excessive, unreasonable and unnecessary force.

65.  The actions and conduct of the law enforcement agents herein were propelled by the New York City policies, practices, practices, procedures, related to the policing of the Republican National Convention protest demonstrations which were anticipated would take place and did, in fact, take place during the multi-day Republican National Convention meetings at the end of August, 2004 and the beginning of September, 2004.

66.  The Republican National Convention demonstration policing policies, practices, procedures, and protocols and initiatives were predicated on an "ends justifies the means" philosophy.

67.  In expectation of demonstration to be conducted by individuals at the Republican National Convention, the Defendant

City of New York and the Defendant Mayor and the Defendant New
York City Police Department policy makers and command officers
adopted policies, practices, and customs and procedure, and
protocols which propelled arrests, detention and imprisonment of
individuals, including the Plaintiff's arrest, detention, and
imprisonment, where there was otherwise no basis for the arrest
and, then, to detain the individuals, including the Plaintiff,
excessively and unnecessarily, and punitively, rather than to
release the individuals, after arrest, with Desk Appearance
Tickets or Summonses in a timely manner and fashion proximate to
the arrest itself, and, in association with the custodial
detention and imprisonment, to subject the individuals, including
the Plaintiff, to unnecessary, unreasonable, and excessive terms
and conditions of the seizure and detention including unnecessary,
excessive, unreasonable force, fingerprinting, photographing, and
intentionally and recklessly and with deliberate indifference that
resulted in the detained and imprisoned arrestees, including the
Plaintiff, to a toxic environment and health detrimental
conditions which increased the risk to the Plaintiff 's health,
well being, and welfare.

68.  The policies and practices and customs adopted by the
City of New York and implemented by its agents and employees
during the Republican National Convention, propelled officers to
act outside of the bounds of constitutionally prescribed conduct
and to push the envelope thereby subjecting the Plaintiff, among

14

others, to false arrest, excessive and unreasonable and
unnecessary force including but not limited to excessive,
unnecessary, and excessive handcuffing and to otherwise subject
the Plaintiff to unnecessary, unreasonable and excessive terms and
conditions of her seizure including unnecessary, excessive, and
unreasonable photographing, fingerprinting, excessive and
unreasonable detention, and imprisonment and detention in hostile,
toxic, health detrimental, and welfare detrimental conditions.

69. The law enforcement agents who arrested Kyla Hannah
Hershey-Wilson and who otherwise took actions against her as
herein described are agents and employees of the City of New York.
Although their actions and conduct herein described were unlawful
and unconstitutional and otherwise wrongful, those actions and
conduct were taken by the law enforcement agents in the
performance of their duties and functions as New York City Police
Officers and as employees and agents of the City of New York and
incidental to their otherwise lawful performance of their duties
and functions.

70. The Plaintiff suffered physical and emotional injuries
and damages as a consequence of her arrest, detention, all
associated therewith [including photographing, fingerprinting, and
all other associated therewith including the excessive and
unreasonable and unnecessary handcuffing and including the
subjecting of the Plaintiff to a health impairing environment at
the Pier 57 facility].

15

71.    The Plaintiff suffered physical pain, mental anguish, emotional distress, and psychological trauma, fear, and humiliation and embarrassment. She also suffered the loss of her liberty and anxiety and distress and anguish and fear associated therewith. She also suffered physical pain in connection with the unreasonable, unnecessary, and excessive force in the form of handcuffing at the time the Plaintiff was arrested on the street and continuing for a significant period of time thereafter. The Plaintiff continues to suffer residual emotional injuries as a consequence of the incident herein described.

72.    The value of the damages and injuries suffered by the Plaintiff has not yet been specifically quantified but the value is substantial in nature.

73.    The actions, conduct, policies, and practices and customs herein described violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights At of 1871, 42 U.S.C. Section 1983.

74.    The actions, conduct, policies, practices and customs herein violated the Plaintiff's rights under the laws and Constitution of the State of New York including but not limited to false arrest, false imprisonment, excessive detention, assault, battery, and subjecting her to health detrimental, toxic, and welfare detrimental conditions of imprisonment, and the malicious abuse of criminal process, and the invasion of privacy and the

16

excessive and unnecessary imposition of the terms and conditions of the Plaintiff's seizure.

75. The actions, conduct, policies and practices were negligent and the proximate cause of the Plaintiff's injuries and damages.

76. The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

## V. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION

77. The Plaintiff reiterates Paragraph #'s 1 through 76 and incorporates such by reference herein.

78. The Plaintiff was subjected to an unlawful and a false arrest and false imprisonment in violation of the Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and Fourth Amendment to the United States Constitution.

79. The Plaintiff suffered injuries and damages.

### B. SECOND CAUSE OF ACTION

80. The Plaintiff reiterates Paragraph #'s 1 through 79 and incorporates such by reference herein.

81. The Plaintiff was, _inter alia_, falsely arrested and falsely imprisoned in violation of the laws and Constitution of the State of New York.

82. The Plaintiff suffered injuries and damages.

### C. THIRD CAUSE OF ACTION

83. The Plaintiff reiterates Paragraph #'s 1 through 82 and

incorporates such by reference herein.

84. The Plaintiff was subjected to an unnecessary and unreasonable and excessive detention and imprisonment in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

85. The Plaintiff suffered injuries and damages.

D.   FOURTH CAUSE OF ACTION

86. The Plaintiff reiterates Paragraph #'s 1 through 85 and incorporates such by reference herein.

87. The Plaintiff was subjected to an unnecessary and unreasonable and excessive detention and imprisonment in violation of her rights under the laws and Constitution of the State of New York.

88. The Plaintiff suffered injuries and damages.

E.   FIFTH CAUSE OF ACTION

89. The Plaintiff reiterates Paragraph #'s 1 through 88 and incorporates such by reference herein.

90. The Plaintiff was subjected to excessive, unreasonable and unnecessary force in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

91. The Plaintiff suffered injuries and damages.

F.   SIXTH CAUSE OF ACTION

92. The Plaintiff reiterates Paragraph #'s 1 through 91 and

18

incorporates such by reference herein.

93.    The Plaintiff was subjected to an assault and battery in violation of her rights under the laws and Constitution of the State of New York.

94.    The Plaintiff suffered injuries and damages.

### G.    SEVENTH CAUSE OF ACTION

95.    The Plaintiff reiterates Paragraph #'s 1 through 94 and incorporates such by reference herein.

96.    The Plaintiff was intentionally and recklessly and with deliberate indifference subjected to terms and conditions of her detention and imprisonment, by being detained and imprisoned in an environmentally hazardous facility which increased the risk to the Plaintiff's health, well being, and welfare in violation of her rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

97.    The Plaintiff suffered injuries and damages.

### H.    EIGHTH CAUSE OF ACTION

98.    The Plaintiff reiterates Paragraph #'s 1 through 97 and incorporates such by reference herein.

99.    The Plaintiff was recklessly and with deliberate indifference subjected to terms and conditions of her detention and imprisonment, by being detained and imprisoned in an environmentally hazardous facility which increased the risk to the

Plaintiff's health, well being and welfare, in violation of the Plaintiff's rights under the laws and Constitution of the State of New York.

100. The Plaintiff suffered injuries and damages.

### I. NINTH CAUSE OF ACTION

101. The Plaintiff reiterates Paragraph #'s 1 through 100 and incorporates such by reference herein.

102. The Plaintiff was subjected to her arrest, detention and imprisonment and all of the excessive terms and conditions of her detention and imprisonment and seizure including the excessive, unreasonable and unnecessary force and including the excessive, unnecessary, and excessive detention, and including the otherwise unnecessary, excessive and unreasonable conditions of her detention and imprisonment including fingerprinting and photographing and including the environmentally hazardous facility which subjected the Plaintiff to risk to her health, well being, and welfare, in retaliation for the exercise of her First Amendment guarantee speech activity and as a result of the Plaintiff's exercise of her First Amendment protected speech activity in violation of the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

103. The Plaintiff suffered injuries and damages.

### J. TENTH CAUSE OF ACTION

104. The Plaintiff reiterates Paragraph #'s 1 through 103 and

incorporates such by reference herein.

105. The Plaintiff was subjected to malicious abuse of criminal process in violation of her rights under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

106. The Plaintiff suffered injuries and damages.

### K.  ELEVENTH CAUSE OF ACTION

107. The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by reference herein.

108. The Plaintiff was subjected to malicious abuse of criminal process in violation of the Plaintiff's rights under the laws and Constitution of the State of New York.

109. The Plaintiff suffered injuries and damages.

### L.  TWELFTH CAUSE OF ACTION

110. The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by reference herein.

111. The policies and practices and customs which propelled the actions and conduct of the Officers herein violated the Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

112. The Plaintiff suffered injuries and damages.

### M.  THIRTEENTH CAUSE OF ACTION

113. The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114.   The policies and practices which propelled the actions and conduct of the Officers herein violated the Plaintiff's rights under the laws and Constitution of the State of New York.

115.   The Plaintiff suffered injuries and damages.

### N.   FOURTEENTH CAUSE OF ACTION

116.   The Plaintiff reiterates Paragraph #'s 1 through 115 and incorporates such by reference herein.

117.   Independent of the Monell claim and federal jurisdiction associated therewith, the City of New York is responsible, under State law, for the wrongful conduct of the Officers pursuant to and under the doctrine of respondeat superior.

118.   The Plaintiff suffered injuries and damages.

### O.   FIFTEENTH CAUSE OF ACTION

119.   The Plaintiff reiterates Paragraph #'s 1 through 118 and incorporates such by reference herein.

120.   The actions, conduct, and policies, practices –some or all, were negligent and the proximate cause of the Plaintiff's injuries and damages.

121.   The Plaintiff suffered injuries and damages.

22

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction herein and thereafter:

[a]  Assume all appropriate jurisdiction.

[b]  Enter appropriate declaratory and injunctive relief.

[c]  Award appropriate compensatory and punitive damages in an amount to be defined and determined.

[d]  Award reasonable costs and attorney's fees.

[e]  Award such other and further relief as the Court deems appropriate and just.

[f]  Convene and empanel a jury.

DATED: New York, New York
       July 13, 2006

Respectfully submitted,

JAMES I. MEYERSON [JM 4304]
396 Broadway-Suite # 601
New York, New York 10013
[212] 226-3310
ATTORNEY FOR PLAINTIFF
BY:_____

23