UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Michael Schiller, Francesca Fiorentini,
Robert Curley and Neal Curley,

Plaintiffs,

v.

The City of New York et al.,                    04 CV 7922 (KMK) (JCF)

Defendants.
----------------------------------------------------------X
Hacer Dinler, Ann Maurer, and Ashley Waters,

Plaintiffs,

v.

The City of New York et al.,                    04 CV 7921 (KMK) (JCF)

Defendants.
----------------------------------------------------------X
Tarasik Abdell, et al.,

Plaintiffs,

v.

The City of New York et al.,                    05 CV 8453 (KMK) (JCF)

Defendants.
----------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RULE 72 MOTION
ON BEHALF OF THIRD-PARTY RESPONDENTS
FRIDA BERRIGAN AND THE WAR RESISTERS LEAGUE**

Beldock Levine & Hoffman LLP
Vera M. Scanlon (VS1522)
Myron Beldock (MB4076)
99 Park Avenue, Suite 1600
New York, NY 10016
(212) 490-0400

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     I.     Proceedings Before Magistrate Judge Francis . . . . . . . . . . . . . . . . . . . . . . . . . 2

     II.    Ms. Berrigan And The WRL Offered Uncontroverted
          Evidence That Their First Amendment Rights Would
          Be Curtailed If They Are Required To Produce The
          Requested Information And Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     I.     Defendants Have Not Met the Rule 72 Standard
          Because, As To Denying The Release Of WRL
          Members' Names And Redacted Minutes, The
          Magistrate Judge's Order Is Not Clearly
          Erroneous Or Contrary To Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          A.    FRCP 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          B.    The First Amendment Protects
                Ms. Berrigan & WRL From
                Compelled Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          C.    WRL And Ms. Berrigan Have Met Their
                Prima Facie Burden . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          D.    Defendants Have Failed To Carry
                 Their Burden Factually Or Legally . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**CASES**             **PAGE(S)**

Anderson v. Hale,
198 F.R.D. 493 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Anderson v. Hale,
2001 WL 641113 (N.D. Ill. June 1, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

Baird v. State Bar of Ariz.,
401 U.S. 1 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Barham v. Ramsey,
434 F.3d 565 (D. C. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bates v. City of Little Rock,
361 U.S. 516 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Black Panther Party v. Smith,
661 F.2d 1243 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Brandenburg v. Ohio,
395 U.S. 444 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Buckley v. Am. Constitutional Law Found.,
525 U.S. 182 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Buckley v. Valeo,
424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Communist Party of Ind. v. Whitcomb,
414 U.S. 441 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Church of the American Knights of the Ku Klux Klan v. Kerik,
356 F.3d 197 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cuba-Diaz v. Town of Windham,
274 F. Supp. 2d 221 (D. Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Devenpeck v. Alford,
543 U.S. 146, 125 S. Ct. 588 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 18

Easley v. Cromartie,
532 U.S. 234 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gibson v. Florida Legis. Investigation Comm.,
372 U.S. 539 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hess v. Indiana,
414 U.S. 105 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Comverse Tech. Inc. Derivative Litig.,
2006 WL 3511375 (S.D.N.Y. Dec. 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Int'l Action Center v. U.S.,
207 F.R.D. 1 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,
1985 WL 315 (S.D.N.Y. Feb. 28, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Jaegly v. Couch,
439 F.3d 149 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Maryland v. Pringle,
540 U.S. 366, 124 S. Ct. 795 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McIntyre v. Ohio Elections Comm'n,
514 U.S. 334 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Mejia v. City of N.Y.,
119 F. Supp. 2d 232 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mitchell v. Century 21 Rustic Realty,
233 F. Supp. 2d 418 (E.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Monsky v. Comm. of Internal Revenue,
1977 WL 3550 (U.S. Tax Court Aug. 19, 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.Y. Times Co. v. Gonzales,
459 F.3d 160 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

NAACP v. Alabama,
357 U.S. 449 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13

NAACP v. Claiborne Hardware,
458 U.S. 886 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iii

Noto v. U.S.,
367 U.S. 290 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

NYS NOW v. Terry,
886 F.2d 1339 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

NYS Org. for Women v. Terry,
886 F.2d 1339 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v. Salazar,
-- N.Y.S.2d --, 13 Misc. 2d 120 (N.Y. App. Term, 9th & 10th Dist., 2006) . . . . . . . . . . . . . . . . 16

People v. Pritchard,
27 N.Y.2d 246, 317 N.Y.S.2d 4 (N.Y. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ricciuti v. NYC Transit Auth.,
124 F.3d 123 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sherwin-Williams Co. v. Spitzer,
2005 WL 2128938 (N.D.N.Y. Aug. 24, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Talley v. California,
362 U.S. 60 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tashjian v. Republican Party of Conn.,
479 U.S. 208 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Thomas v. Collins,
323 U.S. 516 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Trader's State Bank,
695 F.2d 1132 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. United States Gypsum Co.,
333 U.S. 364 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. War Resisters League,
1979 WL 1555 (S.D.N.Y. Dec. 12, 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Whitehill v. Elkins,
389 U.S. 54 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

White v. Lee,
227 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES & RULES                                          PAGE(S)

U.S. Constitution, First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Constitution, Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FRCP 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Preliminary Statement**

Nonparty respondents the War Resisters League ("WRL") and Frida Berrigan ("Ms. Berrigan") (together, "respondents") respectfully submit this memorandum of law in opposition to defendants' appeal of the December 7, 2006 order of Magistrate Judge Francis denying defendants' motion to compel production of the WRL's members' names and certain information included in the organization's minutes.[1]  As to the issues appealed, WRL and Ms. Berrigan argue that the Magistrate Judge's decision was neither clearly erroneous nor contrary to law, but, rather, properly protected WRL's and Ms. Berrigan's constitutional rights to free speech and association.  In particular, the Court correctly found that defendants failed to refute the sworn statements of Ms. Berrigan, Mr. Ed Hedemann and Mr. David McReynolds which described how compelling production of WRL's documents would drastically infringe on Ms. Berrigan's and WRL's First Amendment rights.  The Court also correctly concluded that defendants failed to carry their burden of showing a compelling need for the requested information and documents. Respondents further argue that the primary argument advanced by defendants in this appeal–that the requested information relates to plaintiffs' intent on August 31, 2004, one of the days of the Republican National Convention, and is needed by defendants to defend these cases–is based on a misconception about the law of probable cause and false arrest, and, in any event, is insufficient to establish a compelling need great enough to overcome respondents' First and Fourteenth Amendments privileges.

Finally, it is respondents' view that the subpoenas, motion to compel and this appeal are

---

[1]We note that defendants have added the <u>Abdell</u> case to this appeal, although the subpoenas to Ms. Berrigan and WRL were issued in the <u>Schiller</u> and <u>Dinler</u> cases.

part of a campaign of harassment designed to intimidate the WRL and its members. Contrary to

defendants' arguments, the information sought from Ms. Berrigan and WRL is unnecessary to

their defense. These efforts have caused WRL to divert attention from its pacifist advocacy to

the defense of this matter, and to retain counsel to defend it, when the effort expended by

defendants is entirely disproportionate to any arguable need for the materials sought.

**Background**

**I.      Proceedings Before Magistrate Judge Francis**

In his December 7, 2006 memorandum and order ("M&O"), Magistrate Judge Francis

properly protected Ms. Berrigan and WRL's First and Fourteenth Amendment rights and granted

defendants only limited relief, requiring WRL to produce certain factual information included in

the WRL minutes.[2] Because respondents disagree with defendants' summary of the decision as

included in their brief, we provide an accurate review of the memorandum and order.[3]

Magistrate Judge Francis stated that WRL organized a three-part protest to the wars in

Iraq and Afghanistan and the so-called war on terror for August 31, 2004 during the Republican

National Convention. The vigil was to take place at the World Trade Center site, and from there,

participants were to walk two abreast on the sidewalk to Union Square. From there participants

were to proceed to Madison Square Garden, "where some would knowingly risk arrest by

participating in a 'die-in'." M&O at 2, citing Ex. F to Weiler letter ("Basic Scenario for Civil

---

[2]Respondents disagree with the Magistrate Judge's ruling but did not appeal the limited production required because the practical application of the ruling requires the production of very limited information/documentation.

[3]This opposition does not discuss the release of Mr. Hedemann's arrest records in detail because that issue does not relate to Ms. Berrigan or WRL.

Disobedience").[4]  (We note for the record that it is WRL's position that neither the vigil nor the walk to Union Square involved any civil disobedience, and only the "die-in" may have involved civil disobedience, depending on the circumstances and individuals' actions.)  According to a WRL press release, the protest was part of a "full day of nonviolent direct actions in coordination with the A31 Action Coalition" and that no permits were sought or granted for any of these proposed events.  M&O at 3, citing Ex. F to Weiler letter.

According to plaintiffs, on August 31, 2004, as protesters gathered at the World Trade Center site, the police informed organizers that the group could march on the sidewalk, two by two, but then the police stopped the walkers and, without giving plaintiffs a meaningful opportunity to disperse, arrested more than 200 people.  See M&O at 3.

In September 2005, defendants issued subpoenas to the WRL and Ms. Berrigan.  After communication with WRL's and Ms. Berrigan's lawyers, defendants' counsel in August 2006 claimed to narrow their subpoenas and requested that the following be produced:

> Any and all documents relating to civil disobedience, unlawful activity, or activity without a permit when such activities would otherwise require a permit, in connection with any protests, demonstrations, marches, rallies, processions, parades, vigils or like events during August 21-September 4, 2004. . . . [as well as a]ny and all documents reflecting any communications by the WRL with the City of New York relating to obtaining a permit for any protests, demonstrations, marches, rallies, processions, parades, vigils or like events scheduled to take place between August 21-September 4, 2004.

M&O, quoting Ex. E to Weiler letter.[5]  Defendants also requested WRL documents from

---

[4]The citations in the memorandum and order are to materials submitted in the motion to compel and request to quash; respondents refer the Court to the underlying record for these materials unless otherwise noted.

[5]We note that in an effort to resolve this dispute without additional litigation, Mr. Hedemann, with WRL's approval, provided to defendants some of this information, which was

plaintiff Ed Hedemann, who produced WRL flyers, press releases, other materials and redacted minutes from three WRL meetings at which members discussed the group's plans for August 31st. M&O at 5-6, citing Ex. G to Weiler letter. The redacted portions of the WRL minutes contain, among other things, "the names of WRL members, 'discussions of ideas and political perspectives, possible activities that were not adopted by WRL, and notes about matters unrelated to the August 31, 2004 political activity.'" M&O at 6, citing Affidavit of Frida Berrigan ¶¶ 6-7[6]. WRL and Ms. Berrigan refused to produce any documents other than those already produced by Mr. Hedemann. M&O at 6.

Defendants requested an order compelling WRL and Ms. Berrigan to produce documents responsive to the subpoena. Defendants submitted two letter briefs in support of their motion to compel, and WRL and Ms. Berrigan submitted a letter in opposition, requesting that the subpoenas be quashed.

The Court denied most of defendants' motion and granted the motion to quash almost in its entirety. The Magistrate Judge denied defendants' request that WRL produce its members' names, which would be released if unredacted minutes were produced. M&O at 8-15. Citing NAACP v. Alabama, 357 U.S. 449 (1958), the Court noted that the First Amendment and Due Process Clause of the Fourteenth Amendment protect against the compelled disclosure of membership lists where disclosure would abridge the associational rights of the members. M&O at 8-9. The Court observed that the Supreme Court required the "closest scrutiny" of state action

---

largely already publicly available.

[6]The affidavits of Frida Berrigan and David McReynolds, and the declaration of Ed Hedemann are submitted with this opposition as Exhibits 1, 2, and 3, respectively.

that might curb the freedom of association.  M&O at 9 (citing <u>NAACP v. Alabama</u>, 357 U.S. at
460-61).  The Court noted that in matters involving requests for membership information, the
Second Circuit requires the party resisting discovery to "'at least articulate some resulting
encroachment on their liberties,'" but that that burden "is light".  M&O at 10, 11 (quoting <u>NYS
NOW v. Terry</u>, 886 F.2d 1339, 1355 (2d Cir. 1989)).  The Magistrate Judge then reviewed
respondents' "uncontroverted affidavits describing a long history of government surveillance of
the WRL and its members", M&O at 11, and stated: "It is therefore reasonable to believe that
potential WRL members would be deterred from joining, and current members dissuaded from
active participation, if they thought that their membership in the organization would be made
public."  M&O at 13.  The Court observed that the City "has provided no evidence to contradict
the affidavits submitted by Ms. Berrigan, Mr. Hedemann, and Mr. McReynolds," and that the
burden of showing a compelling need for the WRL members' names shifted to the City.  <u>Id.</u>

     The Court determined that defendants had not met the compelling-need standard because
it was unnecessary for defendants to know about a particular plaintiff's membership or WRL
meeting attendance in order to ascertain whether he or she knew of the lack of a parade permit.[7]
M&O at 14.  The Court concluded: "The marginal value of statements provided by non-party
arrestees regarding their intent to violate the law cannot overcome the associational rights of the
WRL and its members."  As to information requested other than the members' names, the City
argued to the Magistrate Judge that "whether or not those who took part in the march intended to
violate the law is relevant to the issue of whether the NYPD had probable cause to arrest the

_____

     [7]The Court also noted that "the logic of the City's argument" that information about
WRL membership or participation could help the City defend against allegations of sweep
arrests "is not immediately apparent",  M&O at 15, and it remains a mystery to respondents.

5

plaintiffs", an argument the Court accepted by stating that the WRL's documents about protest plans were relevant.

The Court then determined that the redacted information–which included, among other things, WRL's internal political discussions, and discussions of other possible actions and of matters unrelated to August 31st–were irrelevant unless "they relate to plans made by the WRL or another organization to engage in civil disobedience on other dates during the RNC." M&O at 17. The Court further stated that "WRL is not required to produce documents that reflect discussions of ideas, political perspectives, or tactics ultimately rejected by either the WRL or the A-31 Action Coalition." M&O at 17. Respondents believe that this conclusion was correct and properly protected their First Amendment rights. Under the order, WRL did have to produce minutes that "contain statements regarding the A-31 Action Coalition plans" for August 31st. M&O at 17. For the reasons mentioned above, and explained in detail below, this required production of A-31 plans, which was justified by the City only with regard to being possible evidence of plaintiffs' intent as it relates to probable cause, was not legally or logically supportable because after-acquired evidence cannot be used to support a finding of probable cause for and at the time of an arrest.

Finally, defendants sought, as they do now, documents as to communications between WRL and the City about any efforts by WRL to obtain a permit for the so-called march, again on the illogical grounds that such documents could support their probable cause defense to the false arrest charges. WRL's public documents stated that it had not sought any permits, because it did not believe that any permit was necessary to walk up the streets of New York. The Court denied defendants' request, but commented that whether the plaintiffs knew about the lack of permits is

6

relevant.  Respondents agree with the denial of defendants' request, but disagree with the Court's (and the City's) reasoning about intent.

* * *

On December 21, 2006, the day before the present appeal was served and filed, Mr. Hedemann's attorney requested reconsideration of one sentence in Magistrate Judge Francis's decision about Mr. Hedemann's records of prior arrests.  The sentence reads as follows: "Furthermore, if Mr. Hedemann's prior arrests involve disorderly conduct, parading without a permit, or similar charges, the records may lead to information that would cast doubt upon Mr. Hedemann's credibility with respect to his contention that the NYPD lacked probable cause to arrest him on August 31, 2004." M&O at 19-20.  Mr. Hedemann challenged this sentence on the ground that his credibility was not relevant to the probable cause determination, citing Devenpeck v. Alford, 543 U.S. 146, 152 (2004), and similar cases.  Magistrate Judge Francis denied the application on December 21st and wrote the following: "The quoted language refers not to determining probable cause based on Mr. Hedemann's prior arrest record, but to whether his own testimony about the objective facts surrounding his arrest (i.e., what he was doing at the time of the arrest) may be credible."

II.    **Ms. Berrigan And The WRL Offered Uncontroverted Evidence That Their First Amendment Rights Would Be Curtailed If They Are Required To Produce the Requested Information And Documents**

We briefly describe respondents' uncontroverted evidence about the WRL and its members' concerns about violations of their associational and free speech rights by defendants' request.  As the Magistrate Judge noted, the City offered no evidence to refute these statements.

WRL is a pacifist organization that was formed in the United States after World War I by

individuals who had opposed the war.  Affidavit of Frida Berrigan, executed October 30, 2006, ¶ 13 ("Berrigan Aff."); Affidavit of David McReynolds, executed October 30, 2006, ¶ 5 ("McReynolds Aff.").  During World War II, WRL publicly advocated for pacifism.  In the 1950s and 1960s, WRL members worked for civil rights causes and organized protests against nuclear testing.  In the 1960s and 1970s, WRL and its members worked to end the war in Vietnam.  Today, WRL opposes the wars in Iraq and Afghanistan, as well as military profiteering in the United States, and uses peaceful means to try to end war.  Throughout WRL's existence, WRL members have been arrested for their participation in WRL-related advocacy. Berrigan Aff. ¶ 13; McReynolds Aff. ¶ 5.  WRL engages only in nonviolent activities; to that end, its membership pledge states: "The War Resisters League affirms that war is a crime against humanity.  We are therefore determined not to support any kind of war, international or civil, and to strive nonviolently for the removal of all causes of war."  Berrigan Aff. ¶ 14; McReynolds Aff. ¶ 4.  As described in the Berrigan and McReynolds affidavits, the WRL has for more than 80 years sought to advance and implement ideas of pacifism; such views are radically different from the policies espoused by the United States government, both past and present.  See, e.g., U.S. v. War Resisters League, 1979 WL 1555 (S.D.N.Y. Dec. 12, 1979); Monsky v. Comm. of Internal Revenue, TC Mem. 1977-259, 1977 WL 3550 (U.S. Tax Court Aug. 19, 1977).

WRL and Ms. Berrigan believe that the release of private information about WRL, including the names of its members, and its minutes which concern members' thought processes and exchanges of ideas, would be greatly detrimental to the organization.  Berrigan Aff. ¶ 11; McReynolds Aff. ¶ 14.  The Berrigan and McReynolds affidavits demonstrate that in light of the group's history of dissent over national foreign policy, the release of WRL's documents would

endanger the group's membership and chill its members' speech.  Berrigan Aff. ¶¶ 11-22; McReynolds Aff. ¶¶ 12-14.  For example, according to David McReynolds, an active WRL member and long-time employee of the national WRL, WRL members such as he have lost jobs and been the subject of covert government monitoring for decades because of their pacifist activities.  McReynolds Aff. ¶¶ 3, 6-11.  Mr. Hedemann's declaration states that as a result of his review of papers he obtained through the Freedom of Information Act, among other sources, he discovered that government agencies reported about him, covert government agents attended meetings that he attended and demonstrations that he organized, and government agents even questioned neighbors about him because of his anti-war activities.  Declaration of Ed Hedemann, executed November 1, 2006, ¶ 6 ("Hedemann Dec.").

As recent responses to FOIA applications made by the NYCLU and the ACLU show, the federal government has conducted domestic spying on anti-war and peace activist groups similar to WRL.  Berrigan Aff. ¶¶ 18-19.  This conduct is similar to the actions taken against WRL during previous wars.  McReynolds Aff. ¶ 12.  Such surveillance would likely discourage active participation in WRL; it would be a significant disincentive to members to know the government may be recording their participation in the group or that they would be targeted by any branch of government for their activities or subject to other retaliation.  Such surveillance efforts would be made easier and more likely if the names of WRL members are released.  Berrigan Aff. ¶¶ 20-22; McReynolds Aff. ¶¶ 13-14.  The release of members' thoughts and ideas may provide surveillance organizations or private pro-war organizations with information that may be used to harm WRL members.

As Ms. Berrigan states in her affidavit, WRL members are concerned that their WRL

9

work–which is organized around principles of nonviolence–will subject them to investigation or surveillance by the FBI, NYPD or other government agency.  Some members of WRL maintain low profiles and do not participate in WRL's more public activities.  Other members fear that they will be publicly labeled as activists and that this will hurt them in their employment. Berrigan Aff. ¶¶ 19-20.  Given WRL's history of its members suffering retaliation, reprisal, harassment and imprisonment for their advocacy work, and the current domestic surveillance of anti-war groups, it is reasonable to anticipate that the release of membership lists or documents containing political discussions would likely put WRL members at risk for adverse consequences from the federal government, the local government or the public, including possible physical harm from individuals opposed to WRL's causes.  To make public private involvement with WRL would likely discourage membership, financial support and open discussion within the WRL.  Members may be less likely to raise controversial issues at meetings, and the group may be less likely to record them in its minutes, making the minutes less useful documents for the group.  Berrigan Aff. ¶¶ 19-20.  Contrary to the City's suggestion that these fears are exaggerated, they are based on the group's experience during past wars and times of protest, and those experiences are consistent with the government's present efforts against anti-war and dissident groups.[8]

WRL and Ms. Berrigan amply demonstrated that there is a reasonable probability that

---

[8]This past week's controversial remarks of Charles Stimson, deputy assistant secretary of defense for detainee affairs, in which he argued that clients of law firms that are defending the rights of Guantanamo detainees should reconsider and possibly terminate their relationships with those firms, are a contemporaneous example of the actions a government official may take to target and harm advocates of positions at odds with mainstream national policies, including the government's "war on terror".  See Neil A. Lewis, Official Attacks Top Law Firms Over Detainees, N.Y. Times, Jan. 13, 2007.

the compelled disclosure of the requested information, including possibly discussions of controversial topics, will subject WRL and its members to threats, harassment, or reprisals from either government officials or private parties.

**Argument**

**I.      Defendants Have Not Met The Rule 72 Standard Because, As To Denying The Release Of WRL Members' Names And Redacted Minutes, The Magistrate Judge's Order Is Not Clearly Erroneous Or Contrary To Law**

**A.      FRCP 72**

Defendants ask for review of this motion under FRCP 72(a), which allows for the reversal of a magistrate judge's decision only if the decision is "clearly erroneous or contrary to law." FRCP 72(a); see In re Converse Tech. Inc. Derivative Litig., 2006 WL 3511375 (S.D.N.Y. Dec. 5, 2006). As stated in the Converse decision:

> A magistrate judge's findings may be considered "clearly erroneous" where "'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'" Easley v. Cromartie, 532 U.S. 234, 243 (2001) (quoting United States v. United States Gypsum Co., 333 U .S. 364, 395 (1948)). Further, because this standard of review is "highly deferential" and "imposes a heavy burden on the objecting party," magistrate judges are afforded broad discretion, and the law "only permits reversal where the magistrate judge abused his discretion." Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002).

Here, defendants have failed to show that the Magistrate Judge's decision was so erroneous or contrary to law that it should be reversed on the issues appealed.

**B.      The First Amendment Protects Ms. Berrigan & WRL From Compelled Disclosure**

As set forth in extensive detail in the WRL/Berrigan opposition to defendants' motion to compel, and supported by the Hedemann submission, the WRL and Ms. Berrigan have First Amendment rights that cannot be trampled by defendants' unreasonable discovery demands. We

11

briefly review the relevant First Amendment principles.

Discovery requests to a membership organization implicate First Amendment protections as a restraint upon the freedom of speech and the right to associate freely. See NAACP v. Alabama, 357 U.S. 449, 459-60 (1958). "This Court has recognized the vital relationship between freedoms to associate and privacy in one's associations." Id. at 462. "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of association, particularly where a group espouses dissident beliefs." Id. (citation omitted). It is well-settled that the First Amendment creates a qualified associational privilege from disclosure of certain information. If a discovery demand adversely affects an organization's or its members' mission of advocacy or chills their ability to speak freely or to associate freely, the associational privilege attaches.

The First Amendment gives particular protection to political speech, and to organizations that have come together for political purposes such as WRL and its members. See Tashjian v. Republican Party of Conn., 479 U.S. 208, 215 (1986); NAACP v. Alabama, 357 U.S. at 462-63. This protection of political speech arises in part from the fundamental principle that the government has no interest in learning any person's particular political beliefs. "The First Amendment gives freedom of mind the same security as freedom of conscience." Thomas v. Collins, 323 U.S. 516, 531 (1945); see Baird v. State Bar of Ariz., 401 U.S. 1, 6 (1971).

The First Amendment protects the privacy of organizational membership lists; in the present case, the names of WRL members and their involvement in political discussions would

12

be revealed if unredacted materials are produced.[9]   See NAACP v. Alabama, 357 U.S. at 462;

Gibson v. Florida Legis. Investigation Comm., 372 U.S. 539, 543-44 (1963); Bates v. City of

Little Rock, 361 U.S. 516, 523-25 (1960); Anderson v. Hale, 198 F.R.D. 493, 494-95 (N.D. Ill.

2000); see also Church of the American Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197,

208-09 (2d Cir. 2004).  These holdings are consistent with the long American tradition of not

stifling anonymous, even dissenting, political speech.  See McIntyre v. Ohio Elections Comm'n,

514 U.S. 334, 341-347 (1995) ("Anonymity is a shield from the tyranny of the majority."); 359-

68 (Ginsberg, J., concurring); Talley v. California, 362 U.S. 60, 62-68 (1960); see also Buckley

v. Am. Constitutional Law Found., 525 U.S. 182, 205 (1999).

     The First Amendment also provides significant protections for free speech about

unpopular ideas.  See Brandenburg v. Ohio, 395 U.S. 444, 447-49 (1969); Hess v. Indiana, 414

U.S. 105, 107 (1973); Communist Party of Ind. v. Whitcomb, 414 U.S. 441, 448 (1971); Noto v.

U.S., 367 U.S. 290 (1960); NAACP v. Claiborne Hardware, 458 U.S. 886, 927 (1982); Whitehill

v. Elkins, 389 U.S. 54, 57 (1967) (the First Amendment protects "a controversial as well as a

conventional dialogue"); White v. Lee, 227 F.3d 1214, 1228  (9th Cir. 2000).  Discussions by

WRL about topics such as the Republic National Convention, which was the venue for

renominating as the party's presidential nominee the sitting president who had launched wars

against both Afghanistan and Iraq, so obviously involved national politics that they must be

protected by the First Amendment.

---

[9]In a footnote in their brief, defendants claim that they are "not seeking membership lists." Def. Mem. at 4 n.2.  This is patently incorrect because they are seeking the names of particular members of WRL–whether a whole or partial, a list of members remains a list of members.

Once a party such as Ms. Berrigan or WRL has asserted a privilege and raised a prima facie case that its First Amendment protections are endangered, the party seeking discovery bears the burden of proof that its need is so great that the First Amendment protections for political speech must be overcome.  See Buckley v. Valeo, 424 U.S. 1, 70-74 (1976); Sherwin-Williams Co. v. Spitzer, 2005 WL 2128938, at *4 (N.D.N.Y. Aug. 24, 2005) (citations omitted); Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 1985 WL 315 n.16 (S.D.N.Y. Feb. 28, 1985); Black Panther Party v. Smith, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981).[10]  A party seeking discovery in the face of an assertion of a First Amendment privilege may only receive the requested information if it can prove the information is essential to its case such that the need for the information outweighs the First Amendment concerns, which the defendants here have not done.  See NYS Org. for Women v. Terry, 886 F.2d 1339, 1354-55 (2d Cir. 1989); U.S. v. Trader's State Bank, 695 F.2d 1132, 1133 (9th Cir. 1983).; see also N.Y. Times Co. v. Gonzales, 459 F.3d 160, 169 (2d Cir. 2006); Anderson v. Hale, 2001 WL 641113, at *4 (N.D. Ill. June 1, 2001) (the relevance of the information sought must be of such significance that it "goes to the 'heart of the matter.'" (citations omitted)).  "The inquiring party must exhaust all reasonable alternative sources of information by which he could obtain the information in a less chilling manner"; failure to do so defeats the request for the information.  Anderson v. Hale, 2001 WL 641113, at *4 (N.D. Ill. June 1, 2001) (citations omitted).  The greater the likely damage to the producing organization, the more likely the association privilege will be found to defeat the inquiry.  Id.; Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 1985 WL 315 at *8 (S.D.N.Y.

---

[10]The Black Panther decision was later vacated as moot, but it continues to be followed in the D.C. Circuit.  See U.S. v. Int'l Action Center, 207 F.R.D. 1 n.6. (D.D.C. 2002).

Feb. 28, 1985) ("[a]lthough courts have phrased the applicable standard in different ways, they have consistently emphasized the strictness of the showing that the inquiring party must make"); Int'l Action Center, 207 F.R.D. at 1-4 ("As to the relevancy issue, it is crucial to remember that we are considering the essence of First Amendment freedoms–the freedom to protest policies and programs to which one is opposed, and freedom to organize, raise money, and associate with other like-minded persons to effectively convey the message of protest"; and holding that defendants had failed to meet the standard for compelling disclosure of information protected by the First Amendment).

## C.     WRL And Ms. Berrigan Have Met Their Prima Facie Burden

The affidavits and declaration submitted in support of WRL and Ms. Berrigan set forth a more than adequate prima facie case that the compelled release of the requested information will harm their First and Fourteenth Amendment rights.  WRL and its members have struggled peacefully for more than 80 years to advance the group's message of nonviolence.  They have done so in spite of enormous public and governmental pressure to change course and accede to the popular sentiment in favor of war, violence and other activities destructive of humanity. They have been able to do so in part because of the protections available under the First Amendment.  These subpoenas and the motion to compel should not be permitted to jeopardize either the Constitution or WRL's mission.

## D.     Defendants Have Failed To Carry Their Burden Factually Or Legally

As to the facts, defendants offered no evidence except for respondents' own documents, so they have not carried their high burden.

As to the law, in this appeal defendants focus on their requests for evidence of plaintiffs'

15

intent with regard to August 31ˢᵗ. Defendants argue that plaintiffs' prior actions or discussions with WRL can help establish that plaintiffs had the necessary criminal intent, although the NYPD's arresting officers knew nothing about WRL actions or discussions at the time of the controverted arrests. Defendants argue that Magistrate Francis was correct when he wrote that "whether or not those who took part in the march intended to violate the law is relevant to the issue of whether the NYPD had probable cause" for the arrests. Def. Mem. at 5 (citing M&O at 16). Defendants also rely on the disorderly conduct statute with which plaintiffs were charged because it contains an intent requirement, and claim that "[e]vidence of intent goes to the heart of plaintiff's claims." Def. Mem. at 5-6. Defendants then make a unwarranted leap in logic and argue that discussions at WRL meetings may give them evidence of plaintiffs' criminal intent with which they can defend their case. The faults in this leap are three-fold.

First, defendants incorrectly equate the WRL with the plaintiffs. The WRL and the plaintiffs are not synonymous, although they may overlap. The First Amendment rights of the entire WRL membership cannot be undermined for the claims of a few plaintiffs who may be WRL members. Contrary to defendants' argument at page six of their brief, WRL has not attempted to use the First Amendment as a sword and a shield, and the cases cited by defendants are inapposite.

Second, the intent at issue in the disorderly conduct statute upon which defendants rely is the intent of each of the individual plaintiffs at the time of the actions upon which their arrests were based to engage in a particular act and to cause a particular consequence. See People v. Pritchard, 27 N.Y.2d 246, 249, 317 N.Y.S.2d 4, 6 (N.Y. 1970); People v. Salazar, -- N.Y.S.2d --, 13 Misc. 2d 120 (N.Y. App. Term, 9ᵗʰ & 10ᵗʰ Dist., 2006). For purposes of the criminal statute,

there is no significance to any consensus decisions of WRL, particularly decisions made by a group vote. The only intent relevant is each individual plaintiff's intent at the time he or she took actions in a manner that gave sufficient facts to the arresting officer to believe that he or she had probable cause to arrest the individual. (Of course, it appears to be most plaintiffs' position that criminal conduct did not take place.)

Third,–and decisively here--defendants' argument about intent hinges on a fundamental misconception about probable cause and false arrest. Under a Fourth Amendment analysis, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 124 S. Ct. 795 (2003)) (emphasis added); see Ricciuti v. NYC Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("An officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect has committed or was committing an offense." (citations omitted). The Devenpeck Court continued: "Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Id. at 153, 593. It also stated: "Those are lawfully arrested whom the facts known to the arresting officers give probably cause to arrest." Id. The Second Circuit has described the Devenpeck holding as follows: "The Supreme Court held that the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006); see also Barham v. Ramsey, 434 F.3d 565, 574 (D. C. App. 2006) (citing Devenpeck). It is absolutely clear from these cases and their progeny that an officer may not rely on information

17

learned after the arrest to establish probable cause to defend an arrest.  See, e.g., Cuba-Diaz v. Town of Windham, 274 F. Supp. 2d 221, 229 (D. Conn. 2003); Mejia v. City of N.Y., 119 F. Supp. 2d 232, 253 (E.D.N.Y. 2000) ("It is, therefore, axiomatic that subsequently discovered evidence cannot be used to cure an arrest that was made without probable cause.").

Defendants incorrectly argue that the WRL's documents may show plaintiffs' intent as to actions they may have planned for August 31, 2004, as that intent existed prior to August 31st, so that they can establish the existence of probable cause as a complete defense to a false arrest allegation  But this kind of prior intent–to the extent it existed at all–is irrelevant to defendants' defense because it was not known to the arresting officers at the time of the arrests.  The only relevant question as to intent is whether evidence the arresting officers had at the time of the arrests could support a reasonable officer's belief that the elements of the crime, including intent, were present such that each arrest was justified.  As the arresting NYPD officers did not know about any WRL meetings (or at least to respondents' knowledge, the City has not asserted they did), any post-facto review of facts not known to the arresting officers at the time of the arrests might suggest the presence of intent is entirely unwarranted by the standards for false arrest claims.  See Devenpeck, 543 U.S. at 152, 125 S. Ct. at 593.  Accordingly, defendants' argument does not support a reversal of Magistrate Judge Francis's decision.

Defendants also claim that they have a compelling need for the names of WRL's members, both plaintiff and nonplaintiff, and information about any WRL requests for a parade permit.  Def. Mem. at 7.  They neither explain what that need is, nor explain why it is compelling as to their defense.  As noted above, information about plaintiffs' intent as developed at one or more WRL meetings cannot be the basis for a probable cause defense because it was unknown to

18

the arresting officers at the time of the arrests. So what need is there? None is evident, except possibly to harass WRL and its members by forcing them to defend these subpoenas. And even if such a need existed, defendants have not shown why it is sufficiently compelling to overcome WRL members' associational privilege under the First Amendment standards set forth above. Defendants have certainly not shown that they have exhausted all other means of obtaining the allegedly relevant information. See Anderson v. Hale, 2001 WL 641113, at *4 (N.D. Ill. June 1, 2001). For example, information about individual plaintiffs' intent is available in depositions about the day of the arrests, as suggested by Magistrate Judge Francis. M&O at 14 (emphasis added). And defendants have not shown that they will not be able to defend their case without this information.

    We address one additional argument not raised by defendants. Although Magistrate Judge Francis issued his reconsideration decision regarding Mr. Hedemann's arrest records before the Rule 72 motion was served and filed, defendants do not apply the reasoning of that decision to their interpretation of the Magistrate Judge's statements about intent and WRL's documents. That is, they do not suggest that when the Magistrate Judge wrote that intent was relevant, he was referring to credibility issues, as with Mr. Hedemann's records. Accordingly, any such argument is waived. Even if the defendants were to argue that they require the WRL's minutes and names of its members for purposes of assessing plaintiffs' credibility, this need would not overcome WRL and Ms. Berrigan's First Amendment rights. As set forth above, in order to overcome those privileges the material sought must be at the heart of the case, and must be unavailable from other sources. Defendants can look to numerous other sources for information about individual plaintiffs with which they can attempt to impeach them, which they

have not shown that they have tried to do. Even if such material turns out to be unavailable from other sources, it cannot be seriously argued that collateral impeachment material is at the heart of defendants' case. See Anderson, 2001 WL 641113, at *4. Defendants can try to defend their wrongful conduct by offering their own versions of the events of August 31st, and by cross-examining the plaintiffs and nonparty witnesses. Because the requested information is not necessary to defendants' case, defendants' need is not so great that WRL and Ms. Berrigan's rights to free speech and free association may be overcome; defendants' request must fail in order to protect vibrant political discourse in this country.

**Conclusion**

For the reasons stated above and in the Berrigan, McReynolds and Hedemann statements, respondents respectfully request that defendants' Rule 72 motion be denied in its entirety.

Dated: New York, New York
          January 19, 2007

                                        BELDOCK LEVINE & HOFFMAN LLP
                                        Attorneys for the War Resisters League and
                                        Frida Berrigan

                                        By: _____/s/_____
                                              Vera M. Scanlon (VS1522)
                                              Myron Beldock (MB 4076)
                                        99 Park Avenue, Suite 1600
                                        New York, New York 10016
                                        (212) 490-0400

20

To:    Fred M. Weiler, ACC
       Special Federal Litigation Division
       Office of the Corporation Counsel of
       the City of New York
       100 Church Street
       New York, New York 10007

       Michael L. Spiegel, Esq.
       111 Broadway, Suite 1305
       New York, New York 10006

       Alan Levine, Esq.
       PRLDEF
       99 Hudson Street, 14th Floor
       New York, New York 10013

       RNC counsel by email

G:\Files\3191\031\Memorandum in opposition to R72 motion 011807.wpd