# Exhibit 1

State of New York
                    ss.
County of New York


I, Frida Berrigan, being duly sworn, depose and state:

1. I make this affidavit in support of my and the NYC War Resisters League's (WRL) request that the Court deny the defendants' motion to compel compliance with the subpoenas issued to us in the federal litigation arising out of the mass arrests by the New York Police Department (NYPD) during the Republic National Convention (RNC) in August 2004. WRL is not a plaintiff or party in any action arising out of the RNC. I am not a named plaintiff in any suit arising out of the RNC.

2. I have read the defendants' submission in support of the subpoenas and submit this affidavit in opposition to the defendants' arguments.

3. I understand that the defendants want WRL records regarding the RNC. I believe that the responsive documents would primarily be WRL's minutes, which include the names of WRL members. I have noted that the defendants claim to have narrowed their requests for WRL documents in a letter to my and WRL's attorneys. I believe that the request still asks for a wide range of documents.

4. By way of background, WRL has membership meetings. These meetings are open to WRL members. They are not open to the public, although members of the public are welcome to come and join WRL. Minutes are kept of these meetings and circulated to members. It is the practice of WRL to include at the front of our minutes a list of those present at each meeting. The minutes are not distributed publicly or published on any website. WRL does not release its membership lists for nonmembership purposes.

5. As attachments to the defendants' October 6th submission show, the defendants have already received copies of WRL's public materials about the RNC. (Weiler letter, Exhibit F.) In October 2005, the WRL agreed to allow Ed Hedemann, a plaintiff in the Abdell case, to turn over to defendants copies of the WRL's public papers. The defendants are also in receipt of redacted copies of the minutes of the WRL's July 28, 2004, August 12, 2004, and August 19, 2004 meetings. The information that was revealed were the group's decisions about activities during the RNC.

6. I have reviewed the originals of the redacted minutes. Those documents contain the names of members of the WRL. It is WRL's policy to keep the names of its members confidential, except for the names of members such as me who agree to be public contacts for the chapter. For example, my name is listed on page three of defendants' Exhibit F as a contact for the WRL.

1

7.  The redacted information includes, among other things, discussions of ideas and political perspectives, possible activities that were not adopted by the WRL, and notes about matters unrelated to the August 31, 2004 political activity.

8.  As to August 31, 2004, significant information has been developed elsewhere. I will merely state here that, as described in the WRL's public materials, we planned a peaceable march. One of our documents stated: Our attitude will be one of openness and respect toward people we encounter. We will not use physical violence or verbal abuse toward any person. We will not damage any property. We will not bring or use any alcohol or drugs other than for medical purposes. We will not carry weapons. (Exhibit F.)

9.  On August 4, 2004, several peace activists held a press conference at St. Mark's Church to announce plans for marches on August 31st. As a representative of the WRL, I made public statements about the WRL plans at the press conference. The WRL held a press conference on August 25, 2004. I spoke at the conference. I also participated in another press conference at the City Hall steps on August 27, 2004. At each conference, we stated our plans for a peaceful march.

10. I note that the Corporation Counsel argues that the intent of the WRL with regard to civil disobedience is relevant to the litigation against the City. I agree with my attorneys' arguments that it is not. In fact, it is difficult to speak of any collective WRL intent with regard to civil disobedience on August 31st. As expressed in our materials, there was no assumption that all the WRL members involved in the march would participate in any die-in or other civil disobedience activities. Rather, each individual could determine what his or her conscience called him or her to do. I personally participated in a march and was arrested at about Broadway and 28th Street. Several other members of the WRL were arrested during the RNC by the NYPD during peaceful protest marches.

11. I now speak to my firm belief that the release of private information about WRL, especially the names of its members who have not been public with their WRL involvement or of its minutes, would be greatly detrimental to the organization. I have been a peace activist for many years. I have actively worked for more than ten years to research and make public information about militarism in the United States and about peaceful alternatives. I am familiar with the history of the WRL, having read about it and spoken to other WRL members. I make these statements based on WRL's history, its practices, my knowledge of political currents in the United States and actions taken by the federal and city governments, my personal feelings, and my knowledge of the membership of the WRL.

12. The release of WRL's minutes, membership lists or other materials could subject the organization and/or its members to harassment, reprisal or other misconduct.

2

13. WRL was formed in the United States after World War I by individuals who had opposed the war. It has ties to an organization called War Resisters International in England. Many of the WRL founders had been imprisoned for refusing military service during WWI. During World War II, WRL advocated for pacifism, and again, many members were imprisoned for refusing military service. In the 1950s and 1960s, WRL and its members worked actively for civil rights causes and organized protests against nuclear testing. In the 1960s and 1970s, WRL and its members worked to end the war in Vietnam. Today, WRL opposes the wars in Iraq and Afghanistan, and military profiteering in the United States, and uses peaceful means to try to end war. Throughout WRL's existence, WRL members have been arrested for their participation in WRL-related advocacy. A scholarly record of some of the history of the WRL was published by Syracuse University Press as <u>Radical Pacifism: The War Resisters League and Gandhian Nonviolence in America, 1915-1963</u>, by Scott H. Bennett.

14. The WRL mission statement is: "Believing war to be a crime against humanity, the War Resisters League, founded in 1923, advocates Gandhian nonviolence as the method for creating a democratic society free of war, racism, sexism and human exploitation." The WRL membership pledge states: "The War Resisters League affirms that war is a crime against humanity. We are therefore determined not to support any kind of war, international or civil, and to strive nonviolently for the removal of all causes of war."

15. WRL encourages individuals to use many paths to help achieve WRL's goals. WRL provides information about peaceful political action, including considering war tax resistance efforts; WRL members have been prosecuted for war tax resistance. It helps conscientious objectors be relieved from military service. It helps organize peaceful protests. It publishes WIN magazine. It works in solidarity with other groups, such as the Catholic Worker, American Friends Service, and United for Peace and Justice, to advocate against war and for peace and justice.

16. The positions advocated by WRL are often unpopular. There is no doubt in my mind that WRL's positions are not widely accepted in the United States or even in New York. Pacifism has long been rejected by our government and the public. Recently, WRL was one of the first anti-war organizations to state that United States foreign policies and militarism were linked with the September 11th attacks. Such pacifist statements have been treated with derision in the public arena and press.

17. As to recent past retaliation against WRL and its members, the Schiller lawsuit itself is evidence that WRL members are subject to retaliation by government officials. The complaint alleges that more than 200 people were arrested at Church and Fulton Streets during a peaceful march on August 31, 2004; many WRL members were among those arrested, although according to the complaint, many had no intention of engaging in any unlawful conduct and did not do so. Before the march began, WRL representatives spoke with several ranking police officers about the march, including the march route and

3

pace, and understood that the police were going to allow the march; soon after the march began, however, the police halted it and made the arrests. These facts give rise to WRL's concern that the NYPD has not been as open with WRL in their communications as WRL has been with the police.

18. I have also read numerous press reports that the federal government has engaged in domestic spying on anti-war and peace activist groups. The federal government has done this during previous wars, both declared and undeclared. In relation to the current wars and "war on terror", I understand that the New York Civil Liberties Union has filed FOIA requests about recent domestic surveillance of peace groups. From my review of the NYCLU website, I have learned that the WRL in Buffalo is a group that suspects that it has been subject to such spying and a FOIA request has been filed on its behalf. From my review of the ACLU website, as well as many newspaper reports, I have learned that the Bush administration has conducted a domestic surveillance program of anti-war groups opposed to the Iraq war. Among the documents released to the ACLU in response to the FOIA requests were reports of surveillance of the American Friends Service (AFS), a Quaker group. WRL often works in cooperation with the AFS. An organization called United for Justice and Peace (UFPJ) is a plaintiff in the FOIA lawsuit brought by the ACLU against the Pentagon's domestic spying. WRL often works with UFJP. The ACLU has also filed a FOIA lawsuit on behalf of several plaintiffs including the WRL group in California. It is reasonable to believe that if there was spying on the Buffalo and/or California WRL group, or groups with which the WRL is closely affiliated, the WRL in New York City may also have been, may be or will be subject to such surveillance. Such surveillance would likely discourage participation in WRL; it would be a significant disincentive to potential members to know the government would be following their participation in the group. Such surveillance efforts would be made easier, and thus more likely, if WRL's membership lists or minutes are released.

19. It is very reasonable to believe that disclosure of the requested information will make current or possible future members less willing to participate in the organization. Based on my discussions with WRL members and other individuals interested in peace work, I believe that many people are concerned that their WRL work–which is always driven by principles of nonviolence–will subject them to investigation or surveillance by the FBI, NYPD or other government agency. As the matters discussed above show, this is not a baseless fear. Some members of WRL maintain a relatively low profile and do not participate in our more public activities. Based on my discussions with some members, I believe they do this because they fear that they will be publicly labeled as activists and this will hurt them in their employment. In particular, political discussion will be introduced to their workplaces, and they will have a more difficult time working with people at their jobs. Occasionally, I have been told by a WRL member that he or she fears losing his or her job if the employer knew he or she was a peace activist.

20. Given WRL's history of its members suffering retaliation, reprisal, harassment and

imprisonment for their advocacy work, and the current domestic surveillance efforts, it is reasonable to anticipate that the release of membership lists or political discourse documents would likely put WRL members at risk for adverse consequences from federal government, the local government or the public. To make private involvement with WRL public would like discourage membership, financial support and open discussion within the WRL. While some members have been committed to WRL for years, others only slowly embrace pacifism as they learn more about it. Being outed as a WRL member before these individuals have made up their minds as to their commitment to pacifism would likely be a deterrent to their participation in the group. I believe that many WRL members would have reservations about participating actively and without reservation in WRL if they suspected they would be secretly targeted by any branch of government for their activities or subject to other retaliation.

21. These members' participation in WRL is essential to my full participation in the political processes. I do not want my or other WRL members' First Amendment rights to be chilled by government action limiting the participation of others in WRL.

22. I also believe that if our records are released, our future discussions will be chilled. Members may be less likely to raise controversial issues, and we will be less likely to record them in our minutes, making the minutes less useful documents for the group. Even the release of documents that are more than two years old would be problematic because some of our members remain active, and there will be a future fear of disclosure over future meetings and activities. Also, the fear of public disclosure, and litigation to defend our rights, put a strain on the group's resources. It is distracting and wastes time for us to be concerned about asserting our First Amendment rights, rather than being able to continue our pacifist activities under the protection of those rights.

23. WRL has made numerous public political statements about its positions and activities during the RNC. Defendants have this information. WRL should be allowed the protections of the First Amendment to protect its membership and its deliberative processes. We respectfully request that the motion to compel be denied and the subpoenas quashed.

_____
Frida Berrigan

Sworn and subscribed to before me this 30th day of November 2006.

_____
Notary Public

VERA M. SCANLON
NOTARY PUBLIC STATE OF NEW YORK
NO. 02SC5061891
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES JUNE 17, 2010

6