**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| **TARASIK ABDELL, et al.,** | **05 CV 8453 (RJS) (JCF)** |
| **COURTNEY LEE ADAMS, et al.,** | **05 CV 9484 (RJS) (JCF)** |
| **BARBARA ARANEDA, et al.,** | **05 CV 9738 (RJS) (JCF)** |
| **COREY EASTWOOD, et al.,** | **05 CV 9438 (RJS) (JCF)** |
| **MEGAN KENNEDY, et al.** | **07 CV 7678 (RJS) (JCF)** |
| **JESSICA RECHTSCHAFFER,** | **05 CV 9930 (RJS) (JCF)** |
| **SARAH COBURN,** | **05 CV 7623 (RJS) (JCF)** |
| **GWYNN GALITZER,** | **05 CV 7669 (RJS) (JCF)** |
| **EMILY SLOAN,** | **05 CV 7668 (RJS) (JCF)** |
| **RANDY XU,** | **05 CV 7672 (RJS) (JCF)** |

**Plaintiffs,**

-versus-

**THE CITY OF NEW YORK, et al.**

**Defendants.**

-----------------------------------------------------------x

## DECLARATION OF ALEXIS LEIST

Alexis Leist, an attorney duly admitted to practice in the United States District Court for the Southern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.    I am an Assistant Corporation Counsel in the office of MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, attorney for defendants.

*SUBMITTED UNDER SEAL: CONTAINS CONFIDENTIAL INFORMATION*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| **TARASIK ABDELL, et al.,** | **05 CV 8453 (RJS) (JCF)** |
| **COURTNEY LEE ADAMS, et al.,** | **05 CV 9484 (RJS) (JCF)** |
| **BARBARA ARANEDA, et al.,** | **05 CV 9738 (RJS) (JCF)** |
| **COREY EASTWOOD, et al.,** | **05 CV 9438 (RJS) (JCF)** |
| **MEGAN KENNEDY, et al.** | **07 CV 7678 (RJS) (JCF)** |
| **JESSICA RECHTSCHAFFER,** | **05 CV 9930 (RJS) (JCF)** |
| **SARAH COBURN,** | **05 CV 7623 (RJS) (JCF)** |
| **GWYNN GALITZER,** | **05 CV 7669 (RJS) (JCF)** |
| **EMILY SLOAN,** | **05 CV 7668 (RJS) (JCF)** |
| **RANDY XU,** | **05 CV 7672 (RJS) (JCF)** |

**Plaintiffs,**

-versus-

**THE CITY OF NEW YORK, et al.**

**Defendants.**

-----------------------------------------------------------x

**DECLARATION OF ALEXIS LEIST**


Alexis Leist, an attorney duly admitted to practice in the United States District Court for the Southern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.     I am an Assistant Corporation Counsel in the office of MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, attorney for defendants.

2.      I am familiar with the facts and circumstances stated herein based upon personal knowledge, the books and records of the City of New York, and conversations with its agents and employees.

3.      I submit this declaration in support of defendants' memorandum of law in opposition to the motions of certain plaintiffs in the above-captioned cases for relief pursuant to Federal Rule of Civil Procedure 72 from six orders of Magistrate Judge James C. Francis IV.

4.      Annexed hereto as **Exhibit A** is a true and correct copy of plaintiffs' Second Amended Complaint filed in Abdell.

5.      Annexed hereto as **Exhibit B** is a true and correct copy of plaintiffs' Second Amended Complaint filed in Adams.

6.      Annexed hereto as **Exhibit C** is a true and correct copy of plaintiffs' Amended Complaint filed in Araneda.

7.      Annexed hereto as **Exhibit D** is a true and correct copy of plaintiff's Second Amended Complaint in Coburn.

8.      Annexed hereto as **Exhibit E** is a true and correct copy of plaintiff's Amended Complaint in Eastwood.

9.      Annexed hereto as **Exhibit F** is a true and correct copy of plaintiff's Second Amended Complaint in Galitzer.

10.      Annexed hereto as **Exhibit G** is a true and correct copy of plaintiff's Complaint in Kennedy.

11.      Annexed hereto as **Exhibit H** is a true and correct copy of plaintiff's First Amended Complaint in Rechtschaffer.

12.      Annexed hereto as **Exhibit I** is a true and correct copy of plaintiff's Second Amended Complaint in Sloan.

13.     Annexed hereto as **Exhibit J** is a true and correct copy of plaintiff's Second Amended Complaint in Xu.

14.     Annexed hereto as **Exhibit K** are excerpts from the June 7, 2007 deposition of Abdell plaintiff Deborah Riverbend.

15.     Annexed hereto as **Exhibit L** is a true and correct copy of an Order dated November 16, 2006, entered by Magistrate Judge James C. Francis IV in Abdell.

16.     Annexed hereto as **Exhibit M** is a true and correct copy of a letter written by Jeffery A. Dougherty in Abdell dated January 22, 2008.

17.     Annexed hereto as **Exhibit N** is a true and correct copy of a letter written by Michael Spiegel in Abdell dated February 29, 2008.

18.     Annexed hereto as **Exhibit O** is a true and correct copy of a letter written by Jeffrey A. Dougherty in Abdell dated March 14, 2008.

19.     Annexed hereto as **Exhibit P** is a true and correct copy of an Order dated April 16, 2008, entered by Magistrate Judge James C. Francis IV in Abdell.

20.     Annexed hereto as **Exhibit Q** are excerpts from the August 10, 2007 deposition of Adams plaintiff Christopher Benson.

21.     Annexed hereto as **Exhibit R** are excerpts from the August 10, 2007 deposition of Adams plaintiff Erica Mitrano.

22.     Annexed hereto as **Exhibit S** is a true and correct copy of a letter written by Michael Spiegel in Adams dated February 16, 2007.

23.     Annexed hereto as **Exhibit T** is a true and correct copy of a letter written by Jeffrey A. Dougherty in Adams dated January 22, 2008.

24.     Annexed hereto as **Exhibit U** is a true and correct copy of a letter written by Michael Spiegel in Adams dated February 29, 2008.

25.     Annexed hereto as **Exhibit V** is a true and correct copy of a letter written by Jeffrey A. Dougherty in <u>Adams</u> dated March 14, 2008, and its accompanying exhibits.

26.     Annexed hereto as **Exhibit W** is a true and correct copy of an Order dated April 15, 2008, entered by Magistrate Judge James C. Francis IV in <u>Adams</u>.

27.     Annexed hereto as **Exhibit X** are excerpts from the August 13, 2007 deposition of <u>Araneda</u> plaintiff Barbara Araneda.

28.     Annexed hereto as **Exhibit Y** are excerpts from the August 8, 2007 deposition of <u>Araneda</u> plaintiff Hays Ellisen.

29.     Annexed hereto as **Exhibit Z** are excerpts from the August 15, 2007 deposition of <u>Araneda</u> plaintiff David Segal.

30.     Annexed hereto as **Exhibit AA** is a true and correct copy of a letter written by Cheryl Shammas in <u>Araneda</u> dated January 22, 2008.

31.     Annexed hereto as **Exhibit BB** is a true and correct copy of a letter written by Norman Best in <u>Araneda</u> dated February 29, 2008.

32.     Annexed hereto as **Exhibit CC** is a true and correct copy of a letter written by Cheryl Shammas in <u>Araneda</u> dated March 14, 2008.

33.     Annexed hereto as **Exhibit DD** is a true and correct copy of an Order dated April 15, 2008, entered by Magistrate Judge James C. Francis IV in <u>Araneda</u>.

34.     Annexed hereto as **Exhibit EE** are excerpts from the September 10, 2007 deposition of <u>Eastwood</u> plaintiff Jesse Henry.

35.     Annexed hereto as **Exhibit FF** is a true and correct copy of a letter written by Alexis Leist in <u>Eastwood</u> dated January 22, 2008.

36.     Annexed hereto as **Exhibit GG** is a true and correct copy of a letter written by Michael Spiegel in <u>Eastwood</u> dated February 29, 2008.

37.    Annexed hereto as **Exhibit HH** is a true and correct copy of a letter written by Curt Beck in Eastwood dated March 14, 2008.

38.    Annexed hereto as **Exhibit II** is a true and correct copy of an Order dated April 15, 2008, entered by Magistrate Judge James C. Francis IV in Eastwood.

39.    Annexed hereto as **Exhibit JJ** is a true and correct copy of a letter written by Raju Sunduran in Kennedy dated March 10, 2008.

40.    Annexed hereto as **Exhibit KK** is a true and correct copy of a letter written by Michael Spiegel in Kennedy dated March 11, 2008.

41.    Annexed hereto as **Exhibit LL** is a true and correct copy of a letter written by Raju Sunduran in Kennedy dated March 19, 2008.

42.    Annexed hereto as **Exhibit MM** is a true and correct copy of an Order dated April 18, 2008, entered by Magistrate Judge James C. Francis IV in Kennedy.

43.    Annexed hereto as **Exhibit NN** is a true and correct copy of a letter written by Randall Elfenbein in Rechtschaffer dated January 22, 2008.

44.    Annexed hereto as **Exhibit OO** is a true and correct copy of a letter written by Jonathan Moore in Rechtschaffer dated February 26, 2008.

45.    Annexed hereto as **Exhibit PP** is a true and correct copy of a letter written by Randall Elfenbein in Rechtschaffer dated March 14, 2008.

46.    Annexed hereto as **Exhibit QQ** is a true and correct copy of an Order dated March 21, 2008, entered by Magistrate Judge James C. Francis IV in Rechtschaffer.

47.    Annexed hereto as **Exhibit RR** is a true and correct copy of a letter written by Raju Sunduran in the Coburn, Galitzer, Sloan and Xu cases dated July 20, 2007.

48.    Annexed hereto as **Exhibit SS** is a true and correct copy of a letter written by Tonya Jenerette in the Coburn, Galitzer, Sloan and Xu cases dated July 24, 2007.

49.     Annexed hereto as **Exhibit TT** is a true and correct copy of a letter written by Jeffrey Rothman in the Coburn, Galitzer, Sloan and Xu cases dated August 6, 2007.

50.     Annexed hereto as **Exhibit UU** is a true and correct copy of a letter written by Tonya Jenerette in the Coburn, Galitzer, Sloan and Xu cases dated August 13, 2007.

51.     Annexed hereto as **Exhibit VV** is a true and correct copy of an Order dated August 24, 2007, entered by Magistrate Judge James C. Francis IV in the Coburn, Galitzer, Sloan and Xu cases.

52.     Annexed hereto as **Exhibit WW** are excerpts from the October 22, 2007 deposition of Coburn plaintiff Megan Thomas-Melly.

53.     Annexed hereto as **Exhibit XX** is a true and correct copy of a letter written by Randall Elfenbein in Coburn dated January 22, 2008.

54.     Annexed hereto as **Exhibit YY** is a true and correct copy of a letter written by Jeffrey Rothman in the Coburn, Galitzer, Sloan and Xu cases dated February 29, 2008.

55.     Annexed hereto as **Exhibit ZZ** is a true and correct copy of a letter written by Randall Elfenbein in Coburn dated March 14 , 2008.

56.     Annexed hereto as **Exhibit AAA** is a true and correct copy of an Order dated March 28, 2008, entered by Magistrate Judge James C. Francis IV in Coburn.

57.     Annexed hereto as **Exhibit BBB** are excerpts from the September 4, 2007 deposition of plaintiff Gwynn Galitzer.

58.     Annexed hereto as **Exhibit CCC** is a true and correct copy of a letter written by Jeffrey Rothman in Galitzer dated August 11, 2007.

59.     Annexed hereto as **Exhibit DDD** are excerpts from the September 4, 2007 deposition of plaintiff Gwynn Galitzer.

60.    Annexed hereto as **Exhibit EEE** is a true and correct copy of a letter written by Randall Elfenbein in <u>Galitzer</u> dated January 22 , 2008.

61.    Annexed hereto as **Exhibit FFF** is a true and correct copy of a letter written by Fred Weiler in <u>Galitzer</u> dated March 14, 2008.

62.    Annexed hereto as **Exhibit GGG** is a true and correct copy of an Order dated March 28, 2008, entered by Magistrate Judge James C. Francis IV in <u>Galitzer</u>.

63.    Annexed hereto as **Exhibit HHH** are excerpts from the October 31, 2007 deposition of <u>Sloan</u> plaintiff Emily Sloan.

64.    Annexed hereto as **Exhibit III** is a true and correct copy of Sloan Plaintiff Emily Sloan's Response to Defendants' First Set of Interrogatories and Requests for Production of Documents, Interrogatory Response No. 3 and Document Response No. 14.

65.    Annexed hereto as **Exhibit JJJ** is a true and correct copy of a letter written by Odile Farrell in <u>Sloan</u> dated January 22, 2008.

66.    Annexed hereto as **Exhibit KKK** is a true and correct copy of a letter written by Odile Farrell in <u>Sloan</u> dated March 14, 2008.

67.    Annexed hereto as **Exhibit LLL** is a true and correct copy of an Order dated March 28, 2008 entered by Magistrate Judge James C. Francis IV in <u>Sloan</u>.

68.    Annexed hereto as **Exhibit MMM** is a true and correct copy of a letter written by Randy Elfenbein in <u>Xu</u> dated January 22, 2008.

69.    Annexed hereto as **Exhibit NNN** is a true and correct copy of a letter written by Fred Weiler in <u>Xu</u> dated March 14, 2008.

70.    Annexed hereto as **Exhibit OOO** is a true and correct copy of an Order dated March 28, 2008 entered by Magistrate Judge James C. Francis IV in <u>Xu</u>.

71.    Annexed hereto as **Exhibit PPP** are excerpts from the transcript of a hearing before Judge Kenneth M. Karas on August 29, 2005, in <u>Macnamara, et al. v. City of New York, et al.</u> 04 Civ. 9216 (KMK)(JCF).

72.    Annexed hereto as **Exhibit QQQ** are excerpts from the transcript of a hearing before Judge Kenneth M. Karas on April 20, 2006, in <u>Hershey-Wilson v. City of New York, et al.</u> 05 Civ. 7026 (KMK)(JCF).

Dated: New York, New York
       May 20, 2008

                                    **/s/**
                                    ALEXIS LEIST

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TARASIK ABDELL, JOSEPH AMATO, GARY
ASHBECK, ELLEN BARFIELD, DAVID
BARROWS, MICHAEL BECKER, DIANE BEENY,
JOHN BEHLING, RUTH BENN, BENJAMIN
BERNARD, ARUN BHALLA, KATHLEEN
BURICK, DANIEL BURNS, LINNEA CAPPS,
THOMAS CATCHPOLE, JOAN CAVANAGH,
MARC F. CHURCH, JEFFERY J. COHEN, MARK
COLVILLE, WILLIAM CONWELL, COLLEEN
COOK, SUSAN CRANE, RICHARD CSONTOS,
POLLY A. DAVIES, FELTON DAVIS, PATRICIA
DEBRUHL, PETER DEMOTT, DEWAYNE
DICKERSON, MATTHEW DIETZEN, WALTER
DITMAN, LOIS A. DOGGETT, JASON DORAIS,
SUSAN D'ORNELLAS, ALEXANDER HOLLEY
DRUMMOND, STEVEN EKBERG, CALLA EVANS,
ADAM FEINSTEIN, JAMES FLYNN, HOWARD
GALE, STEPHEN GAMBOA, GABRIEL GASTER,
TOBIAH GASTER, EDWARD GIBBONS, ZOE
GINSBURG, JOHN THEODORE GLICK, THOMAS
GOEKLER, CHARLES GOLDBERG, OREN
GOLDENBERG, DAVID GORDON, KATHRYN
GORDON, BARRETT Z. GROSS, RICHARD
HARDIE, ED HEDEMANN, KATHLEEN D.
HERNANDEZ, ROGER HILL, EDWARD
HOTCHKISS, RYAN D. HOTTLE, JANET S. HOWE,
BENJAMIN HUNT, ROCHELLE IANNUCCI,
THOMAS IVORS, MELISSA JAMESON, JENNIFER
JANNEY, DWIGHT JENKINS, MICHAEL JOSEPH,
PEPPER JUDD, SARAH KANOUSE, JAY KANTOR,
BRIAN KAVANAGH, KIMBERLY KERN, EDWARD
F. KINANE, JOSHUA KNAPP, MATTHEW KOCEK,
KATHARINE KRASSAN, LAURA KRESSLY,
ANDREW LAKEN, TESSA M. LALONDE, JARED
LANCTOT, JOHN LARSON, RICHARD LARSON,
MICHAEL R. LEVINSON, STEVEN LIPTAY,
JONOTHAN LOGAN, MARIELLE LOVECCHIO, JAY
MARX, RYAN MCGEE, BARBARA ANN MEISINGER,
TRISTAN MIGLIORE, JOHN M. MILLER, ZACHARY C.
MILLER, ROBERT V. MINERVINI, CHRIS G.
MURRAY, MARK NECHAY, BLOSSOM NICINSKI,
JAMES NOONAN, ANTHONY O'LEARY, DANIEL
O'REILLY-ROWE, MICHAEL OWEN, MICHAEL

**SECOND**
**AMENDED**
**COMPLAINT**

**JURY TRIAL DEMANDED**

**05 Civ. 8453 (KMK) (JCF)**

PALMER, CHRISTINE PARDEW, LAWRENCE PARIS,
DANIEL M. PARROTT, NATHANIEL PARRY,
JEFFREY A. PATERSON, SHANNON PETRELLO,
STEPHEN PETRICK, KATHERINE POE, LAURA
RAYMOND, EDWIN REED-SANCHEZ, BRUCE
RENWICK, ADAM RICHINS, SHANA RIGBY,
DEBORAH RIVERBEND, RAYMOND ROBINSON,
LAMBERT ROCHFORT, RONALD E. ROSENBERG,
DEVON RUECKNER, RONALD W. SAN MARCHI,
FRANK SANCHEZ III,  MATTHEW SCHENNING,
STEVEN SCOFIELD, ANAIS SENSIBA, GORDON
WILLIAM SENSIBA, ROBERT J. SIEGEL,
SELMA SPRITZER, ANDREW ST. LAURENT,
MORA MI-OK STEPHENS, THERESA SWINK,
HANNAH TAYLOR, SARAH TEPSIC,
EMILY JO TESTA, JOHN TRINKL, ANN TRUDELL,
CHRISTY ANN TURNER, JOHANNA VALENTE,
PATRICK VOLPE, ZACHARY VREELAND, FRANTZ
WALKER, JAMES J. WHITE, PATRICIA WIELAND,
JAMES WILLIAMSON, JAMES WILSON, TERAN
WILSON, JENNIFER WONG, MATTHEW WRIGHT,
RAISSA WU, and THOMAS ZAMBECK,

                         Plaintiffs,


            -versus-

THE CITY OF NEW YORK; MICHAEL
BLOOMBERG, Mayor of the City of New York,
RAYMOND KELLY, Commissioner of the New
York City Police Department, TERRENCE
MONAHAN, Assistant Chief of the New York City
Police Department, THOMAS GALATI,
and JOHN and JANE DOES,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - x



## PRELIMINARY STATEMENT

1.      This is an action to vindicate the civil rights of individuals who engaged in peaceful and

lawful protest during the Republican National Convention and were arrested as a result of a New

York City Police Department ("NYPD") policy and practice of indiscriminately arresting groups

of people who were peacefully assembled on City sidewalks and who either were participating in or were in the vicinity of demonstrations.

2.      During the Republican National Convention ("the Convention"), which was held in New York City between August 30, 2004 and September 2, 2004, the NYPD arrested more than 1,800 people in connection with peaceful protests held throughout the City.  The great majority of those charges have now been dismissed.  Because the NYPD adopted mass-arrest tactics during the duration of the Convention—including through the use of mesh nets to enclose groups of people on sidewalks—rather than making arrests after a determination of individualized probable cause, the NYPD ended up arresting many people who were engaged in lawful protest activity or who were not even demonstrators.

3.      The plaintiffs, who were arrested on Tuesday, August 31, 2004, in the vicinity of the World Trade Center site, were victims of those tactics.  The false arrests followed negotiations between protest organizers and NYPD officials, who authorized a peaceful march from the area near the PATH train station entrance, across Church Street, and on the sidewalk along Fulton Street, toward Broadway, heading toward the Convention site.  Plaintiffs began to march under police supervision, but the front of the march only traveled about half a block down the Fulton Street sidewalk.  The group was then stopped and, without any warning, were surrounded by police officers, who enclosed them in orange mesh nets.  Throughout the brief march up the Fulton Street sidewalk, plaintiffs followed all directions and instructions given by police officers. At no time were plaintiffs advised to disperse, advised that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest.

4.       Plaintiffs were among 227 persons who were then placed under arrest, handcuffed, and taken to a former bus depot known as Pier 57, which the NYPD had converted into an arrest holding facility for protestors arrested during the Republican National Convention.

5.      The floor of Pier 57 was still covered with the grease, grime, and toxic chemicals resulting from its use as a bus depot.  Because there were few benches on which detainees could sit or lie,

plaintiffs were forced to stand during most of the many hours they were held at Pier 57 or to lie on the noxious floor.

6.      Plaintiffs were finally taken on Wednesday, September 1, 2004 to the New York City criminal courts for processing.  Eventually—and in many instances only as a result of court orders—people were released, with some having spent almost two days in police custody.

7.      On October 6, 2004, the Manhattan District Attorney's office announced that it would dismiss all of the 227 prosecutions arising out of the August 31 arrests on Fulton Street.

8.      THE CITY OF NEW YORK's policies and practices of (1) making mass arrests of persons lawfully participating in or observing demonstrations and (2) detaining those arrested on minor offenses for prolonged periods of time in unhealthy conditions violated the federal and state constitutions and New York statutory and common law.

## JURISDICTION AND VENUE

9.      This civil rights action is authorized by 42 U.S.C. § 1983.  An award of costs and attorneys fees is authorized pursuant to 42 U.S.C. § 1988.  The court has subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) in that plaintiffs' claims arise in the Southern District of New York.

11.     This court has supplemental jurisdiction over all state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a).

## NOTICES OF CLAIM

12.     Plaintiffs TARASIK ABDELL, JOSEPH AMATO, ELLEN BARFIELD, DAVID BARROWS, DIANE BEENY, BENJAMIN BERNARD, KATHLEEN BURICK, DANIEL BURNS, THOMAS CATCHPOLE, MARC F. CHURCH, COLLEEN COOK, POLLY A. DAVIES, FELTON DAVIS, PATRICIA DEBRUHL, PETER DEMOTT, MATTHEW DIETZEN, WALTER DITMAN, SUSAN D'ORNELLAS, ALEXANDER HOLLEY DRUMMOND, ADAM FEINSTEIN, JAMES FLYNN, HOWARD GALE, STEPHEN

GAMBOA, TOBIAH GASTER, JOHN THEODORE GLICK, DAVID GORDON, BARRETT Z. GROSS, KATHLEEN D. HERNANDEZ, JANET S. HOWE, BENJAMIN HUNT, THOMAS IVORS, JENNIFER JANNEY, DWIGHT JENKINS, JOSHUA KNAPP, JONOTHAN LOGAN, MARIELLE LOVECCHIO, RYAN MCGEE, ZACHARY C. MILLER, CHRIS G. MURRAY, JAMES NOONAN, CHRISTINE PARDEW, DANIEL M. PARROTT, KATHERINE POE, LAURA RAYMOND, EDWIN REED-SANCHEZ, BRUCE RENWICK, ANAIS SENSIBA, GORDON WILLIAM SENSIBA, ROBERT J. SIEGEL, MORA MI-OK STEPHENS, EMILY JO TESTA, JOHN TRINKL, ANN TRUDELL, CHRISTY ANN TURNER, PATRICK VOLPE, FRANTZ WALKER, PATRICIA WIELAND, JAMES WILLIAMSON, JAMES WILSON, TERAN WILSON, and RAISSA WU filed Notices of Claim with the Comptroller of the City of New York within 90 days of the events complained of herein. More than 30 days have elapsed since the filing of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

13.    Plaintiffs were unlawfully arrested on August 31, 2004 and were thereafter unlawfully detained for approximately 14 to 50 hours. Plaintiffs were citizens or residents of the United States or were otherwise lawfully in the United States at the time of the events complained of herein.

14.    Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

15.    Defendants MICHAEL BLOOMBERG, RAYMOND KELLY, TERENCE MONAHAN, THOMAS GALATI, and JOHN and JANE DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. The defendants were at all relevant times acting under color of state law in the course and scope of their duties and functions as officers, agents, servants and employees of

defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

### FACTS

16.     The Republican National Convention was held in New York City from August 30, 2004 to September 2, 2004.  Hundreds of thousands of people participated in peaceful demonstrations in New York City during those days.

17.     THE CITY OF NEW YORK began planning for the Convention more than a year in advance.  On information and belief, the City planned to make mass arrests during the Convention without determinations of individualized probable cause, and then to hold those arrested for prolonged periods of time to prevent them from participating in other protest activity.

18.     There were approximately 1,800 Convention-related arrests, many of them mass arrests of people lawfully on public sidewalks or streets.  In many instances, the police effected those arrests by deploying long orange mesh nets to enclose large numbers of law-abiding demonstrators and innocent bystanders alike.

### The Arrests at the World Trade Center Site

19.     On Tuesday, August 31, 2004, the War Resisters League and the School of the Americas Watch organized a demonstration against the policies of the Bush administration.  The demonstration was supposed to begin at the World Trade Center site and proceed to near Madison Square Garden.

20.     At about 3:00 p.m., people began gathering near the World Trade Center site on Church Street, near the intersection of Fulton Street.  Plaintiff HEDEMANN, an organizer with the War Resisters League, negotiated with the police department, including defendant GALATI, to allow the march.  Plaintiff HEDEMANN told *The New York Times* that "the commanders assured him the march could proceed—east on Fulton Street and up Broadway to the Garden—as long as

participants walked two abreast, in order to keep sidewalks clear, and did not block traffic at intersections."

21.     At approximately 4:00 p.m., the march began.  There were approximately 800 to 1,000 people assembled at this time.  Those at the front of the march, observing the traffic signal and in cooperation with the police, crossed Church Street and proceeded eastward up Fulton Street on the sidewalk.  The march was orderly and calm.  Almost immediately after the marchers crossed Church Street, and before they had gone even a full block, police halted the march.

22.     Without any warning, police officers surrounded over 200 people with orange mesh nets, and arrested them all, even though they had remained on the public sidewalk, were not blocking the sidewalk, and complied with police instructions.

23.     Those arrested were never told to disperse, were given no opportunity to disperse, and were never told that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest..

24.     The persons arrested included people who were participating in the demonstration, others who were there merely by chance, some who were observers, and some who were taking photographs.

25.     Upon information and belief, defendants MONAHAN and GALATI ordered this mass arrest in accordance with the mass arrest tactics developed and adopted by policymaking officials of the New York City Police Department and THE CITY OF NEW YORK.

### The Detentions at Pier 57

26.     The over 200 people arrested on the Fulton Street sidewalk were transported to a facility known as Pier 57.  Pier 57, located on the Hudson River at 11th Avenue and 15th Street in Manhattan, was formerly a Metropolitan Transit Authority bus depot.

27.     According to published reports, three environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot.  Those conditions had

not been corrected by the time of plaintiffs' detention at Pier 57.

28.     Upon arrival at Pier 57, detainees, including the plaintiffs, were searched, had their property taken, and were placed in one of the holding cells.  Detainees could not sit on the floor without becoming covered in the filth.  There were generally not enough benches for the number of arrestees in each cell.  Many arrestees got rashes or blisters from the substance on the floor. The air quality was also poor, and many arrestees developed coughs or had difficulty breathing. At night, the facility became cold, and the detainees, who were dressed for a hot summer day in New York, were not provided with any blankets, nor was there any heat.  The arrestees were provided with food at sporadic times while at Pier 57, although some went many hours before receiving anything to eat.

29.     Upon information and belief, there was no fingerprinting equipment at Pier 57, and the only processing that took place there was an inventory of personal belongings.  Upon information and belief, the criminal courts were available to process those being held at Pier 57, and the State of New York was processing fingerprints in a timely manner.  Nonetheless, the NYPD, without justification, detained people at Pier 57 for lengthy periods of time without making any meaningful effort to process them so they could be released.  As a result of this, many people, including the plaintiffs, remained in police custody for unnecessarily lengthy periods of time.

30.     Upon information and belief, the conditions of plaintiffs' detention, and its duration, were the result of policies and practices developed by policymakers of the New York City Police Department and THE CITY OF NEW YORK.

31.     From Pier 57, the detainees were transferred to Central Booking at 100 Centre Street for processing.  There the detainees were photographed and fingerprinted.  The detainees were held for additional time at Central Booking before being either arraigned in front of a judge or given a Desk Appearance Ticket and released from Central Booking.  The duration of detention for the plaintiffs ranged from approximately 14 to 50 hours.  Upon information and belief, those arrested on Fulton Street were charged with only violations such as disorderly

8

conduct or parading without a permit.

32.    On October 6, 2004, the Manhattan District Attorney's office announced that it would

dismiss all of the 227 prosecutions arising out of the August 31, 2004 arrests on Fulton Street.

33.    The actions described above were taken under color of law and as a result of policies and

practices adopted and implemented by THE CITY OF NEW YORK.

**JURY DEMAND**

34.    Plaintiffs demand a jury trial on each and every one of their claims.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF UNITED STATES AND NEW YORK CONSTITUTIONS**
**ARISING FROM PLAINTIFFS' ARREST**

35.    The arrest of plaintiffs violated their rights under the First, Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution and Article I, Section 8 and Article I, Section 12 of

the New York State Constitution.

36.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and

serious bodily injury, pain and suffering, emotional distress and psychological injury, great

humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF UNITED STATES AND NEW YORK CONSTITUTIONS**
**ARISING FROM PLAINTIFFS' DETENTION**

37.    The detention of plaintiffs violated their rights under the First, Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution and Article I, Section 8 and Article I,

Section 12 of the New York State Constitution.

38.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and

serious bodily injury, pain and suffering, emotional distress and psychological injury, great

humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## THIRD CAUSE OF ACTION:
## FALSE ARREST AND FALSE IMPRISONMENT

39.     The false arrest and imprisonment of plaintiffs without reasonable or probable cause,

illegally and without a warrant, and without any right or authority to do so, were the direct and

proximate cause of injury and damage to the plaintiffs and violated their statutory and common

law rights as guaranteed by the laws and Constitution of the State of New York.

40.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and

serious bodily injury, pain and suffering, emotional distress and psychological injury, great

humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.


        **WHEREFORE**, plaintiffs request the following relief jointly and severally against all of

the defendants:

> a.   Compensatory damages to all plaintiffs;

> b.   Punitive damages to all plaintiffs;

> c.   Pre- and post-judgment costs, interest and attorney's fees;

> d.   Such other and further relief as this court may deem just and proper.


                        Respectfully submitted,

                        NORMAN FREDERICK BEST (NB 1968)
                        575 Madison Avenue, 10th Floor
                        New York, New York 10022
                        (212) 671-0122

                        ALAN LEVINE (AL 5297)
                        99 Hudson Street, 14th Floor
                        New York, New York 10013
                        (212) 739-7506

                        MICHAEL L. SPIEGEL (MS 0856)
                        111 Broadway, Suite 1305

New York, New York 10006
(212) 587-8558

MARTIN R. STOLAR (MS 1576)
351 Broadway
New York, New York 10013
(212) 219-1919

Counsel for Plaintiffs


By: _____
        Michael L. Spiegel (MS 0856)

Dated: November 30, 2006
        New York, New York

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
COURTNEY LEE ADAMS, THOMAS
ADAMSON, CHRIS AGNESE, SARAH ALDEN,
CHRISTINA ARGYROS, SABINE
ARONOWSKY, EUGENI AVERBAKH, SCOTT
BEIBIN, CHRISTINA BENSON, STEVEN
BLACK, JAIE BOSSE, LIAM BURNELL,
DAVID CASTILLO, EDWARD CODEL,
BENJAMIN CODY, GABRIEL COHN, ERIC
CORLEY, NANCY DIAMOND, RYAN
DOXTADER, YASMINE FARHANG, MICHAEL
FIX, JOHN FLANIGAN, MARLENE FLATON,
NAIMAH FOWLER, AMELIA GEOCOS,
DAVID GEOCOS, JENNIFER GILES, MICHAEL
GINDI, DANIEL GINGOLD, TREVOR GIULIANI,
ZACHARY GOLDSTEIN, JAMES GRAHAM,
BARBARA JANE HARDEN JONES, ERIK
HENRIKSEN, LILY HUGHES-DUNN, BRIAN
HURLEY, AISHA JABOUR, JUANPABLO
JUAREZ, CLIFFORD KAPLAN, SANDOR KATZ,
THOMAS KENNEDY, KRISTIN KOJIS,
JENNIFER LAHN, NADGIA LARA, CAITLIN
LEMMO, ALTHEA LEWIS, RICHARD LOVEJOY,
BRIAN LUCREZIA, DAVID MADDOX, AARON
MARET, LISA MARTIN, JANET MILLER, ERIC
MORSON, SCOTT O'DIERNO, EMILY PAINE,
SARAH PALMER, JEFFREY PARROTT, BETH
PELLER, DANIEL PERRY, CAROLINE PIERCE,
ROBERT PONCE, DANA PRYOR, DANIEL REED,
TRENTON REICH, MICHAEL REILLY, ANGEL
RIVERA, JESSE ROSEMOORE, CYNTHIA ROSIN,
DENISE RUBINFELD, RUE SAKAYAMA,
DOMINICK SASSONE, MIHO
SCHUTZENHOFER, NAZIE SHEKARCHI,
CHRISTOPHER SHORTRIDGE, ALEXIS
SHOTWELL, ARIELLE SOLOFF, JAMES STEITZ,
SADA STIPE, REBECCA SUTTON, JESSICA
TAFT, SIDNEY VAULT, ROGER VILANOVA
MARQUES, NOAH WEISS, SETH WESSLER,
ADRIANNE WILCOX, REBECCA WOOD,
DAVID ZALK, DANIEL ZARRELLA, THOMAS
BACON, GREG GRIFFITH, MICHELLE KAYE,
DAVID HILL, ERICA MITRANO, ROBERT

**SECOND AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF Case**

**05 CV 9484 (KMK)(JCF)**

PIETRI, ELLEN TUZZOLO and
JOEL VIERTEL,

                        Plaintiffs,

    -against-

THE CITY OF NEW YORK, GERALD
DIECKMANN, JAMES ESSIG, JOSEPH
LAMENDOLA, JEREMIAH MALONE, CUONG
NGUYEN, VICTOR PEREZ, JONATHAN
QUIMBY, REMY RANDALL, JAMES RUFLE,
DANIEL RYAN, and JOHN and JANE DOES,

                        Defendants.
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.     The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.     Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICES OF CLAIM

6.     Plaintiffs COURTNEY LEE ADAMS, THOMAS ADAMSON, CHRIS AGNESE, CHRISTINA ARGYROS, SABINE ARONOWSKY, EUGENI AVERBAKH, SCOTT BEIBIN, CHRISTINA BENSON, STEVEN BLACK,  JAIE BOSSE, LIAM BURNELL, DAVID CASTILLO, EDWARD CODEL, GABRIEL COHN, ERIC CORLEY, MARLENE FLATON, NAIMAH FOWLER, MICHAEL GINDI, TREVOR GIULIANI, ZACHARY GOLDSTEIN, JAMES GRAHAM, GREG GRIFFITH, LILY HUGHES-DUNN,  AISHA JABOUR, JUANPABLO JUAREZ, CLIFFORD KAPLAN, SANDOR KATZ, KRISTIN KOJIS, CAITLIN LEMMO, ALTHEA LEWIS, LISA MARTIN, JANET MILLER, ERIC MORSON, SCOTT O'DIERNO, EMILY PAINE, SARAH PALMER, JEFFREY PARROTT, DANIEL PERRY, DANA PRYOR, MICHAEL REILLY, ANGEL RIVERA, JESSE ROSEMOORE, CYNTHIA ROSIN, DENISE RUBINFELD, RUE SAKAYAMA, DOMINICK SASSONE,

3

MIHO SCHUTZENHOFER, NAZIE SHEKARCHI, JAMES STEITZ, SADA STIPE, JESSICA TAFT, SIDNEY VAULT, JOEL VIERTEL, ROGER VILANOVA MARQUES and NOAH WEISS filed Notices of Claim with the Comptroller of the City of New York within 90 days of the events complained of herein. More than 30 days have elapsed since the filing of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.      Plaintiffs are citizens, residents, or were otherwise lawfully in the United States at the time of the events complained of herein.

8.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.      Defendants JAMES ESSIG, GERALD DIECKMANN, JOSEPH LAMENDOLA, JEREMIAH MALONE, CUONG NGUYEN, VICTOR PEREZ, JONATHAN QUIMBY, REMY RANDALL, JAMES RUFLE, DANIEL RYAN, and JOHN and JANE DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. The aforenamed defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and

4

functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK,

were acting for, and on behalf of, and with the power and authority vested in them by THE CITY

OF NEW YORK and the New York City Police Department, and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

### STATEMENT OF RELEVANT FACTS

10.    On August 31, 2004, at approximately 7:00 p.m., plaintiffs were in the vicinity of

Union Square, New York, New York.  Many of the plaintiffs were there to express their political

opinions related to the Republican National Convention, which was being held in New York City

at that time.

11.    A number of people, including people playing musical instruments, entered the

roadway of Union Square East.  Some of them carried signs or banners, some were chanting.

Defendants ESSIG, DIECKMANN and DOES ordered police officers to form a line across the

roadway of Union Square East at the north side of the intersection with East 16th Street.  The line

of officers directed anyone approaching from the south or west, including plaintiffs, to move

eastward onto East 16th Street toward Irving Place, which was the next north-south cross street.

Some of the plaintiffs were in the roadway, some were on the sidewalk.

12.    After several hundred people had moved onto East 16th Street, traveling on both

sidewalks and in the roadway, police officers closed off egress from the block by forming a line

across East 16th Street at Irving Place, at the direction of defendants ESSIG, DIECKMANN and

DOES.  Officers were also ordered to prevent egress at the Union Square end of the block.

13.    Plaintiffs, who were all on East 16th Street between Union Square East and Irving

5

Place when officers closed off both ends of the block, were placed under arrest by defendants ESSIG, DIECKMANN, LAMENDOLA, MALONE, NGUYEN, PEREZ, QUIMBY, RANDALL, RUFLE, RYAN and DOES. Plaintiffs were charged with Parading Without a Permit and Disorderly Conduct.

14.    When plaintiffs approached East 16th Street, and throughout the time plaintiffs were on East 16th Street, there was a visible police presence in the area, and plaintiffs followed all directions and instructions given by police officers. At no time were plaintiffs advised or permitted to disperse, advised that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest.

15.    Subsequent to their arrest, most plaintiffs were removed to Pier 57. At some point, each plaintiff was removed to Central Booking at 100 Centre Street.

16.    During plaintiffs' detention, various plaintiffs were placed in excessively tight handcuffs, and handcuffs were applied for excessive periods of time. Plaintiffs were not provided adequate facilities and materials for sleeping, sitting, toileting, and personal hygiene, and were denied adequate medical care. Many plaintiffs were confined and transported in over-heated vehicles, were denied adequate medical care, were pepper sprayed, verbally harassed, and were subjected to other means of inflicting pain and discomfort. Plaintiffs detained at Pier 57 were forced to come into intimate contact with noxious and irritating substances, including, on information and belief, toxic chemicals in the air and on the walls and floor of Pier 57.

17.    All criminal charges against plaintiffs were subsequently dismissed.

**FIRST CLAIM**

**DEPRIVATION OF RIGHTS UNDER THE**

6

**UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

18.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

19.    By their conduct and actions in causing the arrest and imprisonment of plaintiffs, and in arresting and imprisoning plaintiffs, by preventing plaintiffs from engaging in protected First Amendment conduct, by retaliating against plaintiffs because of their perceived exercise of First Amendment rights, by violating the arrestees' Fourteenth Amendment rights to equal protection, by using excessive force, by detaining plaintiffs for an excessive amount of time, by detaining plaintiffs under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees, by deliberate indifference to medical needs, and by maliciously prosecuting plaintiffs, defendants ESSIG, DIECKMANN, LAMENDOLA, MALONE, NGUYEN, PEREZ, QUIMBY, RANDALL, RUFLE, RYAN, and DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments.

20.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

**SECOND CLAIM**

7

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

21.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

22.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, including: (a) the arrest of persons lawfully participating in, observing, or in the vicinity of demonstrations, protests or other forms of public expression during the Republican National Convention; (b) the unreasonably long detentions of such persons arrested on minor charges; (c) the detention of such persons under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees; (d) the infliction of pain and suffering upon such persons, including by the use of excessive force, keeping arrestees in handcuffs for extended periods of time, applying extremely tight handcuffs, denying toileting and personal hygiene facilities and supplies, denying adequate facilities to sit or sleep, confining and transporting in over-heated vehicles, exposure to irritants, denial of adequate medical care, pepper spraying, verbal harassment, and other means of inflicting pain and discomfort; (e) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; and (f) the application of that statute to sidewalk marches.  Each such policy, practice, custom and usage caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

8

23.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

24.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

25.     By the actions described above, defendants falsely arrested and imprisoned plaintiffs, or caused them to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

26.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### ASSAULT AND BATTERY

27.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

9

28.     By the actions described above, defendants did inflict assault and battery upon plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

29.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### MALICIOUS PROSECUTION

30.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

31.     By the actions described above, defendants maliciously prosecuted plaintiffs CHRISTINA BENSON, LIAM BURNELL, ERIC CORLEY, TREVOR GIULIANI, ALTHEA LEWIS, DANA PRYOR, CYNTHIA ROSIN, and SIDNEY VAULT, without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

32.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### NEGLIGENCE

33.    The plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

34.    Defendants, jointly and severally, negligently caused injuries, emotional distress and damage to plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

35.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

**WHEREFORE**, plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empaneling of a jury to consider the merits of the claims herein;

d.  Pre- and post-judgment costs, interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

11

Dated:      New York, New York
            September 14, 2006

                        MICHAEL L. SPIEGEL (MS 0856)
                        111 Broadway, Suite 1305
                        New York, New York 10006
                        (212) 587-8558

                        NORMAN FREDERICK BEST (NB 1968)
                        575 Madison Avenue, 10th Floor
                        New York, New York 10022
                        (212) 671-0122

                        *Attorneys for Plaintiffs*


                        By:_____/s/_____
                            Michael L. Spiegel (MS 0856)

# Exhibit C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
BARBARA ARANEDA, ANNE BURNS, HAYS    )
ELLISEN, KATHLEEN O'REILLY,  SANDY   )
SANDERS, DAVID SEGAL, BRENDAN     )
SEXTON, EDWARD SUGDEN, ELIZABETH  )    **AMENDED**
WALSH, WEI-WEI WANG, and BRIAN WEEKS, )   **COMPLAINT**
                            )
             Plaintiffs,     )
                            )    **JURY TRIAL DEMANDED**
   -against-               )
                            )    **ECF Case**
THE CITY OF NEW YORK, NEREIDA     )
CABASSA, PAUL DUNNE, BRIAN      )    **05 CV 9738 (RJS)(JCF)**
CHRISTOPHER, DAVID SONTZ, TIMOTHY  )
CAI, DREW REPETTI, NOEL FLORES,    )
SERGEANT GERALD FITZPATRICK,    )
STEPHEN HAMMERMAN,         )
THOMAS DOEPFNER, KERRY SWEET,   )
RUBY MARIN-JORDAN, BRUCE SMOLKA, )
JOHN COLGAN, DAVID COHEN**,** and DOES, )
                            )
             Defendants.    )
---------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York. The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.     This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

1

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.     The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.     Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

## VENUE

5.     Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICES OF CLAIM

6.     Plaintiffs BARBARA ARANEDA, ANNE BURNS, HAYS ELLISEN,

KATHLEEN O'REILLY, SANDY SANDERS, DAVID SEGAL, BRENDAN SEXTON,

EDWARD SUGDEN, ELIZABETH WALSH, WEI-WEI WANG, and BRIAN WEEKS filed

Notices of Claim with the Comptroller of the City of New York within 90 days of the events

complained of herein.  More than 30 days have elapsed since the filing of the Notices of Claim,

and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.     Plaintiffs were citizens, residents, or lawfully present in the United States at the

time these incidents occurred.

2

8.    Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.    Defendants CABASSA, DUNNE, CHRISTOPHER, SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, SMOLKA, COLGAN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, COHEN, and DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  The aforenamed defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF RELEVANT FACTS

10.    On August 31, 2004, at approximately 9:00 p.m., plaintiffs were in the vicinity of Herald Square, New York, New York.  Many plaintiffs were there to express their political opinions relating to the Republican National Convention, which was being held in New York City at that time.  Some plaintiffs were there to observe what was happening.

3

11.    At that time Sixth Avenue was closed to vehicular traffic at 34th and 35th Streets by the New York City Police Department.  The Republican National Convention was taking place at the nearby Madison Square Garden.

12.    While plaintiffs were on 35th Street, and throughout the time plaintiffs were on 35th Street, there was a visible police presence in the area, and plaintiffs followed all directions and instructions given by police officers unless prevented from doing so by other police officers. At no time were plaintiffs allowed to disperse, advised that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest prior to the plaintiffs not being allowed to leave the area.

13.    Some plaintiffs had been standing on 35th Street near 6th Avenue for an hour or more.  Some of the protesters carried signs or banners, some were chanting.  Some plaintiffs were walking west on 35th Street from 5th Avenue or east on 35th Street from 6th Avenue. Defendants ordered police officers to move eastward on 35th Street toward 5th Avenue, which was the next north-south cross street.  Some of the plaintiffs were in the roadway, some were on the sidewalk.

14.    Another line of police offices on foot and with motor scooters formed a line across 35th Street near 5th Avenue at the direction of defendant SMOLKA.  Officers were ordered to prevent egress at either end of 35th Street.

15.    Plaintiffs, who were all on 35th Street between 6th and 5th Avenues when police closed off both ends of the block, were placed under arrest by defendants CABASSA, DUNNE, CHRISTOPHER, SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, SMOLKA, and DOES. Some plaintiffs were charged with Disorderly Conduct and Parading without a Permit, some were only charged with Disorderly Conduct..

4

16.    Subsequent to their arrest, plaintiffs were removed to Pier 57, which was under the supervision of COLGAN.  Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, and MARIN-JORDAN to create false accounts of plaintiffs' arrests.  At some point, each plaintiff was removed to Central Booking at 100 Centre Street.

17.    During plaintiffs' detention, various plaintiffs were placed in excessively tight handcuffs, and handcuffs were applied for excessive periods of time.  Plaintiffs were not provided adequate facilities for sleeping, sitting and toileting, or personal hygiene.  Many plaintiffs were denied adequate medical care, verbally harassed, and were subjected to other means of inflicting pain and discomfort.  Plaintiffs detained at Pier 57 were forced to come into intimate contact with noxious and irritating substances, including, on information and belief, toxic chemicals in the air and on the walls and floor of Pier 57.

18.    All criminal charges against plaintiffs were subsequently dismissed.

19.    Defendant COHEN directed a surveillance campaign, and gathered intelligence, concerning individuals and groups in preparation for the RNC.  The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created a climate of hostility toward protesters.  COHEN improperly conflated protesters' planned activities with civil disobedience, violence, and terrorism.

**FIRST CLAIM**

**DEPRIVATION OF RIGHTS UNDER THE**

5

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

20.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

21.     By their conduct and actions in causing the arrest and imprisonment of plaintiffs, and in arresting and imprisoning plaintiffs, by preventing plaintiffs from engaging in protected First Amendment conduct, by retaliating against plaintiffs because of their perceived exercise of First Amendment rights, by violating the arrestees' Fourteenth Amendment rights to equal protection, by using excessive force, by detaining plaintiffs for an excessive amount of time, by detaining plaintiffs under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees, by deliberate indifference to medical needs, by creating false accounts of plaintiffs' conduct, by misrepresenting protesters' expected activities and encouraging and creating a climate of hostility toward protesters, and by maliciously prosecuting plaintiffs, defendants CABASSA, DUNNE, CHRISTOPHER,  SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, SMOLKA, COLGAN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, COHEN, and DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments.

22.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

6

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

23.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

24.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, including: (a) the arrest of persons lawfully participating in, observing, or in the vicinity of demonstrations, protests or other forms of public expression during the Republican National Convention; (b) the unreasonably long detentions of such persons arrested on minor charges; (c) the detention of such persons under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees; (d) the infliction of pain and suffering upon such persons, including, keeping arrestees in handcuffs for extended periods of time, applying extremely tight handcuffs, denying adequate facilities to sit or sleep, exposure to irritants, and other means of inflicting pain and discomfort; and (e) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; and (f) the application of the Parading Without a Permit statute to sidewalk marches; (g) enforcement of an unconstitutional statute, Penal Law section 240.20(5), Disorderly Conduct (obstructing pedestrian traffic); (h) the application of the Disorderly Conduct statute, subsection 5, to sidewalk marches; (i) not issuing summonses to RNC arrestees; (j) not issuing Desk Appearance Tickets to RNC arrestees; (k) the fingerprinting of all RNC arrestees; and (l) making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at

7

criminal trials.  Each such policy, practice, custom and usage caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

25.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### THIRD CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

26.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

27.     By the actions described above, defendants THE CITY OF NEW YORK, CABASSA, DUNNE, CHRISTOPHER, SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, and DOES falsely arrested and imprisoned plaintiffs, or caused them to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

28.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### FOURTH CLAIM

### ASSAULT AND BATTERY

8

29.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

30.    By the actions described above, defendants THE CITY OF NEW YORK, CABASSA, DUNNE, CHRISTOPHER, SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, and DOES did inflict assault and battery upon plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

31.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### MALICIOUS PROSECUTION

32.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33.    By the actions described above, defendants THE CITY OF NEW YORK, CABASSA, DUNNE, CHRISTOPHER, SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, and DOES maliciously prosecuted plaintiffs ANNE BURNS, ELIZABETH WALSH, WEI-WEI WANG, and BARBARA ARANEDA without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

9

34.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### NEGLIGENCE

35.     The plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

36.     Defendants THE CITY OF NEW YORK, CABASSA, DUNNE, CHRISTOPHER, SONTZ, CAI, REPETTI, FLORES, FITZPATRICK, and DOES, jointly and severally, negligently caused injuries, emotional distress and damage to plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

37.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1981 AND 1983

38.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

39.     By their conduct in failing to remedy the wrongs committed by employees of THE CITY OF NEW YORK under their supervision, and in failing to properly train, supervise,

or discipline employees of THE CITY OF NEW YORK under their supervision, defendants SMOLKA, COLGAN, HAMMERMAN, DOEPFNER, SWEET, and MARIN-JORDAN caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

40.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### NEW YORK CITY ADMINISTRATIVE CODE SECTION 10.110, PARADING WITHOUT A PERMIT, IS UNCONSTITUTIONAL

41.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

42.      New York City Administrative Code section 10.110, Parading Without a Permit, on its face, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment, and is unconstitutionally vague and overbroad, in that it permits police officers to apply the statute to protected First Amendment activity on public sidewalks.

43.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, plaintiffs demand the following relief jointly and severally against all of the defendants:

        a. Compensatory damages;

11

b.  Punitive damages;

c.  The convening and empaneling of a jury to consider the merits of the claims herein;

d.  Pre- and post-judgment costs, interest and attorney's fees;

e.  Injunctive relief requiring defendants to return to plaintiffs, or where necessary to expunge and/or destroy all records of fingerprints taken in conjunction with their arrests and all other information or records concerning their arrests, to remove from all records and databases maintained by defendants any reference to plaintiffs' arrests, and to request that all law enforcement agencies that have received information concerning plaintiffs' arrests destroy such information.

f.  Injunctive relief enjoining defendants from applying New York City Administrative Code section 10.110, Parading Without a Permit, to sidewalk marches.

g.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
            January 24, 2008

                                    NORMAN FREDERICK BEST
                                    Law office of Susan Douglas Taylor
                                    575 Madison Street, 10th Floor
                                    New York, New York 10022
                                    (212) 671-0122

                                    MICHAEL L. SPIEGEL
                                    111 Broadway, Suite 1305
                                    New York, New York 10006

12

(212) 587-8558
*Attorney for Plaintiffs*


By:    _____/s/_____
MICHAEL L. SPIEGEL

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SARAH COBURN, MEGAN THOMAS-MELLY, )
and JUSTIN BARRON, )                                    **SECOND AMENDED**
　) 　                                                  **COMPLAINT**
　)
　　　　　　　　　Plaintiffs, )                          **ECF CASE**
　)
　　-against- )                                          **05 Civ. 7623 (RJS) (JCF)**
　)
THE CITY OF NEW YORK; MICHAEL )                         **JURY TRIAL**
BLOOMBERG, Mayor of the City of New York; )             **DEMANDED**
RAYMOND KELLY, New York City Police )
Commissioner; STEPHEN HAMMERMAN, )
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID )
COHEN, Deputy Commissioner for Intelligence, )
New York City Police Department; THOMAS )
DOEPFNER, Assistant Deputy Commissioner for )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD )
DEPUTY INSPECTOR KERRY SWEET, NYPD )
Legal Bureau Executive Officer; NYPD Legal )
Bureau Senior Counsel RUBY MARIN-JORDAN )
NYPD LEGAL BUREAU SUPERVISOR(S) AT )
PIER 57; JOSEPH ESPOSITO, Chief of the New )
York Police Department; THOMAS GRAHAM, )
Commander, Disorder Control Unit, New York City )
Police Department; JACK MCMANUS, Assistant )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough )
Manhattan South, New York City Police )
Department; TERENCE MONAHAN, Assistant )
Chief of the Bronx Borough Command; JOHN J. )
COLGAN, Assistant Chief, New York City Police )
Department; JAMES P. O'NEILL, Deputy Chief, )
New York City Police Department; POLICE )
OFFICER GREGORY KARNBACH, Shield No. )
17367; POLICE SERGEANT RAYMOND NG, )
Shield No. 92286; JOHN DOES; RICHARD )
ROES; HUDSON RIVER PARK TRUST, )
　)
　　　　　　　　　Defendants. )
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs SARAH COBURN,

MEGAN THOMAS-MELLY, and JUSTIN BARRON seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983,

by the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York. The plaintiffs

seek damages, both compensatory and punitive, affirmative and equitable relief, an award

of costs and attorneys' fees, and such other and further relief as this court deems

equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States,

including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42

U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C.

§§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of

the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction,

pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties

that are so related to claims in this action within the original jurisdiction of this court that

they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as

pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.    Plaintiffs SARAH COBURN and JUSTIN BARRON filed Notices of Claim for false arrest and related torts with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein. More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.    Plaintiff MEGAN THOMAS-MELLY's application to file a late Notice of Claim was granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.    Plaintiff SARAH COBURN is a citizen of the United States, and at all times relevant herein resided in the state of Connecticut.

9.    Plaintiff MEGAN THOMAS-MELLY is a citizen of the United States, and at all times relevant herein resided in the state of New York.

10.    Plaintiff JUSTIN BARRON is a citizen of the United States, and at all times relevant herein resided in the state of Michigan.

11.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police

officers as said risk attaches to the public consumers of the services provided by the New York

City Police Department ("NYPD").

12.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the

Mayor of the City of New York and the chief policy making official for the City and its departments,

including the New York City Police Department and is responsible, in whole and/or in part, for the

creation, implementation, promulgation and enforcement of the policies, practices and/or customs

complained of herein.  He is sued in both his individual and official capacities.

13.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police

Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the

creation, implementation, promulgation and enforcement of the policies, practices and /or customs

complained of herein.  He is sued individually and in his official capacity.

14.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the

Deputy Commissioner for Legal Matters for the New York City Police Department, and he is

responsible, in whole and/or in part, for the creation, implementation, promulgation and

enforcement of the policies, practices and /or customs complained of herein.  He is sued

individually and in his official capacity.

15.    DAVID COHEN, is and was at all times relevant herein, the Deputy

Commissioner for Intelligence for the New York City Police Department, and he is

responsible, in whole and/or in part, for the creation, implementation, promulgation and

enforcement of the policies, practices and /or customs complained of herein.  He is sued

individually and in his official capacity.

16.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant

Deputy Commissioner for Legal Matters for the New York City Police Department, and he is

responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18.    NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

19.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in his official capacity.

20.    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. They are sued individually and in his official capacity.

21.     Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

22.     Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

23.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

24.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.    He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

25.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

26.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

27.     Defendants MONAHAN, O'NEILL, KARNBACH, NG, and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course

of their duties. Defendants MONAHAN, O'NEILL, KARNBACH, NG, and JOHN DOES are sued individually and in their official capacity.

28.    Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL and RICHARD ROES are sued individually and in their official capacity.

29.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York. Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the

employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures. Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC). Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## <u>STATEMENT OF FACTS</u>

30.    Plaintiff SARAH COBURN came to New York City in late August, 2004 to peacefully and lawfully exercise her rights to free speech and assembly during the period of the Republican National Convention ("RNC"), and to enjoy her time in New York City as an out-of-town visitor during her stay.

31.    MEGAN THOMAS-MELLY also peacefully and lawfully exercised her rights to free speech and assembly during the period of the RNC. She also wished to enjoy the period of the RNC in peace and good-feeling.

32.    JUSTIN BARRON also peacefully and lawfully exercised his rights to free speech and assembly during the period of the RNC. He also wished to enjoy the period of the RNC in peace and good-feeling.

33.     Plaintiffs were arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

32.     On August 29, 2004, plaintiffs SARAH COBURN and MEGAN THOMAS-MELLY had participated in the large, peaceful, United for Peace and Justice march in Manhattan. They later that afternoon went to the New York Public Library at 42nd Street, and from there walked to Times Square with a group of people.

33.     On August 29, 2004, plaintiff JUSTIN BARRON also went to the New York Public Library at 42nd Street, and from there walked to Times Square with a group of people.

34.     After plaintiffs and the group arrived at Times Square and had been there for a period of time, police officers there became very aggressive. The police officers began to arrest some of the people present there. Some of the police officers were using horses in an aggressive fashion to move people who were present there.

35.     Defendants O'NEILL and MONAHAN were commanding officers in the area responsible in whole or in part for the creation of these hostile conditions.

36.     Plaintiffs decided to leave Times Square due to the arrests and the increasingly hostile police behavior. They exited Times Square to the west, walking with a group of people, and went south on Eighth Avenue. Plaintiffs hoped to find a subway and leave the area entirely.

37.     As they were walking away from Times Square, plaintiffs SARAH COBURN and MEGAN THOMAS-MELLY saw a police cruiser troll alongside of them, and a JOHN DOE police officer in the cruiser filming the group with a video camera.

38.     When plaintiffs and the group arrived at approximately 45th Street and Eighth Avenue, they were stopped by JOHN DOE police officers and arrested.

39.     Plaintiffs and the group were not free to leave this location, and the police officers surrounded them with metal barriers.

40.     Plaintiffs were told to kneel on the concrete by the JOHN DOE police officers present there.

41.     On information and belief, all those present there were handcuffed behind their backs and placed into MTA City Buses by NYPD officers for transport to Pier 57.

42.     Plaintiffs were handcuffed behind their backs and placed into buses by NYPD officers for transport to Pier 57. When the buses arrived at the pier a JOHN DOE defendant, on information and belief of the rank of lieutenant or higher, knocked on a window of the bus holding plaintiffs SARAH COBURN and MEGAN THOMAS-MELLY to get the arrestees' attention, and extended his middle finger at the arrestees.

43.     When the bus holding plaintiff JUSTIN BARRON was waiting outside of the pier plaintiff JUSTIN BARRON began to feel ill from the extreme heat. When other arrestees began yelling that plaintiff JUSTIN BARRON badly needed water, a JOHN DOE defendant, who was the driver of the bus, stood in the aisle of the bus and poured water on floor of the bus.

44.     Defendant KARNBACH was assigned as the arresting officer for plaintiffs SARAH COBURN and MEGAN THOMAS-MELLY.

45.     Defendant NG was assigned as the arresting officer for plaintiff JUSTIN BARRON.

46.     The arrest decision was made by Defendant MONAHAN, without

justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct. This decision to engage in the mass arrests at 45th Street and 8th Avenue was communicated to lower-ranking NYPD officers, who effected those orders.

47.     Defendants RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility at 45th Street and 8th Avenue, and participated directly and/or in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers. They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

48.     Plaintiffs were taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

49.     Pier 57 is owned by and/or under the control of defendant HRPT.

50.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

51.     On information and belief, all of the arrestees from 45th Street and Eighth Avenue, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

52.     The conditions at Pier 57 were atrocious. The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating. The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier. On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there. During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

53.     Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO, MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests**.** On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

54.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and

usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

55.     The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also

suffered by RNC detainees upon their subsequent transfer to and detention at the Central

Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in

custody of the CITY OF NEW YORK for periods of time longer than were reasonable or

necessary.

56.     After their detention at Pier 57, further callous and unreasonable treatment

and conditions of confinement were endured by plaintiffs during their transfer to and

confinement at the Central Booking Facility at 100 Centre Street.

57.     During their transfer from Pier 57 to Central Booking, a JOHN DOE

driver of the transport vehicle, on information and belief named "Craig", called the

women being transported, including plaintiffs, "bitches," "smelly dykes," and other sexist

and degrading epithets, and stated, in sum and substance, that if the women had been men

he would have hit them in their heads.

58.     Plaintiff JUSTIN BARRON was also subjected by JOHN DOE defendants

to hateful mockery evincing an anti-gay bias, both while in Times Square and during the

time of his incarceration in the custody of the NYPD.

59.     On information and belief, during the periods of their confinement the vast

majority of RNC arrestees were subjected to unreasonably tight and painful wrist

restraints/handcuffs.

60.     During their time in custody plaintiffs were subjected to unreasonably

tight and painful wrist restraints/handcuffs.

61.     Plaintiff SARAH COBURN was released after approximately 24 hours in

custody. She was charged with disorderly conduct and parading without a permit. All

charges against SARAH COBURN have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

62.     Plaintiff MEGAN THOMAS-MELLY was released after approximately 21 hours in custody. She was charged with disorderly conduct and parading without a permit. All charges against MEGAN THOMAS-MELLY have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

63.     Plaintiff JUSTIN BARRON was released after approximately 25 hours in custody. He was charged with disorderly conduct and parading without a permit. All charges against JUSTIN BARRON have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

64.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, medics, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

65.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass

arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time. The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created this climate of hostility toward demonstrators and these unconstitutional and illegal policies resulting therefrom.

66.     This  tone of hostility to demonstrators, and the resultant policies, customs, practices and usages-to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

67.     Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of  a permit for use of Central Park's  Great  Lawn  by  demonstrators  for  a  rally  at  the  end  of  the  largest  planned

demonstration of the RNC period on August 29, 2004.

68.     The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

69.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, including plaintiffs, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

70.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees, including plaintiffs, in part to prevent the arrestees from exercising their rights to free speech and expression.

**<u>FIRST CLAIM</u>**

**DEPRIVATION OF RIGHTS UNDER THE**

**UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

71.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

72.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, KARNBACH, NG, and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

73. As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## **SECOND CLAIM**

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER

## THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

74.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

75. By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

76. As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## <u>THIRD CLAIM</u>

## LIABILITY OF THE CITY OF NEW YORK

## FOR CONSTITUTIONAL VIOLATIONS

77.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

78.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

79.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

81.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

82.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

87.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

88.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of promoting those members of the NYPD who participated in the

NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

89.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of engaging in mass arrests without probable cause and/or

individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and

vague parading ordinance, and of discriminatorily and unequally applying the parading

ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of

these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are:

(a) the enforcement of the unconstitutional parading statute, New York City Administrative Code

section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit

statute to people walking on the sidewalk; (c) the application of the Disorderly Conduct statute,

subsection 5, to people walking on the sidewalk; (d) enforcement of the Disorderly Conduct

statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to

believe that an arrestee was congregated with others and/or without having issued any dispersal

orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a

sufficient opportunity for people to disperse.  These policies, practices, customs, and usages were

a direct and proximate cause of the unconstitutional conduct alleged herein.

90.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

91.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

93.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

94.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

95.    These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

96.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

97.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, KARBACH, NG, DOES, and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

99.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat

superior.

100.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

## ASSAULT AND BATTERY

101.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102.    By the actions described above, defendants KARBACH, NG, DOES, and ROES did inflict assault and battery upon plaintiffs. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

103.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

## FALSE ARREST and FALSE IMPRISONMENT

104.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

105.    By the actions described above, defendants KARBACH, NG, DOES, and ROES caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do

so. The acts and conduct of the defendants were the direct and proximate cause of injury

and damage to the plaintiffs and violated their statutory and common law rights as

guaranteed by the laws and Constitution of the State of New York.

106.    As a result of the foregoing, plaintiffs were deprived of their liberty and

property, suffered bodily injury, pain and suffering, psychological and emotional injury,

great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

107.    The plaintiffs incorporate by reference the allegations set forth in all

preceding paragraphs as if fully set forth herein.

108.    By the actions described above, defendants KARBACH, NG, DOES, and

ROES engaged in extreme and outrageous conduct, which intentionally and/or

negligently caused severe emotional distress to plaintiffs. The acts and conduct of the

defendants were the direct and proximate cause of injury and damage to plaintiffs and

violated their statutory and common law rights as guaranteed by the laws and

Constitution of the State of New York.

109.    As a result of the foregoing, plaintiffs were deprived of their liberty and

property, suffered bodily injury, pain and suffering, psychological and emotional injury,

great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

110.    The plaintiffs incorporate by reference the allegations set forth in all

preceding paragraphs as if fully set forth herein.

111.    By the conduct and actions described above, defendants KARBACH, NG, DOES, and ROES employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

112.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

113.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

114.    By the actions described above, defendants KARBACH, NG, DOES, and ROES violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

115.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

116.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    By the actions described above, defendants KARBACH, NG, DOES, and ROES violated the right of plaintiffs to equal protection of law. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

## NEGLIGENCE

119.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120.    The defendants KARBACH, NG, DOES, and ROES, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

121.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

122.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

123.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs. The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

124.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

125.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

126.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

127.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### PRIMA FACIE TORT

128.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

129.    Defendants KARBACH, NG, DOES, and ROES, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

130.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
            February 4, 2008


                                        _____/S_____
                                        JEFFREY A. ROTHMAN, Esq.
                                        (JR-0398)
                                        315 Broadway, Suite 200
                                        New York, New York 10007
                                        (212) 227-2980

                                        Attorney for plaintiffs

# Exhibit E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
COREY EASTWOOD, JESSE HENRY,      )
GUARAV JASHNANI, CHRIS DWYER, and  )    **AMENDED**
DANIEL DWYER,         )    **COMPLAINT**
         )
      Plaintiffs,     )
         )    **JURY TRIAL DEMANDED**
  -against-       )
         )    **ECF Case**
THE CITY OF NEW YORK, CARMINE FIORE, )
CAPTAIN KAVANAGH, PATRICK QUIGLEY, )
SHAUN GUMBS, JOHN COLGAN,   )    **05 Civ. 9483 (RJS)(JCF)**
THOMAS DOEPFNER, KERRY SWEET,  )
RUBY MARIN-JORDAN, DAVID COHEN  )
and DOES and ROES,     )
         )
      Defendants.    )
------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

### JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

### VENUE

5.      Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

### NOTICES OF CLAIM

6.      Plaintiffs EASTWOOD, HENRY and JASHNANI filed Notices of Claim with the

Comptroller of the City of New York within 90 days of the events complained of herein.  More

than 30 days have elapsed since the filing of the Notices of Claim, and adjustment or payment

thereof has been neglected or refused.

### PARTIES

7.      Plaintiffs are citizens and residents of the United States.  Plaintiff EASTWOOD is

a resident of Brooklyn, New York.  Plaintiff HENRY is a resident of Long Beach, New York.

Plaintiff JASHNANI is a resident of Columbia, Missouri.  Plaintiffs CHRIS and DANIEL

DWYER are residents of Niles, Illinois.

8.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a

2

municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

9.     Defendants FIORE, KAVANAGH, QUIGLEY, GUMBS, COLGAN, DOEPFNER, SWEET, MARIN-JORDAN, COHEN, DOES and ROES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. The aforenamed defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

**STATEMENT OF RELEVANT FACTS**

10.     On August 31, 2004, during the Republican National Convention, at approximately 10:00 to 10:30 p.m., plaintiffs EASTWOOD, HENRY, and JASHNANI were participating in a peaceful protest by walking from the vicinity of Times Square to the vicinity of 49th and Broadway, New York, New York. Plaintiffs used the sidewalks and crosswalks.

11.     Plaintiffs CHRIS and DANIEL DWYER had come to New York City to observe

3

and videotape activities related to the Republican National Convention.  They were also in the

vicinity of 49th and Broadway at approximately 10:00 to 10:30 p.m. on August 31, 2004.

12.    As plaintiffs EASTWOOD, HENRY, and JASHNANI arrived in the vicinity of

49th and Broadway, defendant KAVANAGH pepper sprayed plaintiff EASTWOOD in the eyes

without warning; plaintiff EASTWOOD was immediately handcuffed and placed under arrest.  A

defendant DOE pushed a woman to the ground.

13.    Plaintiff EASTWOOD was wearing contact lenses, and immediately began

pleading with defendant officers for medical attention, and to permit him to remove his contact

lenses because of the pepper spray in his eyes.  Plaintiff EASTWOOD was removed to a police

precinct, processed at the front desk, and placed in a holding cell.  Throughout, he pleaded for

medical attention and to be able to remove his contact lenses; no medical attention was provided.

Instead, a defendant DOE forcibly removed a contact lens from plaintiff EASTWOOD's left eye.

The other contact lens was left in plaintiff EASTWOOD's right eye.

14.    Plaintiff EASTWOOD was then placed in a police vehicle and taken to Pier 57.

Plaintiff was then driven to a midtown police precinct.  Plaintiff EASTWOOD continued to

plead for medical attention, which was not provided.  At the midtown precinct, plaintiff

EASTWOOD was taken out of the police vehicle.

15.    As plaintiffs HENRY, JASHNANI, CHRIS DWYER and DANIEL DWYER

were walking away from the incident at 49th and Broadway, they were arrested.  The plaintiffs

were thrown to the ground, kicked, punched and handcuffed.  After their arrests, plaintiffs were

transported to the same midtown police precinct where plaintiff EASTWOOD was being

detained.

4

16.    All plaintiffs were then placed in a police vehicle and transported to Pier 57 by defendants QUIGLEY, FIORE and GUMBS.  Defendants turned the heat up extremely high in the back of the vehicle in which plaintiffs were being detained.

17.    Several hours after their arrest, all plaintiffs were taken inside Pier 57, which was under the supervision of defendant COLGAN.  Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of DOEPFNER, SWEET, and MARIN-JORDAN to create false accounts of plaintiffs' arrests.   Plaintiff EASTWOOD first received medical attention at Pier 57.  Plaintiff EASTWOOD was transported to Bellevue Hospital, and then back to Pier 57.

18.    Plaintiff EASTWOOD remained at Pier 57 until approximately 9:00 p.m. on September 1, 2004, and was detained a total of approximately 48 hours before being released from custody.

19.    Plaintiff HENRY remained at Pier 57 until approximately 9:00 p.m. on September 1, 2004, and was detained a total of approximately 43 hours before being released from custody. Plaintiff HENRY suffered physical injury to his right hand, respiratory difficulties requiring medical treatment, sore throat, swollen glands and rashes.

20.    Plaintiff JASHNANI remained at Pier 57 until approximately 3:30 p.m. on September 1, 2004, and was detained a total of approximately 45 hours before being released from custody.  Plaintiff JASHNANI, who had hernia surgery approximately two months before the incident, suffered pain and discomfort from being denied access to bathroom facilities; plaintiff also suffered breathing difficulties and the onset of  asthma.

21.    Plaintiff CHRIS DWYER remained at Pier 57 until the evening of September 1,

5

2004, and was detained a total of approximately 47 hours before being released from custody. Plaintiff developed lingering respiratory problems.

22.     Plaintiff DANIEL DWYER remained at Pier 57 until approximately 10:00 a.m on September 1, 2004, and was detained a total of approximately 44 hours before being released from custody.  Plaintiff had cuts on his wrists due to excessively tight handcuffs.

23.     During plaintiffs' detention, in addition to the above, they were placed in excessively tight handcuffs, and handcuffs were applied for excessive periods of time.  Plaintiffs were not provided adequate facilities for sleeping, sitting and toileting.  Plaintiffs were forced to come into intimate contact with noxious and irritating substances, including, on information and belief, toxic chemicals in the air and on the walls and floor of Pier 57.

24.     Plaintiffs were charged with Parading Without a Permit and other charges, all of which were subsequently dismissed.

25.     Defendant COHEN directed a surveillance campaign, and gathered intelligence, concerning individuals and groups in preparation for the RNC.  The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created a climate of hostility toward protesters.  COHEN improperly conflated protesters' planned activities with civil disobedience, violence, and terrorism.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

26.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

27.    By their conduct and actions in causing the arrest and imprisonment of plaintiffs, and in arresting and imprisoning plaintiffs, by preventing plaintiffs from engaging in protected First Amendment conduct, by retaliating against plaintiffs because of their exercise of First Amendment rights, by using excessive force, by detaining plaintiffs for an excessive amount of time, by detaining plaintiffs under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees, and by deliberate indifference to medical needs, by creating false accounts of plaintiffs' conduct, and by misrepresenting protesters' expected activities and encouraging and creating a climate of hostility toward protesters, defendants FIORE, KAVANAGH, QUIGLEY, GUMBS, COLGAN, DOEPFNER, SWEET, MARIN-JORDAN, COHEN, DOES and ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments.

28.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering,  emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

7

29.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

30.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, including: (a) the arrest of persons lawfully participating in, observing, or in the vicinity of demonstrations, protests or other forms of public expression during the Republican National Convention; (b) the unreasonably long detentions of such persons arrested on minor charges; (c) the detention of such persons under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees; (d) the infliction of pain and suffering upon such persons, including by the use of excessive force, keeping arrestees in handcuffs for extended periods of time, applying extremely tight handcuffs, denying toileting and personal hygiene facilities and supplies, denying adequate facilities to sit or sleep, confining and transporting in over-heated vehicles, exposure to irritants, denial of adequate medical care, pepper spraying, verbal harassment, and other means of inflicting pain and discomfort; (e) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; and (f) the application of the Parading Without a Permit statute to sidewalk marches; (g) enforcement of an unconstitutional statute, Penal Law section 240.20(5), Disorderly Conduct (obstructing pedestrian traffic); (h) the application of the Disorderly Conduct statute, subsection 5, to sidewalk marches; (i) not issuing summonses to RNC arrestees; (j) not issuing Desk Appearance Tickets to RNC arrestees; (k) the fingerprinting of all RNC arrestees; and (l) making false statements concerning RNC arrestees and the circumstances of their arrests

8

in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  Each such policy, practice, custom and usage caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

31.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering,  emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

32.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33.     By the actions described above, defendants THE CITY OF NEW YORK, FIORE, KAVANAGH, QUIGLEY, and GUMBS falsely arrested and imprisoned plaintiffs, or caused them to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

34.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering,  emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

**ASSAULT AND BATTERY**

35.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

36.     By the actions described above, defendants THE CITY OF NEW YORK, FIORE, KAVANAGH, QUIGLEY, and GUMBS did inflict assault and battery upon plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

37.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**FIFTH CLAIM**

**NEGLIGENCE**

38.     The plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

39.     Defendants THE CITY OF NEW YORK, FIORE, KAVANAGH, QUIGLEY, and GUMBS, jointly and severally, negligently caused injuries, emotional distress and damage to plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

40.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological

injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1981 AND 1983

41.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

42.     By their conduct in failing to remedy the wrongs committed by employees of THE CITY OF NEW YORK under their supervision, and in failing to properly train, supervise, or discipline employees of THE CITY OF NEW YORK under their supervision, defendants KAVANAUGH, COLGAN, DOEPFNER, SWEET, and MARIN-JORDAN, caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

43.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### NEW YORK CITY ADMINISTRATIVE CODE SECTION 10.110, PARADING WITHOUT A PERMIT, IS UNCONSTITUTIONAL

44.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

45.      New York City Administrative Code section 10.110, Parading Without a Permit, on its face, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment, and is unconstitutionally vague and overbroad, in that it permits police officers to

11

apply the statute to protected First Amendment activity on public sidewalks.

46.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empaneling of a jury to consider the merits of the claims herein;

d.  Pre- and post-judgment costs, interest and attorney's fees;

e.  Injunctive relief requiring defendants to return to plaintiffs, or where necessary to expunge and/or destroy all records of fingerprints taken in conjunction with their arrests and all other information or records concerning their arrests, to remove from all records and databases maintained by defendants any reference to plaintiffs' arrests, and to request that all law enforcement agencies that have received information concerning plaintiffs' arrests destroy such information.

f.  Injunctive relief enjoining defendants from applying New York City Administrative Code section 10.110, Parading Without a Permit, to sidewalk marches.

g.  Such other and further relief as this court may deem appropriate and equitable.

12

Dated:      New York, New York
               January 24, 2008

                                 _____/s/_____
                                 MICHAEL L. SPIEGEL, Esq.
                                 111 Broadway, Suite 1305
                                 New York, New York 10006
                                 (212) 587-8558
                                 *Attorney for Plaintiffs*

13

# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

GWYNN GALITZER,                                    )

                                    Plaintiff,     )

          -against-                                )

THE CITY OF NEW YORK; MICHAEL                      )
BLOOMBERG, Mayor of the City of New York;          )
RAYMOND KELLY, New York City Police                )
Commissioner; STEPHEN HAMMERMAN,                   )
Former Deputy Commissioner for Legal Matters,      )
New York City Police Department; DAVID             )
COHEN, Deputy Commissioner for Intelligence,       )
New York City Police Department; THOMAS            )
DOEPFNER, Assistant Deputy Commissioner for        )
Legal Matters, New York City Police Department;    )
NYPD LIEUTENANT DANIEL ALBANO; NYPD                )
DEPUTY INSPECTOR KERRY SWEET, NYPD                 )
Legal Bureau Executive Officer; NYPD Legal         )
Bureau Senior Counsel RUBY MARIN-JORDAN            )
NYPD LEGAL BUREAU SUPERVISOR(S) AT                 )
PIER 57; JOSEPH  ESPOSITO, Chief of the New        )
York Police Department; THOMAS GRAHAM,             )
Commander, Disorder Control Unit, New York City    )
Police Department; JACK MCMANUS, Assistant         )
Chief, New York City Police Department; BRUCE      )
SMOLKA, former Commander, Patrol Borough           )
Manhattan South, New York City Police              )
Department; TERENCE MONAHAN, Assistant             )
Chief of the Bronx Borough Command; JOHN J.        )
COLGAN, Assistant Chief, New York City Police      )
Department; NYPD DEPUTY CHIEF JAMES                )
O'NEILL; NYPD INSPECTOR JAMES                       )
CAPALDO; NYPD DEPUTY INSPECTOR                     )
RONALD MERCANDETTI; NYPD CAPTAIN                   )
EUGENE MONTCHAL; POLICE LIEUTENANT                 )
JOE MAHER; POLICE OFFICER KERI                      )
MITCHELL, Shield No. 14657; POLICE OFFICER         )
DONALD NELZI, Shield No. 30324; JOHN DOES;         )
RICHARD ROES; HUDSON RIVER PARK                    )

**SECOND AMENDED
COMPLAINT**

**ECF CASE**

**JURY TRIAL DEMANDED**

**05 Civ. 7669 (RJS) (JCF)**

1

TRUST,                                          )
                                                )
                          Defendants.           )
-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff GWYNN GALITZER seeks relief

for the defendants' violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983, by the United States Constitution, including its First, Fourth, Fifth, Sixth and

Fourteenth Amendments, and by the laws and Constitution of the State of New York.  The

plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an

award of costs and attorneys' fees, and such other and further relief as this court deems equitable

and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of GWYNN

GALITZER's constitutional and civil rights.

3.      The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

2

4.    Plaintiff demands a trial by jury on each and every claim as pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.    GWYNN GALITZER filed a Notice of Claim with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

7.    Plaintiff GWYNN GALITZER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

8.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

9.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation,

3

implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued in both his individual and official capacities.

10.      Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

11.      STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

12.      DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

13.      THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

14.      NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is

responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

15.    NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

16.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

17.    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

18.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during

5

the RNC period.  He is sued individually and in his official capacity.

19.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

20.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

21.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

22.    Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.

6

He is sued individually and in his official capacity.

23.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior

official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for

the creation, implementation, promulgation and enforcement of the policies, practices and/or customs

complained of herein.  He is sued individually and in his official capacity.

24.     Defendants HAMMERMAN, ALBANO, O'NEILL, CAPALDO, MERCANDETTI,

MONTCHAL, MAHER, MITCHELL, NELZI and JOHN DOES, are and were at all times relevant

herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW

YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY

OF NEW YORK.  Said individual defendants are and were at all times relevant herein acting under

color of state law in the course and scope of their duties and functions as officers, agents, servants,

and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and

with the power and authority vested in them by THE CITY OF NEW YORK and the New York City

Police Department, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties.  Defendants HAMMERMAN,

ALBANO, O'NEILL, CAPALDO, MERCANDETTI, MONTCHAL, MAHER, MITCHELL, NELZI

and JOHN DOES are sued individually and in their official capacity.

25.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,

ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, HAMMERMAN, ALBANO, O'NEILL, CAPALDO,

MERCANDETTI, MONTCHAL, MAHER, and RICHARD ROES are and were at all times

relevant herein duly appointed and acting supervisory officers, servants, employees and agents of

THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, HAMMERMAN, ALBANO, O'NEILL, CAPALDO, MERCANDETTI, MONTCHAL, MAHER, and RICHARD ROES are sued individually and in their official capacity.

26.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York. Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures. Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC). Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON

8

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## STATEMENT OF FACTS

27.     On the late afternoon of August 31st, 2004 GWYNN GALITZER and her friend

went to the Main Branch of the New York Public Library on 5th Avenue in Manhattan.  They sat

for a while at a table and chairs in the public plaza in front of the library, playing guitar and

singing.

28.     The plaza became more crowded with people and with police officers.

29.     The police officers began to act aggressively and violently towards the

individuals present there, and were pushing some of the people present there onto the ground and

arresting them.

30.     Defendants HAMMERMAN, ALBANO, O'NEILL, CAPALDO,

MERCANDETTI, MONTCHAL, and MAHER were responsible, in whole or in part, for the

creation of that hostile climate and the conditions that led to Plaintiff's arrest.

31.     Defendant O'Neill had given an illegal order to clear the library plaza of people,

and acted aggressively towards civilians in the plaza, including making false arrests.

32.     Defendants CAPALDO, MERCANDETTI, and MONTCHAL also participated in

illegally clearing the plaza, and made false arrests and searches in the vicinity of the plaza area.

33.     Defendants HAMMERMAN and ALBANO were on scene and participated in,

and contributed to, the false arrests that took place there.

9

34.    Defendants HAMMERMAN, ALBANO, O'NEILL, CAPALDO, MERCANDETTI, MONTCHAL, MAHER, and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility at the library plaza, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers. They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

35.    GWYNN GALITZER's friend became very anxious, and began to hyperventilate.

36.    Defendant MAHER came over to the table where GWYNN GALITZER and her friend were sitting. Defendant MAHER was yelling and cursing, and telling GWYNN GALITZER and her friend, in sum and substance, to "get the fuck out of here right now."

37.    GWYNN GALITZER told defendant MAHER, in sum and substance, that she and her friend were leaving that location, but that her friend needed a moment to catch her breath. Defendant MAHER continued to yell.

38.    GWYNN GALITZER's friend got upset and told defendant MAHER, in sum and substance, that what the police were doing was disgusting.

39.    Defendant MAHER then told police officers in the immediate vicinity to arrest GWYNN GALITZER's friend.

40.    GWYNN GALITZER pleaded with the officers to please not arrest her friend.

10

Defendant Maher then pushed GWYNN GALITZER to the ground and told police officers in the immediate vicinity to arrest GWYNN GALITZER.

41.     GWYNN GALITZER was handcuffed and placed into a vehicle by NYPD officers for transport to Pier 57.

42.     GWYNN GALITZER was arrested during one of the many mass-arrests conducted by the NYPD during the period of the Republican National Convention (RNC), arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

43.     GWYNN GALITZER was taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

44.     Pier 57 is owned by and/or under the control of defendant HRPT.

45.     Prior to the RNC the CITY OF NEW YORK contracted with the HRPT for the use of Pier 57 as a detention facility.

46.     On information and belief, all of the arrestees from this location, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

47.     The conditions en route to and at Pier 57 were atrocious. The detainees at the Pier were kept in chain-link cages topped with barbed wire that lacked adequate seating. The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were

posted at multiple locations throughout the pier. On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there. During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

48.    Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests. On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

49.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances. In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

50.    The detainees at Pier 57, including plaintiffs, were further subjected to

12

unreasonable delay in being processed and moved through the system. The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

     51.     After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by the detainees, including GWYNN GALITZER,

13

during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

52.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

53.     During her time in custody GWYNN GALITZER was subjected to unreasonably tight and painful wrist restraints/handcuffs.

54.     Plaintiff GWYNN GALITZER was released after approximately 45 hours in custody.  She was charged with Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, and Parading Without a Permit.  All charges against Plaintiff GWYNN GALITZER have been dismissed in their entirety by way of an Adjournment in Contemplation of Dismissal.

55.     Defendant MITCHELL was the deponent on the complaint filed with the Criminal Court against plaintiff.  Defendant MITCHELL on that document claims that she was informed by defendant NELZI that GWYNN GALITZER had committed the acts alleged therein.

56.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

57.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in

14

widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism. The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time. The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created this climate of hostility toward demonstrators and these unconstitutional and illegal policies resulting therefrom.

58.    This tone of hostility to demonstrators, and the resultant policies, customs, practices and usages-to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as

15

"terrorists" and "guilty" criminals.

59.     Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

60.     The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

61.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

62.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## **FIRST CLAIM**

## **DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

63.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

64.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiff, by subjecting plaintiff to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, CAPALDO, MERCANDETI, MONTCHAL, MAHER, MITCHELL, NELZI and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

65.     As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury,

17

great humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

66.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67.    By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, CAPALDO, MERCANDETI, MONTCHAL, MAHER, and RICHARD ROES caused damage and injury in violation of GWYNN GALITZER's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

68.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

69.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

71.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

72.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of

19

preventive detention. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

73.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

74.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

75.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of

not issuing Desk Appearance Tickets to RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

76.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

77.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

78.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

21

79.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

81.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a

22

Permit statute to people walking on the sidewalk; (c) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (d) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

82.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

83.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

86.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of

the RNC, and thereby subjecting plaintiff to hazardous conditions of confinement, officials of the

HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification,

and with a deliberate indifference to or a reckless disregard for the natural and probable

consequences of their acts, caused injury and damage in violation of GWYNN GALITZER's

constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution,

including its First, Fourth, Fifth, and Fourteenth amendment.

87.    These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

88.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty

and property, suffered bodily injury, pain and suffering, psychological and emotional injury,

great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

89.    Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

90.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, O'NEILL, CAPALDO, MERCANDETI, MONTCHAL, MAHER,

MITCHELL, NELZI, DOES, and ROES alleged herein, occurred while they were on duty and in

uniform, and/or in and during the course and scope of their duties and functions as New York

City police officers, and/or while they were acting as agents and employees of defendant THE

24

CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

91.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

92.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

93.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

94.    By the actions described above, defendants MAHER, MITCHELL, NELZI, DOES, and ROES did inflict assault and battery upon GWYNN GALITZER.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

95.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury,

great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

## FALSE ARREST and FALSE IMPRISONMENT

96.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.     By the actions described above, defendants MAHER, MITCHELL, NELZI, DOES, and ROES caused to be falsely arrested or falsely arrested GWYNN GALITZER, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

98.     As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

99.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100.    By the actions described above, defendants MAHER, MITCHELL, NELZI, DOES, and ROES engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to GWYNN GALITZER.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated

26

her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

101.     As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

102.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

103.     By the conduct and actions described above, defendants MAHER, MITCHELL, NELZI, DOES, and ROES employed regularly issued process against GWYNN GALITZER compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm GWYNN GALITZER without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to GWYNN GALITZER which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

104.     As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

27

**VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO**

**FREE SPEECH AND ASSEMBLY**

105.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

106.    By the actions described above, defendants MAHER, MITCHELL, NELZI, DOES, and ROES violated the free speech and assembly rights of plaintiff and retaliated against GWYNN GALITZER for the exercise of her rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

107.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**ELEVENTH CLAIM**

**VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW**

108.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

109.    By the actions described above, defendants MAHER, MITCHELL, NELZI, DOES, and ROES violated GWYNN GALITZER's right to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

28

110.     As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

111.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

112.     The defendants MAHER, MITCHELL, NELZI, DOES, and ROES, jointly and severally, negligently caused injuries, emotional distress and damage to GWYNN GALITZER. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

113.     As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

114.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

115.     Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiff.  The acts and conduct of these employees and officials were the direct and

proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

117.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

118.    During her detention at Pier 57, GWYNN GALITZER was exposed to hazardous materials.  As a result of this exposure, plaintiff reasonably anticipates consequential damages in the form of future expenses for medical monitoring and testing.

119.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM

## PRIMA FACIE TORT

120.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.    Defendants MAHER, MITCHELL, NELZI, DOES, and ROES, without excuse or justification, and intending to inflict harm upon plaintiff by an act or series of acts that would otherwise be lawful, did inflict harm upon GWYNN GALITZER, to wit, the confinement and

30

processing of GWYNN GALITZER through the stages of pre-arraignment detention in a

hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and

proximate cause of injury and damage to GWYNN GALITZER and violated her statutory and

common law rights as guaranteed by the laws and Constitution of the State of New York.

122.    As a result of the foregoing, GWYNN GALITZER was deprived of her liberty

and property, suffered bodily injury, pain and suffering, psychological and emotional injury,

great humiliation, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of

the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims

herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:       New York, New York
             February 4, 2008

_____/S/_____

JEFFREY A. ROTHMAN, Esq.
(JR-0398)
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980
Attorney for Plaintiff Gwynn Galitzer

31

# Exhibit G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
MEGAN KENNEDY, DEBASRI GHOSH,
JANINE ALTONGY, and CARRE ADAMS,

|  |  |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |
| THE CITY OF NEW YORK, JAMES ESSIG, | **07 CV 7678 (UA/KMK)** |

THE CITY OF NEW YORK, JAMES ESSIG,
GERALD DIECKMANN, JOHN COLGAN,
STEPHEN HAMMERMAN, THOMAS DOEPFNER,
KERRY SWEET, RUBY MARIN-JORDAN,
DAVID COHEN, and JOHN and JANE DOES,

Defendants.
---------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

## JURY TRIAL DEMANDED

3.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

## VENUE

4.      Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

5.      Plaintiffs are citizens, residents, or were otherwise lawfully in the United States at

the time of the events complained of herein.

6.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a

municipal entity created and authorized under the laws of the State of New York.  It is authorized

by law to maintain a police department, which acts as its agent in the area of law enforcement

and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the

risks incidental to the maintenance of a police force and the employment of police officers as said

risk attaches to the public consumers of the services provided by the New York City Police

Department.

7.      Defendants ESSIG, DIECKMANN, COLGAN, HAMMERMAN, DOEPFNER,

SWEET, MARIN-JORDAN, COHEN, and JOHN and JANE DOES are and were at all times

relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY

OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant

THE CITY OF NEW YORK.  The aforenamed defendants are and were at all times relevant

herein acting under color of state law in the course and scope of their duties and functions as

2

officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting

for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW

YORK and the New York City Police Department, and were otherwise performing and engaging

in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF RELEVANT FACTS

8.      On August 31, 2004, at approximately 7:00 p.m., plaintiffs and many other people

were in the vicinity of Union Square, New York, New York.  Many were there to express their

political opinions related to the Republican National Convention, which was being held in New

York City at that time.

9.      A number of people, including people playing musical instruments, entered the

roadway of Union Square East.  Some of them carried signs or banners, some were chanting.

Defendants ESSIG, DIECKMANN and DOES ordered police officers to form a line across the

roadway of Union Square East at the north side of the intersection with East 16th Street.  The line

of officers directed anyone approaching from the south or west, including plaintiffs, to move

eastward onto East 16th Street toward Irving Place, which was the next north-south cross street.

10.     After several hundred people had moved onto East 16th Street, traveling on both

sidewalks and in the roadway, police officers closed off egress from the block by forming a line

across East 16th Street at Irving Place, at the direction of defendants ESSIG, DIECKMANN and

DOES.  Officers were also ordered to prevent egress at the Union Square end of the block.

11.     Plaintiffs, who were all on East 16th Street between Union Square East and Irving

Place when officers closed off both ends of the block, were placed under arrest by defendants

ESSIG, DIECKMANN, and DOES.  Plaintiffs were charged with Parading Without a Permit and

3

Disorderly Conduct.

12.    When plaintiffs approached East 16th Street, and throughout the time plaintiffs were on East 16th Street, there was a visible police presence in the area, and plaintiffs followed all directions and instructions given by police officers.  At no time were plaintiffs advised or permitted to disperse, advised that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest.

13.    Subsequent to their arrest, most plaintiffs were removed to Pier 57, which was under the supervision of COLGAN.  Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, and MARIN-JORDAN to create false accounts of plaintiffs' arrests.  At some point, each plaintiff was removed to Central Booking at 100 Centre Street.

14.    During plaintiffs' detention, various arrestees were placed in excessively tight handcuffs, and handcuffs were applied for excessive periods of time.  Arrestees were not provided adequate facilities and materials for sleeping, sitting, toileting, and personal hygiene, and were denied adequate medical care.  Many arrestees were confined and transported in over-heated vehicles, were verbally harassed, and were subjected to other means of inflicting pain and discomfort.  Plaintiffs detained at Pier 57 were forced to come into intimate contact with noxious and irritating substances, including, on information and belief, toxic chemicals in the air and on the walls and floor of Pier 57.

15.    All criminal charges against all plaintiffs were subsequently dismissed.

16.    Defendant COHEN directed a surveillance campaign, and gathered intelligence,

4

concerning individuals and groups in preparation for the RNC. The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created a climate of hostility toward protesters. COHEN improperly conflated protesters' planned activities with civil disobedience, violence, and terrorism.

### FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

17. The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

18. By their conduct and actions in causing the arrest and imprisonment of plaintiffs, and in arresting and imprisoning plaintiffs, by preventing plaintiffs from engaging in protected First Amendment conduct, by retaliating against plaintiffs because of their perceived exercise of First Amendment rights, by violating the arrestees' Fourteenth Amendment rights to equal protection, by using excessive force, by detaining plaintiffs for an excessive amount of time, by detaining plaintiffs under cruel and inhumane conditions at a facility which was not suitable for the detention of arrestees, by deliberate indifference to medical needs, by maliciously prosecuting plaintiffs, by creating false accounts of plaintiffs' conduct, and by misrepresenting protesters' expected activities and encouraging and creating a climate of hostility toward protesters, defendants ESSIG, DIECKMANN, COLGAN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, COHEN, and DOES, acting under color of law and without lawful

5

justification, intentionally, maliciously, and with a deliberate indifference to or a reckless

disregard for the natural and probable consequences of their acts, caused injury and damage in

violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United

States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments.

19.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered

specific and serious bodily injury, pain and suffering, emotional distress and psychological

injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and

injured.

## SECOND CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

20.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

21.    At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department and through the individual defendants, had policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein, including: (a) the arrest of persons lawfully participating in, observing, or

in the vicinity of demonstrations, protests or other forms of public expression during the

Republican National Convention; (b) the unreasonably long detentions of such persons arrested

on minor charges; (c) the detention of such persons under cruel and inhumane conditions at a

facility which was not suitable for the detention of arrestees; (d) the infliction of pain and

suffering upon such persons, including, keeping arrestees in handcuffs for extended periods of

6

time, applying extremely tight handcuffs, denying adequate facilities to sit or sleep, exposure to irritants, and other means of inflicting pain and discomfort; (e) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a Permit; (f) the application of the Parading Without a Permit statute to sidewalk marches; (g) enforcement of an unconstitutional statute, Penal Law section 240.20(5), Disorderly Conduct (obstructing pedestrian traffic); (h) the application of the Disorderly Conduct statute, subsection 5, to sidewalk marches; (i) not issuing summonses to RNC arrestees; (j) not issuing Desk Appearance Tickets to RNC arrestees; (k) the fingerprinting of all RNC arrestees; and (l) making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  Each such policy, practice, custom and usage caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

22.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1981 AND 1983

23.    Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

24.     By their conduct in failing to remedy the wrongs committed by employees of the THE CITY OF NEW YORK under their supervision; in failing to properly train, supervise, or discipline employees of the THE CITY OF NEW YORK under their supervision; and in directing employees under their supervision, defendants ESSIG, DIECKMANN, COLGAN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, and COHEN caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

25.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### NEW YORK CITY ADMINISTRATIVE CODE SECTION 10.110, PARADING WITHOUT A PERMIT, IS UNCONSTITUTIONAL

26.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

27.      New York City Administrative Code section 10.110, Parading Without a Permit, on its face, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment, and is unconstitutionally vague and overbroad, in that it permits police officers to apply the statute to protected First Amendment activity on public sidewalks.

28.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological

8

injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### NEW YORK PENAL LAW SECTION 240.20, SUBSECTION 5, IS UNCONSTITUTIONAL

29.     Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

30.     Subsection 5 of the Disorderly Section Statute, on its face, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment in that it does not require that the police either (a) give a lawful order to disperse, and an opportunity to comply, before arresting persons gathered for the purpose of peaceful protest, or (b) have probable cause to believe that the persons arrested intended to substantially obstruct pedestrian traffic.

31.     As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, plaintiffs demand the following relief jointly and severally against all of the defendants:

        a.  Compensatory damages;

        b.  Punitive damages;

        c.  The convening and empaneling of a jury to consider the merits of the claims herein;

d.  Pre- and post-judgment costs, interest and attorney's fees;

e.  Injunctive relief requiring defendants to return to plaintiffs, or where necessary to expunge and/or destroy all records of fingerprints taken in conjunction with their arrests and all other information or records concerning their arrests, to remove from all records and databases maintained by defendants any reference to plaintiffs' arrests, and to request that all law enforcement agencies that have received information concerning plaintiffs' arrests destroy such information.

f.  Injunctive relief enjoining defendants from applying New York City Administrative Code section 10.110, Parading Without a Permit, to sidewalk marches.

g.  Injunctive relief enjoing defendants from enforcing the New York Penal Law section 240.20, subsection 5, against person gathered on a public sidewalk without either (a)  giving a lawful order to disperse or (b) having probable cause to believe that such persons intend to substantially obstruct pedestrian traffic.

h.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
             August 29, 2007

                                  MICHAEL L. SPIEGEL (MS 0856)
                                  111 Broadway, Suite 1305
                                  New York, New York 10006
                                  (212) 587-8558

                                  NORMAN FREDERICK BEST (NB 1968)
                                  575 Madison Avenue, 10th Floor
                                  New York, New York 10022
                                  (212) 671-0122

                                  *Attorneys for Plaintiffs*

By:        _____/s/_____
              Michael L. Spiegel (MS 0856)

11

# Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

JESSICA RECHTSCHAFFER,                                          x

                          Plaintiff,                           x

                                                               x

          -against-                                            x

                                                               x

THE CITY OF NEW YORK, a municipal entity;                      x

MICHAEL BLOOMBERG, Mayor of the City of New                    x

York; RAYMOND KELLY, New York City Police                      x

Commissioner; STEPHEN HAMMERMAN,                               x

Deputy Commissioner for Legal Matters; THOMAS                  x

DOEPFNER, Assistant Deputy Commissioner for Legal              x

Matters, New York City Police Department; NYPD                 x

Special Counsel RUBY MARIN- JORDAN;                            x

JOSEPH ESPOSITO, Chief of Department,                          x

New York City Police Department;                               x

THOMAS GRAHAM; Commander, Disorders Control                    x

Unit, New York City Police Department; JOHN J.                 x

COLGAN, Assistant Chief and Commanding Officer,                x

Pier 57; ORLANDO RIVERA, New York City                         x

Police Officer, Shield No. 25912; JOHN PARK, New               x

York City Police Officer, Shield No. 20166;  MICHAEL           x

CUMMINGS, Det. Shield No. 254, New York City Police            x

Officer; JOHN DOE 1, New York City Police Officer              x

U/C Shield No. 6216, Intelligence Bureau, Special              x

Services Unit; JOHN DOES 2-10, New York City Police            x

Officers, Supervisors, and/or Commanders; individually         x

and in their official capacity,                                x

                                                               x

                          Defendants.                          x

-------------------------------------------------------------------- x

**FIRST AMENDED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

05-CV-9930 (RJS) (JCF)

BCF CASE

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff, JESSICA RECHTSCHAFFER,

seeks relief for defendants' violation, under color of state law, of her rights, privileges and

immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First, Fourth and

Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the

State of New York, during the Republican National Convention in New York City in 2004 ("the RNC").

2.      Defendants, THE CITY OF NEW YORK, a municipal entity; MICHAEL BLOOMBERG, Mayor of the City of New York; RAYMOND KELLY, New York City Police Commissioner; STEPHEN HAMMERMAN, Deputy Commissioner for Legal Matters, New York City Police Department; THOMAS DOEPFNER, Assistant Deputy Commissioner for Legal Matters, New York City Police Department; NYPD Special Counsel RUBY MARIN-JORDAN; JOSEPH ESPOSITO, Chief of the New York Police Department; THOMAS GRAHAM, Commander, Disorder Control Unit, New York City Police Department; JOHN J. COLGAN, Assistant Chief, New York City Police Department, ORLANDO RIVERA, New York City Police Officer, Shield No. 25912; JOHN PARK, Shield No. 20166, New York City Police Officer; MICHAEL CUMMINGS, New York City Police Detective; JOHN DOE 1, New York City Undercover Police Officer, U/C Shield No. 6216, Intelligence Bureau, Special Services Unit; JOHN DOES 2-10, New York City Police Officers, Supervisors, and/or Commanders, acting individually and in their official capacities, jointly and severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and cruel and

2

inhumane conditions, including denying them access to family members and to legal counsel for an inordinate and unreasonable amount of time and did cause JESSICA RECHTSCHAFFER to be falsely arrested; subject to excessive and unreasonable force; deprived of liberty without due process of law; and maliciously prosecuted, *inter alia.*

3.    In promulgating and implementing these policies, defendants clearly knew that during the relevant period many thousands of people from New York City and around the country would converge in New York City to demonstrate their opposition to the military, foreign and domestic policies of the current United States government and to the nominee for president from the Republican Party, George W. Bush. Although some chose to engage in acts of civil disobedience to express their opposition to these policies and to the President, the overwhelming majority of those arrested, including Plaintiff JESSICA RECHTSCHAFFER, either expressed such opposition within the law and in a manner that followed the instructions and directions of NYPD police officers, or merely happened to be in the vicinity of what the NYPD perceived to be protest activity.

4.    In addition to bringing the foregoing claims, plaintiff herein brings individual claims arising out of her individual arrest, including, without limitation, false arrest, false imprisonment, and excessive detention.

5.    Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of attorneys fees and costs, and such other and further relief as the Court deems proper.

## JURISDICTION

6.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

3

whole and/or in part, for the creation implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is used in both his individual and official capacities.

14.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

16.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    Defendant RUBY MARIN-JORDAN is, and was at all times relevant herein, Special Counsel to the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in her official capacity.

5

18.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

19.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

20.    Defendant JOHN J. COLGAN, is a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

21.    Defendant Command and Supervisory officers are NYPD Command and Police Officers involved in the arrests of the plaintiffs and all of the actions and conduct associated therewith, including, *inter alia*, the use of force, the preferring of charges, the approval of charges, the prosecution of the plaintiffs, the abuse of criminal process, the cruel and inhumane conditions to which those arrested were subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

22.    Defendant ORLANDO RIVERA is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued individually and in his official capacity.

23.    Defendant JOHN PARK is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued individually and in his official capacity.

6

24.     Defendant MICHAEL CUMMINGS is, or was at all times relevant to this complaint, a police officer employed by the NYPD. He is sued individually and in his official capacity.

25.     Defendant JOHN DOE 1, U/C Shield No. 6216 is, or was at all times relevant to this complaint, a police officer employed by the NYPD.  The identity of JOHN DOE 1, who as of August 29, 2004, was assigned to the Intelligence Bureau, Special Services Unit, is known to defendant City of New York and the New York City Police Department, as well as, on information and belief, defendants ORLANDO RIVERA and/or JOHN PARK and/or one or more of the defendants JOHN DOES 2-10.

26.     JOHN DOES 2-10 include individuals, known to defendant City of New York and the New York City Police Department, as well as, on information and belief, defendants ORLANDO RIVERA and/or JOHN PARK and/or defendant JOHN DOE 1.  JOHN DOES 2-10 are, or at all times relevant to the complaint were, police officers, supervisors, and/or commanders in the NYPD, and include individuals who assisted and/or conspired to and/or acted in concert to and/or did engage in the violations of plaintiff=s rights described herein.

27.     Defendants BLOOMBERG, KELLY, HAMMERMAN, DOEPFNER, MARIN-JORDAN, ESPOSITO, GRAHAM, COLGAN, RIVERA, PARK, CUMMINGS, JOHN DOE 1, and JOHN DOES 2-10, (collectively, "the individual defendants") are, or at all times relevant to the complaint were, employees, agents, servants, and/or officers of the City of New York and/or the NYPD.

28.     At all times relevant herein, each of the individual defendants acted under color of law in the course and scope of his duties and functions as an agent, employee, servant, and/or officer of the City and/or the NYPD in engaging in the conduct described herein.

7

7.    Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8.    Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

9.    Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

10.    Plaintiff demands a trial by jury in this action on each and every one of her claims.

## PARTIES

11.    Plaintiff, JESSICA RECHTSCHAFFER, is a citizen and resident of New York.

12.    Defendant CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

13.    Defendant MICHAEL BLOOMBERG is and was, all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and is responsible, in

4

29.    At all times relevant herein, the individual defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents, servants, and/or employees of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as officers, agents, servants, and/or employees of the City and/or the NYPD.

30.    At all times relevant herein, the individual defendants violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments of which a reasonable police officer and/or public official under his respective circumstances would have known.

## FACTS APPLICABLE TO ALL CLAIMS

31.    At or around 2:30 p.m. on August 29, 2004, plaintiff, JESSICA RECHTSCHAFFER, was lawfully present on the 34th Street between 6th and 7th Avenues in Manhattan.

32.    RECHTSCHAFFER was engaging in lawful, peaceable protest against the Republican National Convention and the policies of the president and his administration.

33.    At or about the aforesaid time and place, RECHTCHAFFER did observe members of the NYPD beating an individual, and did verbally protest the police violence.

34.    At no time did RECHTSCHAFFER violate any law, regulation, or ordinance, or any order of a police officer.

35.    At no time did RECHTSCHAFFER interfere with any police officer or police operations, or engage in any conduct that could reasonably be construed as endangering or threatening any police officer or other individual.

8

36.    Notwithstanding the absence of probable cause or reasonable suspicion to believe plaintiff had committed any crime or offense, and based in whole or in part on plaintiff's having protested the police violence she had witnessed, one of the individual defendants grabbed RECHTSCHAFFER from behind and pushed her to the ground.

37.    Plaintiff was pinned to the ground and handcuffed by one or more of the individual defendants.

38.    One or more of the individual defendants did also mace plaintiff after she was secured, despite the fact that plaintiff was not and had not engaged in any conduct that could reasonably be construed as endangering or threatening any police officer or other individual, nor was she resisting arrest.

39.    Several other individual defendants did assist and/or did act in concert in the foregoing assaultive and wrongful conduct, or did fail to intervene to stop the foregoing violations of plaintiff's constitutional rights.

40.    The use of force described in the preceding paragraphs was objectively unreasonable in light of the circumstances then and there prevailing, and as such constituted excessive force directed against plaintiff's person, and did cause her injury.

41.    Plaintiff was transported to Pier 57, where she was held in filthy conditions for many hours.

42.    Plaintiff was eventually transported to 100 Centre Street, where she was arraigned at approximately 6 p.m. on August 30, and released on bail at approximately 11 p.m. that night.

43.    While RECHTSCHAFFER was in custody, NYPD officers were sent to plaintiff's home, parent's home, and place of work as part of an investigation headed by defendant

9

CUMMINGS, and people at those locations were questioned about plaintiff's political affiliations.

44.     While in custody, plaintiff was fingerprinted, pursuant to a policy requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law ' 160.10.

45.     At her arraignment, plaintiff was charged with Assault in the First Degree, Assault on a Peace Officer, Police Officer, Fireman or EMS Professional, Reckless Endangerment in the First Degree, Hindering Prosecution in the Second Degree, Riot in the First Degree, Resisting Arrest, and Obstructing Governmental Administration in the Second Degree.

46.     Plaintiff pleaded not guilty to all of the charges, which were false and falsely sworn to by defendant ORLANDO RIVERA, pursuant to a system of perjured sworn statements to attempt to justify unlawful arrests, based on false information provided by defendant JOHN DOE 1 and JOHN PARK, and, on information and belief, one or more of the defendants MICHAEL CUMMINGS and JOHN DOES 2-10, and were initiated and continued maliciously and without probable cause, in order to cover up the wrongful conduct of defendants.

47.     Plaintiff was subsequently indicted by a grand jury for Riot in the Second Degree, Reckless Endangerment in the Second Degree, Obstructing Governmental Administration in the Second Degree, Resisting Arrest, and Hindering Prosecution in the Third Degree, based on the willfully false testimony of one or more of the individual defendants.

48.     At her arraignment upon the indictment, plaintiff pleaded not guilty to all of the charges, which were initiated and continued maliciously and without probable cause, in order to cover up the wrongful conduct of defendants.

10

49.    After many months and multiple court visits that required plaintiff to miss work, all of the charges were eventually dismissed because, on information and belief, the District Attorney realized that the charges were based on false statements and testimony of one or more of the individual defendants.

50.    The individual defendants' acts and omissions described above were intentional, wanton, willful and malicious, and were performed with deliberate indifference and/or in reckless disregard of RECHTSCHAFFER's constitutional rights, entitling plaintiff to punitive damages.

51.    Each of the actions complained of herein was part of and pursuant to a policy, custom, and/or practice of the City and/or the NYPD of stifling protest during the RNC by engaging in mass arrests of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators, without individualized suspicion or probable cause.

52.    Each of the actions complained of herein was part of and pursuant to a policy, custom, and/or practice of the City and/or the NYPD of stifling protest during the RNC by failing to properly screen, train, supervise, discipline and/or monitor police officers with respect to the rights of demonstrators, those perceived to be demonstrators, and those in the vicinity of demonstrators.

53.    The filthy, unhealthy and dangerous conditions at Pier 57, the inhumane treatment and denial of water and prompt medical attention that plaintiff suffered while in custody, and the excessive length of time plaintiff was held in custody, *inter alia*, were part of and pursuant to a policy, custom, and/or practice of the NYPD and/or the City of stifling protest during the RNC by subjecting to abuse demonstrators, those perceived to be demonstrators, and those in the

11

vicinity of demonstrators, and/or by encouraging, ratifying, sanctioning, and/or acting with deliberate indifference toward threats to the health, safety, and rights of such individuals.

54.    Said policies, customs, and/or practices were created, designed, implemented, enforced, and/or ratified on behalf of the CITY OF NEW YORK and the NYPD by defendants KELLY and BLOOMBERG.

55.    As a direct and proximate result of the foregoing actions, including defendants' wrongful policies, practices, customs and/or usages complained of herein, RECHTSCHAFFER has suffered physical injury, pain, and suffering, mental anguish, embarrassment, humiliation, and emotional distress, deprivation of liberty and property, and loss of income and other expenses.

## FEDERAL CLAIMS

56.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 38 as if fully set forth herein.

57.    The acts and conduct described above did violate RECHTSCHAFFER'S rights

    (a)    not to be deprived of liberty without due process of law;
    (b)    to be free from unreasonable search and seizure;
    (c)    not to be subjected to excessive or unreasonable use of force;
    (d)    to be free from false arrest, imprisonment, and unjustified detention;
    (e)    not to be detained in cruel and inhumane conditions
    (f)    not to be detained for an excessive period of time
    (g)    to be free from malicious prosecution;
    (h)    to engage in speech, peacable assembly, and association
    (i)    to be free from conspiracy to violate her federally protected rights,

all in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

59.    Defendant CITY OF NEW YORK is liable for the foregoing violations inasmuch as they occurred pursuant to the municipal policies, practices, and/or customs described above.

58.    As a result of the acts and conduct of the defendants complained of herein, plaintiff RECHTSCHAFFER has suffered physical injury, pain, and suffering, mental anguish, embarrassment, humiliation, and emotional distress, deprivation of liberty and property, and loss of income and other expenses.

## STATE CLAIMS

### (Asserted Against Defendants THE CITY OF NEW YORK, ORLANDO RIVERA, JOHN PARK, MICHAEL CUMMINGS, Undercover Officer No. 6216, and JOHN DOES 1-10)

59.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 41 as if fully set forth herein.

60.    The acts and conduct of the defendants constitute assault and battery, false arrest and imprisonment, malicious prosecution, abuse of process, negligence and gross negligence, negligence in training, hiring, and supervision, and conspiracy, under the laws of the State of New York. These acts and conduct also violated RECHTSCHAFFER's rights under Article I, 6, 8 and 12 of the Constitution of the State of New York.

61.    Defendant CITY OF NEW YORK is liable for the actions of the individual defendants under the doctrine of respondeat superior.

62.    As a result of the acts and conduct of the defendants complained of herein, RECHTSCHAFFER has suffered physical injury, pain, and suffering, mental anguish, embarrassment, humiliation, and emotional distress, deprivation of liberty and property, and loss of income and other expenses.

63.    Plaintiff served a notice of claim upon defendant CITY OF NEW YORK within 90 days of the incident and has otherwise complied with the statutory requirements of the General Municipal Law of the State of New York. Although more than 30 days have elapsed

13

since service of the notice and since plaintiff's 50-h hearing, this defendant has neglected to

adjust or pay such claim.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all

defendants:

(a) a declaration that defendants violated the federal rights of plaintiff;

(b) compensatory damages for physical, emotional, and economic injuries suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(c) punitive damages against the individual defendants to the extent allowable by law;

(d) attorneys fees;

(e) the costs and disbursements of this action; and

(f) such other and further relief as appears just and proper.


Dated:          New York, New York
                January 28, 2008

                                    JONATHAN C. MOORE (JM 6902)
                                    RACHEL M. KLEINMAN (RK 2141)
                                    99 Park Avenue, Suite 1600
                                    New York, New York 10016
                                    (212) 353-9587

                                    *Attorneys for the Plaintiff*

14

# Exhibit I

POLICE OFFICER NEIL RODRIGUEZ, Shield    )
No. 21015**;** POLICE OFFICER JEAN VERGIN,    )
Shield No. 09984; JOHN DOES; RICHARD ROES;)
HUDSON RIVER PARK TRUST,    )
    )
                          Defendants.    )
------------------------------------------------------------------X

## **PRELIMINARY STATEMENT**

1.    This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## **JURISDICTION**

2.    This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.    The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## **JURY TRIAL DEMANDED**

2

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs EMILY SLOAN, CHRISTINA AIKMAN, and JASON PELSZYNSKI filed timely Notices of Claim with the Comptroller of the City of New York within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs WILLARD SCHULMEISTER III's and  MICHAEL SLADEK'S applications to file a late Notices of Claim were granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.      Plaintiff EMILY SLOAN is a citizen of the United States, and at all times relevant herein resided in the state of New Jersey.

9.      Plaintiff CHRISTINA AIKMAN is a citizen of the United States, and at all times relevant herein resided in the state of Florida.

10.      Plaintiff JASON PELSZYNSKI is a citizen of the United States, and at all times relevant herein resided in the state of Florida.

11.      Plaintiff WILLARD SCHULMEISTER III is a citizen of the United States, and at all times relevant herein resided in the state of New York.

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EMILY SLOAN, CHRISTINA AIKMAN, JASON )
PELSZYNSKI, WILLARD SCHULMEISTER III, )
MICHAEL SLADEK, ROBERT LESSER, and )
STEVEN WEAVER, )
 )
                       Plaintiffs, )
 )      **SECOND AMENDED**
     -against- )      **COMPLAINT**
 )
THE CITY OF NEW YORK; MICHAEL )
BLOOMBERG, Mayor of the City of New York; )   **JURY TRIAL DEMANDED**
RAYMOND KELLY, New York City Police )
Commissioner; STEPHEN HAMMERMAN, )     **05 Civ. 7668 (RJS) (JCF)**
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID )    **ECF CASE**
COHEN, Deputy Commissioner for Intelligence, )
New York City Police Department; THOMAS )
DOEPFNER, Assistant Deputy Commissioner for )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD )
DEPUTY INSPECTOR KERRY SWEET, NYPD )
Legal Bureau Executive Officer; NYPD Legal )
Bureau Senior Counsel RUBY MARIN-JORDAN )
NYPD LEGAL BUREAU SUPERVISOR(S) AT )
PIER 57; JOSEPH ESPOSITO, Chief of the New )
York Police Department; THOMAS GRAHAM, )
Commander, Disorder Control Unit, New York City )
Police Department; JACK MCMANUS, Assistant )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough )
Manhattan South, New York City Police )
Department; TERENCE MONAHAN, Assistant )
Chief of the Bronx Borough Command; JOHN J. )
COLGAN, Assistant Chief, New York City Police )
Department; POLICE CAPTAIN ANTHONY )
BOLOGNA, POLICE LIEUTENANT JOHN )
WOLF; POLICE OFFICER KEITH MORSE, )
Shield No. 22766; POLICE OFFICER TIMOTHY )
CAI, Shield No. 2127; POLICE OFFICER )
VINCENT FORTUNATO, Shield No. 23450; )

1

12.     Plaintiff MICHAEL SLADEK is a citizen of the United States, and at all times relevant herein resided in the state of New York.

13.     Plaintiff ROBERT LESSER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

14.     Plaintiff STEVEN WEAVER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

15.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

16.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

17.     Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

4

18.     STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

19.     DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

20.     THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

21.     NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

22.     NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation,

5

promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

23.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

24.    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

25.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

26.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

27.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police

6

Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

28.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity. He is sued individually and in his official capacity.

29.    Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

30.    Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

31.    Defendants SMOLKA, BOLOGNA, WOLF, MORSE, CAI, FORTUNATO,

7

RODRIGUEZ, VERGIN and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants SMOLKA, BOLOGNA, WOLF, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN and JOHN DOES are sued individually and in their official capacity.

32. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, BOLOGNA, WOLF, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to

8

the performance of their lawful functions in the course of their duties.  Defendants

BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET,

MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN,

BOLOGNA, WOLF, and RICHARD ROES are sued individually and in their official capacity.

      33.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC).  Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## STATEMENT OF FACTS

      34.    Plaintiffs are individuals who were wrongfully trapped and arrested on 35th Street

between 5th and 6th Avenues on the evening of August 31, 2004.

      35.    Plaintiffs were arrested during one of the many mass-arrests conducted by the

9

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

36.     Police officers formed a barricade at the intersection of 6th Avenue and 35th Street and prevented egress from 35th Street to the West.

37.     Police officers on motor scooters thereafter formed a line approximately mid-way down the block, creating a barrier that then also prevented the individuals present there from proceeding further down the block to the East.

38.     The decision to deploy the motorscooters in this manner, and the arrest decision, were made by Defendants SMOLKA, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision to engage in the mass arrests on 35th Street was communicated to lower-ranking NYPD officers, including defendants BOLOGNA and WOLF, who effected those orders.

39.     Defendant BOLOGNA gave the order on 35th Street for police to form a line from building to building at the Sixth Avenue end of the block to prevent people from leaving.  See

40.     DEFENDANT WOLF formed the line at the instruction of Bologna and was responsible for not allowing anyone to exit the block past the line, resulting in people being trapped on the block and unlawfully arrested.

41.     Defendant ALBANO was present on scene, authorized the arrests, and contributed to creating false accounts about what had transpired.

42.     Defendants BOLOGNA, WOLF, ALBANO, and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility on 17th Street, and participated both directly and in their capacity as supervisors in making the wrongful mass

10

arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers. They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

43.     The people present there were not free to leave this location. On information and belief, other than a small number of individuals, most of whom were employed in the media, who were selected and released from this area by the police officers, the rest of the people who were present at this location, including plaintiffs, were detained there for a long period of time, and were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

44.     On information and belief, all those arrested on 35th Street, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

45.     Pier 57 is a former bus depot located on the Hudson River, and was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

46.     Pier 57 is owned by and/or under the control of defendant HRPT

47.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

48.     The conditions at Pier 57 were atrocious. The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating. The floor of Pier 57 was caked with

a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier. On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there. During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

49. Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests. On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

50. Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances. In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

12

51.     The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

52.     After their detention at Pier 57, further callous and unreasonable treatment and

conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

53.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

54.     During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

55.     Plaintiff EMILY SLOAN was released after approximately 48 hours in custody. Defendant MORSE was the deponent on the complaint filed with the Criminal Court charging her with disorderly conduct.  All charges against EMILY SLOAN have been dismissed in their entirety.

56.     Plaintiff CHRISTINA AIKMAN was released after approximately 26 hours in custody.  Defendant CAI was assigned as her arresting officer.  All charges against CHRISTINA AIKMAN have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

57.     Plaintiff JASON PELSZYNSKI was released after approximately 37 hours in custody.  Defendant FORTUNATO was the deponent on the complaint filed against him with the Criminal Court.  All charges against JASON PELSZYNSKI have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

58.     Plaintiff WILLARD SCHULMEISTER III was released after more than 40 hours in custody.  Defendant RODRIGUEZ was the deponent on the complaint filed with the Criminal Court charging him with disorderly conduct.  All charges against WILLARD SCHULMEISTER

14

III have been dismissed in their entirety.

59.     Plaintiff MICHAEL SLADEK was released after approximately 43 hours in custody. Defendant VERGIN was the deponent on the complaint filed with the Criminal Court charging him with disorderly conduct. All charges against MICHAEL SLADEK have been dismissed in their entirety.

60.     Plaintiff ROBERT LESSER was released after approximately 44 hours in custody. Defendant VERGIN was the deponent on the complaint filed with the Criminal Court charging him with disorderly conduct. All charges against MICHAEL SLADEK have been dismissed in their entirety.

61.     Plaintiff STEVEN WEAVER was released after more than 40 hours in custody. Defendant RODRIGUEZ was the deponent on the complaint filed against him with the Criminal Court. All charges against STEVEN WEAVER have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

62.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, certain segments of the press, and the National Lawyers Guild. Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

63.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly

15

conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism. The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time. The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created this climate of hostility toward demonstrators and these unconstitutional and illegal policies resulting therefrom.

64. This tone of hostility to demonstrators, and the resultant policies, customs, practices and usages-to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

65. Defendants BLOOMBERG and KELLY further displayed their animosity to

16

demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

66.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

67.    The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

68.    The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association. The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

17

69.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, BOLOGNA, WOLF, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

71.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**SECOND CLAIM**

18

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

72.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, BOLOGNA, WOLF, RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

74.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

### <u>THIRD CLAIM</u>

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

75.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional

19

conduct alleged herein.

77. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

78. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

79.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

81.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

21

82.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies,

practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

      86.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

      87.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (d) enforcement of the Disorderly

23

Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without

cause to believe that an arrestee was congregated with others and/or without having issued any

dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without

giving a sufficient opportunity for people to disperse.  These policies, practices, customs, and

usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

88.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

89.     The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

90.     At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST had de facto policies, practices, customs and usages which were a direct and proximate

cause of the unconstitutional conduct alleged herein.

91.     At all times material to this complaint, defendant HUDSON RIVER PARK

TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the

health and well being of those who they knew or should have known would be held in Pier 57.

100.     By their conduct and actions in contracting with the CITY OF NEW YORK and

otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of

the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of

the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification,

24

and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

101.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

103.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.    The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, BOLOGNA, WOLF, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

105.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

106.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

107.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

108.    By the actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

109.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

26

**FALSE ARREST and FALSE IMPRISONMENT**

110.   The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

111.   By the actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

112.   As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**EIGHTH CLAIM**

**INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

113.   The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

114.   By the actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

27

115.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

### ABUSE OF PROCESS

116.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    By the conduct and actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

### VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

119.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120.     By the actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

121.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## <u>ELEVENTH CLAIM</u>

## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

122.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

123.     By the actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

124.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

29

costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

## NEGLIGENCE

125.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

126.    The defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

127.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

128.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

129.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

30

130.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

### FUTURE MEDICAL EXPENSES

131.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

132.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

133.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### PRIMA FACIE TORT

134.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

135.    Defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the

31

defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

136. As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

## MALICIOUS PROSECUTION

137. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

138. By the actions described above, defendants BOLOGNA, MORSE, CAI, FORTUNATO, RODRIGUEZ, VERGIN, DOES and ROES maliciously prosecuted plaintiffs EMILY SLOAN, WILLARD SCHULMEISTER III, MICHAEL SLADEK, and ROBERT LESSER without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to them and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

139. As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

      a. Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims

herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:        New York, New York
              February 4, 2008

                              _____/S/_____
                              JEFFREY A. ROTHMAN, Esq.
                              (JR-0398)
                              315 Broadway, Suite 200
                              New York, New York 10007
                              (212) 227-2980

                              JOHN WARE UPTON, ESQ.
                              (JU-9065)
                              70 Lafayette Street
                              New York, NY 10013
                              (212) 233-9300

                              Attorneys for plaintiffs

33

# Exhibit J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RANDY XU, DELMAR CONKLIN, DAVID                )
BECKER, SARA HEIFETZ, CHARITY JAMES,           )
and HANNAH JANEWAY,                            )
                                               )       **SECOND AMENDED**
                                               )       **COMPLAINT**
                      Plaintiffs,              )
                                               )       **ECF CASE**
          -against-                            )       **05 Civ. 7672 (RJS)(JCF)**
                                               )
THE CITY OF NEW YORK; MICHAEL                   )
BLOOMBERG, Mayor of the City of New York;      )       **JURY TRIAL DEMANDED**
RAYMOND KELLY, New York City Police            )
Commissioner; STEPHEN HAMMERMAN,               )
Former Deputy Commissioner for Legal Matters,  )
New York City Police Department; DAVID         )
COHEN, Deputy Commissioner for Intelligence,   )
New York City Police Department; THOMAS        )
DOEPFNER, Assistant Deputy Commissioner for    )
Legal Matters, New York City Police Department;)
NYPD LIEUTENANT DANIEL ALBANO; NYPD            )
DEPUTY INSPECTOR KERRY SWEET, NYPD             )
Legal Bureau Executive Officer; NYPD Legal     )
Bureau Senior Counsel RUBY MARIN-JORDAN        )
NYPD LEGAL BUREAU SUPERVISOR(S) AT             )
PIER 57; JOSEPH ESPOSITO, Chief of the New     )
York Police Department; THOMAS GRAHAM,         )
Commander, Disorder Control Unit, New York City)
Police Department; JACK MCMANUS, Assistant     )
Chief, New York City Police Department; BRUCE  )
SMOLKA, former Commander, Patrol Borough       )
Manhattan South, New York City Police          )
Department; TERENCE MONAHAN, Assistant         )
Chief of the Bronx Borough Command; JOHN J.    )
COLGAN, Assistant Chief, New York City Police  )
Department; NYPD INSPECTOR KEVIN WARD;         )
NYPD INSPECTOR THOMAS DIRUSSO; NYPD            )
LIEUTENANT BERGQUIST; NYPD SERGEANT            )
WILLIAM MURPHY; POLICE OFFICER                 )
RUSSELL JOHN, Shield No. 31399; POLICE         )
OFFICER BIENVENI MENA, Shield No. 7584;        )

1

POLICE OFFICER RAYMOND GONZALEZ,         )
Shield No. 10688; POLICE OFFICER STEPHEN  )
NELSON, Shield No. 27285; POLICE OFFICER  )
JOSELITO CHAPARRO, Shield No.03429; JOHN  )
DOES;RICHARD ROES; HUDSON RIVER PARK)
TRUST,                                    )
                                          )
                        Defendants.       )
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, an award of costs and attorneys' fees, and such other and further

relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being

an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

2

4.     Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## VENUE

5.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.     Plaintiffs LASHLEY CARNEY, RANDY XU, DAVID BECKER, SARA HEIFETZ, CHARITY JAMES, and HANNAH JANEWAY filed timely Notices of Claim with the Comptroller of the City, within 90 days of the incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.     Plaintiff  DELMAR CONKLIN's application to file a late Notice of Claim was granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## PARTIES

8.     Plaintiff RANDY XU is a citizen of the United States, and at all times relevant herein resided in the state of New York.

9.     Plaintiff DELMAR CONKLIN is a citizen of the United States, and at all times relevant herein resided in the state of Florida.

10.     Plaintiff DAVID BECKER is a citizen of the United States, and at all times relevant herein resided in the state of New York.

11.     Plaintiff SARA HEIFETZ is a citizen of the United States, and at all times relevant

3

herein resided in the state of New York.

12.    Plaintiff CHARITY JAMES is a citizen of the United States, and at all times relevant herein resided in the state of New York.

13.    Plaintiff HANNAH JANEWAY is a citizen of the United States, and at all times relevant herein resided in the state of Washington.

14.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

15.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

16.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy

4

Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

18.     DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

19.     THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

20.     NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

21.     NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of  the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He

5

is sued individually and in his official capacity.

22.     RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  She is sued individually and in his official capacity.

23     NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  They are sued individually and in his official capacity.

24.     Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

25.     Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

26.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of

6

the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

27.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.   He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

28.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

29.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

30.     Defendants WARD, DIRUSSO, BERGQUIST, MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, and JOHN DOES, are and were at all times relevant

7

herein duly appointed and acting officers, servants, employees and agents of THE CITY OF

NEW YORK and/or the New York City Police Department, a municipal agency of defendant

THE CITY OF NEW YORK.  Said individual defendants are and were at all times relevant

herein acting under color of state law in the course and scope of their duties and functions as

officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting

for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW

YORK and the New York City Police Department, and were otherwise performing and engaging

in conduct incidental to the performance of their lawful functions in the course of their duties.

Defendants WARD, DIRUSSO, BERGQUIST, MURPHY, JOHN, MENA, GONZALEZ,

NELSON, CHAPARRO, and JOHN DOES are sued individually and in their official capacity.

31.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,

ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, WARD, DIRUSSO. BERGQUIST, MURPHY, and RICHARD ROES

are and were at all times relevant herein duly appointed and acting supervisory officers, servants,

employees and agents of THE CITY OF NEW YORK and/or the New York City Police

Department, responsible for the training, retention, supervision, discipline and control of police

officers under their command.  Said individual defendants are and were at all times relevant

herein acting under color of state law in the course and scope of their duties and functions as

supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK,

were acting for, and on behalf of, and with the power and authority vested in them by THE CITY

OF NEW YORK and the New York City Police Department, and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

8

to facts of which they were not truly aware.

50.     At no time were the individuals on 17th Street given an order to disperse or advised that they were in violation of any law or ordinance of the State or City of New York.

51.     On information and belief, the police handcuffed all those present at that location, and a period of time thereafter transported them to Pier 57.

52.     Plaintiffs were arrested at that location and brought to Pier 57.  These arrests were made without probable cause or individualized suspicion of criminal activity, and were thoroughly unreasonable.

53.     Defendant JOHN was assigned as the arresting officer of plaintiff RANDY XU, and was the deponent on the Criminal Complaint filed against him.

54.     Defendant JOHN was also the arresting officer of plaintiff HANNAH JANEWAY.

55.     Defendant MENA was assigned as the arresting officer of plaintiff DELMAR CONKLIN, and was the deponent on the Criminal Complaint filed against him.

56.     Defendant GONZALEZ was assigned as the arresting officer of plaintiff DAVID BECKER, and was the deponent on the Criminal Complaint filed against him.

57.     Defendant NELSON was assigned as the arresting officer of plaintiff SARA HEIFETZ, and was the deponent on the Criminal Complaint filed against her.

58.     Defendant CHAPARRO was assigned as the arresting officer of plaintiff CHARITY JAMES, and was the deponent on the Criminal Complaint filed against her.

59.     On information and belief, all those arrested on 17th Street, and the vast majority

12

duties.  Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,

ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, WARD, DIRUSSO. BERGQUIST, MURPHY, and RICHARD ROES

are sued individually and in their official capacity.

   32. Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC) in late August and early September of 2004.  Said officials are and were at all

times relevant herein acting under color of state law in the course and scope of their duties and

functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on

behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST

and were otherwise performing and engaging in conduct incidental to the performance of their

lawful functions in the course of their duties.

<b><u>STATEMENT OF FACTS</u></b>

   33. Plaintiffs are individuals who were arrested on 17th Street between 5th Avenue and

Union Square West on August 31, 2004.

   34. Plaintiffs were arrested during one of the many mass-arrests conducted by the

9

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

35.     On the evening of August 31, 2004 a group of people, including plaintiffs, left Union Square Park heading North.  They were walking in an orderly fashion, and were walking on the sidewalk.  Some of the members of the group wanted to walk to the "official protest zone" near Madison Square Garden.

36.     The group was unable to continue North once they arrived at 17th Street, since that direction was blocked by police officers.

37.     The group was diverted to the West, and walked in that direction, toward 5th Avenue.

38.     The police erected barricades to prevent egress from the block at 5th Avenue. When some of the people who had been walking with the group spoke to the police officers present there, the officers told them that the group should wait while the police determined whether or not they would facilitate the group as they continued walking toward Madison Square Garden.

39.     Defendant DIRUSSO at one point told the group of people, in sum and substance, to "hold on" and he would tell them where to go.

40.     The group remained at that location for some time, and waited.

41.     The individuals were then told by the police to form a line in the roadway of 17th Street.

42.     The people complied with that police directive, and many of the people raised the peace sign in the air with their fingers.  Some of the people were singing Kumbaya.

43.     A short time later the people were ordered to get against the wall on the southern sidewalk of the block.

44.     The people complied with that directive as well.

45.     They were at that point surrounded by the police, who handcuffed them over a period of time and assigned them to certain police officers for purposes of processing and paperwork.

46.     People who tried to walk away and leave the area were not permitted to do so by the police.

47.     At some point prior to the mass arrests, 17th Street at Broadway was also blocked off by the NYPD.

48.     The arrest decision was made by Defendants DIRUSSO and WARD, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct.  This decision to engage in the mass arrests on 17th Street was communicated to lower-ranking NYPD officers, who effected those orders.

49.     Defendants BERGQUIST, MURPHY, and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility on 17th Street, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers.  They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting

11

of the almost two thousand people arrested during the course of the period of the RNC, were

confined for some period of time at Pier 57.

60.     Pier 57 is a former bus depot located on the Hudson River, and was reconfigured

for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

61.     Pier 57 is owned by and/or under the control of defendant HRPT.

62.     Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of

Pier 57 as a detention facility.

63.     The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link

cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with

a dark grimy substance that spread to the clothing and bodies of those detained therein.  There

were numerous signs warning of hazardous materials that were posted at multiple locations

throughout the pier.  On information and belief, the detainees were exposed during their time at

Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should

have known, were present there.  During these periods of confinement the detainees were

unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

64.     Plaintiffs were processed at Pier 57, and their arresting officers were instructed by

employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN,

DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests.  On information and

belief, these Legal Bureau personnel also participated in the making of unconstitutional and

illegal arrests at numerous mass arrest locations during the RNC.

65.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

66.     The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court.  Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines.  On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their

14

lives.  Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork.  Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street.  All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

67.    After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

68.    On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

69.    During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

70.    Plaintiff RANDY XU was released after approximately 48 hours in custody.  On information and belief, he was charged with disorderly conduct and parading without a permit. All charges against RANDY XU have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

71.    Plaintiff DELMAR CONKLIN was released after approximately 46 hours in

15

custody.  On information and belief, he was charged with disorderly conduct and parading

without a permit.  All charges against DELMAR CONKLIN have been dismissed in their

entirety of by way of an adjournment in contemplation of dismissal.

72.     Plaintiff DAVID BECKER was released after approximately 36 hours in custody.

On information and belief, he was charged with disorderly conduct and parading without a

permit.  All charges against DAVID BECKER have been dismissed in their entirety.

73.     Plaintiff SARA HEIFETZ was released after more than 40 hours in custody. On

information and belief, she was charged with disorderly conduct and parading without a permit.

All charges against SARA HEIFETZ have been dismissed in their entirety.

74.     Plaintiff CHARITY JAMES was released after more than 40 hours in custody. On

information and belief, she was charged with disorderly conduct and parading without a permit.

All charges against CHARITY JAMES have been dismissed in their entirety.

75.     Plaintiff HANNAH JANEWAY was released after approximately 47 hours in

custody. On information and belief, she was charged with disorderly conduct and parading

without a permit.  All charges against HANNAH JANEWAY have been dismissed in their

entirety.

76.     Prior to, during, and after the RNC officials of the CITY OF NEW YORK

evinced through their statements and actions an attitude of contempt toward those who

demonstrated during the RNC, and toward those thought to be assisting or otherwise related to

them, including legal observers, anarchists, certain segments of the press, and the National

Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear

relative to the activities of demonstrators.

16

77.     Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.  The intelligence, and the interpretation of intelligence, which was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created this climate of hostility toward demonstrators and these unconstitutional and illegal policies resulting therefrom.

78.     This  tone of hostility to demonstrators, and the resultant policies, customs, practices and usages-to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC.  These statements portrayed those who chose to engage in political protest in the most negative light.  This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors.  This sentiment was reiterated, summarized and ratified in the public statements of

defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

79.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

80.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

81.    The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, including plaintiffs, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

82.    The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees, including plaintiffs, in part

18

to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

83.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

85.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE

## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

86.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

87.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

88.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

89.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

90.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

91.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of

preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

93.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

94.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of

not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

96.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

97.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

98.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

99.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

100.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

101.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a

24

Permit statute to people walking on the sidewalk; (c) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (d) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

### LIABILITY OF HUDSON RIVER PARK TRUST
### FOR CONSTITUTIONAL VIOLATIONS

103.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

105.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

106.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of

the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of

the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification,

and with a deliberate indifference to or a reckless disregard for the natural and probable

consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional

rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its

First, Fourth, Fifth, and Fourteenth amendment.

107. These acts, policies, practices, customs, and usages were a direct and proximate

cause of the unconstitutional conduct alleged herein.

108. As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

109. The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

110. The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN,

DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU

SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA,

MONAHAN, COLGAN, WARD, DIRUSSO; BERGQUIST; MURPHY, JOHN, MENA,

GONZALEZ, NELSON, CHAPARRO, DOES**,** and ROES alleged herein, occurred while they

were on duty and in uniform, and/or in and during the course and scope of their duties and

functions as New York City police officers, and/or while they were acting as agents and

26

employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

111.    The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

112.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

113.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

114.    By the actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES did inflict assault and battery upon plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

115.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

27

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

116.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    By the actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES caused to be falsely arrested, or falsely arrested, plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120.    By the actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs.  The acts and

28

conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

121.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

122.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

123.    By the conduct and actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

124.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

125.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

126.    By the actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

127.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

128.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

129.    By the actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES violated the right of plaintiffs to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the

30

laws and Constitution of the State of New York.

130.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

### NEGLIGENCE

131.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

132.    The defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

133.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

134.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

135.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who

31

injured plaintiffs. The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

136.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

137.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

138.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

139.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

## PRIMA FACIE TORT

140.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

141.    Defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or

series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

142.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## <u>SIXTEENTH CLAIM</u>

### MALICIOUS PROSECUTION

143.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

144.    By the actions described above, defendants JOHN, MENA, GONZALEZ, NELSON, CHAPARRO, DOES, and ROES maliciously prosecuted plaintiffs DAVID BECKER, SARA HEIFETZ, CHARITY JAMES, and HANNAH JANEWAY without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

145.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all

33

of the defendants:

      a.  Compensatory damages;

      b.  Punitive damages;

      c.  The convening and empanelling of a jury to consider the merits of the claims

herein;

      d.  Costs and interest and attorney's fees;

      e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:     New York, New York
           February 4, 2008


          _____/S/_____
          JEFFREY A. ROTHMAN, Esq.
          (JR-0398)
          315 Broadway, Suite 200
          New York, New York 10007
          (212) 227-2980

          MARTIN R. STOLAR, ESQ.
          (MS-1576)
          351 Broadway
          New York, NY 10013
          (212) 219-1919

          ALAN D. LEVINE, ESQ.
          (AL-3634)
          80-02 Kew Gardens Road, Ste 1010
          Kew Gardens, NY 11415
          (718) 793-6363

          Attorneys for plaintiffs

# EXHIBIT K

REDACTED

# Exhibit L

UNITED STATES DISTRICT COURT                          **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -: 05 Civ. 8453 (KMK) (JCF)
TARASIK ABDELL, et al.,                    :
                                           :
            Plaintiffs,                     :          O R D E R
    - against -                             :
                                           :     ┌─────────────────────────┐
THE CITY OF NEW YORK, et al.,               :     │ **USDC SDNY**           │
                                           :     │ **DOCUMENT**            │
            Defendants.                     :     │ **ELECTRONICALLY FILED**│
- - - - - - - - - - - - - - - - - - -:            │ **DOC #:** _____  │
JAMES C. FRANCIS IV                               │ **DATE FILED:** _11/16/06_│
UNITED STATES MAGISTRATE JUDGE                    └─────────────────────────┘

    Defendants having moved to compel plaintiffs David Barrows,
Benjamin Bernard, Colleen Cook, Matthew Dietzen, Calla Evans, Adam
Feinstein, Barrett Gross, Kathleen Hernandez, Alexander Holley
Drummond, Benjamin Hunt, Jennifer Janney, Michael Joseph, Pepper
Judd, Sarah Kanouse, Jay Kantor, Andrew Laken, Tessa LaLonde,
Jonothan Logan, Ryan McGee, Barbara Ann Meisinger, Tristan
Migliore, Mark Nechay, Daniel O'Reilly-Rowe, Katherine Poe, Shannon
Petrello, Steven Scofield, Robert J. Siegel, Sarah Tepsic, Ann
Trudell, Christy Ann Turner, and Zachary Vreeland to (1) identify
all providers who have provided them with psychological or
psychiatric counseling or treatment, (2) provide releases with
respect to records maintained by these providers, and (3) provide
releases for all pharmacies that have filled prescriptions for
drugs used by the plaintiffs in connection with any psychological
or emotional conditions, it is hereby ORDERED as follows:

    1.   Plaintiffs shall provide the requested information by
November 30, 2006.  This issue has been fully litigated and decided
in the following related cases: MacNamara, 04 Civ. 9126 (Ruling

                                  1

dated Aug. 29, 2005); Hershey-Wilson, 05 Civ. 7026 (Order dated Feb. 2, 2006); Jarick, 05 Civ. 7626 (Order dated May 16, 2006); and Concepcion, 05 Civ. 8501 (Order dated Oct. 23, 2006).

2. Plaintiffs Benjamin Bernard, Michael Joseph, Robert J. Siegel, and Christy Turner have represented that they will not disclose such information. Accordingly, their claims for mental and emotional injury are dismissed with prejudice.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          November 16, 2006

Copies mailed this date:

Alan Levine, Esq.
99 Hudson Street, 14th Floor
New York, New York 10013

Jeffrey A. Dougherty, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

2

# EXHIBIT M

REDACTED

# EXHIBIT N

THE LAW OFFICES OF
# MICHAEL L. SPIEGEL
111 Broadway, Suite 1305
New York, New York 10006
Tel: (212) 587-8558
Fax: (212) 571-7767


## SUBMITTED UNDER SEAL: REFERENCES CONFIDENTIAL INFORMATION

February 29, 2008

**BY HAND**
Hon. James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Room 1960
New York, NY 10007-1312

Re:  Abdell, et al. v. City of New York, et al., 05 Civ. 8453 (RJS)(JCF)

Dear Judge Francis:

I write in response to defendants' January 22, 2008 application to dismiss some plaintiffs' claims in this action, and for other relief, on the grounds of alleged deficiencies in their discovery responses.

# REDACTED

REDACTED

# REDACTED

6. <u>Riverbend, Deborah</u>:  Plaintiff Riverbend declines to provide releases for any prior mental health treatment she may have received.  Plaintiff objects to the dismissal of her claims for emotional distress for the reasons set forth in the February 9, 2007 Reply Memorandum in Support of Plaintiffs' Objections, Pursuant to Rule 72, F.R.Civ.P., to Magistrate Judge Francis' Order Dismissing Claims for Mental and Emotional Injury in <u>Abdell v. City of New York</u>, 05 Civ. 8453 (RJS)(JCF).[9]

Plaintiff emphasizes that she does not claim any actual psychological injury or diagnosable mental condition caused by defendants' conduct, and her mental suffering and emotional distress claim covers a period of limited duration, primarily occurring during the time of her arrest and incarceration.  Furthermore, the plaintiff will not offer any evidence at trial from a treating mental health provider or an expert.

The reasoning in <u>Kerman v. The City of New York</u>, 374 F.3d 93, 125 (2d Cir. 2004), leads to the conclusion that a plaintiff need not produce treatment records in the circumstances

---

[9]The February 9, 2007 Reply Memorandum on the Rule 72 motion concerning plaintiffs who have declined to provide releases for mental health records is attached as Exhibit I.

5

presented here. Kerman held that, upon proof of a false imprisonment, a plaintiff was entitled to general damages for the "time lost by the plaintiff during the period of detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint." Kerman, 374 F.3d at 130-31, quoting McCormick, Handbook on the Law of Damages, § 107 at 375-76. Because they are general damages, those damages need not be pleaded and proved, but rather "'may be inferred from the circumstances of the arrest or imprisonment. . . .'" Id. at 125. In every false arrest and imprisonment case, plaintiffs have a right to recover damages for ordinary emotional distress, *whether they plead it or not.* Further, it follows that plaintiffs would have the right to describe that "mental suffering or humiliation sustained in consequence of the arrest" without waiving the psychotherapist-patient privilege attaching to records of treatment pre-dating the arrest and unrelated to it.

Since the briefing of this issue on the original Rule 72 application in Abdell, wherein plaintiffs relied upon Greenberg v. Smolka, 2006 U.S. Dist. LEXIS 24319 (S.D.N.Y. 2006), other decisions in this district have come to the same conclusion. In Kunstler v. The City of New York, 242 F.R.D. 261, 2007 U.S. Dist. LEXIS 35534 (S.D.N.Y. 2007) (Sweet, J.), plaintiffs resisted turning over psychological records concerning "an emotional injury that a well-adjusted person could be expected to suffer in like circumstances, a so called 'garden variety' distress claim," distinguishing such a claim from one for "a serious psychological injury." Id. at *5. That is exactly the kind of emotional injury plaintiff herein is claiming. The Court, upholding Magistrate Judge Dolinger's Memorandum and Order, held that the defendants

> had not established the justification for turning over sensitive psychological information. Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in *Jaffe*, represents the appropriate view of the issue and the authorities. The reasoning and the determination of fairness set forth in *Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975),* as cited by Judge Dolinger and the Court of Appeals for the Second Circuit in *United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991),* is compelling.

Id. at *6. For the foregoing reasons, incorporating by reference the arguments set forth in Exhibit I, defendants' application to dismiss the emotional distress damages claims of plaintiff Riverbend should be denied.

REDACTED

# REDACTED

Respectfully submitted,

Michael L. Spiegel

cc: A.C.C. Jeffrey A. Dougherty (by hand)

# EXHIBIT O

REDACTED

# Exhibit P

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -: 05 Civ. 8453 (RJS) (JCF)
TARASIK ABDELL, et al.,                :
                                       :
                Plaintiffs,            :           O R D E R
       - against -                     :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
                Defendants.            :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/16/08

1.  The emotional distress claims of plaintiff Deborah Riverbend are dismissed as she has declined to produce releases for relevant mental health records.

2.  Defendants' application to dismiss the emotional distress claims of plaintiffs Susan D'Ornellas, Kathleen Hernandez, Benjamin Hunt, Ryan McGee, Barbara Ann Meisinger, and Steven Scofield are denied.  Plaintiffs' redaction of information that was related to irrelevant physical conditions and associated treatment was entirely appropriate.

3.  Plaintiffs Stephen Gamboa, Ronald San Marchi and Deborah Riverbend shall be available for continuation of their depositions on a date prior to May 16, 2008 agreed upon by counsel.  The continued depositions shall be limited to questions relating to the belatedly produced non-RNC arrest records.  They shall be conducted telephonically, with the plaintiffs bearing the cost of the calls.

4.  Plaintiffs William Conwell, Tobiah Gaster, Barrett Gross, Kathleen Hernandez, Jennifer Janney, Sarah Kanouse, Jay Kantor, Edward Kinane, Joshua Knapp, Matthew Kocek, Katherine Krassan,

1

Jared Lanctot, Jonothan Logan, Blossom Nicinski, James Noonan, Michael Palmer, Shannon Petrello, Stephen Petrick, Raymond Robinson, Mora Mi-Ok Stephens, Ann Trudell, and Teran Wilson shall be limited at trial to introducing documentation of economic damages that they have produced prior to this date.

    5.   Defendants' application for a preclusion order regarding plaintiffs' clothing is denied without prejudice to renewal at trial.

                    SO ORDERED.

                    *James C. Francis IV*
                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 16, 2008

Copies mailed this date:

Michael L. Spiegel, Esq.
111 Broadway, Suite 1305
New York, New York 10006

Jeffrey A. Dougherty, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

2

# EXHIBIT Q

REDACTED

# EXHIBIT R

REDACTED

# EXHIBIT S

**REDACTED**

.

# EXHIBIT T

REDACTED

# EXHIBIT U

THE LAW OFFICES OF

# MICHAEL L. SPIEGEL

111 Broadway, Suite 1305
New York, New York 10006
Tel: (212) 587-8558
Fax: (212) 571-7767

## SUBMITTED UNDER SEAL: REFERENCES CONFIDENTIAL INFORMATION

February 29, 2008

**BY HAND**
Hon. James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Room 1960
New York, NY 10007-1312

     Re:    <u>Adams, et al.</u> v. <u>City of New York, et al.</u>, 05 Civ. 9484 (RJS)(JCF)

Dear Judge Francis:

     I write in response to defendants' January 22, 2008 motion to dismiss some plaintiffs' claims in this action, and for other relief, on the grounds of alleged deficiencies in plaintiffs' discovery responses.

# REDACTED

REDACTED

# REDACTED

D.    <u>Plaintiffs Benson, Doxtader and Mitrano Decline to Provide Releases</u>

Plaintiffs Benson, Doxtader and Mitrano have declined to provide releases for any prior mental health treatment they may have received.  Plaintiffs object to the dismissal of their claims for emotional distress for the reasons set forth in the February 9, 2007 Reply Memorandum in Support of Plaintiffs' Objections, Pursuant to Rule 72, F.R.Civ.P., to Magistrate Judge Francis' Order Dismissing Claims for Mental and Emotional Injury in <u>Abdell v. City of New York</u>, 05 Civ. 8453 (RJS)(JCF).[7]

Plaintiffs emphasize that they do not claim any actual psychological injury or diagnosable mental condition caused by defendants' conduct, and their mental suffering and emotional distress claims cover a period of limited duration, primarily occurring during the time of their

---

[5]The January 31, 2008 transmittal letter for plaintiff Aronowsky's release for Mr. Heyer's records is attached as Exhibit E.

[6]The January 10, 2008 transmittal letter for plaintiff Stipe's release for Dr. Fein's records is attached as Exhibit A.

[7]The February 9, 2007 Reply Memorandum in Support of Plaintiffs' Rule 72 Objections to the Order Dismissing Claims for Mental and Emotional Injury is attached as Exhibit F.

arrest and incarceration. Furthermore, the plaintiffs will not offer any evidence at trial from a treating mental health provider or an expert.

The reasoning in Kerman v. The City of New York, 374 F.3d 93, 125 (2d Cir. 2004), leads to the conclusion that a plaintiff need not produce treatment records in the circumstances presented here. Kerman held that, upon proof of a false imprisonment, a plaintiff was entitled to general damages for the "time lost by the plaintiff during the period of detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint." Kerman, 374 F.3d at 130-31, quoting McCormick, Handbook on the Law of Damages, § 107 at 375-76. Because they are general damages, those damages need not be pleaded and proved, but rather "'may be inferred from the circumstances of the arrest or imprisonment. . . .'" Id. at 125. In every false arrest and imprisonment case, plaintiffs have a right to recover damages for ordinary emotional distress, *whether they plead it or not.* Further, it follows that plaintiffs would have the right to describe that "mental suffering or humiliation sustained in consequence of the arrest" without waiving the psychotherapist-patient privilege attaching to records of treatment pre-dating the arrest and unrelated to it.

Since the briefing of this issue on the original Rule 72 application in Abdell, wherein plaintiffs relied upon Greenberg v. Smolka, 2006 U.S. Dist. LEXIS 24319 (S.D.N.Y. 2006), other decisions in this district have come to the same conclusion. In Kunstler v. The City of New York, 242 F.R.D. 261, 2007 U.S. Dist. LEXIS 35534 (S.D.N.Y. 2007) (Sweet, J.), plaintiffs resisted turning over psychological records concerning "an emotional injury that a well-adjusted person could be expected to suffer in like circumstances, a so called 'garden variety' distress claim," distinguishing such a claim from one for "a serious psychological injury." Id. at *5. That is exactly the kind of emotional injury plaintiffs herein are claiming. The Court, upholding Magistrate Judge Dolinger's Memorandum and Order, held that the defendants

> had not established the justification for turning over sensitive psychological information. Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in *Jaffe,* represents the appropriate view of the issue and the authorities. The reasoning and the determination of fairness set forth in *Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975),* as cited by Judge Dolinger and the Court of Appeals for the Second Circuit in *United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991),* is compelling.

Id. at *6. For the foregoing reasons, incorporating by reference the arguments set forth in Exhibit F, defendants' applications to dismiss the emotional distress damages claims of plaintiffs Benson, Doxtader and Mitrano should be denied.

REDACTED

# REDACTED

Respectfully submitted,

Michael L. Spiegel

cc: A.C.C. Jeffrey A. Dougherty (by hand)

# EXHIBIT V

REDACTED

# Exhibit W

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - :

COURTNEY LEE ADAMS, et al.,          : 05 Civ. 9484 (RJS) (JCF)
                                     :
               Plaintiffs,           :           O R D E R
                                     :
        - against -                  :     ┌─────────────────────────────┐
                                     :     │ **USDS SDNY**               │
THE CITY OF NEW YORK, et al.,,       :     │ **DOCUMENT**                │
                                     :     │ **ELECTRONICALLY FILED**    │
               Defendants.           :     │ DOC #: _____          │
- - - - - - - - - - - - - - - - - - - - :   │ DATE FILED: 4/15/08         │
JAMES C. FRANCIS IV                        └─────────────────────────────┘
UNITED STATES MAGISTRATE JUDGE

Defendants having moved by letter dated January 22, 2008 for an order dismissing certain claims and compelling discovery, it is hereby ORDERED as follows:

1.   The emotional distress claims of plaintiffs Christopher Benson, Ryan Doxtader, and Erica Mitrano are dismissed, as they have declined to produce releases for relevant mental health records.

2.   Plaintiff Sada Stipe shall be available for continued deposition prior to May 16, 2008 on a date agreed to by counsel. The continued deposition shall be limited to questions related to belatedly produced mental health records. It shall be conducted telephonically, with the plaintiff bearing the cost of the call.

3.   Plaintiff Amelia Geocos shall be available for a continuation of her deposition on a date prior to May 16, 2008 agreed upon by counsel. The continued deposition shall be limited to questions relating to the belatedly produced medical records. It shall be conducted telephonically, with the plaintiff bearing the cost of the call.

1

4. Plaintiffs Thomas Adamson, Scott Beibin, Christopher

Benson, Benjamin Cody, Eric Corley, Ryan Doxtader, Scott O'Dierno, and Nadgia Lara shall be available for continuation of their deposition on a date prior to May 16, 2008 agreed upon by counsel. The continued depositions shall be limited to questions relating to the belatedly produced non-RNC arrest records. They shall be conducted telephonically, with the plaintiffs bearing the cost of the calls.

5. Plaintiffs Thomas Bacon, Stephen Black, Benjamin Cody, Gabriel Cohn, Marlene Flaton, Zachary Goldstein, James Graham, Greg Griffith, Michelle Kaye, Thomas Kennedy, Kristin Kojis, Richard Lovejoy, Aaron Maert, Lisa Martin, Erica Mitrano, Emily Paine, Jeffrey Parrot, Daniel Perry, Michael Reilly, Jesse Rosemoore, Cynthia Rosin, Rue Sakayama, Nazie Shekatchi, Arielle Soloff, Jessica Taft, Ellen Tuzzolo, Joel Viertel, Seth Wessler, and Adrienne Wilcox shall be limited at trial to introducing documentation of economic damages that they have produced prior to this date.

6. By May 9, 2008 plaintiff Scott Beibin shall produce his federal tax returns for the tax years 2002, 2003, and 2004. Defendants have overcome the quasi-privilege for tax returns by showing their relevance and the inability to obtain equivalent information from other sources.

7. Plaintiffs Jennifer Giles and Sydney Vault need not produce releases for cell phone records, as they are irrelevant.

8. By April 30, 2008, plaintiff Lily Hughes-Dunn shall

2

provide a log identifying with the requisite specificity any documents that she is withholding on grounds of privilege. Thereafter, defendants may renew their motion to compel, accompanied by the transcript containing the ruling of Judge Karas upon which they rely.

9. Defendants' application for a preclusion order regarding plaintiffs' clothing is denied without prejudice to renewal at trial.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           April 15, 2008

Copies mailed this date:

Michael L. Spiegel, Esq.
111 Broadway, Suite 1305
New York, New York 10006

Jeffrey A. Dougherty, Esq.
Special Assistant Corporation Counsel
100 Church Street
New York, New York 10007

3

# EXHIBIT X

REDACTED

# EXHIBIT Y

REDACTED

# EXHIBIT Z

REDACTED

# EXHIBIT AA

REDACTED

# EXHIBIT BB

# NORMAN BEST

Attorney at Law
Member of the Bar in New York and Washington State

## SUBMITTED UNDER SEAL: REFERENCES CONFIDENTIAL INFORMATION

February 29, 2008

### BY HAND
Hon. James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Room 1960
New York, NY 10007-1312

Re:    Araneda, et al. v. City of New York, et al., 05 Civ. 9738 (RJS)(JCF)

Dear Judge Francis:

    I write in response to defendants' January 22, 2008 motion to dismiss some plaintiffs' claims in this action, and for other relief, on the grounds of alleged deficiencies in plaintiffs' discovery responses.

# REDACTED

REDACTED

# REDACTED

C.    <u>Plaintiffs Araneda, Ellisen, Segal, and Weeks Decline to Provide Releases</u>

Plaintiffs Araneda, Ellisen, Segal, and Weeks have declined to provide releases for any prior mental health treatment they may have received. Plaintiffs object to the dismissal of their claims for emotional distress for the reasons set forth in the February 9, 2007 Reply Memorandum in Support of Plaintiffs' Objections, Pursuant to Rule 72, F.R.Civ.P., to Magistrate Judge Francis' Order Dismissing Claims for Mental and Emotional Injury in <u>Abdell v. City of New York</u>, 05 Civ. 8453 (RJS)(JCF).[15]

---

[15]The February 9, 2007 Reply Memorandum in Support of Plaintiffs' Rule 72 Objections to the Order Dismissing Claims for Mental and Emotional Injury in the

5

Plaintiffs emphasize that they do not claim any actual psychological injury or diagnosable mental condition caused by defendants' conduct, and their mental suffering and emotional distress claims cover a period of limited duration, primarily occurring during the time of their arrest and incarceration. Furthermore, the plaintiffs will not offer any evidence at trial from a treating mental health provider or an expert.

The reasoning in Kerman v. The City of New York, 374 F.3d 93, 125 (2d Cir. 2004), leads to the conclusion that a plaintiff need not produce treatment records in the circumstances presented here. Kerman held that, upon proof of a false imprisonment, a plaintiff was entitled to general damages for the "time lost by the plaintiff during the period of detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint." Kerman, 374 F.3d at 130-31, quoting McCormick, Handbook on the Law of Damages, § 107 at 375-76. Because they are general damages, those damages need not be pleaded and proved, but rather "'may be inferred from the circumstances of the arrest or imprisonment. . . .'" Id. at 125. In every false arrest and imprisonment case, plaintiffs have a right to recover damages for ordinary emotional distress, *whether they plead it or not*. Further, it follows that plaintiffs would have the right to describe that "mental suffering or humiliation sustained in consequence of the arrest" without waiving the psychotherapist-patient privilege attaching to records of treatment pre-dating the arrest and unrelated to it.

Since the briefing of this issue on the original Rule 72 application in Abdell, wherein plaintiffs relied upon Greenberg v. Smolka, 2006 U.S. Dist. LEXIS 24319 (S.D.N.Y. 2006), other decisions in this district have come to the same conclusion. In Kunstler v. The City of New York, 242 F.R.D. 261, 2007 U.S. Dist. LEXIS 35534 (S.D.N.Y. 2007) (Sweet, J.), plaintiffs resisted turning over psychological records concerning "an emotional injury that a well-adjusted person could be expected to suffer in like circumstances, a so called 'garden variety' distress claim," distinguishing such a claim from one for "a serious psychological injury." Id. at *5. That is exactly the kind of emotional injury plaintiffs herein are claiming. The Court, upholding Magistrate Judge Dolinger's Memorandum and Order, held that the defendants

had not established the justification for turning over sensitive psychological information. Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in *Jaffe*, represents the appropriate view of the issue and the authorities. The reasoning and the determination of fairness set forth in *Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)*, as cited by Judge Dolinger and the Court of Appeals for the Second Circuit in *United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)*, is compelling.

---

Abdell case is attached as Exhibit L.

Id. at *6. For the foregoing reasons, incorporating by reference the arguments set forth in Exhibit L, defendants' applications to dismiss the emotional distress damages claims of plaintiffs Araneda, Ellisen, Segal, and Weeks should be denied.

# REDACTED

# REDACTED

Respectfully submitted,

Norman F. E. Best

cc: A.C.C. Cheryl Shammas (by hand)

# EXHIBIT CC

REDACTED

# Exhibit DD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -:

BARBARA ARANEDA, et al.,                : 05 Civ. 9738 (RJS) (JCF)

                Plaintiffs,             :

        - against -                     :

THE CITY OF NEW YORK, et al.,           :

                Defendants.             :

- - - - - - - - - - - - - - - - - - - -:

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE



O R D E R
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/15/08

Defendants having moved by letter dated January 22, 2008 for an order dismissing certain claims and compelling discovery, it is hereby ORDERED as follows:

1.   The emotional distress claims of plaintiffs Barbara Araneda, Hays Ellisen, David Segal, and Brian Weeks are dismissed, as they have declined to produce releases for relevant mental health records.

2.   Plaintiffs Brendan Sexton and Edward Sugden shall be available for continuation of their depositions on dates prior to May 16, 2008 agreed upon by counsel.  The continued depositions shall be limited to questions relating to the belatedly produced mental health and non-RNC arrest records.  They shall be conducted telephonically, with the plaintiffs bearing the cost of the calls.  Mr. Sugden need not produce a release for records of services provided when he was seven years old.

3.   Plaintiffs, Anne Burns, Kathleen O'Reilly, Sandy Sanders, and David Segal shall be available for continuation of their depositions on dates prior to May 16, 2008 agreed upon by counsel.

1

the belatedly produced non-RNC arrest records. They shall be
conducted telephonically, with the plaintiffs bearing the cost of
the calls.

4. Plaintiffs Barbara Araneda, Anne Burns, Kathleen O'Reilly,
Sandy Sanders, and Elizabeth Walsh shall be limited at trial to
introducing documentation of economic damages that they have
produced prior to this date.

5. Plaintiff Anne Burns shall provide a log identifying with
the requisite specificity any documents that she is withholding on
grounds of privilege. Thereafter, defendants may renew their
motion to compel, accompanied by the transcript containing the
ruling of Judge Karas upon which they rely.

6. Defendants' application for a preclusion order regarding
plaintiffs' clothing is denied without prejudice to renewal at
trial.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            April 15, 2008

Copies mailed this date:

Norman R. Best, Esq.
Law Office of Susan Taylor
575 Madison Avenue - 10th Floor
New York, New York 10022

2

Cheryl L. Shammas, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

3

# EXHIBIT EE

REDACTED

# EXHIBIT FF

REDACTED

# EXHIBIT GG

THE LAW OFFICES OF

# MICHAEL L. SPIEGEL

111 Broadway, Suite 1305
New York, New York 10006
Tel: (212) 587-8558
Fax: (212) 571-7767

**SUBMITTED UNDER SEAL: REFERENCES CONFIDENTIAL INFORMATION**

February 29, 2008

**BY HAND**
Hon. James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Room 1960
New York, NY 10007-1312

Re:    Eastwood, *et al.* v. City of New York, *et al.*,
       05 Civ. 9483 (RJS)(JCF)

Dear Judge Francis:

I write in response to defendants' January 22, 2008 applications to dismiss some plaintiffs' claims in this action, and for other relief, on the grounds of alleged deficiencies in plaintiffs' discovery responses.

# REDACTED

REDACTED

# REDACTED

**Mental Health History Releases**

# REDACTED

B.  Plaintiffs Corey Eastwood and Jesse Henry

Plaintiffs Eastwood and Henry have declined to provide releases for any prior mental health treatment they may have received.  Plaintiffs object to the dismissal of their claims for emotional distress for the reasons set forth in the February 9, 2007 Reply Memorandum in Support of Plaintiffs' Objections, Pursuant to Rule 72, F.R.Civ.P., to Magistrate Judge Francis' Order Dismissing Claims for Mental and Emotional Injury in Abdell v. City of New York, 05 Civ. 8453 (RJS)(JCF).[5]

Plaintiffs emphasize that they do not claim any actual psychological injury or diagnosable mental condition caused by defendants' conduct, and their mental suffering and emotional distress claims cover a period of limited duration, primarily occurring during the time of their arrest and incarceration.  Furthermore, the plaintiffs will not offer any evidence at trial from a

---

[3] The March 9, 2007 letter is attached as Exhibit C; the March 26, 2007 letter is attached as Exhibit D.

[4] The July 10, 2007 letter from Anthem Blue Cross Blue Shield transmitting records to plaintiff, plaintiff's counsel and defendants' counsel is attached as Exhibit E.

[5] The February 9, 2007 Reply Memorandum in Support of Plaintiffs' Objections is attached as Exhibit F.

3

treating mental health provider or an expert.

The reasoning in Kerman v. The City of New York, 374 F.3d 93, 125 (2d Cir. 2004), leads to the conclusion that a plaintiff need not produce treatment records in the circumstances presented here. Kerman held that, upon proof of a false imprisonment, a plaintiff was entitled to general damages for the "time lost by the plaintiff during the period of detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint." Kerman, 374 F.3d at 130-31, quoting McCormick, Handbook on the Law of Damages, § 107 at 375-76. Because they are general damages, those damages need not be pleaded and proved, but rather "'may be inferred from the circumstances of the arrest or imprisonment. . . .'" Id. at 125. In every false arrest and imprisonment case, plaintiffs have a right to recover damages for ordinary emotional distress, *whether they plead it or not.* Further, it follows that plaintiffs would have the right to describe that "mental suffering or humiliation sustained in consequence of the arrest" without waiving the psychotherapist-patient privilege attaching to records of treatment pre-dating the arrest and unrelated to it.

Since the briefing of this issue on the original Rule 72 application in Abdell, wherein plaintiffs relied upon Greenberg v. Smolka, 2006 U.S. Dist. LEXIS 24319 (S.D.N.Y. 2006), other decisions in this district have come to the same conclusion. In Kunstler v. The City of New York, 242 F.R.D. 261, 2007 U.S. Dist. LEXIS 35534 (S.D.N.Y. 2007) (Sweet, J.), plaintiffs resisted turning over psychological records concerning "an emotional injury that a well-adjusted person could be expected to suffer in like circumstances, a so called 'garden variety' distress claim," distinguishing such a claim from one for "a serious psychological injury." Id. at *5. That is exactly the kind of emotional injury plaintiffs herein are claiming. The Court, upholding Magistrate Judge Dolinger's Memorandum and Order, held that the defendants

> had not established the justification for turning over sensitive psychological information. Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in *Jaffe,* represents the appropriate view of the issue and the authorities. The reasoning and the determination of fairness set forth in *Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975),* as cited by Judge Dolinger and the Court of Appeals for the Second Circuit in *United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991),* is compelling.

Id. at *6. For the foregoing reasons, incorporating by reference the arguments set forth in Exhibit F, plaintiffs Eastwood and Henry request that defendants' application be denied.

# REDACTED

4

# REDACTED

Respectfully submitted,

*M. Spiegel*

Michael L. Spiegel

cc: A.C.C. Curt P. Beck (by hand)

# EXHIBIT HH

REDACTED

# Exhibit II

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
COREY EASTWOOD, JESSE HENRY,         : 05 Civ. 9483 (RJS) (JCF)
GAURAV JASHNANI, CHRIS DWYER, and    :
DANIEL DWYER,                        :        O R D E R
                                     :
                Plaintiffs,          :
                                     :
     - against -                     :
                                     :
THE CITY OF NEW YORK, CARMINE        :
FIORE, CAPTAIN KAVANAGH, PATRICK     :
QUIGLEY, SHAUN GUMBS, and DOES and   :
ROES,                                :
                Defendants.          :
- - - - - - - - - - - - - - - - - - -:



JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Defendants having moved by letter dated January 22, 2008 for
an order dismissing certain claims and compelling discovery, it is
hereby ORDERED as follows:

     1.  The emotional distress claims of plaintiff Jesse Henry are
dismissed, as he has declined to produce releases for relevant
mental health records.

     2.  Defendants' application to dismiss the emotional distress
and physical injury claims of plaintiff Guarav Jashnani is denied
as frivolous.  The releases requested relate to treatments having
nothing to do with any emotional distress or physical injury claim
in this case.

     3.  Plaintiffs Corey Eastwood, Guarav Jashnani, Chris Dwyer,
and Dan Dwyer shall be available for a continuation of their
depositions on a date prior to May 16, 2008 agreed upon by counsel.
The continued depositions shall be limited to questions relating to
the belatedly produced non-RNC arrest records.   They shall be

1

conducted telephonically, with the plaintiffs bearing the cost of

the calls.

    4.   Defendants' application for a preclusion order regarding

plaintiffs' clothing is denied without prejudice to renewal at

trial.

                        SO ORDERED.

                        _James C. Francis IV_

                        JAMES C. FRANCIS IV
                        UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           April 15, 2008

Copies mailed this date:

Michael L. Spiegel, Esq.
The Law Offices of Michael L. Spiegel
111 Broadway, Suite 1305
New York, New York 10006

Curt P. Beck, Esq.
Alexis L. Leist, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

                             2

# EXHIBIT JJ

REDACTED

# Exhibit KK

THE LAW OFFICES OF

## MICHAEL L. SPIEGEL

111 BROADWAY, SUITE 1305
NEW YORK, NEW YORK 10006
TEL:(212)587-8558    FAX:(212)571-7767

### SUBMITTED UNDER SEAL - REFERS TO CONFIDENTIAL INFORMATION

March 11, 2008

Hon. James C. Francis IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Room 1960
New York, NY 10007-1312

> Re:    Kennedy, *et al.* v. City of New York, *et al.*, 07 CV 7678 (RJS) (JCF)

Dear Judge Francis:

I write in response to the March 10, 2008 letter application from Assistant Corporation Counsel Raju Sundaran requesting dismissal of the emotional distress damages claims of plaintiffs Megan Kennedy and Carre Adams.  Plaintiffs object to the dismissal of their claims for emotional distress for the reasons set forth in the February 9, 2007 Reply Memorandum in Support of Plaintiffs' Objections, Pursuant to Rule 72, F.R.Civ.P., to Magistrate Judge Francis' Order Dismissing Claims for Mental and Emotional Injury in Abdell v. City of New York, 05 Civ. 8453 (RJS)(JCF), attached as Exhibit A.

Plaintiffs emphasize that they do not claim any actual psychological injury or diagnosable mental condition caused by defendants' conduct; their mental suffering and emotional distress claims cover a period of limited duration, primarily occurring during the time of their arrest and incarceration.  Furthermore, the plaintiffs will not offer any evidence at trial from a treating mental health provider or an expert.

The reasoning in Kerman v. The City of New York, 374 F.3d 93, 125 (2d Cir. 2004), leads to the conclusion that a plaintiff need not produce treatment records in the circumstances presented here.  Kerman held that, upon proof of a false imprisonment, a plaintiff was entitled to general damages for the "time lost by the plaintiff during the period of detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint." Kerman, 374 F.3d at 130-31, quoting McCormick, Handbook on the Law of Damages, § 107 at 375-76.  Because they are general damages, those damages need not be pleaded and proved, but rather "'may be inferred from the circumstances of the arrest or imprisonment. . . .'" Id. at 125.  In every false arrest and imprisonment case, plaintiffs have a right to recover damages for ordinary emotional distress, *whether they plead it or not.*  Further, it follows that plaintiffs would have the right to describe that "mental suffering or humiliation sustained in consequence of the arrest" without

1

waiving the psychotherapist-patient privilege attaching to records of treatment pre-dating the arrest and unrelated to it.

Since the briefing of this issue on the Rule 72 application in Abdell, wherein plaintiffs relied upon Greenberg v. Smolka, 2006 U.S. Dist. LEXIS 24319 (S.D.N.Y. 2006), other decisions in this district have come to the same conclusion. In Kunstler v. The City of New York, 242 F.R.D. 261, 2007 U.S. Dist. LEXIS 35534 (S.D.N.Y. 2007) (Sweet, J.), plaintiffs resisted turning over psychological records concerning "an emotional injury that a well-adjusted person could be expected to suffer in like circumstances, a so called 'garden variety' distress claim," distinguishing such a claim from one for "a serious psychological injury." Id. at *5. That is exactly the kind of emotional injury plaintiffs herein are claiming. The Court, upholding Magistrate Judge Dolinger's Memorandum and Order, held that the defendants

> had not established the justification for turning over sensitive psychological information. Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in *Jaffe*, represents the appropriate view of the issue and the authorities. The reasoning and the determination of fairness set forth in *Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)*, as cited by Judge Dolinger and the Court of Appeals for the Second Circuit in *United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)*, is compelling.

Id. at *6.

For the foregoing reasons, incorporating by reference the arguments set forth in Exhibit A, plaintiffs request that defendants' application be denied.

Respectfully submitted,

Michael L. Spiegel

MLS:ms

cc:    Raju Sundaran, Esq.
       Assistant Corporation Counsel

2

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
TARASIK ABDELL, et al.,

                              Plaintiffs,          05 Civ. 8453 (KMK) (JCF)

          -against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

---------------------------------------------------------X


**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTIONS,
PURSUANT TO RULE 72, F.R.CIV.P., TO MAGISTRATE FRANCIS' ORDER
DISMISSING CLAIMS FOR MENTAL AND EMOTIONAL INJURY**


This Reply Memorandum is submitted in response to Defendants' Memorandum of Law

in Opposition to Plaintiffs' Motions for Relief ("Defendants' Memorandum").

## STATEMENT OF FACTS

Plaintiffs, who allege that their unlawful arrest and detention caused them emotional

injury, have refused the City's request that they provide psychotherapy and counseling records

for the past 10 years. The sole issue presented for determination is whether or not the plaintiffs,

by claiming such emotional injury, have waived the psychotherapy privilege. *Jaffee v.

Redmond*, 518 U.S. 1 (1996). With regard to that issue, the relevant facts are:

- None of the plaintiffs sought psychotherapy or counseling in connection with their

  arrests.

- None of the plaintiffs will support their claim of emotional injury with the

  testimony of a psychotherapist.

- The plaintiffs all claim that the emotional injury that they suffered was no more than the ordinary distress that any reasonable person might experience as a result of being unlawfully arrested and imprisoned.

- None of the plaintiffs will claim to have suffered a diagnosable mental condition as a result of his or her arrest and detention, nor will any plaintiff claim that the arrest and detention exacerbated any pre-existing mental condition.

- The emotional distress experienced by each plaintiff was limited to the time of arrest and detention and a brief period thereafter.

## ARGUMENT

## I.

## AN ALLEGATION OF, OR TESTIMONY ABOUT, EMOTIONAL DISTRESS DOES NOT WAIVE THE PATIENT-PSYCHOTHERAPIST PRIVILEGE

The defendants are, of course, correct in noting that this Court has previously held in another RNC case, *Hershey-Wilson v. City of New York*, 05-CV-7026 (April 20, 2006), that plaintiffs who have alleged emotional distress as a result of their unlawful arrest and detention have waived the privilege and must produce counseling and psychotherapy records. However, from their one-sided presentation – going so far as to suggest that a court's refusal to permit the City to root through a plaintiff's history of psychotherapy "very likely would amount to a violation of defendants' own due process and other constitutional rights. . ." Defendants' Memorandum at 16[*] – one would hardly know that numerous courts have come to a different conclusion about waiver of the privilege in circumstances such as those presented here.

---

[*]Not surprisingly, the defendants cite no case for this far-fetched proposition.

There are indeed serious and far-reaching constitutional implications to this seemingly routine discovery dispute, although they bear upon plaintiffs' rights, not those of government officials. Whether civil rights plaintiffs allege it or not, there is scarcely a § 1983 case, given the requisite allegation of arbitrary and unlawful behavior by a government official, in which a plaintiff will not have experienced some degree of emotional distress. It is little more than one would expect from what amounts to an act of betrayal by the agents of one's own government. If the price of putting such emotional distress before the finder of fact is the surrender of one's right to personal privacy, then the plaintiff is twice victimized. Some plaintiffs, under such circumstances, will surely forego the opportunity to seek complete vindication of their rights, and the important purpose of § 1983 will be undermined.

Because we believe that the issue before the Court has such potentially important consequences for civil rights litigation, and because nothing in defendants' submission hints at the full range of views on the issue, we offer a brief summary of the body of law that has evolved on the question. We then turn to a discussion of the Second Circuit's decision in *Kerman v. The City of New York*, 374 F.3d 93 (2d Cir. 2004).**

### A.    The Three Approaches to Waiver of the Privilege.

Federal courts around the country have taken three general approaches in determining the circumstances under which a claim for emotional damages is deemed to constitute a waiver of the psychotherapist-patient privilege. The Second Circuit, however, has not directly addressed

---

**Defendants argue that the appropriate standard of review should be the one applicable to non-dispositive matters. Given plaintiffs' position that Judge Francis' decision is in conflict with the holdings in *Jaffee v. Redmond* and *Kerman*, that is, it is "contrary to law", Rule 72(a), F.R.Civ.Proc., there is no need to quarrel about the standard of review.

the issue. *See generally* Note, "Certainty Thwarted: Broad Waiver Versus Narrow Waiver of the

Psychotherapist-Patient Privilege After Jaffee v. Redmond," 52 <u>Hastings L.J.</u> 1369 (2001). The

three approaches, and the rationales underlying each of them, are summarized by the court in

*Fitzgerald v. Cassil*, 216 F.R.D. 632, 638 (N.D. Cal. 2003).

      1.    **The Broad Approach.** Under the broad approach to waiver, some courts

have held that *any* allegation that a plaintiff has suffered emotional distress triggers a waiver of

the privilege. This Court in *Hershey-Wilson,* as have most courts in this district, adopted the

broad approach. *But see, Greenberg v. Smolka*, 2006 WL 1116521 (S.D.N.Y. 2006). This

Court's reasoning, in accordance with other courts adopting the broad approach, is that, having

put her mental condition at issue with such an allegation, a plaintiff must be prepared to endure

discovery of her history of psychotherapy.

      2.    **The Narrow Approach.** Under the narrow approach, courts have held

that the plaintiff must affirmatively rely on psychotherapist-patient communications before the

privilege will be waived. The court in *Fitzgerald* adopted the narrow approach, reasoning that it

was the approach that was most consistent with the privilege-protective spirit of *Jaffee v.*

*Redmond. Fitzgerald, supra,* 216 F.R.D. at 639. *See also, Metzger v. Francis Parker School,*

2001 WL 910443 (N.D. Ill. Aug. 10, 2001) (ADA); *Allen v. Cook County Sheriff's Department,*

1999 WL 168466, at * 2 (N.D. Ill. March 17, 1999) (Title VII); *Boyd v. City and County of San*

*Francisco,* 2006 WL 1390423 (N.D. Cal. May 18, 2006) (ADA and § 1983); *Fitzgerald v.*

*Cassil,* 216 F.R.D. 632 (N.D. Cal. 2003) (FHA); *Sanders v. DC,* 2002 WL 648965 (D.D.C. Apr.

15, 2002); *Fritsch v. City of Chula Vista,* 187 F.R.D. 614 (S.D. Ca. 1999) (ADA); *Morrisette v.*

*Kennebec County,* 2001 WL 969014 (D. Me. August 21, 2001); *Burrell v. Crown Central*

*Petroleum, Inc.*, 177 F.R.D. 376 (E.D. Tex. 1997) (Title VII and 1981); *Booker v. City of Boston*,

1999 WL 734644 (D. Mass. Sept. 10, 1999); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225

(D. Mass. 1997).

      **3.**     **The Middle-Ground Approach.**  Between the narrow and broad

approaches is an approach by which courts have found a waiver of the privilege when the

plaintiff has done more than allege "garden-variety" emotional distress. One court has described

garden-variety emotional distress as "ordinary or commonplace emotional distress," that which is

"simple or usual," in contrast to emotional distress that "may be complex, such as that resulting

in a specific psychiatric disorder." *Ruhlmann v. Ulster County Dept. of Social Services,* 194

F.R.D. 445, 449 n.6 (N.D.N.Y. 2000). *See also, Santelli v. Electro-Motive*, 188 F.R.D 306 (N.D.

Ill. 1999) (Title VII); *Kiermeier v. Woodfield Nissan*, 1999 WL 759485 (N.D. Ill. Sept. 7, 1999)

(Title VII); *Adams v. Ardcor*, 196 F.R.D. 339 (E.D. Wis. 2000); *Dominguez-Silva v. Harvey*,

2006 WL 826091 (N.D. Ga., March 23, 2006) (§ 1983); *Stevenson v. Stanley Bostitch, Inc.*, 201

F.R.D. 551 (N.D. Ga. 2001) (Title VII); *EEOC v. Old Western Furniture Corp.*, 173 F.R.D. 444

(W.D. Tex. 1996) (Title VII); *Neal v. Siegel-Robert, Inc.*, 171 F.R.D. 264 (E.D. Mo. 1996)

(ADEA); *Ricks v. Abbott Laboratories,* 198 F.R.D. 647, 648-49 (D. Md. 2001) (Title VII and

ADEA); *Ford v. Contra Costa County*, 179 F.R.D. 579, 580 (N.D. Cal. 1998) (Title VII); *Bowen

v. Parking Authority of the City of Camden*, 214 F.R.D. 188 (D.N.J. 2003); *Jackson v. Chubb

Corp.*, 193 F.R.D. 216 (D.N.J. 2000) (race discrimination); *Gaines-Hanna v. Farmington Public

Schools*, 2006 WL 932074 (E.D. Mich. April 7, 2006) (§ 1983, Title IX and other claims);

*Jessamy v. Ahren*, 153 F. Supp. 2d 398 (S.D.N.Y. 2001) (§ 1983); *Johnson v. Trujillo*, 977 P.2d

152, (Colo. 1999); *Dochniak v. Dominium*, 2006 WL 3157131 (D.Minn. Sept. 25, 2006) (Title

VII); *Greenberg v. Smolka*, 2006 WL 1116521 (S.D.N.Y. Apr. 27, 2006); *Kuntsler v. Ashcroft*,

2006 WL 2516625 (S.D.N.Y. Aug. 29, 2006) (civil rights violations).

Under either the narrow or the middle-ground approach, plaintiffs here would not be

deemed to have waived the privilege. While we believe the narrow approach is the one

contemplated by *Jaffee v. Redmond*, either approach avoids the consequence to which we have

adverted, namely, the prospect of a finding that almost all civil rights plaintiffs will have waived

the privilege. We also believe that either of those approaches, but not the broad approach, is

consistent with the Second Circuit's decision in *Kerman.*

### B. The Meaning of *Kerman*

This Court's adoption of the broad approach to waiver in *Hershey-Wilson* was premised

on the fact that the plaintiff put her mental history at issue by seeking damages for emotional

distress as a result of her unlawful arrest and detention. But *Kerman* calls that premise into

question. *Kerman* held that, upon proof of a false imprisonment, a plaintiff was entitled to

general damages for the "time lost by the plaintiff during the period of detention and any mental

suffering or humiliation sustained in consequence of the arrest or restraint." *ibid.* at 130-31,

quoting McCormick, Handbook on the Law of Damages, § 107 at 375-76. Because they are

general damages, those damages need not be pleaded and proved, but rather "'may be inferred

from the circumstances of the arrest or imprisonment. . . .'" *Ibid.* at 125, quoting McCormick,

*supra*, § 107 at 376. What that means is that in every false arrest and imprisonment case,

plaintiffs have a right to recover damages for ordinary emotional distress, *whether they plead it*

*or not.*

It is true, as this court noted in *Hershey-Wilson* v. *City of New York*, 2006 WL 2714709

6

(S.D.N.Y. 2006) at *1 n.2, that *Kerman* was "not about the scope of discovery" of psychotherapy records. But the reasoning of *Kerman* undermines the rationale for the broad approach to waiver. The assumption behind that approach is that the allegation of emotional distress puts the plaintiffs' mental history at issue and, therefore, subjects that history to discovery. But if, as *Kerman* says, no such allegation is necessary as a condition of recovering damages for emotional distress, then the plaintiff's emotional distress is put at issue merely by the assertion of a claim of unlawful detention. Under the broad approach to waiver, that would mean that the mere filing of a false imprisonment claim would constitute a waiver of the psychotherapist-patient privilege and would subject the plaintiff to an examination of her history of psychotherapy. No case has reached that result. Nor could it consistent with *Jaffee*.

## C.   The Issue of Trial Testimony

The City argues that, if this Court upholds the decision of Judge Francis dismissing the emotional distress allegations, plaintiffs should be precluded from offering "any testimony or other evidence through any witness, at trial or otherwise, concerning her alleged mental anguish or emotional distress (however articulated). . . ." Order of Dismissal annexed as Ex. AA to Mirro Dec. *See also* Defendants' Memorandum at 24-25. In other words, the City's position is that, whether or not it is alleged in the complaint, if a civil rights plaintiff wants to describe to a fact-finder the emotional distress she experienced as a result of being unlawfully imprisoned, she must permit the City to examine her life's record of psychotherapy.

It is hard to imagine a result more at war with the purposes underlying § 1983. It is also a result that is flatly contrary to the holding in *Jaffee*. It may be true that rummaging around a plaintiff's psychological history may produce a glimmer of evidence relevant to an allegation that

7

a period of false imprisonment caused the anguish she suffered while being unlawfully detained. But that is no more than to say than such evidence has some probative value. That is not sufficient, however to compel waiver of the privilege. As the Court said in *Jaffee*, 518 U.S. at 9-10, the psychotherapist-patient privilege "promotes sufficiently important interests to outweigh the need for probative evidence."

Therefore, something more than mere probative value must be shown in order to overcome the protection afforded by the privilege. That "something" is either the affirmative use of psychiatric evidence by a plaintiff, which is required by the narrow approach, or the presence of an out-of-the-ordinary, diagnosable condition that is required by the middle-ground approaches.

## II.

### IF THE COURT UPHOLDS MAGISTRATE JUDGE FRANCIS' ORDER, IT SHOULD CERTIFY THE ISSUE FOR APPEAL

The Court has previously declined to certify an appeal in *Hershey-Wilson* on the grounds that the issue presented there merely related to discovery. However, two different issues are presented here. In *Hershey-Wilson,* the order presented for review merely compelled the production of mental health records. The instant Rule 72 motion, however, seeks review of an order striking the plaintiffs' claim for emotional distress damages. In addition, the City requests that the plaintiffs should be precluded from testifying about their emotional reaction to being falsely imprisoned. The dismissal of the claim and the barring of trial testimony present questions that are no longer merely about discovery. Assuming that the plaintiffs prevail after trial, a ruling that would bar such testimony will inevitably affect the damage award and lead to

8

an appeal. If the appeal were successful, then there would be a new trial.

Permitting an appeal at this juncture will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The issue of what approach this court should take to waiver of the patient-psychotherapy privilege "involves a controlling question of law as to which there is substantial ground for difference of opinion. . . ." *Ibid.* Accordingly, if the court upholds the order of JudgeFrancis, the issue should be certified for appeal.

Respectfully submitted,

ALAN LEVINE
99 Hudson Street, 14th Floor
New York, N.Y. 10013
(212) 739-7506

MICHAEL SPIEGEL
111 Broadway, Suite 1305
New York, N.Y. 10006
(212) 587-8558

Dated: February 9, 2007
New York, New York

9

# EXHIBIT LL

REDACTED

# Exhibit MM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -:
MEGAN KENNEDY, et al.,                    : 07 Civ. 7678 (RJS) (JCF)
                                          :
                    Plaintiffs,           :        O R D E R
                                          :
     - against -                          :
                                          :
THE CITY OF NEW YORK, et al.,             :
                                          :
                    Defendants.           :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        Defendants having moved by letter dated March 10, 2008 to

dismiss the emotional distress claims of plaintiffs Megan Kennedy

and Carre Adams, it is hereby ORDERED that the application is

granted; these plaintiffs have declined to produce releases for

relevant mental health records.

                         SO ORDERED.

                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         April 18, 2008

Copies mailed this date:

Michael L. Spiegel, Esq.
111 Broadway, Suite 1305
New York, New York 10006

Raju Sundaran, Esq.
Special Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #
> DATE FILED: 4/18/08

1

# Exhibit NN

REDACTED

# EXHIBIT OO

BELDOCK LEVINE & HOFFMAN LLP

99 PARK AVENUE

NEW YORK, N.Y. 10016-1503

ELLIOT L. HOFFMAN
MYRON BELDOCK
BRUCE E. TRAUNER
PETER S. MATORIN
KATHERINE G. THOMPSON
ROBERT L. HERBST
CYNTHIA ROLLINGS
JONATHAN MOORE
KAREN L. DIPPOLD
JEFFREY A. GREENBERG
JONATHAN K. POLLACK
VERA M. SCANLON

TEL: (212) 490-0400
FAX: (212) 557-0565
WEBSITE: blhny.com

LAWRENCE S. LEVINE (1934-2004)

SPECIAL COUNSEL
MARJORY D. FIELDS

COUNSEL
MELVIN L. WULF

February 26, 2008

REF:   (212) 277-5853

WRITER'S DIRECT DIAL:

**VIA HAND DELIVERY**

Honorable James C. Francis, IV
United States Magistrate Judge
United States District Court
500 Pearl Street, Suite 1960
New York, NY 10007-1312

Re:    *Rechtschaffer v. City of New York, et al.*
       05-CV-9930 (RJS) (JCF)

Dear Judge Francis:

As counsel for plaintiff we write in response to defendants' January 22, 2008 "case-specific" letter motion in the above-captioned case. By their letter, defendants seek to compel certain "outstanding relevant discovery" arising from plaintiff's deposition, documentation of plaintiffs' special and economic damages, and discovery of plaintiff's mental health history.

# REDACTED

# REDACTED

**Discovery of Plaintiff's Mental Health Records**

# REDACTED

As noted by defendants, Ms. Rechtschaffer refused to provide releases for the balance of her mental health treatment; records which she felt were irrelevant to her claims and had the potential to cause her great embarrassment. Plaintiff also refused to provide a release for as she had already provided a true and complete copy of all of the records in possession to defendants.

# REDACTED

In Ms. Rechtschafer's case, the psychotherapist-patient privilege, which, as emphasized in *Jaffee v. Redmond*, 518 U.S. 1 1996, is an absolute privilege, should not be held to have been waived, and therefore, plaintiff should be entitled to seek damages for the emotional distress she suffered because of her arrest and detention, despite her refusal to provide releases for her mental health records.

The majority of this treatment involved personal matters that have nothing to do with the incident involved in this lawsuit, or plaintiff's emotional response thereto, and which could be deeply embarrassing to plaintiff if she were to produce them to defendants. While plaintiff obviously discussed her arrest with *REDACTED* drew some diagnostic conclusions from these conversations, plaintiff has represented that she would not rely on these diagnoses at trial, nor will she claim that she suffered from anything more than garden variety distress because of the incident. To the extent that the language in *REDACTED* report suggests that plaintiff is pressing a more serious claim, plaintiff expressly disclaimed any such allegation in her deposition, and offers to so stipulate to such if the Court requests. Moreover, the distress plaintiff suffered as a result of the incident simply was not an issue in her treatment with any mental health provider other than *REDACTED*

In *Kerman v. The City of New York*, 374 F.3d 93, 125 (2d Cir. 2004) the Court held that upon proof of a false imprisonment, a plaintiff was entitled to general damages for the "time lost by the plaintiff during the period of detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint." *Kerman*, 374 F.3d at 130-31, quoting McCormick, *Handbook on the Law of Damages*, § 107 at 375-76. Because they are general damages, those damages need not be pleaded and proved, but rather "'may be inferred from the circumstances of the arrest or imprisonment. . . .'" *Id.* at 125. In any false arrest and imprisonment case, a plaintiff has a right to recover damages for ordinary emotional distress whether she pleads it or not. It thus logically follows that Ms. Rechtschaffer would have the right to describe the mental suffering that arose from her arrest and detention without waiving the psychotherapist-patient privilege.

Since the briefing of this issue in a number of the related RNC cases which relied primarily on *Greenberg v. Smolka*, 2006 WL 1116521 (S.D.N.Y. April 27, 2006), there has been another decision in this district which reached the same conclusion. In *Kunstler v. The City of New York*, 242 F.R.D. 261 (S.D.N.Y. 2007), plaintiffs resisted turning over psychological records concerning "an emotional injury that a well-adjusted person could be expected to suffer in like circumstances, a so called 'garden variety' distress claim," distinguishing such a claim from one for "a serious psychological injury." *Id* at 264. That is exactly the kind of emotional injury that Ms. Rechtschaffer is claiming. As the Court held in upholding Magistrate Judge Dolinger's Memorandum and Order, defendants

> had not established the justification for turning over sensitive psychological information. Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in *Jaffe*, represents the

3

BELDOCK LEVINE & HOFFMAN LLP

> appropriate view of the issue and the authorities. The reasoning
> and the determination of fairness set forth in *Hearn v. Rhay, 68
> F.R.D. 574, 581 (E.D. Wash. 1975)*, as cited by Judge Dolinger and
> the Court of Appeals for the Second Circuit in *United States v.
> Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)*, is compelling.

*Id.*

In this case, disclosure of plaintiff's mental health records not only would cause plaintiff extreme anguish, but – by revealing to her the contents of her therapist's private notes – would threaten her ability to continue seeking treatment for personal problems wholly unrelated to the distress she suffered because of defendant's misconduct. Such a result is patently unjust, and fortunately not required by any fair assessment of the law and its application to this case.

Finally, defendants have not articulated any coherent need for the records which they now seek. Without a showing of any need, must less a "reasonable" one, defendant has not justified this major invasion of plaintiff's privacy and this serious threat to her mental health treatment. *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004).

For the foregoing reasons, defendants' application to dismiss plaintiff's claims for emotional distress should be denied.

Thank you for your consideration in these matters.

Respectfully yours,

Jonathan C. Moore
Rachel M. Kleinman

cc.    Fred Weiler, Esq.
       Randall M. Elfenbein, Esq.
       RNC Email Distribution List

4

# Exhibit PP



**THE CITY OF NEW YORK**
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**RANDALL M. ELFENBEIN**
*Special Assistant Corporation Counsel*
Room 3-126
Telephone: (212) 788-8342
Facsimile: (212) 788-9776
relfenbe@law.nyc.gov

March 14, 2008

**BY HAND**

Hon. James C. Francis IV, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1960
New York, New York 10007-1312

<u>*SUBMITTED UNDER SEAL – REFERS TO CONFIDENTIAL INFORMATION*</u>

### Re: **Rechtschaffer v City of New York, 05 CV 9930 (RJS)(JCF)**

Dear Judge Francis:

Defendants submit this reply in further support of the letter of Jeffrey A. Dougherty dated January 22, 2008, the letter of Randall M. Elfenbein dated January 22, 2008 and in reply to plaintiffs' opposition letter dated February 26, 2008 in the above-referenced action.

## I. The "Meet and Confer" Requirement Does Not Apply to Motions Seeking Sanctions For Failure to Comply With Court Orders

Plaintiff alleges defendants have not "met and conferred" prior to filing their motions and therefore they argue defendants' motions should be denied. This argument lacks both legal and factual merit. Plaintiff's generalized arguments regarding an allegedly defective "meet and confer" are legally misdirected for several reasons. First, the "meet and confer" rule is *only* applicable to motions to compel under Rule 37(a). Courts in the Second Circuit have held that "[a] party is not required to meet and confer or make a good faith certification when moving for sanctions for failure to comply with a prior Order which already granted a motion to compel." <u>Amatangelo v. National Grid USA Service Co.</u>, 04-CV-24S(F), 2007 WL4560666, *6 (W.D.N.Y. Dec. 18, 2007); <u>Kelly v. City of N.Y.</u>, 01-CV-8906 (LMM) (RLE), 2007 WL 1746912, *3 (S.D.N.Y. June 15, 2007) (motions brought under Rule 37(b)(2) do not require

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 2 of 5

parties to meet and confer prior to the Court imposing sanctions).1 Accordingly, the portion of defendants' motion that sought sanctions such as dismissal of claims is not governed by the "meet and confer" requirement. More precisely, because a significant portion of defendants' motion addressed plaintiffs' failure to comply with Your Honor's Orders in this case and the RNC Consolidated Litigation there is no legal basis to summarily deny that relief due to non-compliance with Rule 37(a). Thus, certain categories of discovery in which the RNC plaintiffs have long been on notice of their discovery obligations and in which the Court has already granted numerous motions to compel (e.g. mental health records, non-RNC arrest records, records of physical injuries, etc.) are not subject to the "meet and confer" requirement of Rule 37(a).

### A. Defendants Have Complied With the "Meet and Confer" Requirements

In response to Your Honor's directive, defendants made a good faith effort to comply with the "meet and confer" requirement under Rule 37(a). First, defendants' January 16, 2008 email advised plaintiffs of the precise categories of discovery that would be the basis of their motions to dismiss and/or compel. See Ex. A to the January 22, 2008 letter of Jeffrey Dougherty. Second, defendants also sent case-specific emails advising plaintiffs of categories of discovery which would be the basis of their motions to compel. In this case, defense counsel sent an email advising plaintiff of her discovery deficiencies related to her claims for economic and special damages. See Ex. D to the January 22, 2008 Letter of Randall M. Elfenbein.

Based on the examples cited above and the emails defendants sent directly preceding the filing of their January 22nd motions, plaintiffs' claims of a failure to "meet and confer" must be rejected.

Finally, to require defendants to take additional steps is unwarranted in these cases due to the tremendous number of plaintiffs and time constraints involved. Defendants have met the requirements and plaintiffs' argument to the contrary should be rejected. See Time Inc. v. Simpson, 02-CV-4917 (MGM) (JCF), 2007 WL 318449414 (S.D.N.Y. Dec. 18 2002) (Your Honor held the failure to satisfy meet and confer requirements did not warrant rejecting motion to compel because goal of promoting efficient litigation would not be advanced by further delay in resolving issues). Further, in PRescient Partners, L.P. v. Fieldcrest Cannon, Inc., 96-CV-7590 (DAB) (JCF), 1998 WL 67672 (S.D.N.Y. Feb 18. 1998), the very case plaintiffs submit in support of their argument that defendants failed to "meet and confer," Your Honor recognized that "[c]ourts have excused the failure to meet-and-confer where temporal exigencies required speedy action and where efforts at informal compromise would have been clearly futile." In the RNC Consolidated Litigation, the fact that plaintiffs have continued to withhold discovery despite the efforts of defendants to obtain the materials, as well as, repeated admonitions from this Court that non-disclosure would result in dismissal of claims has made it clear to defendants that any efforts to "meet and confer" beyond those outlined above would have been futile.

---

1       See also, Sheehy v. Wehlage, 02-CV-592, 2007 WL 836816 (W.D.N.Y.2007); Reidy v. Runyon, 169 F.R.D. 486, 491 (E.D.N.Y.1997); accord Freiria Trading Co. v. Maizoro S.A. de C.V., 187 F.R.D. 47, 49 (D.P.R.1999).

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 3 of 5

## II. Defendants' Reply to Plaintiffs' Opposition

By the Motion, defendants seek, *inter alia*, an Order dismissing the claims for emotional distress of plaintiff Jessica Rechtschaffer ("Plaintiff") based on her refusal to produce releases for treating mental health care providers, precluding introduction of documentary evidence of economic damages to the extent not provided, and compelling discovery adduced at deposition.

As to mental health care treatment, Plaintiff continues to refuse to provide releases for her mental health care records asserting a privilege based on a claim that their emotional distress is "garden-variety"2. This case has an unusual history inasmuch as Plaintiff refuses to produce a release for the records of a mental health care provider who did produce an after-treatment report for the purposes of this litigation. The report itself indicates an apparent course of talk therapy that necessarily included some discussion of the RNC and Plaintiff's arrest and detention. Thus, Plaintiff has no basis at all in the law to refuse to provide a release for those records. Moreover, as a result of her refusal to provide a release, she should not be permitted to claim payment for the treatment as an economic damage.

Judge Karas and Your Honor have already ruled that defendants are entitled to <u>full</u> disclosure of plaintiff's psychological history when a plaintiff puts his or her emotional condition at issue, thereby waiving the psychotherapist-patient privilege.3 In particular, in the consolidated

---

2 Given that Plaintiff is also claiming economic damages in the amount of $1,000.00 paid for mental health care arising from the RNC, defendants respectfully submit that Plaintiff has mischaracterized her claims for emotional distress for some anticipated advantage on appeal.

3 <u>See</u> Judge Karas' rulings in <u>MacNamara v. City of New York</u> (04 CV 9216) on August 29, 2005. Judge Karas held that "to the extent you are going to ask a jury to award damages from the anxiety as a form of psychological trauma [resulting from an arrest and detention], potentially a very serious form of psychological trauma. . . that puts into play any sort of psychological history that would explain what it is that might cause [a plaintiff's] anxiety." <u>See id.</u> Judge Karas added that "when you talk about general psychological damages, the history becomes relevant, and [the psychotherapist-patient privilege] is waived." <u>See id.</u> Judge Karas' and Your Honor's rulings are supported by a long line of authority in this district and the Second Circuit. <u>See</u> <u>Jaffe v. Redmond</u>, 518 U.S. 1, 15 n. 14 (1996) ("like other testimonial privileges, the patient may of course waive the protection [of the psychotherapist-patient privilege]"); n. 19 ("there are situations in which the [psychotherapist-patient] privilege must give way"); <u>Oliphant v. Dept. of Trans.</u>, 05-CV-0618, 2006 WL 522126 *2 (2d Cir. Mar 3, 2006) (recognizing waiver of psychotherapist-patient privilege where plaintiff alleges emotional distress); <u>Karl v. Asarco Inc.</u>, 98-CV-7535, 1998 U.S. App. LEXIS 32696, *4 (2d Cir Dec. 31, 1998) (affirming district court's order permitting discovery into [psychological] history because plaintiff waived his privilege by putting mental state into issue); <u>Montgomery v. N.Y.S. Office of Mental Health</u>, 00-CV-4189, 2002 U.S. Dist. LEXIS 5607, *1-4 (S.D.N.Y. Apr. 3, 2002) (claim for emotional distress waives psychotherapist-patient privilege); <u>Murray v. Bd. of Edu.</u>, 199 F.R.D. 154-155 (S.D.N.Y. 2001) (emotional distress claim waived psychotherapist-patient privilege); <u>McKenna v. Cruz</u>, 98-CV-1853, 1998 U.S. Dist. LEXIS 18293, *6 (S.D.N.Y. Nov. 19, 1998) ("the majority of post-<u>Jaffe</u> cases hold that any claim for emotional or psychological injury waives the psychotherapist-patient privilege"); <u>Sidor v. Reno</u>, 95-CV-9588, 1998 U.S. Dist. LEXIS 4593, *2-3 (S.D.N.Y. Apr. 7, 1998) (finding waiver of psychotherapist-patient privilege based on *inter alia* plaintiff's seeking damages for emotional pain and suffering); <u>Kerman v. City of New York</u>, 96-CV-7865, 1997 U.S. Dist. 16841, *9, 11 (S.D.N.Y. Oct. 24, 1997) (finding waiver of psychotherapist-patient privilege by allegations of continued emotional damages); <u>see al so</u>, <u>E.E.O.C. v. Grief Bros. Corp.</u>, 218 F.R.D. 59, 64-65 (W.D.N.Y. 2003) (granting defendant's request to obtain medical authorizations for the release of psychological

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 4 of 5

RNC cases, plaintiffs who have alleged emotional distress damages have been compelled to: "(1) *identify all* providers who have provided them psychological or psychiatric counseling or treatment, [and] (2) provide *releases* with respect to records maintained by these *providers*."4

The Court has consistently and repeatedly dismissed emotional distress claims of plaintiffs who allege emotional injuries but refuse to provide defendants with releases in order to access their mental health and related pharmaceutical records. MacNamara v. City of New York, 04 CV 9216 (August 29, 2005 KMK Ruling); Hershey-Wilson v. City of New York, 05 CV 7026 (September 20, 2006 and September 25, 2007 KMK Orders and November 13, 2006 JCF Order); Cohen v. City of New York, 05 CV 6780 (September 25, 2007 KMK Order and November 17, 2006 JCF Order); Concepcion v. City of New York, 05 CV 8501 (October 24, 2006 and November 27, 2006 JCF Orders); Abdell v. City of New York, 05 CV 8453 (September 25, 2007 KMK Order and November 16, 2006, April 4, 2007 and December 19, 2007 JCF Orders); Adams v. City of New York, 05 CV 9484 (August 24, 2007 JCF Order); Eastwood v. City of New York, 05 CV 9483 (February 26, 2007 JCF Order); Sikelianos v. City of New York, 05 CV 7673 (November 1, 2007 JCF Order); and Tikkun v. City of New York, 05 CV 9901 (November 5, 2007 JCF Order).

As to economic damages, Plaintiff has produced additional discovery during the pendency of this Motion. Defendants respectfully request that the Court enter an Order limiting Plaintiff at trial and in dispositive motions to use of the documentary evidence that has already been provided in support of their claims for economic and special damages.

**Clothing issues**

Plaintiffs have failed to address this issue in their opposition. Your Honor entered an Order requiring plaintiffs to bring their clothing and footwear to their depositions. See May 4, 2007 Order in MacNamara (docketed in all RNC Cases). Many plaintiffs failed to comply with that Order and also failed to offer their clothing for inspection by defendants while this application has been pending. Accordingly, those plaintiffs should be precluded from offering their clothing as evidence at any time hereinafter.

**Relief Requested**

For the foregoing reasons and for the reasons articulated in defendants' January 22, 2008 letters, defendants respectfully submit that the Court enter an order:

1.  dismissing plaintiff's claims of emotional distress damages and injuries with prejudice due to her refusal to produce release for mental health care treatment;

---

records because records were relevant to emotional distress claims); Wheeler v. East River Housing Corp., 95-CV-597, 1997 WL 33618, *1 (S.D.N.Y. Jan. 29, 1997) (granting defendant's motion to compel medical authorizations); Meisch v. Fifth Transoceanic Shipping Co. Ltd., 94-CV-0683, 1994 WL 582960, *1 (S.D.N.Y. Oct. 21, 1994) (granting defendant's motion to compel production of medical releases prior to deposition).
4      See Your Honor's November 16, 2006 Order in Abdell v. City of New York, 05 CV 8453.

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 5 of 5

2.      limiting plaintiff's use at trial and in dispositive motions to the extent that has already been provided in support of their claims for economic and special damages absent a showing of good cause,

3.      limiting plaintiffs' use at trial and in dispositive motions to the clothing that was made available to defendants before or during plaintiffs' depositions, absent good cause; and

4.      granting such further relief as it deems just and proper.

Respectfully submitted,

/s *Randall M. Elfenbein*

Randall M. Elfenbein

cc:    Rachel M. Kleinman, Esq.
       Beldock, Levine & Hoffman

# Exhibit QQ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
JESSICA RECHTSCHAFFER,                    : 05 Civ. 9930 (KMK) (JCF)
                                          :
                 Plaintiff,               :       O R D E R
                                          :
        - against -                       :
                                          :
THE CITY OF NEW YORK, ORLANDO             :
RIVERA, JOHN PARK, MICHAEL                :
CUMMINGS, JOHN DOE 1( NYPD U/C            :
SHIELD 6216, INTELLIGENCE BUREAU),        :
JOHN DOES 2-10,                           :
                                          :
                 Defendants.              :
- - - - - - - - - - - - - - - - - - - -:



JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Defendants having applied by letter dated January 22, 2008 for

an order dismissing plaintiffs emotional distress claims and her

claims for economic loss and compelling discovery, it is hereby

ORDERED as follows:

     1.   Plaintiff's emotional distress claims are dismissed, as

she has declined to provide relevant evidence of her mental health

treatment.

     2.  Defendants' application for an order compelling production

of documentation of special and economic damages is denied as moot.

     3.  Defendants' application for an order compelling production

of documents requested at deposition is denied for failure to meet

and confer.

     4.   Defendants' request for an order limiting plaintiffs

introduction of clothing as evidence at trial is denied.    This

issue was improperly raised for the first time in defendants' reply

letter.   In any event, the application is properly addressed to

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            March 21, 2008

Copies mailed this date:

Rachel M. Kleinman, Esq.
Beldock Levine & Hoffman LLP
99 Park Avenue, Suite 1600
New York, New York 10016

Randall M. Elfenbein, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

# EXHIBIT RR

REDACTED

# EXHIBIT SS

REDACTED

# Exhibit TT

Received:
FROM :Jeffrey A Rothman        FAX NO. :2125916343        Aug 6 2007 09:49pm
                                                          Aug. 06 2007 09:53PM P 2

# Jeffrey A. Rothman

Attorney at Law
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 227-2980; Cell: (516) 455-6873
Fax: (212) 591-6343
rothman.jeffrey@gmail.com

### Contains Confidential Information

August 6, 2007

By Fax
The Honorable James C. Francis IV
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street – Room 1960
New York, NY 10007

> Re:   *Coburn, et al. v. City of New York, et al.*, 05 Civ. 7623 (KMK) (JCF);
> *Phillips, et al. v. City of New York, et al.*, 05 Civ. 7624 (KMK) (JCF);
> *Sloan, et al. v. City of New York, et al.*, 05 Civ. 7668 (KMK) (JCF);
> *Galitzer v. City of New York, et al.*, 05 Civ. 7669 (KMK) (JCF);
> *Carney, et al. v. City of New York, et al.*, 05 Civ. 7672 (KMK) (JCF);
> *Sikelianos v. City of New York, et al.*, 05 Civ. 7673(KMK) (JCF);

Dear Judge Francis:

   I write in opposition to Special Assistant Corporation Counsel Tonya Jenerette's letter motion of July 24, 2007 to compel that certain discovery in the above-captioned RNC cases.

# REDACTED

REDACTED

Re: Interrogatory No. 3 - Contravening the prior orders of this Court in the RNC cases. Defendants seek all medical records for any condition whatsoever, going back 10 years. Pursuant to the Court's prior Orders in the RNC consolidated cases, Plaintiffs have and will provide treatment records for physical conditions related to any claimed physical injuries in the RNC cases, but will not, for example, provide tonsilitis treatment records if a plaintiff is only claiming a skin rash from the Pier. Plaintiffs will, per the Court's prior Orders, withhold / redact records of physical treatment that are totally unrelated to claimed physical injuries stemming from the RNC.

Plaintiff will provide mental health records per the Court's rulings, but will invoke the psychotherapist-patient privilege and/or seek protective orders concerning the withholding or redaction of particular records as is appropriate and necessary, and in keeping with the procedures the Court has previously employed. If a particular plaintiff refuses to provide mental health records that would otherwise be required under the Court's prior rulings in this area, that plaintiff understands that the likely effect will be dismissal by the Court of that Plaintiff's claims for emotional distress, over that Plaintiff's objections to preserve a record on this matter.

REDACTED

# REDACTED

Respectfully submitted,

Jeffrey Rothman

cc:     Tonya Jenerette, Esq. (by Fax)

# Exhibit UU



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**TONYA JENERETTE**
*Special Assistant Corporation Counsel*
Phone: (212) 788- 0993
Fax: (212) 788-9776
tjeneret@law.nyc.gov

August 13, 2007

**BY FACSIMILE**

The Honorable James C. Francis, IV
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1960
New York, NY 10007-1312

Re:  *Sarah Coburn, et al. v. The City of New York, et al.* 05 Civ. 7623 (KMK)(JCF)
*Nikolas Sikelianos v. The City of New York, et al.* 05 Civ. 7673 (KMK)(JCF)
*Emily Sloan, et al. v. The City of New York, et al.* 05 Civ. 7668 (KMK)(JCF)
*Lashley Carney, et al. v. The City of New York, et al.* 05 CV 7672 (KMK)(JCF)
*Gwynn Galitzer v. The City of New York, et al.* 05 CV 7669 (KMK)(JCF)
*Jeffrey Philips, et al. v. The City of New York, et al.* 05 CV 7624 (KMK)

Dear Judge Francis:

I write in response to Jeffrey Rothman's August 6, 2007 letter opposing defendants' motion to compel, which was served on July 24, 2007. That motion addresses numerous serious deficiencies in plaintiffs' discovery responses. Defendants emphasize that our discovery requests were served beginning in 2005. Plaintiffs have had ample opportunity to cure those deficiencies voluntarily – and have failed to do so.

According to Mr. Rothman, *"there is no need or utility for the Court to impose any date certain for ultimate compliance, outside of the requirement set forth under Discovery Order # 2 to tie up all loose ends at least one week prior to any plaintiffs' deposition."* Discovery Order # 2 does not relieve Mr. Rothman of his obligation under the Federal Rules of Civil Procedure to provide all responses to discovery requests within 30 days of service. Although Mr. Rothman concedes that Discovery Order # 2 further orders plaintiffs to cure "any *outstanding deficiencies or loose ends in production* . . . at least one week prior to plaintiff's deposition," he interprets that provision to mean that he is free to ignore discovery requests served over one year in advance until the eve of plaintiffs' depositions. Mr. Rothman's interpretation would effectively

suspend operation of the Federal Rules of Civil Procedure in the RNC cases, to the prejudice of defendants.

As he has on many prior occasions, Mr. Rothman promises that plaintiffs will provide the discovery ordered by Your Honor. He promises that "plaintiffs will provide mental health pharmaceutical records as per the Court's ruling;" and that "plaintiffs will provide relevant work and/or tax records;" and that "plaintiffs will provide information concerning prior arrests consistent with the Court's Orders in the RNC consolidated cases." Yet, despite repeated promises, Mr. Rothman has failed to provide proper discovery responses for *any plaintiff* in 3 of his 6 cases and he has failed to cure gross deficiencies in responses for the majority of his individual plaintiffs.[1] Mr. Rothman grossly mischaracterizes the truth when he represents to the Court that Mr. Weiler "consented" to a discovery response in the form of a letter from Mr. Rothman himself. As the e-mail shows, Mr. Weiler advised Mr. Rothman that "I reserve my right to compel responses to the written discovery as served." (Exhibit D to Rothman August 6 letter). In short, Mr. Rothman has not lived up to his promises; and defendants can wait no longer for his voluntary compliance.

Plaintiffs' argument that defendants' requests are "wildly overbroad burdensome and harassing" is absurd. Defendants served virtually identical requests upon plaintiffs in the other RNC cases. The Court has ordered plaintiffs to respond to the discovery requests in those cases and should hold Mr. Rothman to the same standard. Mr. Rothman's pattern and practice of either wholesale failure or substantial delay in responding to discovery requests is extremely prejudicial to defendants; that prejudice increases with every passing day.

For the foregoing reasons, defendants respectfully request that the Court:

(1)    Order plaintiffs to produce the information requested in defendants' July 24 letter by August 23, 2007 or their claims shall be dismissed with prejudice; and

(2)    Grant such further relief as Your Honor deems just and proper.

Respectfully submitted,

Tonya Jenerette (TJ7276)

cc:    Jeffrey Rothman

---

[1]    Mr. Rothman's list of individual objections and responses in the Sladek case is mere obfuscation. He has either produced discovery in accordance with the Federal Rules of Civil Procedure or he has not. Indeed, by stating that he "has and will produce" documents, he admits that he has failed to produce information that was requested by defendants and ordered disclosed by the Court in accordance with the Federal Rules.

# Exhibit VV



# MEMO ENDORSED

<br /><br />

MICHAEL A. CARDOZO
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

TONYA JENERETTE
*Special Assistant Corporation Counsel*
Phone: (212) 788- 0993
Fax: (212) 788-9776
tjeneret@law.nyc.gov

*Submitted Under Seal – References Confidential Information*

July 24, 2007

**BY FACSIMILE**

The Honorable James C. Francis, IV
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1960
New York, NY 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/24/07

*04 CIV 7922*
*(KMK) (JCF)*
*LEAD CASE*

**Re:** *Sarah Coburn, et al. v. The City of New York, et al.* 05 Civ. 7623 (KMK)(JCF) *DOCKET IN*
*Nikolas Sikelianos v. The City of New York, et al.* 05 Civ. 7673 (KMK)(JCF)
*Emily Sloan, et al. v. The City of New York, et al.* 05 Civ. 7668 (KMK)(JCF)      *ALL*
*Lashley Carney, et al. v. The City of New York, et al.* 05 CV 7672 (KMK)(JCF)
*Gwynn Galizter v. The City of New York, et al.* 05 CV 7669 (KMK)(JCF)       *CASES*
*Jeffrey Philips, et al. v. The City of New York, et al.* 05 CV 7624 (KMK)

Dear Judge Francis:

Pursuant to Fed. R. Civ. Pro. 37(a), defendants write to compel discovery of plaintiffs in the above-captioned cases, which are part of the RNC cases consolidated before Your Honor.

## I. Mr. Rothman Has Not Complied With His Discovery Obligations Since He Was Served In November, 2005.

We served Defendants' First Set of Interrogatories and Request for Production of Documents on Jeffrey Rothman, counsel for plaintiffs in those actions, on the following dates:

- Coburn, November 4, 2005;
- Sikelianos, November 4, 2005;
- Sloan, January 20, 2006;
- Carney, November 3, 2006;
- Phillips, November 3, 2006;

- Galizter, November 3, 2006.

Since December, 2006, defendants have made strenuous efforts to obtain this discovery through oral and written communications with Mr. Rothman – all to no avail.[1] On July 20, 2007, we demanded, once again, that Mr. Rothman comply with his discovery obligations. *See,* letter to Mr. Rothman dated July 20, 2007, attached hereto as Exhibit B). Mr. Rothman ignored that request. Moreover, on at least two previous occasions, defendants were forced to seek Your Honor's intervention to compel Mr. Rothman to provide releases for plaintiffs' medical, pharmaceutical and mental health treatment, prior arrests and economic injuries. (*See* letters from Jeffrey A. Dougherty dated May 18, 2007, May 22, 2007 and June 7, 2007, attached hereto as Exhibit C). He produced that discovery under threat of dismissal.

When defendants were unable to locate two officers scheduled for depositions last week, Mr. Rothman sprinted to the Courthouse steps to complain bitterly and demand cost-shifting sanctions for his troubles. Yet he has failed to (1) provide discovery for *any plaintiff* in the *Carney* and *Galizter* matters; (2) provide *any discovery* for plaintiffs Justin Barron and Emily Sloan; (3) provide plaintiffs' verifications for deficient discovery responses in *Phillips v. City of New York;* or (4) respond to defendants repeated requests that he correct gross deficiencies in discovery responses for *eleven* individual plaintiffs. (See Exhibits A, B and C).

As the second anniversary of defendants' First Set of Interrogatories and Requests for Production of Documents fast approaches, we are forced to conduct depositions of plaintiffs in the above-captioned matters without the necessary documents or interrogatory responses. This situation cannot stand.

## II.   Relief Requested

For the foregoing reasons, defendants respectfully request that the Court:

(1)   Order plaintiffs to provide the information sought in defendants' letter to Mr. Rothman dated July 20, 2007 (attached hereto as Exhibit B);

(2)   Order plaintiffs to provide this discovery on or before July 27, 2007 or their claims shall be dismissed with prejudice; and

(3)   Grant such further relief as Your Honor deems just and proper.

*The discovery at issue here 3/24/07 does not consist of mere "loose ends". Plaintiffs shall provide complete responses by September 5, 2007. SO ORDERED.*

Respectfully submitted,

/s/

Tonya Jenerette (TJ7276)

[1] *See, e.g.,* e-mails to Mr. Rothman dated December 13, 2006, January 31, 2007, February 9, 2007, March 2, 2007, March 15, 2007, March 16, 2007 and May 14, 2007 attached hereto as Exhibit A.

# EXHIBIT WW

REDACTED

# EXHIBIT XX

REDACTED

# EXHIBIT YY

**Jeffrey A. Rothman**
Attorney at Law
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 227-2980; Cell: (516) 455-6873
Fax: (212) 591-6343
rothman.jeffrey@gmail.com

## CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER #2

February 29, 2008

By Hand
The Honorable James C. Francis IV
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street – Room 1960
New York, NY 10007

Re:   *Coburn, et al. v. City of New York, et al.*, 05 Civ. 7623 (RJS) (JCF);
      *Phillips, et al. v. City of New York, et al.* 05 Civ. 7624 (RJS) (JCF);
      *Sloan, et al. v. City of New York, et al.,* 05 Civ. 7668 (RJS) (JCF);
      *Galitzer v. City of New York, et al.,* 05 Civ. 7669 (RJS) (JCF);
      *Xu, et al. v. City of New York, et al.,* 05 Civ. 7672 (RJS) (JCF);
      *Bastidas, et al. v. City of New York, et al.;* 05 Civ. 7670 (RJS) (JCF);
      *Drescher v. City of New York, et al.;* 05 Civ. 1567 (RJS) (JCF)

Dear Judge Francis:

    I write to oppose Defendants' motions of January 22, 2008. As stated in my letter to the Court of February 9, 2008, and in letters from other RNC plaintiffs' counsel, Defendants have not met and conferred with regard to these motions, and pursuant to Your Honor's Order of January 14, 2007, which explicitly stated that "any motion filed without compliance with the meet and confer requirement will be summarily denied," their motion should be summarily denied.

# REDACTED

# REDACTED

**Specifically Concerning Mr. Becker**

Mr. Becker will be asked once more by his attorneys if he wishes to provide the records of his mental health treater, and plaintiff respectfully requests the opportunity to provide those records if plaintiff alters his position on this matter. If he declines, Plaintiff understands that, in light of the Court's prior rulings in the consolidated RNC cases, that the Court will likely dismiss his emotional distress claims over Plaintiff's objection (thus preserving Plaintiff's appeal rights in that regard). Plaintiff only claims garden variety emotional distress, and will not seek to present any medical testimony in support of his claim of garden variety emotional distress. His mental health records are protected by this absolute privilege under Jaffee v. Redmond, 518 U.S. 1 (1996), and should be held by this Court to be privileged from disclosure in the event that he does not alter his position on this matter.

# REDACTED

---

[3]    See, August 29, 2006 Order by Magistrate Judge Michael Dolinger in Kunstler, et al. v. City of New York, et al., 2006 U.S.Dist.Lexis 61747 at *16-*18, holding that Plaintiffs in Kunstler did not have to respond to an identical Interrogatory seeking description of damages beyond the scope of Local Rule 33.3. Judge Dolinger's Memorandum and Order of August 29, 2006 in Kunstler is annexed hereto as **Exhibit L**. This decision, and Judge Sweet's affirmance of it, have of course additionally been cited by myself and other RNC plaintiffs' counsel in support of the absolute psychotherapist-patient privilege and in opposition to the City's motions to compel production of RNC plaintiffs' mental health records for plaintiffs who are only claiming "garden variety emotional distress." See footnote 4, below.

# REDACTED

## <u>Specifically Concerning Mr. Xu</u>

Mr. Xu has decided that he will invoke the psychotherapist-patient privilege and will not provide the City access to his mental health records. Plaintiff understands that, in light of the Court's prior rulings in the consolidated RNC cases, that the Court will now likely dismiss his emotional distress claims over Plaintiff's objection (thus preserving Plaintiff's appeal rights in that regard). Plaintiff only claims garden variety emotional distress, and will not seek to present any medical testimony in support of his claim of garden variety emotional distress. His mental health records are protected by this absolute privilege under <u>Jaffee v. Redmond</u>, 518 U.S. 1 (1996), and should be held by this Court to be privileged from disclosure[4].

---

[4]     The absolute nature of the privilege is discussed further at pages *21, *35, and *39-*40 of the thoughtful August 29, 2006 opinion on the subject by Magistrate Judge Dolinger in <u>Kunstler, et al. v. City of New York, et al.</u>, 2006 U.S. Dist. Lexis 61747, 04 Civ. 1145 (RWS)(MHD) (Collecting and analyzing cases on the subject, and finding no waiver of the psychotherapist-patient privilege by demonstration arrest plaintiffs) - annexed hereto as **Exhibit I**. Your Honor should consider and adopt Judge Dolinger's careful reasoning in <u>Kunstler</u> when ruling in the case at bar.

Judge Sweet has rejected Defendants Rule 72 objections to Judge Dolinger's August 29, 2006 <u>Kunstler</u> opinion, stated that Judge Dolinger's "August 29 Order is a comprehensive, careful review of the issues presented and the relevant authorities", and that "Judge Dolinger's nuanced and careful analysis of the requirements for waiver, particularly after the psychotherapist privilege enunciated in Jaffe, represents the appropriate view of the issue and the authorities." Judge Sweet also continues to discuss the September 20, 2006 <u>Hershey-Wilson</u> decision by Judge Karas in these consolidated RNC cases, as that opinion was presented to him as part of Defendants' Rule 72 objections in <u>Kunstler</u>, and held that "[a]lthough the Hershey-Wilson court declined to reconsider its decision based on the subsequent, contrary determination reached in Greenberg, the decision in Hershey-Wilson is no more controlling than that in Greenberg. See, e.g. <u>Ruhlmann v. Ulster County Dep't of Soc. Servs.</u>, 194 F.R.D. 445, 450 (N.D.N.Y. 2000) (holding that 'a party does not put his or her emotional condition in issue by merely seeking incidental, 'garden variety,' emotional distress damages')." Judge Sweet's opinion in <u>Kunstler, et al. v. City of New York, et al.</u>, 2007 U.S. Dist. Lexis 35534, decided on May 11, 2007, is annexed hereto as **Exhibit K**.

7

# REDACTED

**Concerning Discovery of Mental Health History of Gwynn Galitzer**

Defendants again complain that plaintiff did not respond to that portion of their improper interrogatory that asks her to identify her injuries. See above, Footnote 3 in that regard.

Ms. Galitzer has decided that she will invoke the psychotherapist-patient privilege and will not provide the City access to her mental health records. Plaintiff understands that, in light of the Court's prior rulings in the consolidated RNC cases, that the Court will now likely dismiss her emotional distress claims over Plaintiff's objection (thus preserving Plaintiff's appeal rights in that regard). Plaintiff only claims garden variety emotional distress, and will not seek to present any medical testimony in support of her claim of garden variety emotional distress. Her mental health records are protected by this absolute privilege under Jaffee v. Redmond, 518 U.S. 1 (1996), and should be held by this Court to be privileged from disclosure. See also, Footnote 4, above.

# REDACTED

REDACTED

Concerning Discovery of Mental Health History of Emily Sloan

13

Ms. Sloan has decided that she will invoke the psychotherapist-patient privilege and will not provide the City access to his mental health records. Plaintiff understands that, in light of the Court's prior rulings in the consolidated RNC cases, that the Court will now likely dismiss her emotional distress claims over Plaintiff's objection (thus preserving Plaintiff's appeal rights in that regard). Plaintiff only claims garden variety emotional distress, and will not seek to present any medical testimony in support of her claim of garden variety emotional distress. Her mental health records are protected by this absolute privilege under Jaffee v. Redmond, 518 U.S. 1 (1996), and should be held by this Court to be privileged from disclosure. See also, Footnote 4, above.

# REDACTED

# REDACTED

## Concerning Discovery of Mental Health History of Megan Thomas-Melly

Ms. Thomas-Melly has decided that she will invoke the psychotherapist-patient privilege and will not provide the City access to her mental health records. Plaintiff understands that, in light of the Court's prior rulings in the consolidated RNC cases, that the Court will now likely dismiss her emotional distress claims over Plaintiff's objection (thus preserving Plaintiff's appeal rights in that regard). Plaintiff only claims garden variety emotional distress, and will not seek to present any medical testimony in support of her claim of garden variety emotional distress. Her mental health records are protected by this absolute privilege under Jaffee v. Redmond, 518 U.S. 1 (1996), and should be held by this Court to be privileged from disclosure. See also, Footnote 4, above.

# REDACTED

Respectfully submitted,

Jeffrey Rothman

cc:    Jeffrey Dougherty, Esq. (by email)
       James Mirro, Esq. (by email)
       Fred Weiler, Esq. (by email)

19

# Exhibit ZZ



THE CITY OF NEW YORK

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NEW YORK 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

RANDALL M. ELFENBEIN
*Special Assistant Corporation Counsel*
Room 3-126
Telephone: (212) 788-8342
Facsimile: (212) 788-9776
relfenbe@law.nyc.gov

March 14, 2008

**BY HAND**

Hon. James C. Francis IV, U.S.M.J.
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1960
New York, New York 10007-1312

<u>*SUBMITTED UNDER SEAL – REFERS TO CONFIDENTIAL INFORMATION*</u>

Re:    <u>**Coburn, et al, v. City of New York, et al., 05 CV 7623 (RJS) (JCF)**</u>

Dear Judge Francis:

Defendants submit this reply in further support of the letter of Jeffrey A. Dougherty dated January 22, 2008, the letter of Randall M. Elfenbein dated January 22, 2008 (together the "Motion") and in reply to plaintiffs' opposition letter dated February 29, 2008 in the above-referenced action.

**I.    The "Meet and Confer" Requirement Does Not Apply to Motions Seeking Sanctions For Failure to Comply With Court Orders**

Plaintiff(s) allege defendants have not "met and conferred" prior to filing their motions and therefore they argue defendants' motions should be denied. This argument lacks both legal and factual merit. Plaintiffs' generalized arguments regarding an allegedly defective "meet and confer" are legally misdirected for several reasons. First, the "meet and confer" rule is *only* applicable to motions to compel under Rule 37(a). Courts in the Second Circuit have held that "[a] party is not required to meet and confer or make a good faith certification when moving for sanctions for failure to comply with a prior Order which already granted a motion to compel." <u>Amatangelo v. National Grid USA Service Co.</u>, 04-CV-24S(F), 2007 WL4560666, *6 (W.D.N.Y. Dec. 18, 2007); <u>Kelly v. City of N.Y.</u>, 01-CV-8906 (LMM) (RLE), 2007 WL 1746912, *3 (S.D.N.Y. June 15, 2007) (motions brought under Rule 37(b)(2) do not require

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 2 of 4

parties to meet and confer prior to the Court imposing sanctions).1 Accordingly, the portion of defendants' motion that sought sanctions such as dismissal of claims is not governed by the "meet and confer" requirement. More precisely, because a significant portion of defendants' motion addressed plaintiffs' failure to comply with Your Honor's Orders in this case and the RNC Consolidated Litigation there is no legal basis to summarily deny that relief due to non-compliance with Rule 37(a). Thus, certain categories of discovery in which the RNC plaintiffs have long been on notice of their discovery obligations and in which the Court has already granted numerous motions to compel (e.g. mental health records, non-RNC arrest records, records of physical injuries, etc.) are not subject to the "meet and confer" requirement of Rule 37(a).

## II. Defendants' Reply to Plaintiffs' Opposition

By the Motion, defendants seek dismissal of the claims for emotional distress of plaintiffs Justin Barron and Megan-Thomas-Melly ("Plaintiffs") based on their refusal to produce releases for treating mental health care providers. In opposition, Plaintiffs continue to refuse to provide these records asserting a privilege based on a claim that their emotional distress is "garden-variety"2. Judge Karas and Your Honor have already ruled that defendants are entitled to full disclosure of plaintiff's psychological history when a plaintiff puts his or her emotional condition at issue, thereby waiving the psychotherapist-patient privilege.3 In

---

1     See also, Sheehy v. Wehlage, 02-CV-592, 2007 WL 836816 (W.D.N.Y.2007); Reidy v. Runyon, 169 F.R.D. 486, 491 (E.D.N.Y.1997); accord Freiria Trading Co. v. Maizoro S.A. de C.V., 187 F.R.D. 47, 49 (D.P.R.1999).

2 Counsel acknowledges that, given the law of the case, these claims will likely be dismissed and seeks to preserve his objections for a likely appeal. Defendants note that both plaintiffs identified health care providers from whom they sought treatment of their RNC related emotional distress.

3 See Judge Karas' rulings in MacNamara v. City of New York (04 CV 9216) on August 29, 2005. Judge Karas held that "to the extent you are going to ask a jury to award damages from the anxiety as a form of psychological trauma [resulting from an arrest and detention], potentially a very serious form of psychological trauma. . . that puts into play any sort of psychological history that would explain what it is that might cause [a plaintiff's] anxiety." See id. Judge Karas added that "when you talk about general psychological damages, the history becomes relevant, and [the psychotherapist-patient privilege] is waived." See id. Judge Karas' and Your Honor's rulings are supported by a long line of authority in this district and the Second Circuit. See Jaffe v. Redmond, 518 U.S. 1, 15 n. 14 (1996) ("like other testimonial privileges, the patient may of course waive the protection [of the psychotherapist-patient privilege]"); n. 19 ("there are situations in which the [psychotherapist-patient] privilege must give way"); Oliphant v. Dept. of Trans., 05-CV-0618, 2006 WL 522126 *2 (2d Cir. Mar 3, 2006) (recognizing waiver of psychotherapist-patient privilege where plaintiff alleges emotional distress); Karl v. Asarco Inc., 98-CV-7535, 1998 U.S. App. LEXIS 32696, *4 (2d Cir Dec. 31, 1998) (affirming district court's order permitting discovery into [psychological] history because plaintiff waived his privilege by putting mental state into issue); Montgomery v. N.Y.S. Office of Mental Health, 00-CV-4189, 2002 U.S. Dist. LEXIS 5607, *1-4 (S.D.N.Y. Apr. 3, 2002) (claim for emotional distress waives psychotherapist-patient privilege); Murray v. Bd. of Edu., 199 F.R.D. 154-155 (S.D.N.Y. 2001) (emotional distress claim waived psychotherapist-patient privilege); McKenna v. Cruz, 98-CV-1853, 1998 U.S. Dist. LEXIS 18293, *6 (S.D.N.Y. Nov. 19, 1998) ("the majority of post-Jaffe cases hold that any claim for emotional or psychological injury waives the psychotherapist-patient privilege"); Sidor v. Reno, 95-CV-9588, 1998 U.S. Dist. LEXIS 4593, *2-3 (S.D.N.Y. Apr. 7, 1998) (finding waiver of psychotherapist-patient privilege based on inter alia plaintiff's seeking damages for emotional pain and suffering); Kerman v. City of New York, 96-CV-7865, 1997 U.S. Dist. 16841, *9, 11 (S.D.N.Y. Oct. 24, 1997) (finding waiver of psychotherapist-patient privilege by allegations of continued emotional damages); see also, E.E.O.C. v. Grief Bros. Corp., 218 F.R.D. 59, 64-65 (W.D.N.Y. 2003) (granting defendant's request to obtain medical authorizations for the release of psychological

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 3 of 4

particular, in the consolidated RNC cases, plaintiffs who have alleged emotional distress damages have been compelled to: "(1) *identify all* providers who have provided them psychological or psychiatric counseling or treatment, (2) provide *releases* with respect to records maintained by these *providers*, and (3) provide *releases* for all *pharmacies* that have filled prescription drugs used by plaintiffs in connection with any psychological or emotional conditions."4

The Court has consistently and repeatedly dismissed emotional distress claims of plaintiffs who allege emotional injuries but refuse to provide defendants with releases in order to access their mental health and related pharmaceutical records. MacNamara v. City of New York, 04 CV 9216 (August 29, 2005 KMK Ruling); Hershey-Wilson v. City of New York, 05 CV 7026 (September 20, 2006 and September 25, 2007 KMK Orders and November 13, 2006 JCF Order); Cohen v. City of New York, 05 CV 6780 (September 25, 2007 KMK Order and November 17, 2006 JCF Order); Concepcion v. City of New York, 05 CV 8501 (October 24, 2006 and November 27, 2006 JCF Orders); Abdell v. City of New York, 05 CV 8453 (September 25, 2007 KMK Order and November 16, 2006, April 4, 2007 and December 19, 2007 JCF Orders); Adams v. City of New York, 05 CV 9484 (August 24, 2007 JCF Order); Eastwood v. City of New York, 05 CV 9483 (February 26, 2007 JCF Order); Sikelianos v. City of New York, 05 CV 7673 (November 1, 2007 JCF Order); and Tikkun v. City of New York, 05 CV 9901 (November 5, 2007 JCF Order).

### A.    Clothing issues

Plaintiffs have failed to address this issue as it applies to them in their opposition. Your Honor entered an Order requiring plaintiffs to bring their clothing and footwear to their depositions. See May 4, 2007 Order in MacNamara (docketed in all RNC Cases). Many plaintiffs failed to comply with that Order and also failed to offer their clothing for inspection by defendants while this application has been pending. Accordingly, those plaintiffs should be precluded from offering their clothing as evidence at any time hereinafter.

### B.    Relief Requested

For the foregoing reasons and for the reasons articulated in defendants' January 22, 2008 letters, defendants respectfully submit that the Court enter an order:

1.    dismissing Plaintiffs Barron and Thomas-Melly's claims of emotional distress damages and injuries with prejudice due to their refusal to provide release for mental health care provider records;

---

records because records were relevant to emotional distress claims); Wheeler v. East River Housing Corp., 95-CV-597, 1997 WL 33618, *1 (S.D.N.Y. Jan. 29, 1997) (granting defendant's motion to compel medical authorizations); Meisch v. Fifth Transoceanic Shipping Co. Ltd., 94-CV-0683, 1994 WL 582960, *1 (S.D.N.Y. Oct. 21, 1994) (granting defendant's motion to compel production of medical releases prior to deposition).

4    See Your Honor's November 16, 2006 Order in Abdell v. City of New York, 05 CV 8453. Kennedy is another consolidated RNC action in which Mr. Spiegel (also counsel in Abdell and Adams), represents multiple plaintiffs.

Hon. James C. Francis IV, U.S.M.J.
March 14, 2008
Page 4 of 4

2.    limiting the use, by all plaintiffs in this action, at trial and in dispositive motions to
      the clothing that was made available to defendants before or during plaintiffs'
      depositions, absent good cause; and

3.    grant such further relief as it deems just and proper.

                                          Respectfully submitted,

                                          /s Randall M. Elfenbein

                                          Randall M. Elfenbein

cc:    Jeffrey A. Rothman, Esq.

# Exhibit AAA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:

SARAH COBURN, et al.,                    :    05 Civ. 7623 (RJS) (JCF)
                                         :
              Plaintiffs,                :          O R D E R
                                         :
    - against -                          :
                                         :    ┌─────────────────────────────┐
CITY OF NEW YORK, et al.,                :    │ USDS SDNY                   │
                                         :    │ DOCUMENT                    │
              Defendants.                :    │ ELECTRONICALLY FILED        │
                                         :    │ DOC #: _____              │
- - - - - - - - - - - - - - - - - - -:        │ DATE FILED: 3/28/08         │
JAMES C. FRANCIS IV                           └─────────────────────────────┘
UNITED STATES MAGISTRATE JUDGE

Defendants having moved by letter dated January 22, 2008 for
an order dismissing certain claims, it is hereby ORDERED as
follows:

1. The emotional distress claims of plaintiff Megan Thomas-
Melly are dismissed, as she has declined to provide releases for
relevant mental health records.

2. Defendants' application to dismiss the emotional distress
claims of plaintiff Justin Barron is denied. Mr. Barron's only
mental health treatment was provided years after the RNC and is not
relevant.

3. Defendants' request for an order limiting plaintiffs'
introduction of clothing as evidence at trial is denied. This
issue was improperly raised for the first time in defendants' reply
letter. In any event, the application is properly addressed to
Judge Sullivan at the time of trial.

-1-

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           March 28, 2008

Copies mailed this date:

Jeffrey A. Rothman, Esq.
315 Broadway, Suite 200
New York, New York 10007

Randall M. Elfenbein, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

-2-

# EXHIBIT BBB

REDACTED

# EXHIBIT CCC

**Jeffrey A. Rothman**
Attorney at Law
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 227-2980; Cell: (516) 455-6873
Fax: (212) 591-6343
rothman.jeffrey@gmail.com

August 11, 2007

Fred Weiler, Esq.
Special Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007

Re:   *Galitzer, et al. v. City of NY, et al.*, 05 Civ. 7669 (KMK)(JCF)

Dear Fred:

As we discussed, this letter is being provided to Defendants in the above-captioned case to provide information that would be otherwise responsive to the queries made of Plaintiff in Defendants' November 3, 2006 First Set of Interrogatories and Document Requests to Plaintiff in the above-captioned case. This letter should not be construed as a recognition that discovery responses are due, as the discovery requests were issued past the deadline in the Case Management Order for doing so, but are provided in the interest of effectively furthering the litigation, and as a professional courtesy.

# REDACTED

1

# REDACTED

Ms. Galitzer will not provide any further information concerning any mental health treatment she has ever received. Records concerning this treatment are protected by the psychotherapist-patient privilege, and Plaintiff objects to their disclosure. Ms. Galitzer provides along with this letter a release for her treatment records from her _____. Ms. Galitzer also provides along with this letter redacted records from _____ (Bates Nos. 1-21: redacted are entries concerning _____ ' and other personal information that is unrelated to conditions or treatments that relate to Plaintiff's claims of physical injuries sustained from Plaintiff's RNC arrest and processing; also withheld in their entirety are 3 pages that relate solely to _____ and from her pharmacist, _____ (Bates Nos. 22-28: records concerning her asthma medication are left unredacted; prescriptions that do not relate to conditions or treatments that relate to Plaintiff's claims of physical injuries sustained from Plaintiff's RNC arrest and processing and are personal in nature have been redacted).

# REDACTED

Sincerely yours.

Jeff Rothman

encs.

VERIFICATION:

State of New York        )
                         ) ss:
County of New York  )

I, Gwynn Galitzer, being duly sworn, deposes and says that deponent is the claimant in the within action; that deponent has read the August 11, 2007 discovery letter from Jeffrey Rothman, Esq. to Fred Weiler, Esq. providing responses to Defendants' First Set of Interrogatories and Requests for Production of Documents, and knows the contents thereof, and the supplemental September 4, 2007 discovery letter from Jeffrey Rothman, Esq. to Fred Weiler, Esq., (or the attorney for Defendants who is conducting Ms. Galitzer's deposition) and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes them to be true.

_____
Gwynn Galitzer

Sworn to before me this 4th
day of September, 2007

_____
NOTARY PUBLIC

JEFFREY A. ROTHMAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02RO6104582
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES JANUARY 26, 2009