# Exhibit PPP

1572810_1.TXT

1

58tkmacc
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  DEIRDRE MACNAMARA, et al.,
3
4                    Plaintiffs,
4
5             v.                              04 Civ. 9216
5
6  CITY OF NEW YORK, et al.,
6
7                    Defendants.
7
8  ------------------------------x
8
9                                    New York, N.Y.
9                                    August 29, 2005
10                                   10:00 a.m.
10
11 Before:
11
12                    HON. KENNETH M. KARAS,
12
13                                        District Judge
13
14                    APPEARANCES
14
15 MOORE & GOODMAN (by telephone)
15      Attorneys for plaintiff
16 BY:  DAVID MILTON
16
17 MICHAEL CARDOZO
17      Corporation Counsel for the City of New York
18 BY:  JAMES MIRRO (by telephone)
18      FRED WHILER
19      Assistant Corporation Counsel
19
20
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

2

58tkmacc
1            (In chambers)
2            THE COURT:  Good morning, everybody.  Who do we have?
3            MR. MIRRO:  It is James Mirro for the city and I am
4  here with Fred Whiler, my colleague.
5            MR. MILTON:  And David Milton for the plaintiffs.
6            THE COURT:  Good morning.  Officially we are calling
7  McNamara et al. v. City of New York 004 Civ. 9216.  Just so
8  everybody knows, there is a court reporter taking down what you
9  say, so be nice.
10           I have had a chance to read the letters and I have had
11 a chance to read some of the cases that are discussed therein,
12 and of course I want to make sure we don't trip up on any
                         Page 1

1572810_1.TXT

```
13    unnecessary disputes.
14           With respect to the notes, I had a chance to read what
15    Mr. Mirro said in a letter, so it is time for a surreply from
16    plaintiff.
17           MR. MILTON:  OK.  Yes, I just got that this morning,
18    so I would like a chance to reply.
19           THE COURT:  That's what I am letting you do.  This is
20    Mr. Milton, right?
21           MR. MILTON:  Right.
22           THE COURT:  One thing we have to do is identify
23    ourselves for the court reporter.  Otherwise it will just say
24    unknown male.  Go ahead, Mr. Milton.
25           MR. MILTON:  You want a verbal surreply right now?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

3

```
58tkmacc
1            THE COURT:  If you think you really want more time I
2     will give it to you, but trees have died for the papers in
3     these cases.
4            MR. MILTON:  I don't want to kill any more trees.
5            He has to show substantial need and that it is not an
6     automatic waiver and that part of his showing would have to be
7     that sort of specific matters would have to be the subject of
8     the testimony and that one question, did you review this, yes,
9     I reviewed it, did it refresh your recollection, is not enough,
10    as I understand the cases, to trigger the sort of broad waiver
11    of either the work product protection or the attorney-client
12    privilege.  Having been on the other side of this dispute I
13    realize that it was not an automatic waiver but it is a
14    balancing test.
15           MR. MIRRO:  Your Honor, can I respond to that?
16           THE COURT:  Yes, of course.
17           MR. MIRRO:  First, I respectfully disagree with
18    Mr. Milton on the notes.  There are two bases for discovery of
19    the notes.  Under Rule 26 there is the exceptional
20    circumstances or specific need showing.  We are not relying on
21    that, although I will address the specific need in a moment.
22    We are primarily relying on the Federal Rule of Evidence rule
23    which I cited, I believe it is 612, and the case law is very
24    clear, and there is ample case law that where the witness
25    giving deposition testimony has refreshed recollection by
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

4

```
58tkmacc
1     reviewing notes or another document, that material is subject
2     to discovery because the deposing parties is entitled to
3     cross-examine, and even if there were a requirement of specific
4     need I think we could establish the specific need, although I
5     am not relying on it, because obviously the opposing party, in
6     this case the plaintiff, has access to those notes.  We do not
7     have access to the notes.
8            With respect to the notes and the account of the
9     incident, certainly much closer in time to the incident than
10    the plaintiff's deposition, we believe that it would be unfair
11    for the plaintiffs alone to have access to those documents and
12    not for us to have access to the documents, in addition to
13    refreshing recollection.
14           So there is need on our part.
15           THE COURT:  Mr. Milton, do you want to respond?
16           MR. MILTON:  Yes, and just briefly again, without
17    whining here, I got this this morning.  We have not gotten the
                             Page 2
```

1572810_1.TXT
18  transcript from the deposition until this morning. But I will
19  endeavor to try. Based on what I understand to be the case
20  law, we are talking about the account of the incident, we are
21  not claiming attorney-client privilege for that but as work
22  product it would be subject to a requirement of substantial
23  need, and nothing in this testimony as I recall -- I mean,
24  there was one question about the account and so I don't see how
25  he has made that showing.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
                                                                    5
     58tkmacc
1           MR. MIRRO: I have a case directly on point, frankly,
2   that I think is directly on point.
3           THE COURT: All right, look. I have read Ehrlich,
4   Judge Sweet's decision, 848 F. Supp. 482. But in fairness to
5   Mr. Milton, even though I am loathe to -- I am prepared to
6   decide this but not if Mr. Milton hasn't had a fair opportunity
7   to read the cases.
8           Mr. Mirro, there is nothing wrong with you trying to
9   get the last word but sometimes you don't get the last word.
10          MR. MIRRO: I appreciate that. I am happy for
11  Mr. Milton to get his side heard.
12          THE COURT: Mr. Milton, for what it is worth, I did
13  not read the other cases that Mr. Mirro cited, but I think that
14  Ehrlich distinguishes the Rule 26 that Mr. Mirro would to make
15  versus the evidence 612 showing that he has to make. But I
16  will give you a chance if you want to take a look, and if it
17  turns out that you are right, you can let Mr. Mirro know and we
18  can do another quick call, rather than kill trees.
19          MR. MILTON: So I am given the opportunity to either
20  concede the point or if I don't I will come up with my great
21  cases and we will get back on the phone?
22          THE COURT: Precisely.
23          With respect to the book and dissertation --
24          MR. MIRRO: Your Honor, may I ask a question for
25  clarification?
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
                                                                    6
     58tkmacc
1           THE COURT: Sure.
2           MR. MIRRO: Are you treating the notes and the account
3   that was provided to the lawyer in the same way?
4           THE COURT: I don't see why not.
5           MR. MIRRO: I just wanted to clarify.
6           THE COURT: The issue is joined and the question is
7   what showing you need to make. I am not sure you haven't made
8   a showing even if you had to do it under Rule 26. But I think
9   it is fairly clear under 612 that when somebody uses that kind
10  of material to refresh his or her recollection that it is a
11  waiver, but I definitely want to give Mr. Milton a chance to
12  see if it is wrong.
13          Mr. Mirro, I realize that you work for a government
14  agency, but why don't you go buy Professor Thomas's book
15  yourself?
16          MR. MIRRO: Your Honor, good question, and I think the
17  answer is, this is a purported class action case which is going
18  to encompass, if it is certified, which we think it should not
19  be, 1,800 plaintiffs. As it stands now, there are 24.
20  Frankly, your Honor, we have been running around just trying to
21  get basic fundamental stuff in terms of discovery that we think
22  we are entitled to. We think that we are entitled to that book
                            Page 3

1572810_1.TXT

23  and the dissertation under the federal rules, and I hate to set
24  a precedent where, you know, every time there was something
25  available in some other office or in some bookstore somewhere
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

58tkmacc
1   they could send us running for it if we are entitled to it
2   under the rules.  Frankly, we could go out and buy that book.
3   I assume it is available.  I don't know for sure that it is
4   available.  But my question would be why aren't they obligated
5   to provide it under the rules.
6           THE COURT:  I haven't Googled it myself and I
7   understand the principle.
8           MR. MIRRO:  I would be happy to go out and buy it and
9   if your Honor directs us to do that, we would do that.  But
10  there are significant discovery defaults here and we are doing
11  our best to keep this whole thing together, and that sort of
12  precedent would be difficult for us.
13          THE COURT:  Understood.  Mr. Milton, to the extent
14  that your client has some history of political protest and
15  since the core of this is the question of what if any
16  protesting your client might have been doing -- this is
17  Professor Thomas I am talking about here -- why wouldn't this
18  be relevant at least for purposes of discovery?
19          MR. MILTON:  Right, and, respectfully, I disagree with
20  that characterization that my client has a history of political
21  protest.  He is an art history professor, and in response to
22  your question, did your book about the Lincoln Memorial deal
23  with political protest -- that was the question at the
24  deposition -- the response was, well, given the history of that
25  memorial in American life, it would be impossible not to deal
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

58tkmacc
1   with the question of political protest in writing about its
2   history.  But it is a long way from that to, he is on the
3   streets every day as a hardened activist.  He is an art history
4   professor.  We are not going to kick and scream and take an
5   interlocutory appeal, but this is far afield.
6           THE COURT:  You know, I went to college with an econ
7   major, but he also protested.  To say he is an art history
8   professor isn't mutually exclusive.
9           MR. MILTON:  But he is an art history teacher who
10  testified that he had not been a political protester.
11          MR. MIRRO:  Your Honor, with all due respect I don't
12  view this as a close call at all.  Here is a gentleman who
13  testified that he has written a book and he testified in his
14  deposition that it deals with political protest and civil
15  disobedience.  We are talking about discovery here, not
16  admissibility, and we wouldn't even suggest that the book might
17  not be admissible at this point.  But it is certainly in my
18  view discoverable where he says that he has discussed political
19  protest and civil disobedience in the book, and the
20  dissertation.
21          THE COURT:  Yes, I have to say, Mr. Milton, I don't
22  disagree with that.  It seems that there will be credibility
23  issues about what Professor Thomas was doing around the time he
24  was arrested.  His allegation is that he was doing nothing even
25  in the way of protest, as I understand it, nothing illegal --
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1572810_1.TXT

9

58tkmacc
1  not that protest is illegal.  So why wouldn't that to some
2  extent go to what he was doing at the premises at the time that
3  he was arrested and also go to his credibility?
4         MR. MILTON:  I think even the way, from my
5  perspective, you have just phrased it, suggests that it is not
6  relevant.  What he wrote 15 years ago about the Lincoln
7  Memorial, which no one would dispute is a site of political
8  protest, for me it is the ultimate stretch to go from there to
9  say he must have been engaging in civil disobedience or some
10  sort of unlawful protest during the Republican Convention.  I
11  don't see how the one goes to even his credibility.
12         THE COURT:  I didn't say that he must have been.  The
13  question is, for purposes of discovery, whether it is relevant.
14  I couldn't agree with you more.  Look, even if he participated
15  in a protest a week 15 years ago doesn't mean that he must have
16  been here to protest whatever people were protesting, I agree
17  with you.  The question is whether or not it has some relevance
18  or can lead to relevant information and I don't know how it can
19  be said that it would fail both those tests.
20         MR. MILTON:  I am not going to belabor the point.  The
21  book is publicly available.  We are obviously not trying to
22  hide anything.  We will comply with any order if I can't
23  persuade you that it is pretty far afield, how what he writes
24  10 years ago has anything to do with a highly charged situation
25  totally removed from a academic study.  But if we are being
           SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

10

58tkmacc
1  directed to turn it over, so be it.  We have no objection.
2         THE COURT:  Look, it is certainly not the epicenter of
3  the case, I will give you that.  But the burden that Mr. Mirro
4  must meet is fairly low, as you know.  I think it is
5  discoverable under Rule 26 so I think it should be turned over.
6         With respect to the question of medical records and
7  medical history, both physical and psychological, it seems to
8  me that -- and even in the cases I read before I got
9  Mr. Mirro's August 26 letter -- to the extent that your
10  allegations, Mr. Milton, are very general and your claims of
11  injury are very general, why isn't it commensurate with that
12  that there is a greater need on behalf of defendants to find
13  out the medical history, both psychological and physical, of
14  your client?  If you had claimed, for example, that he broke
15  his leg, whether or not he had a toothache 10 years ago it
16  seems to be would be irrelevant.  Failing that, it seems
17  because it is a very general and broad statement -- and the
18  Northern District case that you described by Judge Pauley as
19  being the minority view, where the garden variety type of claim
20  really does not allow a plaintiff in that situation to restrict
21  access to medical history information.  Do you have any greater
22  sense of what it is your client actually suffered from so maybe
23  there is a way to narrow this?
24         MR. MILTON:  Yes, there is, your Honor.  In response
25  to the interrogatories of all 24 plaintiffs, one of the
           SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

11

58tkmacc
1  questions was please describe in detail all categories of
2  damages and all physical, emotional and psychological injuries,
3  and we in response to those detail specifically what injuries
                  Page 5

1572810_1.TXT
```
 4   emotional and physical our clients are alleging.  So there is a
 5   more specific basis than the complaint.
 6            In response to that, for example, no one is claiming,
 7   say, dental injuries, and we didn't turn over dental records,
 8   or gynecological, totally unrelated medical records.
 9   Concerning the psychological records, I note again just looking
10   at this this morning, the cases cited for this principle of
11   putting medical and psychological issues in question, both were
12   pre-Jaffe v. Redmond, a Supreme Court case from 1996
13   recognizing the psychotherapist-patient privilege.  In that
14   they also, I think, addressed the issue of putting things in
15   issue and said there is not to be a balancing test and that the
16   interest in recognizing the privilege would not be served if
17   subsequently there would be a judicial determination, well,
18   this is relevant, this isn't relevant.
19            MR. MIRRO:  Can I address that, your Honor?
20            THE COURT:  I have a couple questions for Mr. Milton
21   first.  I am looking at response interrogatory No. 4, and this
22   is plaintiff William Steyert, Jr., responses, response No. 4,
23   and you said they were all the same.  The interrogatory states
24   identify all injuries claimed by plaintiff as a result of the
25   incident and the medical, psychiatric, psychological and other
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      12
```
     58tkmacc
 1   treatment provided, if any.  Response, worry and anxiety as a
 2   result of my false and unjust arrest.  The conditions at Pier
 3   57 caused anxiety for mental condition and health.
 4            So dental situations, you are right, become
 5   irrelevant, arthroscopic surgery is irrelevant, you name it.
 6   But psychological, this is still fairly generic and I am
 7   wondering why psychological history wouldn't be relevant to
 8   this claim.
 9            MR. MILTON:  Right, and I think it is precisely
10   because it is generic that the records aren't relevant.  If we
11   claim, for example, and I believe that with one of our
12   plaintiffs -- if we claim, for example, that someone is now
13   suffering from claustrophobia, and a more diagnosable specific
14   medical injury as opposed to what we are calling garden-variety
15   distress, to the extent someone has a more specific injury,
16   yes, it is relevant, but anxiety, worry, to me how we intend
17   that, it is upsetting to be arrested for what we claim is
18   obviously without justification, and then to be held for two
19   days for, essentially, like, a ticket, in the conditions as we
20   allege them.  It sort of adds insult to injury to then have to
21   disclose your entire family history and whatever else might be
22   the subject of your therapy when this is a sort of stand-alone
23   upsetting incident, and we are not claiming anything more and
24   we will stipulate that we are not claiming for those plaintiffs
25   anything more than what these cases call garden variety
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      13
```
     58tkmacc
 1   emotional distress.
 2            THE COURT:  I do have to say, I think you have to be
 3   careful how you phrase what I am saying.  I don't doubt for a
 4   minute that being arrested at all is a very anxious moment and
 5   can cause a tremendous amount of anxiety and distress, let
 6   alone the ticket and being detained for two days.  I am not
 7   trying to diminish what it is that your client is claiming.  My
 8   point is, to the extent that you are going to ask a jury to
```
                              Page 6

1572810_1.TXT
```
 9   award damages from the anxiety as a form of psychological
10   trauma, potentially a very serious form of psychological
11   trauma, it seems to me that puts into play any sort of
12   psychological history that would explain what it is that might
13   cause anxiety in your client and what kind of damages he or she
14   is entitled to as a result of the anxiety that presumably you
15   would have shown unfairly resulted from what you would say is
16   an unlawful arrest.
17            So I just think that the cases that I have read, and
18   it is not a question of balancing, it is a question of whether
19   the privilege has been waived, that when you talk about general
20   psychological damages, the history becomes relevant, and it
21   seems that the cases say it is waived.
22            Mr. Mirro.
23            MR. MIRRO:  Thank you, your Honor.  I think we are on
24   the same page.  I think I would have said the same things that
25   you just said, your Honor, which I am happy about.  Let me just
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
                                                            14

58tkmacc
```
 1   add -- let me see.  I am sorry, your Honor, I sort of blanked
 2   out.  I think we are on the same page with that.  I don't think
 3   I have anything else to add right now.
 4            THE COURT:  Mr. Milton, do you want to say anything
 5   else?
 6            MR. MILTON:  Well, I mean, again, I guess we have a
 7   somewhat different view of what is and isn't relevant here in
 8   terms of what is being put in issue.  For example, some people
 9   say they had a history of abuse with their family and now they
10   are in therapy and they have been in therapy before this, and
11   this incident is its own incident, which everybody agrees as we
12   allege would be a distressing one.  Then I still don't see why
13   the defendants then get to fish around in their history with
14   their parents to refute that their treatment by the defendants
15   is upsetting.  We are not claiming that now they can't hold a
16   job.  For someone whose damages are limited to their testimony
17   that this was an awful experience, I was so upset, now it is
18   very difficult for me to be around police, a sort of general
19   bad reaction to this, I still don't see how the more obviously
20   intimate details of their life are relevant.  Further,
21   disclosing them for our clients will produce enormous anxiety
22   by itself.
23            THE COURT:  One thought I had was, if there is some
24   extraordinarily sensitive part of a client's medical history --
25   let's say by way of example, since you seem to be invoking it,
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
                                                            15

58tkmacc
```
 1   some history of child abuse, leads to a lot of adult therapy,
 2   in that circumstance, Mr. Mirro, why can't Mr. Milton submit
 3   that to me for some sort of ex parte review?
 4            MR. MIRRO:  Your Honor, we would entirely on board
 5   with that.  If there is a particular issue with respect to a
 6   particular plaintiff, we could reduce this dispute down to that
 7   minute disagreement and we would be on board with that.  We are
 8   not trying to trick anybody, we are not trying to embarrass
 9   anybody.  We are willing to play this game straight.  But we
10   just need to, you know, examine, properly examine the
11   plaintiffs.  So I would agree with that, your Honor.
12            Let me make a couple other points now that I have my
13   thoughts straight with respect to these issues.  First, there
```
Page 7

1572810_1.TXT

14    was a question about the interrogatories.  Even with the
15    interrogatory answers, which arguably somewhat narrow the scope
16    of the plaintiffs' claims --
17            THE COURT:  They narrowed them.  Physical injuries are
18    out, for example.  I don't think you would be entitled to
19    medical history from an orthopedic surgeon based on that
20    answer.
21            MR. MIRRO:  I agree, your Honor, we are not claiming
22    that everything is relevant.  Are you suggesting, your Honor,
23    that given the answer here in No. 4 that we should not collect
24    medical records aside from psychological?
25            THE COURT:  Under what theory would you be entitled to
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                               16
58tkmacc
1    that?
2            MR. MIRRO:  First, your Honor, I am not sure that the
3    response given in No. 4 here is the final answer.
4            THE COURT:  Let's assume it is.
5            MR. MIRRO:  Frankly, I think if we are willing to
6    stipulate that particular plaintiffs have no physical injuries,
7    then, you know, I think that we would be willing to stipulate
8    to it as well.  But I would just, you know, in my mind I am
9    thinking there is still a complaint out there that says they
10    have physical injuries including pain and suffering, and I
11    don't know if they are going to give that up at the end of the
12    day.
13            MR. MILTON:  He has interrogatory responses under
14    oath.  If he suddenly claims that he has a broken leg, that
15    claim is not going to go very far.  That is the purpose of the
16    interrogatories.  We have committed ourselves and you will have
17    additional chance to depose them.  If he comes up with a
18    physical injury to his teeth, we will have to turn over his
19    dental records and we will look like idiots.
20            MR. MIRRO:  I am happy to hear that.  We would be
21    happy to enter into a stipulation with respect to each of the
22    plaintiffs and I would volunteer to draft it, whereby they
23    waive all claims of physical injury except what they have given
24    in their interrogatory answers.
25            MR. MILTON:  I would object to signing a stipulation.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                               17
58tkmacc
1    We have a sworn statement in the interrogatories and he can ask
2    again in the depositions.  I don't see why we have this
3    additional procedure.
4            THE COURT:  Yes.  I mean, Mr. Mirro, to the extent you
5    have the interrogatory answer, they are stuck with it under
6    oath unless they can come up with some extraordinary
7    explanation, and I tell you what, if they come up with an
8    explanation, you can ask for whatever medical records you might
9    think relevant.
10            MR. MIRRO:  That is fine, and believe me, your Honor,
11    we have considered that procedure.  The only concern I have
12    with that procedure is, again, with so many plaintiffs in this
13    case, and if we begin down that road of collecting documents
14    after examinations have been taken, we are in the position of
15    having to re-examine the same plaintiffs again and that causes
16    some concern in terms of efficiency of how this is done.
17            THE COURT:  I have no reason to doubt the veracity of
18    the interrogatory response.  Mr. Milton recognizes -- he has
                           Page 8

1572810_1.TXT

```
19   been around the block -- how problematic it would be for his
20   client to suddenly come up with a broken leg, and it seems to
21   me that -- otherwise, you talk about problematic, you're going
22   to enter a new stip every time there is a nonanswer given in an
23   interrogatory, get everybody to sort of doublecheck and say
24   they didn't mean to say X and Y.  It seems that the
25   interrogatories have in this instance served their purpose.
```

                SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                              18

58tkmacc
```
 1   They have narrowed the claim.  It is a matter of stress, it is
 2   not a physical injury, and it seems that any request for
 3   medical history related to physical injuries, as far as I look
 4   at it right now they would not be relevant and I hear you
 5   say otherwise.
 6           MR. MIRRO:  I think we would be on board with that,
 7   your Honor.  We have to keep in mind there are numerous
 8   plaintiffs here.  We are looking at Steyert's responses.  Some
 9   of the plaintiffs claim that they were deprived of medication
10   while they were held in custody.  There may be as well physical
11   medical records that are relevant in terms of the other
12   injuries, the psychological injuries that are alleged.  I am
13   not quite sure, but I am willing to be guided by your thoughts
14   on this.
15           MR. MILTON:  If I can just respond to that --
16           THE COURT:  Of course, yes.
17           MR. MILTON:  As we point out in our letter to the
18   court, we took a very broad view of what could be relevant.
19   For example, if someone claims they weren't allowed to have
20   their inhaler while at Pier 57, we turned over records of
21   treatment of whoever the doctor was that prescribed the
22   inhaler, so that he can verify that yes indeed they had an
23   inhaler.  Even though we are not claiming an injury other than
24   the fact that they were deprived of an inhaler that potentially
25   inhibited breathing, we provided those records.  It is not we
```

                SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                              19

58tkmacc
```
 1   didn't provide their orthopedic records.
 2           MR. MIRRO:  I will say this, your Honor.  It is a
 3   little bit complicated because there are so many plaintiffs.
 4   We have received some photographs, for instance, from some of
 5   these plaintiffs where they are showing physical injuries.
 6   There are bruises, there are dermatological reactions, I assume
 7   based on the claim that they were exposed to toxic substances
 8   at the Pier.  I think all of the plaintiffs are alleging that,
 9   and some of the plaintiffs have submitted photographs
10   showing --
11           THE COURT:  Let me try to cut this short because I
12   think there are some fairly clear parameters we are establish.
13   Part of what you are doing, Mr. Mirro, is arguing cases that
14   are not before me right now.  It seems to me that if one of the
15   plaintiffs says that I had an allergic reaction or I was denied
16   my inhaler, that is a very specific claim of injury the
17   discovery for which should be commensurate with the specificity
18   of that claim.  I think in that instance, for example, if
19   somebody says I didn't get my inhaler, I don't think that
20   entitles you to somebody's gynecological records.
21           I understand there are a lot of plaintiffs.  This is a
22   difficult case, but welcome to life in the big city, right?
23   But I do think that the parameters here are fairly
```

                          Page 9

1572810_1.TXT
24   straightforward.  Specific injuries, discovery is commensurate
25   with the specificity of the injury.  Broadly alleged injuries
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    20
     58tkmacc
 1   such as psychological harm I think open plaintiffs up to
 2   broader discovery obligations, at least according to the cases
 3   I have read, because it puts more of their psychological
 4   history at issue.  However, I am not insensitive to the point
 5   made by Mr. Milton and it seems to me that I am going to
 6   operate on his good faith.  where he doesn't think a protective
 7   order doesn't adequately protect his client's interests and he
 8   obviously doesn't think the material is relevant enough to be
 9   turned over, turn it over to me for ex parte review, and just
10   tell Mr. Mirro so he is aware of what is going on.  I
11   understand Mr. Mirro, that you don't object to that review of
12   an extremely sensitive case.
13           MR. MIRRO:  That is fine.  If he doesn't want to turn
14   it over, then I am perfectly willing to talk with you about it
15   on another occasion.
16           For clarification, I think the decision that it sounds
17   like we have come to is that you are not saying that all
18   medical records are undiscoverable at this point, you are
19   saying in those instances with respect to those plaintiffs,
20   where they are only complaining about psychological, then the
21   medical records would be not discoverable.
22           THE COURT:  Yes, that is right.
23           MR. MIRRO:  where they are complaining about certain
24   types of physical injuries, they would be discoverable.
25           THE COURT:  Certain medical records.  If somebody
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    21
     58tkmacc
 1   claims their teeth were knocked out, the dental records become
 2   relevant.  If they had an ingrown toenail, I don't think that
 3   is relevant.
 4           To use your phrase, Mr. Mirro, I think we are all
 5   pretty much on the same page and we are going to deal with the
 6   hard case in the future.  where there is something arguably
 7   relevant and highly sensitive and Mr. Milton will submit it to
 8   me for in camera review.
 9           MR. MILTON:  Can I take up Mr. Mirro's suggestion that
10   all these records be produced under a protective order?
11           MR. MIRRO:  Yes, I have no problem with that.  we are
12   not interested in embarrassing people.  we want to reach the
13   merits of the case.
14           THE COURT:  I assumed that, and that is why I threw it
15   out.  So if somebody wants to get it prepared and send it to
16   me, I will sign it expeditiously.
17           MR. MIRRO:  we have submitted a draft and hopefully we
18   will be hammering it out.
19           Your Honor, I agree that the psychological and
20   psychiatric issues are far more serious in this case, as far as
21   I can tell at this point.  Are plaintiffs willing to produce
22   those records then, Mr. Milton?
23           MR. MILTON:  It is a limited set of plaintiffs who
24   have been in therapy either before or after, to our claiming --
25   everyone is claiming at least some sort of emotional distress.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    22
                              Page 10

1572810_1.TXT
58tkmacc
1    The protective order goes a long way, thinking of individual
2    clients here, to probably alleviate most of the clients'
3    concerns, but not all the clients'.  There may be a couple who
4    may well be so upset by the prospect of turning over to the
5    city lawyers, even ones as gracious as Mr. Mirro, their
6    psychological records, that they may withdraw.  We may enter
7    into a stipulation if that is how Mr. Mirro would agree to do
8    it, that they are not claiming emotional distress damages.
9            MR. MIRRO:  I would be happy to work out anything
10   along those lines.
11           MR. MILTON:  But I think that is the minority and I
12   think most of them, grudgingly but in compliance with the rules
13   of the court, will turn them over.
14           MR. MIRRO:.  It is important for us to explore these
15   conditions, to the extent they are in the case.
16           MR. MILTON:  Different therapists operate differently.
17   To the extent there are any records, we will see how relevant
18   they are.  So we will turn them over.
19           THE COURT:  While I am moved to witness such harmony
20   with counsel, we do have other matters we have to attend to.
21           I will assume you all will work it out and send to me
22   to sign whatever it is you need to sign, or, Mr. Milton,
23   whatever it is you need me to review.
24           There were a couple other issues, some of which are
25   moot, some I am not sure.  For example, employment records.  To
            SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

23

58tkmacc
1    the extent there is no claim of loss, Mr. Mirro, what would be
2    the relevance of employment records?
3            MR. MIRRO:  Your Honor, all these plaintiffs are
4    claiming serious psychological injuries.  If they are working,
5    we should be permitted to explore whether there are performance
6    issues at work following the incident.  On the other hand, I
7    think we should be entitled to explore whether they had
8    performance issues before the incident to compare with after
9    the incident.
10           THE COURT:  What if the psychological trauma they are
11   suffering from is not of the type to affect performance but is
12   still fairly harmful?
13           MR. MIRRO:  I think that is a point but I think we
14   should still be entitled to explore whether it is a performance
15   issue at work or at school.  I have taken depositions of some
16   of these plaintiffs who claim that their relationships with
17   family and friends and fellow employees were affected by the
18   severe trauma following their arrest.  I think we are entitled
19   to explore that.
20           Please don't misunderstand.  I am not suggesting that
21   all the discovery that we collect in this case we are going to
22   try to get into evidence.
23           THE COURT:  I know, I know.
24           MR. MIRRO:  But I do believe that we are entitled to
25   discover the facts.
            SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

24

58tkmacc
1            MR. MILTON:  May I respond?
2            THE COURT:  Of course.
3            MR. MILTON:  I believe Mr. Mirro maybe didn't clarify
4    it but he is talking about another case.  We have taken one
                     Page 11

1572810_1.TXT

```
 5    deposition in this case and Mr. Thomas didn't testify that this
 6    affected his relationships with his family and at work.  To the
 7    extent we claim that the ability to work has been affected, we
 8    have turned over the employment records.  For people who have
 9    no claim that this affected their work, we didn't turn over the
10    authorization.  It is a pure fishing expedition.  It would be
11    to our benefit to turn it over if we claim it affected their
12    performance.  That would be an element of damages.  But I don't
13    see that they are entitled to fish around in our work lives.
14             THE COURT:  I don't hear Mr. Mirro being interested in
15    a fishing expedition.  He has too many plaintiffs.  So I think
16    we are in agreement.  To the extent that plaintiffs are
17    claiming that the psychological affects effects of the alleged
18    conduct affected work performance, it sounds like Mr. Milton is
19    on board with giving you records that establish that fact or
20    are relevant to that fact.
21             MR. MIRRO:  Let me ask you this, your Honor.  I hear
22    what you are saying, but what comes to my mind is that the
23    employment records are frankly potentially relevant in a number
24    of ways and what I have articulated so far is only one of them.
25    But the other possibility, I believe, is that they could very
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    25
     58tkmacc
```
 1    well show issues of -- a number of things.  First, there could
 2    be statements in the employment records -- a lot of these
 3    plaintiffs are claiming that they were innocent bystanders
 4    swept up.  What if the employment records show that on October
 5    30, 31, the plaintiff asked for two or three days off to be out
 6    of the office to attend these rallies or marches.
 7             THE COURT:  Do you really think that somebody when
 8    they went to their boss said I would like next Monday and
 9    Tuesday off because I want to protest, or did they just say I'm
10    taking a personal day?
11             MR. MIRRO:  I understand, your Honor, but this is a
12    class action.  Some of these people are employed -- we took a
13    deposition a few days ago of a woman employed at the ACLU.  All
14    these situations are different, and I just think that we are
15    entitled to ask the question did they take some days off or did
16    he take some days off around that time period, and is there any
17    record of what the reason was.  Similarly, after the
18    incident -- I'm sorry, I have lost my train of thought again --
19    after the incident, were any statements made to the employer
20    about reasons that they were out of work, what was said.  Those
21    are admissions.  Those could very well be admissions.  Somebody
22    says, I decided to engage in civil disobedience and I got
23    arrested and that's why I wasn't able to come in to work a
24    couple days.
25             MR. MILTON:  May I respond to that?
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    26
     58tkmacc
```
 1             THE COURT:  Yes, of course.
 2             MR. MILTON:  Again, the interrogatories ask for that
 3    information.  They ask for any statements made and any
 4    witnesses that may have relevant information.  To the extent
 5    that those categories of requests overlap with people at the
 6    plaintiff's work, he has that information.  But without
 7    anything else to go on, it is really a fishing expedition.
 8             MR. MIRRO:  It is not a fishing expedition.  There are
 9    also questions of disciplinary history and whether those
```
                               Page 12

1572810_1.TXT

```
10      records might go to credibility of witnesses.  All of these
11      plaintiffs are going to be witnesses in this case.
12              THE COURT:  It seems to me, the convention took place
13      the last week of August, so the fact that somebody went to
14      their employer and said I want to take a couple days off, there
15      are employees around the land taking days off.  It seems to me
16      there is a way to narrow this rather than allowing you to
17      rummage through employment records.  As Mr. Milton pointed out,
18      some of this was covered in interrogatories and prior
19      statements, but the mere fact that somebody took time off
20      doesn't mean that they took off time to protest.  They could
21      have come to be tourists.
22              I confess I haven't been able to parse out every
23      single allegations in every complaint, but some of the
24      allegations are that people were here as tourists and were
25      scooped up in these arrests.  Their employment records would
```

27

```
        58tkmacc
1       show that they were not improperly playing hooky from work.
2               MR. MIRRO:  I appreciate your comment.  That is not
3       where I was heading, though, with the argument.  I think you
4       are absolutely right, there are allegations that some of these
5       individuals were here as tourists, but I think the flip side is
6       that we should be entitled to test that, and one way to test
7       that is to see what the records say when they took the days
8       off.
9               THE COURT:  What I was going to say is, anything
10      having to do with why the plaintiffs might not have been
11      working, anything to do with what if any statements were made
12      by plaintiffs to their employers, or, frankly, anybody else,
13      and whether or not they have discipline problems of a type that
14      would be relevant to this case can be discretely sought, rather
15      than a general, we want employment records of the plaintiffs.
16              MR. MIRRO:  I would be happy to go along with that,
17      your Honor.  Perhaps the plaintiffs can take a second look at
18      these questions and identify -- if they can identify from their
19      employer, identify any statements that might be relevant.  I
20      would be happy to go along with that.  It is not an ideal
21      situation, obviously, because we are leaving it in the hands of
22      the plaintiffs to determine what they are going to produce to
23      us.
24              MR. MILTON:  If I can just respond, the issue of the
25      employment, again for people who aren't claiming that this
```

28

```
        58tkmacc
1       affected their work in any way, I don't see under this theory
2       that they may have made statements or something that goes to
3       their credibility, that could be said with respect to every
4       aspect of these people's lives.
5               THE COURT:  I agree.  If a plaintiff has something in
6       their employment file, a discipline because they were tardy for
7       a meeting, that has nothing to do with this case.  I think,
8       frankly, the request having to do with disciplinary problems
9       has to be very, very narrow and relate to the issues in this
10      case.  I agree with Mr. Milton that this has to be a discrete
11      request.
12              Mr. Mirro, if you want this stuff, you will have to go
13      back and narrow your requests.  You are not entitled to look
14      for the proverbial needle in the haystack by asking for all the
```

Page 13

1572810_1.TXT

```
15   employment records.  Mr. Milton is right, to the extent that
16   there might be something relevant, that is in every case.  But
17   I do think Mr. Mirro is entitled to challenge, to the extent
18   that he has a good-faith basis to do so, the statements by some
19   of the plaintiffs that wherever they were at the time of their
20   arrests they were not involved in some sort of protest.
21          Mr. Mirro, I will say, they may very well concede that
22   they were there protesting and that it was entirely lawful.
23   But to the extent people are saying they weren't even in the
24   vicinity it seems anything from their employment record would
25   shed light on that.  But that is a very narrow definition and
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                          29
     58tkmacc
```
 1   you will have to narrow your request.
 2          MR. MIRRO:  Thank you, your Honor.
 3          THE COURT:  Anything else we need to take up?
 4          MR. MILTON:  I assume your analysis applies to his
 5   request for school records.
 6          THE COURT:  Yes.  The issue on school records, I
 7   gather, is the theory that if somebody protested in college
 8   that somehow that might be relevant.  That is shaky at best and
 9   I am not sure it would come in at trial, but of course that is
10   not the test.
11          MR. MIRRO:  Your Honor, let me make a comment about
12   that.  Much of this case from my perspective, and I don't think
13   I am giving away too much here, to a large degree, everyone
14   knows what the plaintiffs did on August 31 or August 27.  Very
15   much this case is going to go to what the plaintiffs were
16   intending to do and what they thought they were doing when they
17   were doing what they were doing on August 31.  In other words,
18   it is a mental state of mind.  A lot of these questions are
19   going to state of mind and intent of the demonstrators who were
20   arrested.  A lot of these people have a long history of civil
21   disobedience.  We are not interested in tardiness from work or
22   school.  We are interested in records that say here is a guy
23   that has a pattern and practice, a habit and routine of taking
24   off every day when there is an antiBush rally in the city or
25   the region and it's a problem for us.  The reason we are
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                          30
     58tkmacc
```
 1   interested in that is because it establishes a practice, a
 2   habit, a routine.  It establishes that sort of evidence for us.
 3   It shows that he wasn't swept up or she wasn't swept up as an
 4   accident.  That is what we are interested in pursuing.
 5          MR. MILTON:  May I respond?
 6          THE COURT:  Of course, go ahead, Mr. Milton.
 7          MR. MILTON:  If I can briefly respond, again, I don't
 8   know where he gets the fact that a lot of these people have a
 9   long history of civil disobedience.  That is not true and in
10   fact we freely admit in the interrogatories that some of our
11   plaintiffs in the past have engaged in civil disobedience but
12   that is not most of them.  Again, we will fight about how
13   relevant that is, that in the past they blocked a street and
14   whether that has to do with whether or not they were blocking a
15   street in the Republican Convention.
16          THE COURT:  I think you all have done yeoman's work on
17   behalf of your client and each has made the point I made
18   before.  I think it is relevant for discovery purposes if
19   somebody has some sort of past involvement in civil
```
                                Page 14

1572810_1.TXT
```
20  disobedience or protesting and that does not allow Mr. Mirro to
21  fish around employment and school records, but he can freely
22  have access to the information that is relevant to that claim.
23  I don't care what grades they got, I don't care if they were
24  late for class, I don't care if they got caught with the dean's
25  daughter.
```

31

58tkmacc
```
1           So let's narrow the request.  I think you are entitled
2   to ascertain that information.  I think you have a hill to
3   climb as to whether or not it will be relevant at trial but we
4   will cross that bridge when we come to it.
5           MR. MIRRO:  There were a couple other things, your
6   Honor if you have a moment.
7           THE COURT:  I have a couple moments because I have a
8   long scheduled motion to transfer a case.
9
10          MR. MIRRO:  With respect to Professor Chris Thomas, he
11  testified that there were about a dozen photographs that his
12  son had taken.  He testified that he believed those photographs
13  were sent to his attorneys.  We have not received -- although
14  the plaintiffs' attorneys have promised some of those
15  photographs, we have not received any.
16          THE COURT:  Mr. Milton.
17          MR. MILTON:  Yes.  I have a letter in front of me
18  dated August 26, a cover letter for everything we have.  So he
19  either has them or will have them soon.  So I think that issue
20  is moot.  Any confusion about the photographs, we are not
21  hiding anything --
22          MR. MIRRO:  Are all the photographs being produced to
23  us, David?
24          MR. MILTON:  I am looking at this cover letter, which
25  I didn't write.  Everything he asked and that we have been able
```

32

58tkmacc
```
1   to locate and everything that his other attorney has, which is
2   the cause of some of the confusion.  I realize your concern
3   that we are hiding something but we are well aware of our
4   ethical obligations and our obligations under the rules.
5           MR. MIRRO:  My concern is that the professor testified
6   that there were a dozen photos and that he believes he sent
7   them to his attorneys, and the attorneys tell me there are two
8   or three or four that they are able to put their hands on.  I
9   don't know what, frankly, to make of that.
10          MR. MILTON:  This cover letter is sending you 27
11  photos and all the negatives that he has.  You're getting
12  everything.  I don't know what else to say.  You have what we
13  have.
14          MR. MIRRO:  We will see what is produced then.
15          THE COURT:  Anything else?
16          MR. MIRRO:  Your Honor, I don't mean to become overly
17  technical, but can you give us some guidance on the objections
18  that have been stated on these general objections that have
19  been stated in the discovery responses, because I am very
20  concerned about what is out there and what may not get
21  produced.
22          THE COURT:  Tell me what you are not getting that you
23  think you are entitled to.  I read through the interrogatory
24  responses and I read general obligations interposed and phrases
```
Page 15

1572810_1.TXT

25    like not withstanding, here is the answer.  There were a whole
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    33
      58tkmacc
 1    series of questions about arrests for disobedience and a series
 2    of general objections and specific answers.  That is the time
 3    honored projection.  Give me your best shot of what you think
 4    you haven't been given as a result of these general objections
 5    that we otherwise haven't covered today.
 6            MR. MIRRO:  Your Honor, I can't give you an answer.
 7    It is like proving a negative.  These objections, they
 8    basically got a half dozen or 10 general objections that they
 9    have asserted with respect to each and every interrogatory, and
10    the whole thing is not internally consistent.  The logic in
11    these answers is not at all consistent and it is completely
12    unclear what is being held, what is being turned over, where
13    there is an objection asserted or not an objection asserted.  I
14    don't mean to be overly technical and maybe I should stop now,
15    but this causes me concern because I don't know where we are.
16            THE COURT:  Give me an example where you think
17    plaintiffs have the information you want but they are not
18    giving it to you because of one of these general objections.
19            MR. MIRRO:  How can I do that, your Honor?  I have no
20    idea.  All I know that they have asserted a general objection
21    to every request.
22            THE COURT:  But then they give you an answer.
23            MR. MIRRO:  Not every one.
24            THE COURT:  Give me an example that is making you
25    nervous.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    34
      58tkmacc
 1            MR. MIRRO:  I have to take a look at this.
 2            There are a whole series here where they have said not
 3    applicable.
 4            THE COURT:  Give me your best shot.
 5            MR. MILTON:  As I explained in my letter to Mr. Mirro
 6    prior to the letters to the court, somewhat based on the
 7    wording of his question, where it is provide every example of
 8    such and such and if there was never a such and such, we said
 9    NA, but as I explained, it just means no, bad attempt at
10    legalese perhaps.
11            MR. MIRRO:  Under the request document, not applicable
12    answer is used with respect to No. 3, 4, 5, 6, 7, 8.  We are
13    not getting any information from those requests, your Honor.
14            MR. MILTON:  Again, it is fully explained in my letter
15    that we mean no such documents exist and I apologize, or we
16    apologize for using what you think is cryptic.  In the future
17    we will use more, you know, explicit prose.
18            MR. MIRRO:  I don't have any more information on what
19    might be withheld.
20            THE COURT:  Mr. Mirro, number 11, state whether
21    plaintiff has made a claim with any insurance carriers for
22    physical, mental or emotional injuries within the past 10
23    years.  This is right off the interrogatory response from
24    Steyert.  Answer, not applicable.  Mr. Milton says that means
25    there is none.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    35
      58tkmacc
                        Page 16

1572810_1.TXT
```
 1          Basically what you are saying is you don't believe
 2   that or you don't know if it is true, but I don't know what you
 3   want me to do.  He is saying it means there aren't any.  You
 4   made a comment earlier that some of this depends on plaintiffs.
 5   That is the nature of discovery.  You are depending on an
 6   officer of the court meeting his obligations, and when they say
 7   there aren't any more documents available, I don't know what
 8   more you want a court to do.
 9          MR. MIRRO:  I understand, your Honor.  To clarify, I
10   am concerned with the fact that they have asserted every single
11   objection to every --
12          THE COURT:  This can't be the first time you have seen
13   this.
14          MR. MIRRO:  That's fine.
15          THE COURT:  That is standard practice.  I am not
16   saying it is commendable but it is standard.  You are telling
17   me you haven't interposed general objections and either given
18   an answer preserving the objection or then said in addition to
19   the objection, we don't have the documents?
20          MR. MIRRO:  To answer the judge's question I would say
21   this, your Honor.  I feel when I respond to interrogatory and
22   document requests that I have an ethical obligation to do this
23   right, and the way I do it, when I have general objections, I
24   might have only a handful of objections related to privileges
25   or something like that, but I answer each particular question
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                    36
58tkmacc
```
 1   and object to the particular question based on what I believe
 2   to be the case.  In this case it is expressly different.  They
 3   have made every objection applicable to every document request
 4   and interrogatory.  I understand we are all officers of the
 5   court but I don't think that is consistent with Rule 11.  As a
 6   litigant, I don't know what to make of it.
 7          THE COURT:  As I said, I don't think it is a
 8   commendable way to practice but tell me what you want me to do.
 9          MR. MIRRO:  Maybe there is nothing.  I guess in an
10   ideal world I would ask the plaintiffs to amend their responses
11   and submit proper responses.
12          MR. MILTON:  If I can just add, not only do we have --
13   for the vast majority we say blah, blah, blah, we object, we
14   object, notwithstanding, here is the information you want, but
15   we state specific objections to specific questions.  It is very
16   clear what the bases of our objections are.
17          MR. MIRRO:  But all of that is -- perhaps it is
18   technical and I am going to let it go, your Honor, but I made
19   the point by raising it with you.  It concerns me greatly and I
20   don't know what I am supposed to understand about what
21   information is out there or not, but I am willing to live with
22   it.
23          THE COURT:  Mr. Milton, the point is well taken by
24   Mr. Mirro.  When I say it is the standard practice, I don't
25   think it is something we should shoot for.  I will take another
```
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                    37
58tkmacc
```
 1   run and if there is something that he thinks I should do, I
 2   will hear him.
 3          So do the best to give specific objections to specific
 4   requests.  You will use those only in good faith and otherwise
 5   you will respond, just like he will respond to your requests
```
                            Page 17

1572810_1.TXT
```
 6    and give specific objections only where applicable.
 7         MR. MILTON:  Right.  We already served our
 8    interrogatories, so I am not sure as a practical matter how to
 9    implement that, unless there is something that Mr. Mirro comes
10    back with.  There is nothing that we are withholding pursuant
11    to the general objections and not pursuant to a specific
12    objection made within the body of the particular response.
13         THE COURT:  I think that is Mr. Mirro's point.  He is
14    not entirely clear on that.  So, Mr. Mirro, if you have
15    specific questions that you want to take up with Mr. Milton, go
16    ahead, and if you think there is a possibility for relief, go
17    ahead and I will hear you.
18         MR. MIRRO:  OK, your Honor.  I am not sure I have
19    anything more to add.
20         THE COURT:  Is there anything else we need to take up
21    now?  Mr. Milton, I know you will think about the issue with
22    regard to the recollection with regard to the notes.
23         MR. MILTON:  Right.  What is the timetable?  Mr.
24    Mirro, you are going to go gone this week?
25         MR. MIRRO:  Your Honor, I will be unable for the
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```
                                                                      38
```
      58tkmacc
 1    remainder of the week.  I am taking some time just in time to
 2    get hit by the hurricane.  But I will be available any time
 3    starting next week and perhaps we can put together some
 4    thoughts between now and then.
 5         THE COURT:  Mr. Milton, why don't we say by a week
 6    from Wednesday you will let me know your final position on
 7    this.
 8         MR. MILTON:  OK.
 9         THE COURT:  That gives a day or so after Mr. Mirro
10    gets back from his vacation.
11         MR. MIRRO:  Your Honor, I wanted to mention one other
12    thing before we get off the phone and that is, your chambers
13    reached out a week ago to ask about the status of the
14    consolidated order and/or the proposed protective order
15    relating to certain materials in these cases.  Let me tell you
16    the status very briefly.  I drafted both of those items at
17    least a month ago and we circulated them to plaintiffs'
18    counsel, all the plaintiffs' counsel, and we have not heard
19    anything until just recently.  With respect to the protective
20    order, there are a long list of objections from plaintiffs'
21    counsel.  I will try to work those out with plaintiffs'
22    counsel.  With respect to the discovery order, I am happy to
23    say that David and I sat down a couple of days ago and we were
24    able to hammer out, I think, what I think we will be able to
25    submit to you as a proposed son consolidated discovery order.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```
                                                                      39
```
      58tkmacc
 1         MR. MILTON:  With the caveat, and I told this to Mr.
 2    Mirro, I don't claim to be representing the numerous
 3    plaintiffs' counsel in the case.  He told me he has not heard
 4    any objections from them, so I am going to communicate with all
 5    them and see if they are on board with what Mr. Mirro and I are
 6    hammering out, which I hope and reasonably expect they will be,
 7    in which case we will be able to represent this is the order we
 8    are all bound by.
 9         THE COURT:  I appreciate what you are telling me.  It
10    sounds like there is some momentum.
                         Page 18
```

1572810_1.TXT

11          MR. MIRRO: The only concern, your Honor, we have a
12     series of higher level NYPD witnesses who one of the plaintiffs
13     in one of the cases would like to begin deposing in the next
14     few weeks. We are not sure that timetable is going to work.
15     We are willing to produce them but we are not sure the
16     timetable is going to work, given that we don't have the
17     consolidated discovery order in place, which will allow
18     procedures by which everyone could participate in those
19     depositions. We think that is important to do.
20          THE COURT: I think it is important too and I would
21     ask you to convey my strong desire to all counsel involved in
22     this to get this done so we don't affect that schedule, because
23     none of this is going to work if people aren't on board with
24     some basic principles that are reflected in that order.
25     Otherwise this whole thing is going to unravel and we can't
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    40
     58tkmacc
1     have that. So if counsel who are on the phone could just
2     convey that and do the best they can to wrap this up, because I
3     am not inclined to let schedules slip. I will bring everyone
4     in and nobody will leave until we ham are it out.
5          Have a nice vacation, enjoy the rest of the week.
6          (Proceedings adjourned)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                              Page 19