UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-5-14
```

TARASIK ABDELL, *et al.*,

                Plaintiffs,

-v-

CITY OF NEW YORK, *et al.*,

                Defendants.

No. 05-cv-8453 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court is Defendants' motion to set aside the verdict pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. (Doc. No. 400.) The motion argues that the Court should (A) enter judgment in Defendants' favor because Defendants have established a qualified immunity defense; (B) set aside or reduce the punitive damages award because it is unsupported by the evidence and excessive; (C) reduce or set aside the compensatory damages because the amount of damages are unsupported by the evidence; or (D) grant a new trial because of numerous allegedly erroneous rulings by the Court. For the reasons set forth below, the motion is denied.

I. LEGAL STANDARD

"[J]ury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Nevertheless, "[a] court may grant a new trial . . . if the verdict is against the weight of the evidence." *Id.* at 417. "A verdict is against the weight of the evidence if and only if it is seriously erroneous or a miscarriage of justice." *DePascale v. Sylvania Elec. Prods., Inc.*, 510 F. App'x 77, 78 (2d Cir. 2013) (internal quotation marks omitted). Moreover, although a court "is free to weigh the evidence [it]self, and need not view

[the evidence] in the light most favorable to the verdict winner," *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998), the "court should only grant [a new trial] when the jury's verdict is egregious . . . [and] should rarely disturb a jury's evaluation of a witness's credibility," *id.* (internal quotation marks and citations omitted). "The moving party bears the burden of proving that . . . a new trial is warranted." *Allam v. Meyers*, 906 F. Supp. 2d 274, 281 (S.D.N.Y. 2012).

## II. Discussion

### A. Qualified Immunity

Defendants argue that "[b]ased upon the undisputed evidence presented at trial, judgment should be entered in favor of the Individual Defendants on the basis that the trial record definitively reflects that both are entitled to qualified immunity." (Doc. No. 402 ("Defs. Br.") at 3.) Qualified immunity was not at issue at trial, however, and the jury was not asked to rule on any factual issues relating to qualified immunity. (*See* Doc. No. 374 ¶ IV.B (list of defenses, omitting qualified immunity, included in the Joint Pretrial Order drafted by the parties); *see also* Doc. No. 352 (Defendants' proposed verdict form, omitting any mention of qualified immunity or any special interrogatories that might be relevant to qualified immunity).) Therefore, in reality, Defendants do not take issue with the jury's verdict, but instead ask the Court to revisit its prior ruling on qualified immunity. To the extent Defendants ask the Court to reconsider its legal ruling that, on the undisputed facts at summary judgment, the Individual Defendants were not entitled to qualified immunity, the Court declines to do so. *See SEC v. Amerindo Inv. Advisors, Inc.*, No. 05-cv-5231 (RJS), 2014 WL 405339, at *3 (S.D.N.Y. Feb. 3, 2014) (noting that "a court must be mindful that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again,'" (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d

2

147, 167 (2d Cir. 2003)) and holding that "a motion for reconsideration should be denied unless there is a strong likelihood that the district court's decision would ultimately be reversed on appeal"). To the extent Defendants ask the Court to make factual findings, the Court is not entitled to make such findings for the simple reason that Defendants never asked the jury to address the issue. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question. If the defendant does not make such a request, he is not entitled to have the court, in lieu of the jury, make the needed factual finding." (citation omitted)). The Court therefore finds that Defendants have not established a qualified immunity defense.

## B. Punitive Damages

Defendants argue that an award of punitive damages was unsupported by the evidence and that the amount awarded was excessive. (Defs. Br. at 8–10.) Based on the evidence at trial, the Court determines that there was ample evidence for the jury to find that Defendant Monahan acted with callous disregard to these Plaintiffs' rights. Indeed, there was no evidence that Defendant Monahan ever saw these Plaintiffs or knew of their existence, let alone stopped to consider whether there was probable cause to arrest them. Moreover, the jury could easily infer from Defendant Monahan's demeanor, as shown on the videos of the arrests admitted into evidence, that he arrested all of the marchers out of frustration with the march itself and not out of a belief that the four Plaintiffs here had violated any law. In any event, "it is long-settled that 'the lack of probable cause may give rise to an inference of malice.'" *Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010). Thus, the jury could infer malice sufficient to award punitive damages based solely on the Court's finding that there was no probable cause to arrest Plaintiffs.

3

The Court notes that Defendants claim in their brief than *Cameron* is inapplicable here and that its statement that malice may be inferred refers to the malice element of malicious prosecution and not the malice element of punitive damages. (Defs. Br. at 15–16.) That claim is completely contradicted by *Cameron*. The full section of *Cameron* from which the Court's quotation is drawn – which is entitled "Punitive Damages Instructions" – makes it undeniably clear that *Cameron* was referring to the requirements of punitive damages and not the requirements of malicious prosecution:

### IV. Punitive Damages Instruction

Appellants' final claim challenges the District Court's decision not to instruct the jury that it could consider awarding punitive damages if it found for Appellants. We agree that this was error. To warrant an instruction, all that a party needs to show is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury. A punitive damages instruction is appropriate when the plaintiffs have produced evidence that the defendant's conduct is motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others, or, in other words, when the plaintiffs have produced evidence of a positive element of conscious wrongdoing or malice. The plaintiffs' evidence need only be enough to permit the factfinder to infer that the responsible official was motivated by malice or evil intent or that he acted with reckless or callous indifference.

In denying Appellants' request for the instruction, the District Court concluded that there was no evidence that Ramos and Rivera's actions were wanton, malicious or reckless. *But it is long-settled that the lack of probable cause may give rise to an inference of malice.* In this case, Appellants alleged that Ramos and Rivera knew that they lacked probable cause to suspect Cameron or Higgenbottom of any crime but arrested them anyway, and then proceeded to provide false information to the Bronx District Attorney's Office that led to Cameron's prosecution. While a jury was free to reject this version of events, the evidence at trial was at least minimally sufficient to support it. Had the jury accepted Appellants' account, it could have readily inferred that Ramos and Rivera were conscious of their alleged wrongdoing and hence acted maliciously. Accordingly, a question of fact as to malice was presented to the jury. And this made a punitive damages instruction appropriate.

*Cameron*, 598 F.3d at 69 (citations, alterations, and internal quotation marks omitted) (emphasis added).

The Court also determines that the amount of punitive damages is not excessive. Plaintiffs received $25,000 total, equal to $6,250 per Plaintiff, and yielding a compensatory to punitive damages ratio of 6.4 to 1. That amount falls well within the bounds of acceptability. *See Milfort v. Prevete*, No. 10-cv-4467 (WFK), 2014 WL 988768, at *9–10 (E.D.N.Y. Mar. 14, 2014) (reducing a $40,000 award of punitive damages to $5,000 in a case with nominal compensatory damages and one-and-a-half hours of detention, and citing cases awarding between $7,500 in punitive damages to approximately $100,000 in punitive damages). The Court therefore declines to set aside or modify the jury's findings on punitive damages.

## C. Compensatory Damages

Defendants next argue that the amount of compensatory damages should be reduced because the jury awarded an equal amount of compensatory damages to each Plaintiff despite the differing amounts of time that each Plaintiff spent in custody. (Defs. Br. at 12–13.) There is, however, no requirement that a jury compute damages on an hourly basis. The jury could have rationally determined that the injury of being wrongfully arrested and imprisoned – fear, uncertainty, shame, and loss of dignity and agency – is approximately the same whether the detention lasted 20 hours or 40 hours. *See Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34, 39 (2d Cir. 1985) (noting that the amount of damages for the "intangibles" involved in a false arrest case are "necessarily arbitrary and unprovable"). Further, even assuming that damages should have been awarded on an hourly basis, the departure from that standard apparently benefited Defendants. Here, the hourly rate of damages ranged from approximately $1,127 for Robert Siegel to $1,860 per hour for Steven Ekberg. Those rates are below amounts commonly awarded for false arrests in New York City. *See Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1350 (2d Cir. 1990) (remitting an award of general compensatory damages for false arrest to approximately $6,250 per hour); *Raysor*, 768 F.2d at 39 (citing false arrest cases approving

5

awards ranging from $1,500, in 1981 dollars, per hour to $3,333, in 1977 dollars, per hour); *Robinson v. Holder*, No. 07-cv5992 (DLC), 2008 WL 2875291, at *8 (S.D.N.Y. July 22, 2008) (stating that, in false arrest cases, the average rate for compensatory damages is "$6,416 per hour of detention"); *Martinez v. Port Auth. of N.Y. & N.J.*, No. 01-cv-721 (PKC), 2005 WL 2143333, at *21 (S.D.N.Y. Sept. 2, 2005) (approving an award of general compensatory damages for false arrest equal to approximately $8,889 per hour), *aff'd sub nom.*, 445 F.3d 158 (2d Cir. 2006); *see also Kerman v. City of New York*, 374 F.3d 93, 125–26 (2d Cir. 2004) ("[E]ven absent . . . other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty."). The Court therefore declines to set aside or modify the jury's findings on compensatory damages.

### D. Other Alleged Errors

Defendants finally argue that the Court made various errors warranting a new trial. (Defs. Br. at 14–16.) The Court addressed each of the alleged errors on the record and sees no reason to reconsider its rulings at this time. The Court therefore declines to order a new trial on the basis of any of the alleged errors.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT Defendants motion is DENIED. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 400.

SO ORDERED.

Dated: August 5, 2014
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE